Case 3:20-cv-04698-TKW-HTC   Document 1-3   Filed 03/11/20   Page 1 of 162

**IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT
IN AND FOR ESCAMBIA COUNTY, FLORIDA**

MATHEW SELOVER

     Plaintiff,

vs.                                                              CASE NUMBER:

ESCAMBIA COUNTY BOARD
OF COUNTY COMMISSIONERS; and
RAYME EDLER

     Defendants.

_____/

## C O M P L A I N T

     COMES NOW, Plaintiff, Mathew Selover (Plaintiff), by and through undersigned counsel,

herby files this Complaint against Defendants Escambia County Board of County Commissioners

(ECBCC), and Rayme Edler (Edler) (collectively referred to as Defendants), and states as follows:

### PARTIES

1)     Plaintiff is a resident of Santa Rosa County, Florida, and, at all times material,
employed by Escambia County.

2)     Defendant ECBCC is a local government entity which governs the County of
Escambia, in the State of Florida.

Complaint – Selover v. Esc. County Board of County Commissioners

Law Office of J.J. Talbott
900 East Moreno Street
TEL 850-437-9600   FAX 850-437-0906
*www.JJCanHelp.com*

Page 1 of 32

3)      Defendant Edler is a resident of the State of Florida and is employed as the Escambia County Medical Director.  Defendant Edler began serving in this capacity in approximately April 2018.

4)      Plaintiff has worked in emergency medical services since 2009.

5)      Plaintiff is an employee of the Escambia County Board of County Commissioners and has been employed as a paramedic for Escambia County EMS since February 2012.

6)      For approximately the past three and a half (3 1/2) years, Plaintiff was employed by Escambia County EMS as a shift Captain.

7)      Prior to the allegations raised herein, in his more than seven (7) years of employment with Escambia County EMS, Plaintiff has never been disciplined for inappropriate work conduct.

8)      As the Escambia County Medical Director, Defendant Edler is responsible for the medical performance of all Emergency Medical Technicians and Paramedics of Escambia County.

## FACTUAL BACKGROUND

9)      At all times relevant, Plaintiff was not an "at will" employee, but was covered under the Merit System, and/or was subject to a collective bargaining agreement between

Complaint – Selover v. Esc. County Board of County Commissioners

the Escambia County Board of County Commissioners and the International Association of EMTs and Paramedics.

10) At all times relevant, Plaintiff could only be terminated for cause and had a property interest in his employment with Escambia County Board of County Commissioners.

11) In or about March 2019, Plaintiff was advised by his colleague, Diana Chavers (Chavers), that Escambia County EMS employees Glenda Owens (Owens), and Amanda Frando (Frando) called in a "false delay" to have a smoke break- behavior that is a source of frequent complaints.

12) Plaintiff notified his superiors of Owen's and Frando's conduct shortly after he was advised of same by Chavers.

13) On or about the next day, Chavers was concerned with submitting an information report regarding the false delay incident because of Defendant Edler's friendship with Owens; nevertheless, Chavers completed, and turned in an information report of the incident.

14) On or about March 20, 2019, Plaintiff reported to his superiors that Escambia County EMS employee Shawn Hoopaugh (Hoopaugh) had made inappropriate sexual comments directed at another employee.

Complaint – Selover v. Esc. County Board of County Commissioners

15)     A few days after Plaintiff reported Hoopaugh, Hoopaugh angrily confronted Plaintiff regarding Plaintiff's report; an incident which Plaintiff also reported to his superiors.

### Quality Assurance Meeting

16)     On or about April 23, 2019, Plaintiff was contacted by Commander James Maddrey (Maddrey) of Escambia County EMS and advised that he was required to attend a QA meeting which was to begin in approximately fifteen (15) minutes.  Maddrey provided no additional details regarding the purpose, or topics to be discussed at the QA meeting.

17)     The QA meeting was called for by Defendant Edler.

18)     Plaintiff immediately contacted Escambia County Human Resources (HR) to discuss his concerns with attending a meeting with no advanced notice, and no explanation of the meeting's purpose.

19)     After HR initially advised Plaintiff to decline attending the meeting, the HR Director, Eric Kleinert contacted Plaintiff and encouraged him to attend, assuring Plaintiff that the meeting was non-disciplinary.

20)     Plaintiff attended the meeting, but he brought a union representative, Ivey Lett, as a witness.

Complaint – Selover v. Esc. County Board of County Commissioners

21)     When Plaintiff arrived at the meeting, he discovered that the QA board was comprised of Defendant Edler, Hoopaugh, Captain Craig Ammons, Bill Hopkins, and Maddrey.

22)     Maddrey did not attend the entire meeting because he left to assist on a call.

23)     Plaintiff was previously Bill Hopkins' supervisor.

24)     Bill Hopkins' is a close friend and/or confidant of Rayme Edler.

25)     At the time of the QA meeting, Plaintiff's report/complaint regarding Hoopaugh was still open, and unresolved.

26)     Defendant Edler remarked at the start of the meeting that the meeting was non-disciplinary.

27)     At the conclusion of the meeting, the QA board did not recommend remediation, re-training, or performance improvement.

**Plaintiff's Complaint Filed with HR**

28)     Shortly after the QA meeting, Plaintiff filed a complaint with HR against Defendant Edler, and expressed concerns with the QA meeting, including the fact that he did not have adequate notice, the QA board was not impartial, that Dr. Edler brought up matters that were almost a year old and/or were already resolved;  the QA board was not comprised of representatives who usually serve on the board, and that he

Complaint – Selover v. Esc. County Board of County Commissioners

believed that the board was called in retaliation for Plaintiff reporting Frando and Owens.

29)   After the QA meeting, Plaintiff continued to work for the Defendants as a paramedic without any restrictions on his employment for approximately 23 days.

30)   On or about May 13, 2019, HR met with EMS Chief Leon Salter, Interim Public Safety Director John Dosh (Dosh), and Defendant Edler concerning Plaintiff's complaint against Defendant Edler.

31)   At that meeting, Defendant Edler suddenly decided that the issues discussed at the QA meeting warrant disciplinary action against Plaintiff, and she declared that Plaintiff was unable to work as a paramedic under her license.

32)   In response to Defendant, Edler's, sudden decision to take disciplinary action against Plaintiff (after Plaintiff filed a complaint against her), Dosh specifically advised Defendant Edler that her conduct appeared to be retaliatory in nature.

33)   Defendant Edler continued to press for disciplinary action against Plaintiff.

34)   On or about May 15, 2019, at the direction of Defendant Edler, Plaintiff was informed that he could not work as a paramedic, and he was placed on administrative duty.

Complaint – Selover v. Esc. County Board of County Commissioners

35)   As of May 15, 2019, Plaintiff was restricted to work in only an administrative capacity. Plaintiff was not allowed to work overtime in this administrative capacity.

36)   Plaintiff was not given notice of this proposed discipline, did not have a fair and proper opportunity to defend same, and the Defendants did not follow their own policy in the imposition of said discipline.

### Defendant Edler's Complaint to the Florida Department of Health Regarding Plaintiff

37)   On or about May 16, 2019, Defendant Edler filed a complaint with the Florida Department of Health (DOH) concerning Plaintiff.

38)   In said DOH complaint, Defendant Edler referred to incidents which were never previously reported, and which occurred nearly a year prior to the DOH complaint.

39)   To date, the DOH has taken no action against Plaintiff regarding the complaint filed against Plaintiff by Defendant Edler; in fact, through the course of investigating Defendant Edler's complaint against Plaintiff, a third party physician experienced in emergency medicine has determined that Defendant Edler's allegations against Plaintiff are unfounded.

### Escambia County's Investigation, and Processes

Complaint – Selover v. Esc. County Board of County Commissioners

40)   After the May 13, 2019 meeting with Defendant Edler, the Interim County Administrator Matthew Coughlin (Coughlin) instructed Dosh that a performance improvement plan (PIP) needed to be completed in order to restore Plaintiff to his full position as a paramedic.

41)   Dosh subsequently advised Defendant Edler to provide the PIP. However, rather than provide a PIP, Defendant Edler recommended first that Plaintiff be demoted to an Emergency Medical Technician (EMT), and then that Plaintiff be terminated.

42)   Because of the due process concerns expressed by Dosh, and Coughlin,  Coughlin requested the ECBOCC attorney, Charles Peppler (Peppler), for his legal opinion concerning the extent of Defendant Edler's authority under the law, and Peppler advised that Defendant Edler did not have the authority to demote, terminate, or otherwise discipline the Plaintiff. See Peppler Memo, attached hereto as Exhibit A.

43)   Despite Peppler's legal opinion, Defendant Edler continued, and continues to impose discipline on Plaintiff.

44)   In addition to investigating the discipline Defendant Edler was imposing on Plaintiff, Edward Spainhower, an employee in the ECBCC's HR department, was assigned to investigate the Plaintiff's complaint against Edler.

Complaint – Selover v. Esc. County Board of County Commissioners

45)    In June 2019, Spainhower issued a report on behalf of Defendant ECBCC and determined that Defendant "Edler may have engaged in conduct that could be construed as harassment given the manner in which the board was assembled and the processes that were followed in both reporting [Plaintiff] to the FDOH and in attempting to demote him without *due process*." (Emphasis added).    <u>See</u> Spainhower Report, attached hereto as Exhibit B.

46)    Spainhower further stated "It is clear that Mr. Selover was not afforded the type of *due process* required by [Escambia County Board of County Commissioners] policy and union collective bargaining agreements currently in effect, nor was he afforded the opportunity to adequately prepare for a review board that discussed situations from July of 2018 until May  of 2019." <u>See</u> Exhibit B (emphasis added).

47)    In his report, Spainhower recommended that Plaintiff be returned to operational status as soon as possible. <u>See</u> Exhibit B.

48)    None of Spainhower's recommendations were implemented or followed.    <u>See</u> Exhibit B.

49)    Despite Spainhower's June 2019 report that Defendant Edler's complaint against Plaintiff was without merit or improper, Plaintiff continued to, and still continues

Complaint – Selover v. Esc. County Board of County Commissioners

to languish in a demoted, limited or restricted position, while Defendant Edler has faced no repercussions.

50) In fact, to make matters worse, Plaintiff was not provided a copy of Spainhower's report when it was completed in June 2019.  After the Complaint was filed by Plaintiff in May 2019, the Plaintiff called HR about the status of the complaint approximately every 3 weeks, but he was not provided an update and was not told that a report was completed.  He finally was able to receive a copy of the report on November 13, 2019 when he called the County Attorney's office and was provided same.  Thus, he was finally given a copy of the Spainhower report approximately seven (7) months after it was completed.

51) Plaintiff had no idea that the report was complete or was favorable to him and he had no idea that it was recommended that he was returned to his paramedic position until he received the report in November 13, 2019.

52) Nevertheless, Spainhower determined that demotion and/or termination of the Plaintiff was not legally justifiable.

53) Despite the opinion of Peppler and Spainhower, Defendant Edler continued her refusal to draft a PIP and refused to adhere to county policies or to refrain from

Complaint – Selover v. Esc. County Board of County Commissioners

impinging on the Plaintiff's rights.  See July 12, 2019 Email to Edler attached as Exhibit C.

54)   Considering Defendant Edler's refusal to draft the PIP, in or about July 2019, Leon Salter was instructed to draft the PIP, which he did.

55)   At the time that Leon Salter circulated the PIP, Plaintiff was still working in an administrative role, rather than his regular paramedic position.

56)   As part of the PIP, Plaintiff was to work under the supervision of a Field Training Officer (FTO) and the PIP was to last ninety (90) days.  However, it took Escambia County until approximately late August 2019 to implement the PIP.

57)   Well over 90 days have elapsed since Plaintiff began the PIP, and Plaintiff has performed satisfactorily under the PIP, yet Defendants have not returned Plaintiff to his full position as paramedic and have not followed the PIP.

58)   The Plaintiff continues to work in a limited capacity despite that fact that Defendants never formally accused Plaintiff of any wrongdoing.

59)   Moreover, despite having written policies regarding employee discipline and retaliation, Defendants have a pattern and practice of violating the policies and failing and refusing to adhere to the policies.

Complaint – Selover v. Esc. County Board of County Commissioners

60)     For example, according to the Escambia County Board of County Commissioners Human Resources policies (HR policies), Defendants are required to issue a Notice of Disciplinary Action in writing, which sets forth the nature of the allegations, the nature of the action to be taken, the effective date of the action, and if suspension, the duration thereof, and that such notice should be served upon the affected employee. See Exhibit D Escambia County Human Resources Policy, p. 71.

61)     Additionally, according to the HR policies, Defendants were to implement an escalating disciplinary process wherein suspension is a more severe. Id.

62)     Further, according to the collective bargaining agreement, Defendants may discipline Plaintiff only for just cause. See Exhibit E Collective Bargaining Agreement.

63)     Additionally, according to the Defendants harassment policies, all complaints must be immediately investigated and completed within a strict time frame.  The results must be discussed with the complainant and the complainant must be given the opportunity to appeal same to the next level.  The Defendants did not follow their polices, did not follow their time lines,  buried the results, did not discuss the results with the Plaintiff, and then they tried to change the results when same were final.

Complaint – Selover v. Esc. County Board of County Commissioners

64)   Despite these written policies, Defendants, failed and refused to follow their own policies and procedures regarding Plaintiff and his Complaint about Defendant Edler.  Specifically, they failed to follow their policies with regard to Plaintiff's complaint about Edler, failed to follow their policies about retaliation when Edler attempted to retaliate against Plaintiff, they allowed Edler to retaliate against Plaintiff when their own legal counsel and HR representative found that same was improper, and they violated their own policies when they punished Plaintiff without allowing him ANY due process or notice of the allegations against him.

65)   Defendants have a long history of ignoring ECBCC policies and procedures regarding discipline, retaliation, and complaints.  For example:

(a) Defendant ECBCC has expressly admitted failure to follow its own policies and procedures, has indicated to management personnel that it requires assurances that policies and procedures are being followed, but has taken no additional action to ensure compliance, despite knowledge that policies and procedures are not being followed;

(b) In or about April 2018, Defendant ECBCC expressly admitted it needed to revise its policies and procedures because same was not being followed, yet Defendant ECBCC has failed to take proper action to demand compliance;

Complaint – Selover v. Esc. County Board of County Commissioners

(c)  There are at least five other instances since May 2018, when Edler assumed her position, wherein Defendants failed to give the employee proper notice, failed to timely investigate, and failed to abide by the escalating disciplinary process;

(d) Since 2018, at least 5 other complaints were filed against Defendant Edler.  In each of those Complaints, the Defendants have failed to follow their HR/grievance/hostile work environment policies.  In each of these 5 Complaints, the Defendants have effectively buried the complaints, failed to issue opinions on the complaints, and, based on information and belief, failed to properly inform the complainant of the status or finding of the complaint. Like the Plaintiff's complaint, these other 5 complaints were against Defendant Edler.  Further, like the Plaintiff, the Defendant Edler subsequently filed a complaint with the DOH against all of those that filed a complaint against her.

66)    The Defendants have a pattern and practice of ignoring their HR policies and procedures, burying complaints in the Emergency Medical Services, and protecting Dr. Edler.

67)    The Defendants failure, or refusal to return Plaintiff to his full position have cost plaintiff seniority and compensation in that while demoted to administrative duties,

Complaint – Selover v. Esc. County Board of County Commissioners

or duties supervised by an FTO, Plaintiff missed out on significant overtime payment, and opportunities for career advancement.

### Jana Still's Post Hoc Findings

68)   On or about December 12, 2019, Jana Still, who became the Escambia County Director of Human Resources in or about November 2019, issued a subsequent report concerning Plaintiff's complaint against Defendant Edler, concluding, without adequate explanation or analysis, and contrary to Spainhower's report, that Defendant Edler had not committed retaliation and also concluded that Plaintiff should remain under the supervision of an FTO.

69)   Upon information and belief, Ms. Still drafted, and issued the above referenced report after meeting with Defendant Edler, and Defendant Edler's private attorney.

70)   Nevertheless, Defendant ECBCC failed to follow its own procedures regarding investigating Plaintiff's retaliation complaint against Defendant Edler.

71)   For example, per Escambia County policy, an investigation is supposed to be concluded within 15 days of the complaint being made. Further, the HR director is to meet with the complainant within five working days after the investigation is concluded. Finally, within 10 days of meeting with the complainant, the County is

Complaint – Selover v. Esc. County Board of County Commissioners

to issue a decision in writing which includes findings of fact and a statement for or against any disciplinary action.

72)   Here, Escambia County failed to conclude the investigation within 15 days, failed to meet with Plaintiff within the prescribed period of time, failed to issue a written decision within the prescribed period of time, failed to provide the Plaintiff a copy of the decision within a reasonable period of time, failed to discuss the resolution of the complaint with the Plaintiff, failed to follow the recommendations of the decision, and then amended the decision after it was final and issued a new contrary decision, by someone who was not involved in the original investigation.

73)   Based on information and belief, County Commissioner Jeff Bergosh attempted to investigate this matter and demanded that Mrs. Still meet with him and provide him the evidence which supposedly she reviewed, and which inspired her to issue the new report contrary to the prior report.  However, Mrs. Still was not able to locate the "evidence" that she relied on.  Despite same, Plaintiff is still suffering from the adverse employment action and has not returned to his prior position as a paramedic.

**Santa Rosa County**

Complaint – Selover v. Esc. County Board of County Commissioners

74)     In August 2019, Plaintiff started working a few shifts with Lifeguard Ambulance Service in Santa Rosa County Florida, where he worked as a paramedic.

75)      Last month, when Defendant Edler learned that Plaintiff was working at Lifeguard Ambulance Service, she took it upon herself to contact Santa Rosa County's medical director, unsolicited, and erroneously claim that Plaintiff was not qualified to work as a paramedic.

76)     The Santa Rosa County's medical director investigated this situation and concluded that Plaintiff was qualified to work as a paramedic.

77)     The Defendant Edler contacted the medical director of Santa Rosa County in an attempt to prevent the plaintiff from working supplemental work as a paramedic and to further punish or take adverse employment action against the Plaintiff.

78)     Accordingly, Plaintiff has brought this suit, and incurred attorney's fees and costs in pursuit thereof.

**COUNT I- VIOLATION OF PLAINTIFF'S FOURTEENTH AMENDMENT PROCEDURAL DUE PROCESS RIGHTS**
**(Against Defendant Edler in her Official Capacity and Defendant ECBCC)**

79)     Plaintiff re-alleges and incorporates paragraphs one (1) through seventy—six (76) above as if fully set forth herein.

Complaint – Selover v. Esc. County Board of County Commissioners

80) Under color of state law, pursuant to authority granted by constitution, statute, regulation, or ordinance, Defendants deprived Plaintiff of his due process rights protected by the 14th Amendment to the U.S. Constitution.

81) "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. 14.

82) "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ." 42 U.S.C. § 1983.

83) Here, Plaintiff has a protected property interest in his employment because Plaintiff was subject to the Collective Bargaining Agreement, which provides that no full time employee shall be discharged or otherwise disciplined except for just case; and/or per Escambia County's own customs, policies, practices, and procedures, Plaintiff could be disciplined only "for cause", thus, disciplinary actions taken

Complaint – Selover v. Esc. County Board of County Commissioners

against Plaintiff by Escambia County must be accompanied by due process. Exhibits D, E.

84) Further, here, Plaintiff has suffered a deprivation of his property interest in that Defendants demoted Plaintiff, restricted his duties, changed his responsibilities or otherwise took action against him which has cost Plaintiff seniority, pay, and advancement opportunities.

85) Finally, Defendants violated Plaintiff's procedural due process rights by failing, and/or refusing to afford Plaintiff adequate procedures to address the disciplinary actions imposed on him.

86) Defendant ECBCC's procedures were inadequate in that, among other reasons, ECBCC:

    a)  failed to provide adequate notice of the QA meeting, its purpose, and preventing Plaintiff from meaningfully responding to any issues raised therein;

    b)  failed to give notice that he was being disciplined;

    c)  Defendant Edler has no authority to discipline Plaintiff, yet she in fact has imposed discipline on Plaintiff;

Complaint – Selover v. Esc. County Board of County Commissioners

d)  Defendant Edler has no authority to discipline Plaintiff, yet the ECBCC continues to allow her to effectively impose discipline on Plaintiff;

e)  disciplined Plaintiff by demoting, transferring, and/or otherwise limiting his employment as noted herein without proper notice or ability to respond or challenge the decision;

f)  failed to follow its own disciplinary policies, and procedures;

g)  restricting the Plaintiff's employment indefinitely, without any opportunity and procedure to remove said restrictions;

h)  failure to follower Spainhower's recommendations to return Plaintiff to full employment;

i)  failure to abide with their own policies and procedures regarding the investigation of Plaintiff's retaliation claim, including failing to abide by the timeframe prescribed, and failing to issue a timely basis of decision.

87)  The actions complained of herein deprived Plaintiff of due process under the color of state law in that official acts of ECBCC, pursuant to the authority invested in ECBCC, and by policy, custom, or practice, prevented Plaintiff from receiving adequate notice that he was subject to disciplinary procedures; prevented Plaintiff from a meaningful opportunity to be heard and confront the allegations against him;

Complaint – Selover v. Esc. County Board of County Commissioners

and prevented Plaintiff from receiving a timely final decision, meanwhile, Plaintiff has been indefinitely demoted.

88) As a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered, and continues to suffer the deprivation of his due process rights, and he has suffered and continues to suffer diminished pay, loss of seniority, loss of benefits, and loss of advancement opportunities.

89) Plaintiff has incurred attorney's fees and costs in bringing this action.

WHEREFORE, Plaintiff prays for declaratory relief, and respectfully requests judgment as follows:

a) Trial by jury on all contested factual issues in this matter;

b) Preliminary/permanent injunctive relief compelling Defendants to restore Plaintiff to his previous rank, title, pay, privileges, and benefits;

c) A judgement stating that Defendants' conduct complained of herein is a violation of the Fourteenth Amendment of the U.S. Constitution;

d) Award compensatory damages in favor of Plaintiff;

e) Award Attorney's fees, statutory fees, and costs pursuant to 42 U.S.C. § 1988.

f) Grant such other relief as may be necessary to effectuate the Court's judgment, or as the Court otherwise deems just and equitable.

Complaint – Selover v. Esc. County Board of County Commissioners

## COUNT II- VIOLATION OF PLAINTIFF'S FOURTEENTH AMENDMENT RIGHTS
### (Against Defendant Edler in her Individual Capacity)

90)     Plaintiff re-alleges, and incorporates paragraphs one (1) through eighty-nine (89)
        above as if fully set forth herein.

91)     Defendant Edler used her position as Escambia County Medical Director to abuse
        her authority, and her conduct was motivated by personal animus towards Plaintiff,
        and she intentionally, and unlawfully retaliated against Plaintiff in violation of his
        First Amendment rights.

92)     Specifically, Defendant Edler convened a QA meeting where Plaintiff was given
        just 15 minutes advance verbal notice of said meeting; despite the lack of adequate
        notice, Defendant Edler raised issues in the QA meeting dating back nearly a year
        prior to the QA meeting; Defendant Edler assured Plaintiff that the QA meeting
        was non-disciplinary in nature, nevertheless, Defendant Edler disciplined Plaintiff
        by removing him from operation, placing him in an administrative position, and
        then demoting Plaintiff to work as a supervised EMT, rather than a paramedic;
        Defendant Edler was advised by Escambia County legal counsel that she did not
        have the authority to discipline Plaintiff, yet she has, and continues to impose
        discipline on Plaintiff; and finally, when asked to provide the documents she

Complaint – Selover v. Esc. County Board of County Commissioners

reviewed to justify her decision to discipline Plaintiff, Defendant Edler engaged in a pattern delay, and evade, while she post hoc gathered documents to justify her actions.

93)     Plaintiff is entitled to compensatory punitive damages against Defendant Edler individually as her conduct violated well-established Florida laws, was retaliatory in nature, and Defendant Edler further acted recklessly and with callous indifference towards Plaintiff's due process rights under the 14th Amendment to the U.S. Constitution.

94)     As a direct and proximate result of Defendant Edler's unlawful actions in her individual capacity, Plaintiff has suffered, and continues to suffer the deprivation of his due process rights, and he has suffered and continues to suffer diminished pay, loss of seniority, loss of benefits, and loss of advancement opportunities.

WHEREFORE, Plaintiff prays for declaratory relief, and respectfully requests judgment as follows:

a)  Trial by jury on all contested factual issues in this matter;

b)  Preliminary/permanent injunctive relief compelling Defendants to restore Plaintiff to his previous rank, title, pay, privileges, and benefits;

Complaint – Selover v. Esc. County Board of County Commissioners

c) A judgement stating that Defendant Edler's conduct in her individual capacity complained of herein is a violation of the Fourteenth Amendment of the U.S. Constitution;

d) Award punitive damages in favor of Plaintiff;

e) Award compensatory damages in favor of Plaintiff;

f) Award Attorney's fees, statutory fees, and costs pursuant to 42 U.S.C. § 1988.

g) Grant such other relief as may be necessary to effectuate the Court's judgment, or as the Court otherwise deems just and equitable.

## COUNT III- UNLAWFUL RETALIATION IN VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENTS
### (Against Defendant Edler in her Official Capacity and Defendant ECBCC)

95) Plaintiff re-alleges, and incorporates paragraphs one (1) through seventy-eight (78) above as if fully set forth herein.

96) Amendment I of the United States Constitution provides in pertinent part: "Congress shall make no law . . . abridging the freedom of speech."

97) The Speech Clause of the First Amendment was made applicable to the states under the Fourteenth Amendment in Gitlow v. New York, 268 U.S. 652 (1925).

98) "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to

Complaint – Selover v. Esc. County Board of County Commissioners

be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ." 42 U.S.C. § 1983.

99) At all times relevant, Plaintiff exercised his First Amendment rights when filing his complaint against Defendant Edler regarding the improper QA meeting.

100) Further, Plaintiff's complaint against Defendant Edler involved a matter of public concern in that the complaint concerned the policies, practices, and procedures implemented by Escambia County, and Defendant Edler, the Director of Escambia County EMS.

101) Here, Plaintiff's complaint was filed in response to a procedurally inappropriate QA meeting, and was intended to seek redress for the procedural due process violations apparent in the circumstances surrounding the QA meeting.

102) Defendant Edler, shortly after being notified of Plaintiff's complaint, then began a campaign of retaliation against Plaintiff which includes, but is not limited to:

103) Removing Plaintiff from field work, and placing him in an administrative position;

104) Demoting Plaintiff, and refusing to allow him to work as a paramedic; and

Complaint – Selover v. Esc. County Board of County Commissioners

105) Contacting Plaintiff's additional employer and falsely representing that Plaintiff is not qualified to work as a paramedic.

106) Plaintiff's complaint against Defendant Edler did not impede the performance of Escambia County EMS, or interfere with the regular operation thereof.

107) Despite knowing that Defendant Edler did not possess the authority to discipline Plaintiff as described above, Defendant ECBOCC has taken no action to relieve Plaintiff from the discipline imposed upon him by Defendant Edler; thus, Plaintiff continues to suffer negative employment actions due to the actions of Defendants Edler and ECBOCC.

108) Plaintiff's complaint against Defendant Edler was, and is, a substantial motivating factor in the Defendants' retaliatory discipline of Plaintiff.

109) Plaintiff's disciplinary record does not support the discipline he has been forced to endure due to the Defendants' actions.

110) As a direct, and proximate cause of the actions of the Defendants, Plaintiff has suffered loss of professional standing and position; emotional distress; embarrassment; humiliation; and damage to his good name and reputation, all of which are injuries that are continuing, and permanent.

Complaint – Selover v. Esc. County Board of County Commissioners

WHEREFORE, Plaintiff prays for declaratory relief, and respectfully requests judgment as follows:

h)   Trial by jury on all contested factual issues in this matter;

i)   Preliminary/permanent injunctive relief compelling Defendants to restore Plaintiff to his previous rank, title, pay, privileges, and benefits;

j)   A judgement stating that Defendants' conduct complained of herein is a violation of the First Amendment of the U.S. Constitution;

k)   Award compensatory damages in favor of Plaintiff;

l)   Award Attorney's fees, statutory fees, and costs pursuant to 42 U.S.C. § 1988.

m)  Grant such other relief as may be necessary to effectuate the Court's judgment, or as the Court otherwise deems just and equitable.

## COUNT IV- UNLAWFUL RETALIATION IN VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENTS
### (Against Defendant Edler in her Individual Capacity)

111)   Plaintiff re-alleges, and incorporates paragraphs one (1) through seventy-eight (78), and paragraphs ninety-five (95) through one-hundred and ten (110) above as if fully set forth herein.

Complaint – Selover v. Esc. County Board of County Commissioners

112) Defendant Edler used her position as Escambia County Medical Director to abuse her authority, and her actions complained of herein were motivated by personal animus towards Plaintiff, and she intentionally, and unlawfully retaliated against him in violation of Plaintiff's First Amendment rights.

113) Specifically, Defendant Edler engaged in a campaign of retaliation against Plaintiff upon learning of Plaintiff's report against her regarding the inappropriate QA meeting.

114) Plaintiff is entitled to compensatory punitive damages against Defendant Edler individually as her conduct violated well-established Florida, and federal laws, was retaliatory in nature, and Defendant Edler further acted recklessly and with callous indifference towards Plaintiff's rights under the First Amendment.

115) As a direct and proximate result of Defendant Edler's unlawful actions in her individual capacity, Plaintiff has suffered, and continues to suffer the deprivation of his due process rights, and he has suffered and continues to suffer diminished pay, loss of seniority, loss of benefits, and loss of advancement opportunities.

WHEREFORE, Plaintiff prays for declaratory relief, and respectfully requests judgment as follows:

n) Trial by jury on all contested factual issues in this matter;

Complaint – Selover v. Esc. County Board of County Commissioners

o) Preliminary/permanent injunctive relief compelling Defendants to restore Plaintiff to his previous rank, title, pay, privileges, and benefits;

p) A judgement stating that Defendant Edler's conduct in her individual capacity complained of herein is a violation of the First Amendment of the U.S. Constitution;

q) Award punitive damages in favor of Plaintiff;

r) Award compensatory damages in favor of Plaintiff;

s) Award Attorney's fees, statutory fees, and costs pursuant to 42 U.S.C. § 1988.

t) Grant such other relief as may be necessary to effectuate the Court's judgment, or as the Court otherwise deems just and equitable.

## COUNT V- UNLAWFUL RETALIATION PURSUANT TO FLORIDA STATUTE SECTION 448.102
### (Against Defendant Edler in her Official Capacity and Defendant ECBCC)

116) Plaintiff re-alleges, and incorporates paragraphs one (1) through seventy-eight (78) as if fully set forth herein.

117) Pursuant to Florida law, an employer may not take any retaliatory personnel action against an employee because the employee has:

a) Disclosed, or threatened to disclose, to any appropriate governmental agency, under oath, in writing, an activity,

Complaint – Selover v. Esc. County Board of County Commissioners

policy, or practice of the employer that is in violation of a law, rule, or regulation. However, this subsection does not apply unless the employee has, in writing, brought the activity, policy, or practice to the attention of a supervisor or the employer and has afforded the employer a reasonable opportunity to correct the activity, policy, or practice.

b) Provided information to, or testified before, any appropriate governmental agency, person, or entity conducting an investigation, hearing, or inquiry into an alleged violation of a law, rule, or regulation by the employer.

c) Objected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation.

Fla. Stat. § 448.102 (2019).

118)   At all times material, Plaintiff was Defendants' employee.

119)   Here, Plaintiff filed a written complaint against Defendant Edler on or about May 1, 2019, objecting to the inappropriate QA meeting.

Complaint – Selover v. Esc. County Board of County Commissioners

120)     Subsequent to the QA meeting, Plaintiff worked in his full capacity as a paramedic with no restrictions for approximately 23 days.

121)     However, shortly after Defendant Edler learned that Plaintiff had filed a complaint against her, Defendant Edler began imposing disciplinary measures against Plaintiff; specifically, Defendant Edler caused Plaintiff to be demoted to administrative duties, and then as an EMT working under an FTO.

122)     Defendant Edler then engaged in a calculated effort to impugn the reputation of Plaintiff, in an attempt to prevent Plaintiff from returning to work as a paramedic; going so far as to contact Plaintiff's Santa Rosa County employer, and allege that Plaintiff is not qualified to work as a paramedic.

123)     The actions complained of herein are part of a continuing effort to retaliate against Plaintiff for reporting Defendant Edler's inappropriate conduct, in violation of Fla. Stat. § 448.102 (2019); in fact, Defendant's retaliatory conduct continues as of the filing of this Complaint, as Plaintiff has yet to be restored to his previous position, and Defendant Edler has interfered with Plaintiff's additional employment by contacting his other employer, and disparaging Plaintiff's qualifications.

124)     Plaintiff has incurred attorney's fees and costs in bringing this action.

WHEREFORE, Plaintiff prays for relief, and respectfully requests judgment as follows:

Complaint – Selover v. Esc. County Board of County Commissioners

a) Trial by jury on all contested factual issues in this matter;

b) Award compensatory damages in favor of Plaintiff;

c) Award punitive damages in favor of Plaintiff;

d) Award Attorney's fees, statutory fees, and costs pursuant to Fla. Stat. § 448.104.

e) Grant such other relief as may be necessary to effectuate the Court's judgment, or as the Court otherwise deems just and equitable.

**PLAINTIFF DEMANDS A TRIAL BY JURY**

DATED this 17th day of January, 2020.

Respectfully submitted,

/s/ Jeremiah J. Talbott
JEREMIAH J. TALBOTT, ESQ.
FL Bar No. 015484
TRAVIS P. LAMPERT, ESQ.
FL Bar No. 0099843
Law Office of Jeremiah J. Talbott, P.A.
900 E. Moreno Street
Pensacola, Fla. 32503
(850) 437-9600 / (850) 437-0906 (fax)
jjtalbott@talbottlawfirm.com
civilfilings@talbottlawfirm.com
*Attorneys for Plaintiff*

Complaint – Selover v. Esc. County Board of County Commissioners

# EXHIBIT A



**ESCAMBIA COUNTY**

**INTER-OFFICE MEMORANDUM**

TO:     Matt Coughlin, Interim County Administrator

FROM:   Charles V. Peppler, Deputy County Attorney *CVP*

DATE:   May 31, 2019

RE:     Extent of Authority by Dr. Rayme Edler and Disciplinary Actions Involving Captain Matthew Selover

You have asked me to give my opinion concerning the extent of authority by Dr. Edler under Florida law. Medical directors for Emergency Medical Services are governed by Section 401.265, Fla. Stat. and F.A.C. Section 64J-1.004. I have attached copies of each. Although Section 401.265(1) provides that medical directors supervise and assume direct responsibility for the medical performance of EMTs and paramedics, the statute also provides that a medical director's duties do not include administrative or managerial functions. In my opinion, disciplinary actions against an employee would be part of the managerial function that you, as the ultimate supervisor of all County employees, would exercise together with John "J.D." Dosh as Interim Director of the Public Safety Department.

In the scenario that you described to me of Dr. Edler requesting that Captain Selover no longer be permitted to perform paramedic duties, I am of the opinion that Dr. Edler would be exceeding her authority to demand that Captain Selover be relieved of his duties as a paramedic and perform his duties only as an EMT. This action would be the same as a demotion which is governed by the County's disciplinary policy. The County's disciplinary policy provides for progressive discipline in which the penalties become more severe depending on the number and gravity of the transgressions. Moreover, Captain Selover has certain due process rights under our disciplinary policy including appeal rights to the Merit Systems Protection Board.

In reviewing Section 64J-1.004 which is captioned "Medical Direction," I do not see any language in this regulation which permits the Medical Director to reduce the certification level of a paramedic who performs advanced life support (ALS) services to that of an EMT who is limited to basic life support (BLS) services. Dr. Edler, according to Section 64J, must meet certain

requirements regarding developing training programs, assuring paramedics and EMTs follow prescribed protocols in various treatmen techniques as first responders. However, I see no language whe Medical Director can unilaterally determine that a Paramedic can no perform ALS services and is to be limited to BLS services.

Please let me know if I can provide further assistance.

CVP: kcc
Attachments

# EXHIBIT B



# EDLER INVESTIGATION SUMMARY

**Complainant:** Matthew Selover

**Department:** Public Safety – Emergency Medical Services

**Date of Complaint:** May 1, 2019

**Complaint Description:**
Mr. Selover alleges workplace harassment by Dr. Rayme Edler in the form of professional retaliation via Quality Assurance Board proceedings and subsequent referral to the Florida Department of Health (FDOH) for investigation.

**Key Employees Involved**
- Matthew Selover, Paramedic, Complainant
- Rayme Edler, Escambia County Medical Director, Respondent

**Persons Interviewed or providing statements**
The below persons were interviewed or provided statements:
- Matthew Selover – Paramedic, Escambia County EMS
- Dr. Rayme Edler – Medical Director, Escambia County
- John Dosh – Interim Director, Escambia County Public Safety
- Leon Salter – Operations Manager, Escambia County EMS
- Ivy Lett – Senior Office Support Assistant, Escambia County Public Safety Department

**Investigation**
A report of unlawful harassment was filed by Mr. Matthew Selover on May 1, 2019 alleging that Dr. Edler, Escambia County Medical Director, had subjected Mr. Selover to workplace harassment based upon her treatment of him in various situations to include a Quality Assurance/Quality Improvement (QA/QI) Board. Based upon materials submitted with Mr. Selover's written complaint dated May 10, 2019, Human Resources (HR) believed that there was sufficient cause to investigate the allegations contained therein. (Attachment 1)

Mr. Selover's email to HR dated May 1, 2019, detailed events that happened during a Quality Assurance/Quality Improvement (QA/QI) Board that was held on April 23, 2019 at the behest of Dr. Edler as well as previous incidents prior to the board. The employees that comprised the board were: Dr. Edler, Commander James Maddrey (Paramedic Supervisor), Commander Shawn Hoopaugh (Paramedic Supervisor), Captain Christopher Ammons (Emergency Medical Technician), and William Hopkins (Emergency Medical Specialist). (Attachment 2)

1



Mr. Selover alleges in his initial call to HR and reiterated in his follow up email to HR, that he was initially hesitant to attend said board as he was not previously appraised of the issues to be discussed and professed a strong feeling of apprehension based upon a series of ongoing investigations of various members of the Emergency Medical Services Administrative staff to include previous EMS Division Manager Steve White,  Leon Salter, Kate Kenney (Paramedic Supervisor), Jim Bonoyer (EMS Quality Specialist), and Karen Wood (Paramedic Supervisor).  All these employees are currently under investigation by the FDOH.

After a call between previous HR Director Eric Kleinert and Dr. Edler, it was determined that the board was to be a routine examination of cases that Mr. Selover had run recently. (It should be noted that according to Dr. Edler's official report to the FDOH, the cases reviewed went back to July of 2018.) Upon this explanation, Mr. Selover agreed to sit for the board if he would be allowed a witness, which was granted. Ms. Ivy Lett attended as Mr. Selover's witness. (Attachment 3)

Mr. Selover alleges in his email statement that the employees on the board were not members of the standing QA/QI team that had previously administered QA/QI boards. Mr. Selover further claims that the make-up of the board was prejudicial as it contained members that he had previously referred to EMS Administration for patient care and for conduct issues. (Attachment 4)

When asked why Dr. Edler might wish to harass him, Mr. Selover stated that he had spoken up in defense of the previous EMS Chief and his policies and in a follow up statement to HR dated 6/18/19, indicated that Dr. Edler may be upset with him for disciplining Emergency Medical Technician (EMT) Glenda Owens, alleged by Mr. Selover to be a close friend of Dr. Edler's as well as statements he had made to staff at Baptist Hospital that were overheard and reported to his chain of command that were demeaning towards Dr. Edler.  (Attachment 5, 6, & 7)

A review of the QA/QI policy provided to HR by Dr. Edler on June 12, 2019 indicates an "Initiated" date of July 1, 2018 and according to Dr. Edler, was approved for use by the DOH on July 31, 2018. The policy provided to HR upon request from Mr. Salter on June 19, 2019 shows an approval date of March 12, 2019 and is labeled version 1.0. Both versions detail the make up of the board in generic terms and lists four possible responses that might be used by the Medical Director to address any employee actions that she deemed needing address as required by either EMS policy or state statute. Both versions of the policy indicate that employees may face the following actions:

1. No action taken/matter resolved
2. Remediation training
3. Clinical Improvement Plan
4. Suspension of Clinical Privileges

2



Both versions specify that the focus of the board is for quality assurance and quality improvement, but indicate major or repetitive violations, or failure to adequately progress through the remediation process may be referred to Operations for review and progressive disciplinary action, but also states that the medical director may suspend clinical privileges without mention of progressive discipline or due process. (Attachment 8 & 9)

The Florida State Statute that discusses QA/QI Boards is 401. 265. Paragraph 1 of this statute discusses the duties that an organization's medical director must perform. It specifically states that they will not perform administrative and managerial functions. This statute also details in paragraph 2 that any grounds for discipline will be documented and reported to the department with a report of concerns and supporting documentation. The statue further states that within 7 days of such a report, the department shall provide the employee a copy of said report. If the department finds the report is insufficient for disciplinary action, the report shall be expunged. Upon conferring with the County Attorney, it has been determined that the "department" in question, refers to the FDOH. (Attachment 10)

As specified by the County Attorney, it appears that there are certain issues that by law, must be reported to the DOH as per statute 401.411. However, there are also issues that may be reported while not being mandatory. An email from Interim Public Safety Director John Dosh to Dr. Edler in response to an exchange between Dr. Edler and HR requests that Dr. Edler consider the possibility that her referral of Mr. Selover to the FDOH may appear to be retaliatory and to allow for due process with regards to possible disciplinary action by the county. (Attachment 11)

On May 14, 2019 a meeting was held with John Dosh, Leon Salter, Dr. Edler, and Ed Spainhower at Public Safety to discuss Matthew Selover's complaint and the QA/QI board findings.

On May 16, 2019, Dr. Edler forwarded a complaint to the FDOH for investigation of Mr. Selover. (Attachment 12)

HR received a copy of the complaint sent to FDOH on the afternoon of May 16, 2019.

Further investigation revealed that no such complaint/report was forwarded for review to the Interim Public Safety Director, County Attorney, Operations Manager; nor was a copy provided to Mr. Selover prior to being delivered to the Florida Department of Health.

HR requested copies of other actions that resulted from QA/QI boards and Dr. Edler provided three for review. None of the board results for the employees submitted to HR were referred to the state for review. HR has also requested that Dr. Edler provide the number of boards executed since her hire as well as the outcomes of the boards. To date, no reply has been provided. (Attachment 13)

3



A review of Dr. Edler's personnel file indicates that she has been provided a copy of the County Unlawful Harassment Policy; she also has a Letter of Counseling related to failure to follow direction.

**Conclusion**

It is not the purpose of this investigation to delve into whether Mr. Selover is innocent or guilty of breaking established protocols or policies as HR does not have the requisite level of expertise to form an opinion.

The focus of this investigation was strictly to attempt to find whether he may have been harassed by Dr. Edler as alleged in his complaint. Regrettably not all information related to this incident has been brought forth. However, based upon the information that has been provided to date, it appears that Dr. Edler may have engaged in conduct that could be construed as harassment given the manner in which the board was assembled and the processes that were followed in both reporting Mr. Selover to the FDOH and in attempting to demote him without due process.

This conclusion is reached in part due to the disparate treatment that Mr. Selover has experienced when compared to others that have been subjected to the QA/QI process although due to a lack of review of all board actions since Dr. Edler's hire it is difficult to accurately confirm this. The three QA/QI cases that were forwarded to HR for review were not referred to the DOH even though at least one case seemed to have similar characteristics as Mr. Selover's.

It is clear that Mr. Selover was not afforded the type of due process required by BCC policy and union collective bargaining agreements currently in effect, nor was he afforded the opportunity to adequately prepare for a review board that discussed situations from July of 2018 until May of 2019.

It is also noted that the issue concerning the HIPPA violation reported by Dr. Edler to the FDOH was dealt with previously by EMS Administration and an opinion from the County Attorney supports the view that the issue did not rise to the level of attention given by Dr. Edler to this matter.

Finally, Mr. Selover's board was not composed of individuals that might be considered neutral or without prejudice for the purposes stated in the board policy; namely: "It is the intent of clinical review to improve patient care and clinical operations, not to discipline the employee."

**Employee Relations Recommendations:**

Based upon the above conclusions, the following recommendations are made to address Mr. Selover's complaint.

- Convene a panel composed of the medical director, senior EMS officials and a union representative to review the current QA/QI Policy and address concerns noted above related to due process for employees.
- Ensure that scope of authority is clearly outlined as to who will be required to pursue discipline in accordance with current BCC policy and union collective bargaining agreement(s) as the current policy sets up a conflicting set of circumstances by stating that Operations will process disciplinary actions and then states that the Medical Director my suspend clinical privileges or

4



demote which in most cases would mean loss of pay or an impact to any overtime that would normally be available.
- Conduct weekly meetings to discuss and deconflict current proposed disciplinary actions and training issues.
- Ensure that either as a feature of the revised QA/QI Policy or as a wholly separate policy which discusses contact with outside parties, it is made clear that no such contact will be established without prior discussions with the department director or County Attorney unless those reportable activities in question fall under whistle blower statutes.
- Set a reasonable time limit on how far back an employee may expect to have reviewed by the board. Refer to industry standards as applicable.
- Review all EMS policies with an eye to producing uniform terms so as to reduce confusion when training and conducting investigations. As an example, pick a uniform set of titles for employees that conform to industry standards and match HR titles as used in classification and compensation documents.
- Provide relief to Mr. Selover by returning him to operational status as soon as possible based upon Mr. Pepler's memorandum dated May 31, 2019 which notes the limitations on a medical directors' authority to restrict a medic's ability to perform ALS services.

Attachments:
(1) Selover Unlawful Harassment Complaint Form
(2) Selover follow up email complaint
(3) Ivy Lett witness statement
(4) Confirmation email related to complaint against board member
(5) Tanksley & Selover emails on Selover comments
(6) Owens Letter to File on Smoking
(7) Photocopies of Freeman/Tanksley texts
(8) Version 1.0 of QA/QI Policy
(9) Draft Version of QA/QI Policy
(10) Statute 401.265
(11) Email exchange between Interim Public Safety Director Dosh and Dr. Edler
(12) DOH Complaint Form for Selover
(13) QA/QI Summaries for Chavers, Daily, and Lovelace

ES/June 19

5

# EXHIBIT C

I am emailing to get your thoughts on a PIP for Paramedic Selover, as requested in my below email.

I look forward to your response today.

Thanks,

John Dosh
Interim Public Safety Director

**From:** John Dosh
**Sent:** Friday, July 12, 2019 10:57 AM
**To:** Rayme M. Edler <RMEDLER@myescambia.com>
**Cc:** Janice P. Gilley (JanicePGilley@myescambia.com) <JanicePGilley@myescambia.com>
**Subject:** FW: Paramedic Selover

Good Morning Dr. Edler,

I hope all is well.

On June 24th you provided an email response to a request from former Interim County Administrator Matt Coughlin providing him your thoughts on an improvement plan for Paramedic Selover's past poor performances. Your suggestion was "that you felt it prudent that for a period of evaluation at the basic level (EMT) is a good starting point for assessment and review".

Based on a recently received email from the County Attorney's Office on this subject, your suggested direction of demotion/discipline for Paramedic Selover is not supported under statute nor can it be supported by the County Human Resources Department due to the failure to implement any of the county's progressive disciplinary policies. As I understand it, reclassifying Paramedic Selover as an EMT would qualify as a demotion and due process has to be provided by following the counties progressive disciplinary process. Any future employee poor performance issues will require that you work with the EMS administration to implement the progressive disciplinary policies.

With all this information at hand, I would like for you to provide me with a your thought on a revised process improvement plan (PIP) that with help return Paramedic Selover back to the streets operating as a functioning paramedic as soon as possible.

I look forward to you thoughts by close of business Tuesday July 17, 2019.

Best regards,

John Dosh
Interim Public Safety Director

2

# EXHIBIT D

# COUNTY OF ESCAMBIA

## BOARD OF COUNTY COMMISSIONERS

## HUMAN RESOURCES DEPARTMENT

# POLICIES AND PROCEDURES



221 Palafox Place, Suite 200

Pensacola, FL32502

(850) 595-3000

**October 1, 2005**

**Revision January 1, 2007**

**Revision March 1, 2007**

**Revision October 1, 2009**

**Revision January 19, 2012**

**BCC - HUMAN RESOURCES POLICIES AND PROCEDURES**

# TABLE OF CONTENTS

**Page**

SECTION 1 ................................................................................................................. 1
  DEFINITIONS ........................................................................................................... 1
SECTION 2 ................................................................................................................. 8
  PURPOSE AND SERVICES ..................................................................................... 8
    2.1   Classified Service ........................................................................................ 8
    2.2   Unclassified Service .................................................................................... 8
SECTION 3 ................................................................................................................. 9
  CLASSIFICATION OF POSITIONS .......................................................................... 9
    3.1   Class Specifications Defined ....................................................................... 9
    3.2   Preparation of the Classification Plan ........................................................ 9
    3.3   Approval of Plan ........................................................................................ 10
    3.4   Classification Plan Not a Part of These Policies and Procedures .............. 10
    3.5   Official Copy .............................................................................................. 10
    3.6   Allocation and Classification of New Positions.......................................... 10
    3.7   Changes in the Classification of Positions ................................................ 10
    3.8   Abolishment of Positions ........................................................................... 11
    3.9   Classification Actions Requiring Additional Funding ................................. 11
    3.10   Submission of Reclassification ................................................................. 11
SECTION 4 ............................................................................................................... 12
  ATTENDANCE AND HOLIDAYS............................................................................. 12
    4.1   Attendance ................................................................................................ 12
    4.2   Attendance Records .................................................................................. 12
    4.3   Absence Without Leave (AWOL)................................................................ 12
    4.4   Holidays .................................................................................................... 12
SECTION 5 ............................................................................................................... 14
  ANNUAL LEAVE (AL) – CLASSIFIED EMPLOYEES .............................................. 14
    5.1   Purpose and Accumulation of Annual Leave ............................................ 14
    5.2   Restrictions on Accumulation of Annual Leave ........................................ 14
    5.3   Annual Leave Advances Prohibited .......................................................... 15
    5.4   Annual Leave Records .............................................................................. 15
    5.5   Approval of Annual Leave Requests.......................................................... 15
    5.6   Annual Leave, When Chargeable .............................................................. 15
    5.7   Computation of Annual Leave Charges ..................................................... 15
    5.8   Payment for Unused Annual Leave Upon Separation of Service or Death.................. 15
    5.9   Payment for Annual Leave ........................................................................ 15
    5.10   Rate of Payment for Annual Leave Following Promotion or Demotion...................... 16
    5.11   Disposition of Annual Leave ..................................................................... 16
    5.12   Disciplinary Actions .................................................................................. 16
SECTION 6 ............................................................................................................... 17
  SICK LEAVE (SL) - CLASSIFIED EMPLOYEES..................................................... 17
    6.1   Purpose and Accumulation of Sick Leave ................................................ 17
    6.2   Use of Sick Leave ..................................................................................... 17
    6.3   Sick Leave Responsibilities ....................................................................... 18
    6.4   Entitlement to Accumulated Sick Leave Upon Separation ......................... 18
    6.5   Disposition of Sick Leave .......................................................................... 18
    6.6   Sick Leave Used for Bereavement (Funeral) ............................................ 19
SECTION 7 ............................................................................................................... 20
  PAID TIME OFF LEAVE (PTO) SUMMARY – UNCLASSIFIED EMPLOYEES ....................... 20
    7.1   Purpose and Accumulation of Paid Time Off (PTO)................................... 20

**BCC - HUMAN RESOURCES POLICIES AND PROCEDURES**

| | | |
|---|---|---|
| 7.2 | Eligibility | 20 |
| 7.3 | Restrictions on Accumulation of Paid Time Off (PTO) | 20 |
| 7.4 | Use of PTO and Extended Leave Bank (ELB) | 20 |
| 7.5 | PTO and the Family and Medical Leave Act (FMLA) | 21 |
| 7.6 | Bereavement (Funeral) Leave | 21 |
| 7.7 | Exhaustion of PTO Leave | 21 |
| 7.8 | Approval of PTO Leave Requests | 21 |
| 7.9 | PTO Advances Prohibited | 21 |
| 7.10 | PTO Records | 21 |
| 7.11 | Scheduling of PTO | 22 |
| 7.12 | Payment for Unused PTO or ELB Upon Separation of Service or Death | 22 |
| 7.13 | Leave Donation and Leave Incentive Plans | 22 |
| 7.14 | Reinstatement | 22 |
| 7.15 | Disposition of PTO Upon Entering the Deferred Retirement Option Program | 22 |
| 7.16 | PTO, When Chargeable | 23 |
| 7.17 | Computation of PTO Charges | 23 |
| 7.18 | Transfer/Promotion From Classified to Unclassified Position | 23 |
| **SECTION 8** | | **24** |
| **MANAGEMENT OPTIONS BENEFITS (MOB) – UNCLASSIFIED EMPLOYEES** | | **24** |
| 8.1 | Purpose of MOB | 24 |
| 8.2 | General Information | 24 |
| 8.3 | Senior Executive Service (SES) | 24 |
| 8.4 | Professional, Technical, and Confidential Service (PTC) | 24 |
| **SECTION 9** | | **26** |
| **LEAVE DONATION AND LEAVE INCENTIVE PLANS** | | **26** |
| 9.1 | Annual or Paid Time Off (PTO) Leave Donation Plan | 26 |
| 9.2 | Sick Leave Pool | 26 |
| 9.3 | Annual Leave Incentive Plan – (Classified Employees) | 27 |
| **LEAVES OF ABSENCE** | | **29** |
| 10.1 | Leaves of Absence With Pay | 29 |
| 10.2 | Leaves of Absence Without Pay | 30 |
| 10.3 | Compulsory Medical Leave | 30 |
| 10.4 | Leave of Absence for Military Duty | 31 |
| **SECTION 11** | | **33** |
| **OCCUPATIONAL ILLNESS AND INJURIES** | | **33** |
| 11.1 | Disability | 33 |
| 11.2 | Disability Determinations | 33 |
| 11.3 | Medical and Physical Re-examination | 33 |
| 11.4 | Compensation During Disability | 33 |
| 11.5 | FMLA Coordination | 34 |
| **SECTION 12** | | **35** |
| **TERMINAL LEAVE** | | **35** |
| 12.1 | Purpose | 35 |
| 12.2 | Eligibility | 35 |
| 12.3 | Procedures | 35 |
| 12.4 | Leave Period | 36 |
| 12.5 | Exceptions | 36 |
| 12.6 | Administration | 37 |
| **SECTION 13** | | **38** |
| **APPLICATIONS, EXAMINATIONS AND VETERANS' PREFERENCE** | | **38** |
| 13.1 | Applications | 38 |
| 13.2 | Disqualifications of Applicants | 38 |
| 13.3 | Disposition of Applications | 39 |
| 13.4 | Examinations | 39 |

13.5    Postponement or Cancellation of Examination ........................................ 39
13.6    Rating of Examinations ........................................................................... 40
13.7    Notice of Examination Results ................................................................. 40
13.8    Veterans' Preference .............................................................................. 41
**SECTION 14** ............................................................................................................. **42**
**JOB ANNOUCEMENTS, REFERRAL LIST, INTERVIEW GUIDELINES AND SELECTION ... 42**
14.1    Employment and Staffing ........................................................................ 42
14.2    Competitive Procedures .......................................................................... 43
14.3    Non-competitive Procedures .................................................................... 43
14.4    Referral Lists Established by Human Resources Department ................... 43
14.5    Termination of Open Continuous Referral Lists ....................................... 44
14.6    Use of Related Referral Lists ................................................................... 44
14.7    Removal of Names ................................................................................... 44
14.8    Interview Guidelines ................................................................................ 44
14.9    Selection from the Referral List ............................................................... 45
14.10   Processing the Selection ......................................................................... 45
14.11   Expiring Requisitions ............................................................................... 46
**SECTION 15** ............................................................................................................. **47**
**PROBATIONARY PERIOD – CLASSIFIED EMPLOYEES** ........................................... **47**
15.1    Initial Probationary Period ....................................................................... 47
15.2    Extension of Probationary Period ............................................................ 47
15.3    Promotional Probationary Period ............................................................. 47
15.4    Transferring during Initial Probationary Period ........................................ 48
**SECTION 16** ............................................................................................................. **49**
**EXTRAORDINARY APPOINTMENTS** ....................................................................... **49**
16.1    Temporary Appointment .......................................................................... 49
16.2    Term Appointment ................................................................................... 49
16.3    Intermittent Appointment ......................................................................... 49
16.4    Emergency Appointment .......................................................................... 50
16.5    Grant-funded Appointment ...................................................................... 50
16.6    Student Appointment ............................................................................... 51
16.7    Public Safety Relief Positions .................................................................. 52
16.8    Contract Employees ................................................................................ 52
**SECTION 17** ............................................................................................................. **53**
**TRANSFERS** ............................................................................................................ **53**
17.1    Transfers .................................................................................................. 53
17.2    Effect of Transfer ..................................................................................... 53
**SECTION 18** ............................................................................................................. **54**
**THE SALARY ADMINISTRATION PROGRAM** .......................................................... **54**
18.1    Purpose of the Salary Administration Plan .............................................. 54
18.2    Composition of the Compensation Plan ................................................... 54
18.3    Adoption of the Pay Plan ......................................................................... 54
18.4    Components of the Compensation Plan .................................................... 54
18.5    Market Adjustment ................................................................................... 55
18.6    Pay for Performance ................................................................................ 55
18.7    Exceptional Circumstances Pay Adjustment ............................................ 55
18.8    Reinstatement .......................................................................................... 56
18.9    Rules for Administering Salary Adjustments – Classified and Unclassified .............. 56
18.10   Career Ladder Positions .......................................................................... 57
18.11   Non-competitive Promotions .................................................................... 57
18.12   Promotional/Reclassification Increase ..................................................... 57
18.13   Temporary Promotion .............................................................................. 57
18.14   Professional Certification Pay .................................................................. 58
18.15   Pay for Exemplary Performance .............................................................. 58

18.16    Overtime Work, Overtime Pay, and Compensatory Time ........................................ 58
18.17    Standby Assignment/Callback ................................................................................. 59
18.18    Shift Differential ..................................................................................................... 59
18.19    Incentive Retirement Pay ....................................................................................... 61
18.20    Deferred Retirement Option Program (DROP) ....................................................... 61
18.21    Longevity Pay – Frozen 09/30/09 .......................................................................... 62
18.22    Starting Rates ........................................................................................................ 62
**SECTION 19 ............................................................................................................................... 63**
**PERFORMANCE MANAGEMENT ............................................................................................. 63**
19.1    Performance Management ....................................................................................... 63
19.2    Evaluating Performance .......................................................................................... 63
19.3    Quarterly Reviews ................................................................................................... 63
19.4    Promotion, Transfer, or Demotion ........................................................................... 63
19.5    When Anniversary Dates Change ............................................................................ 64
19.6    Rebuttal .................................................................................................................. 64
19.7    Appeals ................................................................................................................... 64
19.8    Official Records ...................................................................................................... 64
**SECTION 20 ............................................................................................................................... 65**
**DEMOTIONS .............................................................................................................................. 65**
20.1    Involuntary Demotions ............................................................................................. 65
20.2    Voluntary Demotions ............................................................................................... 65
20.3    Pay Rate, Probationary Period, and Anniversary Dates .......................................... 65
20.4    Demotion of Promotional Employee Currently Serving a Probationary Period .......... 65
**SECTION 21 ............................................................................................................................... 67**
**LAYOFF/REDUCTION IN FORCE – CLASSIFIED EMPLOYEES ............................................. 67**
21.1    Layoff Notice ........................................................................................................... 67
21.2    Order of Reduction in Force .................................................................................... 67
21.3    Preference List ....................................................................................................... 68
21.4    Bridging of Service ................................................................................................. 68
21.5    Vacancy Notification ............................................................................................... 68
**SECTION 22 ............................................................................................................................... 69**
**SEPARATION FROM SERVICE ................................................................................................ 69**
22.1    Resignation ............................................................................................................ 69
22.2    Resignation in Good Standing ................................................................................. 69
22.3    Resignation in Bad Standing ................................................................................... 69
22.4    Resignation in Lieu of Disciplinary Action .............................................................. 69
22.5    Eligible for Rehire ................................................................................................... 70
22.6    Involuntary Separation ............................................................................................ 70
22.7    Retirement .............................................................................................................. 70
22.8    Layoff, Reduction-In-Force ...................................................................................... 70
22.9    Death of Employee .................................................................................................. 70
22.10   Exit Interviews ........................................................................................................ 70
**SECTION 23 ............................................................................................................................... 71**
**DISCIPLINE – CLASSIFIED EMPLOYEES ............................................................................... 71**
23.1    Purpose .................................................................................................................. 71
23.2    Types of Disciplinary Action .................................................................................... 71
23.3    Notice of Disciplinary Action (NODA) ...................................................................... 71
23.4    Service of Notice of Disciplinary Action on Employee .............................................. 71
23.5    Appeals\and/or Grievance ....................................................................................... 72
23.6    Collective Bargaining Agreements (CBA) ................................................................ 72
**SECTION 24 ............................................................................................................................... 73**
**GRIEVANCES – CLASSIFIED EMPLOYEES ............................................................................. 73**
24.1    Employee Rights ..................................................................................................... 73
24.2    Employee Duty ........................................................................................................ 73

**BCC - HUMAN RESOURCES POLICIES AND PROCEDURES**

| | | |
|---|---|---|
| 24.3 | Reasons | 73 |
| 24.4 | Eligibility | 73 |
| 24.5 | Process of Filling a Grievance | 73 |
| 24.6 | Resolution | 74 |
| 24.7 | Exceptions | 74 |
| **SECTION 25** | | **75** |
| **PERSONNEL FORMS, RECORDS AND REPORTS** | | **75** |
| **SECTION 26** | | **76** |
| **EMERGENCY MANPOWER PLAN** | | **76** |
| 26.1 | Purpose | 76 |
| 26.2 | Scope | 76 |
| 26.3 | Declaration of Support | 76 |
| 26.4 | Employee Categories | 76 |
| 26.5 | Pay Procedures | 78 |
| 26.6 | General Provisions | 78 |
| 26.7 | Responsibility | 78 |
| **SECTION 27** | | **80** |
| **ETHICS AND STANDARDS OF CONDUCT** | | **80** |
| 27.1 | Personal Interest in County Contract or Transaction | 80 |
| 27.2 | Disclosure or Use of Certain Information | 80 |
| 27.3 | Withholding of Information (Required Disclosure) | 80 |
| 27.4 | Public Property | 81 |
| 27.5 | Special Treatment | 81 |
| 27.6 | Payment of Debts | 81 |
| 27.7 | Gifts and Gratuities | 81 |
| 27.8 | Gift Reports | 82 |
| 27.9 | Outside Employment | 82 |
| 27.10 | Prohibited Investments | 83 |
| 27.11 | Miscellaneous Malfeasance or Misfeasance | 83 |
| 27.12 | Improper Use of Position | 84 |
| 27.13 | Converting County Property | 84 |
| 27.14 | Political Activity | 84 |
| 27.15 | Professional Services | 84 |
| 27.16 | Ethics Officer | 84 |
| 27.17 | Disclosure of Criminal Records Required | 85 |
| 27.18 | Prohibition Against Misuse of Code | 85 |
| 27.19 | Enforcement and Penalty | 85 |
| 27.20 | Training Administration and Records | 86 |
| 27.21 | Misuse of County Visa Purchase Card | 86 |
| 27.22 | Correcting the Misuse of Purchase Card | 86 |
| **SECTION 28** | | **88** |
| **ELECTIVE OFFICE OR POLITICAL ACTIVITY** | | **88** |
| **SECTION 29** | | **89** |
| **SEVERABILITY AND EFFECTIVE DATE** | | **89** |
| 29.1 | Severability | 89 |
| 29.2 | Adopted Date | 89 |
| 29.3 | History | 89 |

**BCC - HUMAN RESOURCES POLICIES AND PROCEDURES**

## SECTION 1

## DEFINITIONS

In these Policies and Procedures, words used in the masculine gender include the feminine and neuter genders, and words used in the neuter gender include the masculine and feminine genders.  The following words, terms, and phrases when used in these Policies and Procedures, shall have the meanings respectively ascribed to them in these Policies and Procedures unless the context plainly indicates a contrary meaning:

**Administrative Leave** - Paid leave not charged to annual leave, sick leave, PTO or MOB.

**Advancement** - A salary increase within an arranged schedule or established scale of pay for a class of positions, made without an examination.

**Allocation** - The act of assigning a position upon its initial creation to its appropriate class; also known as position "assignment" and "classification."

**Anniversary Date** - The employee's anniversary date as used for evaluation or merit and is that date one year from the effective date of his appointment, and/or any movement to another position in any regular full-time or part-time position.

**Appeal** - A request of a classified employee to review any appealable disciplinary action or violation of any policy covered by the Merit System of the Escambia County Merit System Protection Board.

**Applicant** - An individual who has completed and submitted an application for employment with the Escambia County Human Resources Department.

**Appointee** - An individual selected from a referral list in accordance with the Policies and Procedures.

**Board of County Commissioners (BCC)** - Five (5) elected County Commissioners and/or those department and employees under their authority.

**Break In Service** - A separation for any of the following reasons: leave of absence without pay over sixty (60) days, resignation, retirement, layoff, or dismissal.

**Department** - An organizational function composed of one or more groups of major operational units within a function, and which consists of an executive head reporting to a County administrator or the Board as reflected on an official organizational chart approved by the Board.

**Callback** - An off-duty employee called back to work due to emergency or other unforeseen circumstances.

**Career Ladder Positions** - Positions that are filled competitively at grades below the

supervisory level, and based on job performance and experience, incumbents are allowed to move up to these positions without competition.

**Citizens' Information Center (CIC)** – Citizens' call center with dedicated phone lines, which when activated, provides up-to-date information to citizens as they call in during times of emergency. The CIC is located in the Emergency Operations Center, staffed primarily by County employees assigned temporarily, and supervised by the Office of the County Administrator.

**Class or Class of Positions** - A group of positions established under these Policies and Procedures which are sufficiently similar in duties, responsibilities and authority to be given the same job title, the same minimum qualifications, the same qualifying examination, and the same salary range.

**Class Family** - The grouping of classes according to the general functional nature or character of duties performed.

**Class Specifications** - The description of each class of position that establishes a class title, characteristics of the class, examples of duties, knowledge, skills, abilities required, and minimum qualifications for the class.

**Classification** - A descriptive designation for a class and all positions of a class.

**Classification Plan** - The orderly and systematic arrangement of classes into series.

**Classified Employee** - An employee holding a position covered by the Escambia County Merit System.

**Classified Service** - All offices and positions of trust or employment in the service of Escambia County, except those placed in the unclassified service by the Board of County Commissioners.

**Classify** - The act of assigning a position to the appropriate class in accordance with its duties, responsibilities, and authority.

**Compensation** - The salary or wage rates for work performed.

**Compensation Plan** - The combination of the Classification Plan, the Pay Plan and the Salary Administration procedures.

**Compensatory Leave** - Time off from work in lieu of monetary payment.

**Competitive Job Vacancy** - Positions filled through a competitive process where candidates compete based on merit.  These positions may not be pre-selected.

**County Staging Area (CSA) –** Predetermined location(s) at which supplies arriving from out of town are accounted for pending movement to the various PODs.

**BCC - HUMAN RESOURCES POLICIES AND PROCEDURES**

**Days** - Calendar days, unless specifically defined as work days.

**Decision Band Method** – The formal evaluation method by which all jobs are evaluated into broad pay bands for salary administration purposes.

**Declared State of Emergency –** The actual period of time immediately preceding and/or during the "Emergency", as determined by the Escambia County BCC, the County Administrator, or designee, normally in conjunction with the State of Florida or federal authorities.

**Demotion - Involuntary** - An involuntary change of employment from a position of one class to a position of another class leading to a reduction in DBM and/or pay.

**Demotion - Voluntary** - A voluntary change of employment to a position in a class having a lower DBM and pay than the position previously held.  This action may not be appealed to the MSPB.

**Directed Reassignment** - Management directed reassignments to another position, to which qualified with no reduction in pay (involuntary); provided that the employee is qualified for the new position.

**Disciplinary Action** - Either letter of counseling, written reprimand, demotion, suspension, dismissal, resulting from misconduct or performance deficiencies of an employee.

**Division** - A major part of a department that has been divided for administrative reasons.

**Eligible** - A person who has successfully met all the requirements of a particular class.

**Emergency –** A condition which exists immediately proceeding, during, or following a situation which poses a threat to the health, safety and well-being of the citizens of Escambia County. This situation may be caused by man or by nature, and may be accidental or intentional. Special rules, regulations, and procedures may be placed in effect during this time. Other standing rules, regulations, and procedures may be temporarily suspended until the emergency expires.

**Emergency Appointment** - A temporary appointment, without competition, to meet unforeseen conditions or other situations requiring immediate staffing without delays.

**Emergency Critical (EC)** – **Key workers who work during the event** typically assigned to the Emergency Operations Center (EOC) upon activation, or other critical functions. The appropriate Department Director is responsible for duties of these employees.

**Emergency Essential (EE) –** Employees not normally required during the actual event. **They report within 24 hours of the event, or as directed.** Duties are normally in support of the divisions' post-event or recovery mission. The appropriate Department Director is responsible for duties of these employees.

**Emergency Operations Center (EOC) –** The central locations at which all participating emergency agencies are convened to best coordinate and manage necessary emergency activities. The EOC is located at the Department of Public Safety and is under the direction of the Department Director.

**Emergency Manpower Pool (EMP) –** Employees without a specific or immediate emergency assignment. They are temporarily reassigned from their department responsibilities and given duties related to recovery efforts. **They are required to report to their duty assignment within 48 hours of the event, or as directed.** Work assignments are directed by the Human Resources Director.

**Employee** - An individual who has been appointed to an approved position.

**Examination (or Exam) Plan** - The plan by which an applicant is evaluated for the necessary knowledge, skills, and abilities for a given class of position.

**Full-time Employee** - An employee who has been appointed to a regular position and works at least 30 hours per week.

**Grievance** - A document filed by an employee alleging violation(s) of these Policies and Procedures.

**Incumbent** - Same as "Employee."

**Layoff** - The involuntary termination of employment because of lack of funds or lack of work requiring a reduction in force and not to the discredit of the employee affected.

**Leave** - An approved type of absence from work as provided for by these Policies and Procedures.

**Longevity Pay** - Supplemental pay tied to length of service. (Frozen 09/30/09)

**Merit Pay Increase** - An increase in compensation that may be granted to a non-exempt employee for meritorious service.

**Merit System Protection Board -** A board designed to review and adjudicate appeals by classified employees of involuntary demotions, suspensions without pay, terminations, reductions in force involving reduction in pay or termination, and violations of Merit System principles.

**Original Appointment** - The first appointment of an individual through selection in accordance with these Policies and Procedures.

**Overtime -** Time worked by a non-exempt employee in excess of forty (40) hours in a seven (7) day work period as defined by the Fair Labor Standards Act.

**Part-time Employee** - An employee who has been appointed to a regular position and, works less than thirty (30) hours per week but at least twenty (20) hours per week.

**BCC - HUMAN RESOURCES POLICIES AND PROCEDURES**

**Pay Grade** - A DBM Rating and a salary range with a minimum, midpoint, and maximum pay bracket established to fairly and competitively compensate an employee for assigned work under the specific job classification.

**Pay Rate** - A specific dollar amount, expressed either as an annual rate, a monthly rate, a semi-monthly rate, a bi-weekly rate, or an hourly rate, that comprises each DBM as shown in the pay schedule.

**Pay Schedule** - A formal schedule of pay for all classes of work.  The schedule shall set forth as to each class the minimum (base) rates, midpoint (base) rates, and the maximum (base) rates of pay.  In addition, the pay plan may reflect the economic conditions of the area, the CPI, area wage surveys, and any difficulties experienced in recruitment.

**Point of Distribution (POD) –** Location(s) at which relief supplies such as food, water, and ice are made available to the general public.

**Position** - A set of duties and responsibilities that require the employment of an individual to accomplish.

**Position Description** - A written description of a set of duties and responsibilities assigned to a specific position.

**Probationary Employee** - A classified employee appointed to a regular position from an eligible referral list who has not completed his six (6) months' probationary period, or as may be defined in certain class specifications or collective bargaining units.

**Probationary Period** - The working test or trial period, beginning with a person's initial employment or promotion, generally six (6) months or as defined in certain class specifications, or collective bargaining units.

**Promotion** - Advancement from one class to another class having a higher DBM with increased duties, responsibilities, and pay.

**Public Notice** - An official announcement published in a local newspaper of general circulation which must meet notice requirements as prescribed by Florida Statutes.

**Public Record** - A record that the public shall have the right to inspect in a reasonable manner during regular business hours; any record that meets the requirements of Chapter 119, Florida Statutes.

**Qualifications** - The requirements of training and experience and other qualifications to be measured by an appropriate assessment tool.
> Basically Qualified (BQ) - meets minimum qualifications for a position.
> Highly Qualified (HQ) - meets or exceeds highly qualified criteria for a position.
> Not Qualified (NQ) - does not meet minimum qualifications for a position.

**Reallocation** - A change in the allocation of a vacant position by assigning the funding from one position to another.

**Reassignment** - A voluntary transfer to another position, for which the employee is qualified.

**Recall** - Employees who are laid off may be recalled within one year to the affected classes when those positions become available without further examination.

**Reclassification** - The change of the position's and the incumbent's classification due to a gradual and permanent change in the assigned duties and responsibilities.

**Red Circled –** When an employee's salary is frozen at the present rate due to the salary being over the maximum of the DBM pay range.

**Re-employment Priority List (RPL)** - A referral list that gives priority consideration for vacancies for employees affected by layoffs, rollbacks, and demotions.

**Referral List -** A list of applicants qualified for appointment to a position in any of the ways established by these Policies and Procedures.

**Regular Position** - Any established position that is established that is intended or which is likely to require the services of an incumbent without interruption for an unlimited period, subject to the provisions of these Policies and Procedures.

**Regular Status Employee** - An employee appointed under the provisions of these Policies and Procedures to a regular position and has thereby gained all rights and privileges provided by these Policies and Procedures.

**Reinstatement** - Former employees who voluntarily resign in good standing may be reinstated within twelve (12) months from the date of resignation without competition, or employees whose employment was interrupted by service in the Armed Forces shall be reinstated as prescribed by law.

**Resignation** - The voluntary separation from service made at the written request of the employee.

**Salary Adjustment** - An increase or decrease in salary.

**Seniority Date** - The beginning date of employment with the County.  This date may be adjusted to account for periods of layoff, leaves without pay over sixty (60) days, breaks in service, and transfers from other County agencies.

**Standby Assignment** - An assignment made by a Division Manager which shall require an employee to be available for work, in addition to the employee's regular workweek, on nights, weekends, and holidays, or at any other required time.

**Suspension** - An enforced leave of absence without pay (workdays or hours) for disciplinary purposes.

**Temporary Position** - Any established position that is intended or which is likely to require the services of an incumbent for a period of time not to exceed six (6) months.

**Transfer** - The movement of an employee from one position to another.

**Unauthorized Leave** (AWOL) - A type of absence from work, which is not approved and may subject the employee to disciplinary action.

**Unclassified Employee** - An at will employee who is not included in the Classified Service.

**Unclassified Position** - A position that is not included in the Classified Service.

**Vacancy** - A position that is not occupied.

**Workday** - The number of hours an employee is required to work per day.

**Workweek** – The number of hours an employee is required to work per week; the workweek is typically forty (40) hours per week.

## SECTION 2

## PURPOSE AND SERVICES

The purpose of this manual is to provide an orderly procedure for the uniform administration of the HR Policies and Procedures, pertaining to the organization, maintenance, modification and administration of the Classified Service and the Unclassified Service of the Escambia County Board of County Commissioners.

Areas pertaining strictly to the Classified Service are noted as such and areas pertaining strictly to the Unclassified Service are noted as such.

### 2.1    Classified Service

The Classified Service shall include all positions within the BCC covered by the Merit System unless specifically excluded from the Classified Service by BCC Policies.

### 2.2    Unclassified Service

The Unclassified Service shall include "at will" positions that are excluded from the Classified Service. These positions are usually exempt from the Fair Labor Standards Act (FLSA) and are generally management, professional, technical, or confidential staff positions involved in the determination and setting of public policy. Examples are: Senior Manager, Manager, Professional, Technical/Specialist, Key Staff, and Confidential Assistant.

The Unclassified Service is governed by Part 3 of the Administrative Code which includes the Appointment to the Unclassified Service, Administration of the Compensation and Classification Plan and Separation from the Unclassified Service.

The Human Resources Director is responsible for the implementation and maintenance of the Personnel System.

**BCC - HUMAN RESOURCES POLICIES AND PROCEDURES**

## SECTION 3

## CLASSIFICATION OF POSITIONS

**3.1   Class Specifications Defined**

Specifications for classes shall be defined as follows:

a.   Purpose and Effect.  Class specifications are descriptive and explanatory, but not restrictive except as to minimum requirements of training and experience. The language of the class specifications shall not be construed as restricting the authority of the Division Manager to assign related or incidental duties, or to assign, direct, supervise and control the work of employees.  Additional duties may be assigned, added, modified, or eliminated as required to accomplish the mission or for training purposes. Every job description shall contain, as the last essential duty, the phrase, "Other duties as assigned."

b.   Application.  In determining the class to which a position should be allocated, the class specification of each class shall be considered in its entirety and in relation to the specifications of other classes in the classification plan.

c.   Minimum Qualifications.  The statement of basic qualifications required shall be used as a guide in recruiting and selecting persons for examination and employment, for preparing examinations, and for use in determining the relative value of positions in a series with positions in other series.

**3.2   Preparation of the Classification Plan**

The Human Resources Director shall prepare a classification plan for all positions.

a.   The classification plan shall consist of a list of titles of the classes to which all positions are to be allocated and a written specification defining each position in the plan.

b.   The classification plan shall include: the position series, title, and DBM Rating, a position summary statement, the essential functions of positions of the class, minimum or desired qualifications, and any other pertinent material as the Human Resources Director may deem necessary or desirable.

c.   The classification plan shall be developed and maintained so that all positions which are substantially similar in duties, responsibilities, and authority are included within the same series; and so that the same salary range or DBM Rating may be applied with reasonable equity, under similar working conditions, to all positions in the same series.

d.   Trainee and career ladder classifications may be designated when it is deemed to be in the best interest of the BCC to do so in order to broaden points of entry into the **Classified Service**.

**BCC - HUMAN RESOURCES POLICIES AND PROCEDURES**

### 3.3    Approval of Plan

Upon its preparation or revision by the Human Resources Director, the classification plan shall be submitted to the County Administrator for approval. The Human Resources Director has the authority to classify positions and administer the plan.

### 3.4    Classification Plan Not a Part of These Policies and Procedures

Upon approval of the classification plan by the County Administrator, its provisions shall be observed in the handling of all personnel actions and activities, and shall be considered to be an administrative tool and not deemed to be part of these Policies and Procedures, except that the classification plan shall at all times be governed by these Policies and Procedures.

### 3.5    Official Copy

The Human Resources Director shall maintain the official copy of the classification plan that shall be open to public inspection at any time during business hours.

### 3.6    Allocation and Classification of New Positions

a.    When a new position is created and before the new position may be filled, the Bureau Chief shall submit documentation showing that establishment of such position is approved and budgeted and a PDQ (Position Description Questionnaire) or a comprehensive job description describing in detail the duties of such position.  The Human Resources Department shall initiate a review and job analysis of the suggested duties and qualification requirements and recommend an appropriate classification, whether new or existing, for approval by the Human Resources Director.

b.    Department Director may request, through the Human Resources Department, a reconsideration of the classification decision by the County Administrator.   The County Administrator has final authority in these reconsiderations.

### 3.7    Changes in the Classification of Positions

The Human Resources Director shall review the classification of an existing position due to changes in the duties and responsibilities, shall review every classification at least one (1) time every three (3) years, and shall review the classification due to the creation of a new series in which such position may be appropriately classified.  The Division Manager shall certify that all duties are correct as submitted. The Human Resources staff will notify the Division Manager and Department Director of the results. Upon obtaining approval from the Division Manager/ Department Director, the employee may request a study of his position by submitting a PDQ to Human Resources.

The County Administrator shall have final approval for appeals.

When justifiable conditions exist, e.g., reorganization, creating a significant change in the duties and responsibilities of a position to such a degree that the job class is no longer represented by the series title and/or grade of that position, the position may be reassigned to a different classification.

a. Reclassification - Reclassification is the change of an encumbered position's classification and is treated the same as a promotion and does not affect the anniversary date.

b. Reallocation - Reallocation is the reassignment of a vacant position from one class to another class, either existing or newly developed, based upon significant and immediate changes in the position's duties and responsibilities that is approved by the Human Resources Director.

**3.8    Abolishment of Positions**

Any position that remains unfilled by regular appointment may be abolished periodically based upon the recommendation of the Management and Budget Services Department Director and approval by the County Administrator.

**3.9    Classification Actions Requiring Additional Funding**

Any classification or reclassification action requires approval by the Division Manager and BCC Budget Manager regarding availability of funds.

3.10   **Submission of Reclassification**

See Section 18.12 for the process of submitting reclassifications.

## SECTION 4

## ATTENDANCE AND HOLIDAYS

**4.1    Attendance**

Employees are expected to be in attendance at their work in accordance with these Policies and Procedures except for approved holidays, and leaves.

**4.2    Attendance Records**

The Division Managers shall keep up-to-date attendance records of employees, which shall be subject to applicable public record laws of the State of Florida.

**4.3    Absence Without Leave (AWOL)**

The absence of an employee from duty, including an absence for a single day or part of a day, that is not authorized by a specific grant of leave under the provisions of these Policies and Procedures or the Federal Fair Labor Standards Act exemption shall be deemed to be an absence without leave.  Any such absence shall be without pay and may be cause for disciplinary action.  Three (3) or more consecutive days of absence without leave will be considered job abandonment and grounds for separation for cause.

**4.4    Holidays**

All employees shall have the holidays with pay each year based on the published Holiday Schedule.  Subject to the approval of the County Administrator, one holiday may be exchanged for another, and special holidays with pay may be granted provided the total number of holidays is kept equitable among all employees.

    a.    Non-Exempt Employees

       (1)    Any non-exempt employee who is required to perform work on any of these holidays shall be paid two (2.0) times their regular hourly rate for hours worked regardless of the number of hours worked during that workweek. Regular overtime procedures will apply for the workweek.

       (2)    Holidays that occur during a period of approved paid leave shall not be charged against an employee's leave record.

       (3)    Employees must be in paid status the workday before and the workday after the holiday in order to be paid for that holiday.

       (4)    Part-time employees who work a regularly established schedule of at east twenty (20) hours or more per week shall be paid for holidays

**BCC - HUMAN RESOURCES POLICIES AND PROCEDURES**

on the basis of the average number of hours worked per week divided by forty (40).

(5)    Employees shall not be paid for holidays that occur during a period of leave without pay (LWOP) or a suspension without pay.

(6)    Full-time employees working greater than an eight (8) hour day shall be granted a minimum of eight (8) hours of holiday pay.  Part-time employees shall receive pay for the number of hours normally scheduled per workday.

b.   Classified Exempt Employees

(1)    Classified Exempt employees required to perform work on a holiday, shall be paid at two (2.0) times their regular hourly rate for hours worked or receive another day off at the discretion of their department.

c.   Unclassified Employees

(1)    Unclassified employees required to perform work on a holiday shall receive another day off.

## SECTION 5

## ANNUAL LEAVE (AL) – CLASSIFIED EMPLOYEES

**5.1    Purpose and Accumulation of Annual Leave**

The primary purpose of annual leave is to enable each eligible employee to have an annual vacation and to return to work physically and mentally refreshed.  This leave must be requested by the employee and approved by the supervisor before the leave can be taken.

Annual leave shall not be credited in advance.  Accrual of annual leave begins on the date of regular employment and ends with the date of separation.  Leave accrual for fractions of a month shall be figured to the nearest day.  For the purpose of computing annual leave taken, only normal working days are to be counted as leave.

Annual leave is accumulated in accordance with the following schedule:

| | |
|---|---|
| Beginning date through the end of the 5th year | 8 hours per month |
| Beginning 6th year through end of 10th year | 10 hours per month |
| Beginning 11th year through end of 15th year | 12 hours per month |
| Beginning 16th year through end of 20th year | 14 hours per month |
| Beginning 21st year through end of 25th year | 15 hours per month |
| Beginning 26th year through end of employment | 16 hours per month |

All Regular or Term, Full-time Classified Employees of the BCC are eligible to earn annual leave. Part-time employees who work a regularly established schedule of at least twenty (20) hours or more per week shall accrue annual leave on a pro rata basis.  Employees that are converting from unclassified to classified must convert 100 hours of PTO to sick leave.

**5.2    Restrictions on Accumulation of Annual Leave**

An employee shall not accrue annual leave during a leave of absence without pay, a suspension without pay, or when the employee is otherwise in a non-pay status.

At the end of each calendar year annual leave will be reduced to (50) days (400 hours).  When extreme operational matters and/or emergencies occur and the employee had requested leave and the leave had been approved, an extension may be granted to use the leave at a later time.  The extension to use this approved leave shall be granted by the County Administrator.  Employees who are granted this extension shall have ninety (90) days from the date of approval by the County Administrator to take the leave or it will be forfeited.

**5.3    Annual Leave Advances Prohibited**

No employee shall be allowed to use annual leave that has not already been accrued.

**5.4    Annual Leave Records**

Annual leave accumulation and usage records for all employees shall be maintained by the division and shall be based upon the leave information submitted by the employees and authorized by the supervisors on each payroll. No annual leave shall be granted except on the basis of such leave records.

**5.5    Approval of Annual Leave Requests**

Requests for annual leave by the employee shall be made in accordance with current Policies and Procedures of the division.  Leave must be scheduled and approved by the appropriate supervisor in advance according to these Policies and Procedures.  Leave taken outside the guidelines of the scheduled annual leave is considered to be unscheduled leave and may result in a charge of absence without leave (AWOL), disciplinary action, and/or adversely affect an employee's performance review.  The determination of the Division Manager on the matter of scheduled annual leave shall be final.

New employees shall accrue annual leave as all other employees, but shall be permitted to use annual leave only after completion of ninety (90) days of employment.

**5.6    Annual Leave, When Chargeable**

Annual leave shall only be charged for absence upon a day which an employee would otherwise work and receive pay.

**5.7    Computation of Annual Leave Charges**

The employee shall charge absences from work to annual leave according to the actual number of leave hours used.

**5.8    Payment for Unused Annual Leave Upon Separation of Service or Death**

Upon separation from the County service, employees shall receive a lump sum payment for all accrued and unused annual leave up to a maximum of fifty (50) days (400 hours).  Such payment shall be made at the employee's regular rate of pay at the time of separation.

**5.9    Payment for Annual Leave**

Payment for annual leave shall be made on the employee's regular payday and advance payment for such leave shall be prohibited.

**5.10    Rate of Payment for Annual Leave Following Promotion or Demotion**

Employees using annual leave after the effective date of their promotion or demotion to a higher or lower job classification shall receive annual leave pay at the rate in effect at the time the leave is taken.

**5.11    Disposition of Annual Leave**

a.  Intra-transfer (divisions within the BCC) - When an employee transfers from one division to another division within the BCC, the employee's accumulated annual leave shall also be transferred.

b.  Inter-transfer (Other County agencies) - When a current employee transfers from another County agency the employee's accumulated annual leave not to exceed the maximum accumulation, may be transferred to the BCC, based on availability of funds.

**5.12    Disciplinary Actions**

Employees who are disciplined in accordance with these Policies and Procedures shall not be permitted to use annual leave in lieu of disciplinary action.

**5.13  Disposition of Annual Leave Upon Entering the Deferred Retirement Option Program (DROP)**

When an employee elects to participate in the DROP Program he must select one of the following options:

a.  Payment of annual leave hours not to exceed the current value of 400 hours.

b.  Payment of a portion of his annual leave hours at the current rate of pay when entering Drop and the balance of annual leave not to exceed 400 hours when leaving DROP.

c.  Payment of annual leave hours not to exceed the current value of 400 hours when leaving DROP.

An employee who is participating in DROP will continue to accrue Annual leave until separation of employment. The final payment will not be credited to the employee's retirement pension.

## SECTION 6

## SICK LEAVE (SL) - CLASSIFIED EMPLOYEES

**6.1     Purpose and Accumulation of Sick Leave**

Sick leave is not to be considered as a right to which an employee may use at his discretion, but is a privilege not to be abused.  Sick leave is not earned by working but is granted by the County as a benefit. The purpose of sick leave is to assist the employee during an illness or injury, and supervisors are urged to exercise strict control to prevent the abuse of sick leave.

Sick leave shall not be credited in advance.  Sick leave accrual begins on the date of regular employment and ends on the date of separation.  Leave accrual for fractions of a month shall be figured to the nearest day.  An employee shall not accrue sick leave during a leave of absence without pay, a suspension without pay, or when the employee is otherwise in a non-pay status.  For the purpose of computing sick leave taken, only normal working days are to be counted as leave.

Sick leave is accumulated at the rate of eight (8) hours per month.  There is no maximum accumulation for sick leave.

Part-time employees who work a regularly established schedule of at least twenty (20) hours or more per week shall accrue sick leave on a pro rata basis.

**6.2     Use of Sick Leave**

Accrued sick leave shall be granted for:

a.     Employee's personal illness or physical incapacity resulting from causes beyond the employee's control;

b.     Medical, dental, optical consultations, treatments, or professional psychological services;

c.     Enforced quarantine of the employee in accordance with community health regulations;

d.     Family Medical Leave Act (FMLA) qualifying absences in accordance with the FMLA policy of the BCC;

e.     Non-FMLA qualifying absences due to illness in the immediate family.  The BCC may require a physician's statement certifying the necessity of the employee's absence from work.  Immediate family shall mean spouse, child, parent, sister, brother, stepfather, stepmother, grandparent, or grandchildren of either the employee or the employee's spouse;

f.  Illness of any other person related to the employee or related to their spouse if such use is deemed by the BCC to be in the best interest of the BCC.   The BCC may require a physician's statement certifying the necessity of the employee's absence from work;

g.  New employees shall accrue sick leave at the same rate as all other employees, but shall be permitted to use sick leave only after completion of ninety (90) days of employment.

## 6.3   Sick Leave Responsibilities

The employee shall have the responsibility of promptly notifying and receiving approval from his immediate supervisor or other pre-designated official regarding any illness or disability in compliance with these Policies and Procedures.  For absences due to reasons not covered in the FMLA policy, the BCC may require proof of illness or disability of three (3) or more consecutive working days.  Use of sick leave on false claims of illness, injury, or exposure to contagious disease, or falsification of proof to justify such leave shall be cause for discipline up to and including separation of service.

## 6.4   Entitlement to Accumulated Sick Leave Upon Separation

All sick leave shall be forfeited upon separation except under the following conditions:

a.  Disability.   Refer to the sick leave provisions for disability retirement as defined in the FRS Employer Handbook.

b.  Retirement.  When an employee is separated from classified employment due to retirement (as defined by the FRS Employer Handbook), the employee shall be entitled to receive a lump sum payment for up to one-half (½) of the accumulated sick leave to his credit prior to the effective date of the retirement up to a maximum of 1,040 hours.

c.  Position Abolishment/Layoff.  When a classified employee is separated due to the abolishment of his position or layoff, he shall be entitled to pay for one-half (½) of the accumulated sick leave to his credit prior to his separation after a fifteen (15) calendar day period has elapsed pending reinstatement. A maximum payment of 1,040 hours of sick leave may be made.

## 6.5   Disposition of Sick Leave

a.  Intra-transfer (divisions within the BCC) -  When an employee transfers from one division to another division within the BCC, the employee's accumulated sick leave shall also be transferred.

b.  Inter-transfer (Other County agencies) - When a current employee transfers from another County agency the employee's accumulated sick leave may be

transferred to the BCC, based on availability of funds.

## 6.6    Sick Leave Used for Bereavement (Funeral)

Any regular or probationary employee shall be permitted to use up to three (3) consecutive, full working days' sick leave to attend the funeral or memorial service in the event of the death of any person residing in the employee's household or any member of the employee's extended family.   Extended family shall mean spouse, child, parent, sister, sister-in-law, brother, brother-in-law, niece, nephew, stepfather, stepmother, uncle, aunt, grandparent, or grandchildren of either the employee or the employee's spouse.   The employee may be granted, at the discretion of the Division Manager, such time for funeral leave as may reasonably be required.  All such leave shall be from accrued sick leave.  If sick leave hours are inadequate or additional leave time is needed, the employee may use annual leave or leave without pay.

## SECTION 7

**PAID TIME OFF LEAVE (PTO) SUMMARY – UNCLASSIFIED EMPLOYEES**

### 7.1    Purpose and Accumulation of Paid Time Off (PTO)

The purpose of PTO is to establish a leave program that allows eligible BCC employees in the unclassified service to be paid for time off for any purpose deemed necessary.  PTO must be requested by the employee and approved by the supervisor before the leave can be taken.

PTO shall be earned based on the following schedule:

| | |
|---|---|
| Beginning date through the end of the 1st year | 12 hours per month |
| Beginning 2nd year through end of 5th year | 14 hours per month |
| Beginning 6th year through end of 10th year | 16 hours per month |
| Beginning 11th year through end of 15th year | 18 hours per month |
| Beginning 16th year through end of 20th year | 20 hours per month |
| Beginning 21st year through end of 25th year | 22 hours per month |
| Beginning 26th year through end of employment | 24 hours per month |

### 7.2    Eligibility

All regular or term, full-time unclassified employees of the BCC are eligible to earn PTO.   All regular, part-time unclassified employees who work a regularly established schedule of twenty (20) hours or more per week shall earn PTO leave on a pro rata basis.

### 7.3    Restrictions on Accumulation of Paid Time Off (PTO)

An employee shall not earn PTO leave during a leave of absence without pay, a suspension without pay, or when the employee is otherwise in a non-pay status.

At the end of each calendar year PTO will be reduced to 500 hours.  Any excess leave will be applied to an Extended Leave Bank (ELB).  Under no circumstances may an employee be paid for any PTO leave in excess of 500 hours.

### 7.4    Use of PTO and Extended Leave Bank (ELB)

Employees shall begin accruing PTO on the beginning date of employment, but shall not be permitted to use PTO until completion of ninety (90) days of employment. There is no cap or limitation on hours earned in an employee's ELB.

After the first year of employment, employees are required to use at least forty (40) hours of PTO leave per year.  PTO leave taken in each successive year will be based on the employee's beginning date of employment.  It is not required that the forty (40) hours be used consecutively.

An employee who has been absent from work for more than three (3) consecutive work days due to a medically certified illness or injury for the employee and/or a member of the employee's immediate family will be eligible to use time accrued in the ELB beginning on the 4th day.

## 7.5    PTO and the Family and Medical Leave Act (FMLA)

For any qualifying event under the Family and Medical Leave Act of 1993 that exceeds three (3) consecutive working days, the employee's earned PTO will be used for the first three (3) days' absence.  Beginning with the fourth day of the employee's absence, the employee shall be required to use accrued ELB.  When the employee's ELB has been exhausted, the remainder of the employee's earned PTO shall be used.

For any qualifying event under FMLA, an employee's PTO and ELB shall run concurrently with FMLA leave.

## 7.6    Bereavement (Funeral) Leave

An employee shall be permitted to use up to three (3) consecutive, full working day's ELB leave to attend the funeral or memorial service in the event of the death of any person residing in the employee's household or any member of the employee's extended family.  Under exceptional circumstances, an additional two (2) days of ELB may be granted.

## 7.7    Exhaustion of PTO Leave

When an employee's PTO leave has been exhausted, any absences from work due to a medically certified illness or injury will be taken as leave without pay (LWOP) for the first three (3) days and shall run concurrently with FMLA if the employee qualifies for FMLA leave.  For each consecutive, subsequent working day, the employee will be eligible to use time, if available, in his/her ELB.

## 7.8    Approval of PTO Leave Requests

An employee must request and receive approval of PTO leave in accordance with current Policies and Procedures of the employee's division.

## 7.9    PTO Advances Prohibited

No employee shall be allowed to use PTO that has not already been earned.

## 7.10   PTO Records

PTO accumulation and usage records for all employees shall be maintained by the employee's division.

**BCC - HUMAN RESOURCES POLICIES AND PROCEDURES**

**7.11   Scheduling of PTO**

The employee's Division Manager shall have the discretion to approve/disapprove and the responsibility to schedule the leave of the employee.

**7.12   Payment for Unused PTO or ELB Upon Separation of Service or Death**

Please refer to the Paid Time Off (PTO) Policy, Section II; C.33

**7.13   Leave Donation and Leave Incentive Plans**

a. Leave Donation - The rules that apply for annual leave donation for the classified employees will apply to unclassified employees except that PTO leave may be donated in lieu of annual leave.  Any leave received will be converted to ELB leave.

b. Sick Leave Pool - The rules that apply for participating in the sick leave pool for classified employees will apply to unclassified employees except that PTO or ELB leave may be contributed to the pool.  Hours received from the pool shall be transferred to the employee's ELB in lieu of sick leave.

c. PTO Incentive Plan - The rules that apply to annual leave being converted to cash payments in lieu of taking time off for the classified employees will apply to unclassified employees except that PTO leave only may be converted in lieu of annual leave to cash payments. This to be paid in the second pay period, in the month of November, contingent upon availability of funds.

**7.14   Reinstatement**

Employees who leave Escambia County employment and are then reinstated within one year will be eligible to count past years of service when applying this policy.

**7.15   Disposition of PTO Upon Entering the Deferred Retirement Option Program**

When an employee elects to participate in the DROP Program he must select one of the following options:

a. Payment of PTO leave hours not to exceed the current value of 500 hours.

b. Payment of a portion of his PTO leave hours at the current rate of pay when entering Drop and the balance of PTO leave not to exceed 500 hours when leaving DROP.

c. Payment of PTO leave hours not to exceed the current value of 500 hours when leaving DROP.

An employee who is participating in DROP will continue to accrue PTO/ELB leave until separation of employment. The final payment will not be credited to the employee's retirement pension.

## 7.16   PTO, When Chargeable

PTO shall only be charged for absence upon a day which an employee would otherwise work and receive pay.

## 7.17   Computation of PTO Charges

The employee shall charge absences from work to PTO according to the actual number of leave hours used in minimum of half-hour increments.

## 7.18   Transfer/Promotion From Classified to Unclassified Position

An employee that is either transferred or promoted to an unclassified position will have the option to convert 100 hours.

# SECTION 8

## MANAGEMENT OPTIONS BENEFITS (MOB) – UNCLASSIFIED EMPLOYEES

### 8.1   Purpose of MOB

Employees who are members of the Unclassified Service are considered "at will" employees and receive MOB. They do not receive longevity, overtime pay, or appeal rights to the Merit System Protection Board.

### 8.2   General Information

In addition to any other form of leave or excused absence, each employee in the unclassified service may take MOB leave in any fiscal year.

Unclassified personnel employed after April 1 of the fiscal year will not receive MOB until October 1 of the next fiscal year.

Approval for MOB leave must be given in advance in the same manner as other planned absences.

At the employee's option, up to forty hours of unused MOB remaining at the end of the fiscal year may be compensated by lump sum cash payment at the employee's usual pay rate, contingent on the availability of funds.

By the end of each fiscal year, any MOB leave that exceeds the maximum balance for the type of class (i.e., SES or PTC) will be lost.  MOB will be paid out at the time of separation.

### 8.3   Senior Executive Service (SES)

At the beginning of each fiscal year, SES employees receive 60 hours of MOB leave.

SES employees have the option to carry over, from one year to the next, up to 480 hours of MOB leave. This will be a separate category than Paid Time Off (PTO) leave carry over.

As a recruitment incentive for SES positions that may be hard to fill and/or to attract candidates with superior qualifications, incoming personnel may receive, on a one-time basis, up to 40 hours of administrative leave and/or 40 hours of ELB. This will be based upon recommendation by the Human Resources Director and approval by the County Administrator.

### 8.4   Professional, Technical, and Confidential Service (PTC)

At the beginning of the fiscal year, PTC employees receive 40 hours of MOB.

**BCC - HUMAN RESOURCES POLICIES AND PROCEDURES**

PTC employees have the option to carry over, from one year to the next, up to 250 hours of MOB leave.  This will be a separate category than Paid Time Off (PTO) leave carry over.

MOB leave may be used upon receipt with the approval of the Division Manager, or whoever may be responsible for approving requested time off from work.

**BCC - HUMAN RESOURCES POLICIES AND PROCEDURES**

## SECTION 9

## LEAVE DONATION AND LEAVE INCENTIVE PLANS

The BCC has developed the following leave programs for regular or term full-time County employees who are eligible to earn leave benefits:

**9.1    Annual or Paid Time Off (PTO) Leave Donation Plan**

This plan allows annual leave or PTO to be donated directly to individuals.  An employee shall be eligible to receive donated leave for his serious illness or that of an immediate family member as defined in Section 6 after all leave has been exhausted.

a.    Annual or PTO leave may be donated to any employee who is eligible to earn leave benefits, and who has been employed by the Board of County Commissioners for at least six (6) months.

b.    An employee may donate annual or PTO leave only.

c.    Donation of leave is strictly voluntary.

d.    Donated annual or PTO leave shall be deducted from the donating employee's leave account and shall be credited to the receiving employee's sick leave or ELB account.

e.    A minimum annual or PTO leave balance of 160 hours must be maintained after the leave is donated.  An employee may donate from one (1) to forty (40) hours per fiscal year.

f.    An employee may receive a maximum 480 hours of annual or PTO leave within a five (5) year period.  The five (5) year period will be based on a "rolling twelve (12) month" calendar calculated from the initial approval.

**9.2    Sick Leave Pool**

This plan allows participants to contribute sick leave or PTO leave to a pool to be disbursed to any participating employee who has a catastrophic illness, injury, or accident.

a.    Participation in the sick leave pool is voluntary on the part of employees.

b.    Any regular or term full-time employee who is eligible to earn leave benefits shall be eligible for participation in the sick leave pool after one (1) year of employment with the Board of County Commissioners, provided such employee has a sick leave or PTO balance of one hundred (100) hours.

c.    Any sick or PTO leave contributed to the sick leave pool shall be removed

## BCC - HUMAN RESOURCES POLICIES AND PROCEDURES

from the accumulated sick or PTO leave balance of the employee contributing such leave.

d.  Participating employees shall initially donate twelve (12) hours of sick or PTO leave to the sick leave pool.  After the initial contribution that an employee makes upon electing to participate, no further contributions shall be required except as may be necessary to replenish the pool.  Any such further contribution shall be equally required of all employees participating in the pool.  When the balance of the Sick Leave Pool falls below twenty (20) percent of the total members' contributions (number of members times 12 hours), each member will be required to contribute six (6) hours of sick or PTO leave from his or her official sick leave record (not to exceed twelve (12) hours in any one fiscal year).

e.  A participating employee shall not be eligible to use sick leave from the pool until all of his sick, annual, PTO, MOB, ELB and compensatory leave has been depleted, unless otherwise agreed to in a collective bargaining agreement.  Any member can draw up to a maximum of 240 hours of sick leave from the pool.

f.  A participating employee who chooses to no longer participate in the sick leave pool shall not be eligible to withdraw any sick leave already contributed to the pool.

g.  Alleged abuse of the use of the sick leave pool shall be investigated and, on a finding of wrongdoing, the employee shall repay all the sick leave pool hours drawn from the sick leave pool and may be subject to disciplinary action.  Procedures adopted for the administration of this program shall provide for the investigation of the use of sick leave utilized by the participating employee in the sick leave pool.

## 9.3    Annual Leave Incentive Plan – (Classified Employees)

This program allows annual leave to be converted to cash payments in lieu of taking time off.

a.  Any eligible employee may request to sell his annual leave.

b.  Annual leave sale by any eligible employee is strictly voluntary.

c.  Once sold, annual leave shall be permanently deducted from the requesting employee's leave balance.

d.  The minimum annual leave balance that must remain after the leave is sold is 240 hours.

e.  An employee may sell a minimum of eight (8) hours and a maximum of forty (40) hours of annual leave per fiscal year.

**BCC - HUMAN RESOURCES POLICIES AND PROCEDURES**

f.   This program shall not be used in conjunction with retirement leave payouts to exceed the limits of 400 hours of annual leave.

g.   The payout of any annual leave shall be contingent upon availability of funds and the BCC must approve the payout plan on an annual basis.

## SECTION 10

## LEAVES OF ABSENCE

**10.1   Leaves of Absence With Pay**

a.   Jury Duty and Witness Duty.  A type of paid leave provided to the employee when performing jury duty or when subpoenaed to appear before a court, public body, or commission in connection with County business.  Such leave shall not be charged against the employee's accumulated leave.  Any additional compensation an employee may receive will be retained by the employee.

b.   Special Meetings and Examinations.  A type of paid time granted to the employee to attend professional or technical institutes or conferences, or such other meetings as may contribute to the effectiveness of service to the Board of County Commissioners upon return to duty.  Time off with pay shall also be granted to an employee for the purpose of taking examinations and interviews for a position within the Board of County Commissioners.  Such leave shall not be charged against the employee's accumulated leave.

c.   Training and Education.  A type of paid time granted to the employee in order to secure special educational training directly appropriate to the employee's position, to visit other governmental agencies, or in the approved manner to achieve systematic improvement in the knowledge or skills required in the performance of individual or division work.

d.   Excused Absence/Administrative Leave.  A type of paid time used in limited situations due to emergencies, inclement weather, facility utility outage, to participate in County sponsored training and activities, i.e., wellness classes; County sponsored civic activities, and for the purpose of conducting an investigation into allegations of impropriety on the part of the employee (suspensions with pay), and at other times.  Administrative leave may also be used for classified recruitment incentive. Division Managers may approve up to four (4) hours of excused absence leave.   Department Director may approve up to eight (8) hours total for the event and up to three (3) days for witness duty for non-personal business.

e.   Days of Mourning.  Days of mourning declared by the President, Governor, or Chairman of the Board of County Commissioners shall also be observed by the employees as an excused absence leave day off with pay, i.e., employees who are required to work will receive another excused absence leave day off.   Such leave shall not be charged against the employee's accumulated leave.

f.   Emergency Leave. A type of paid leave for national, state, or local emergencies as declared by the appropriate authority.

## 10.2    Leaves of Absence Without Pay

Employees must exhaust any comp-time before requesting Leave Without Pay (LWOP).

a.    Medical Leave.  An employee may request additional medical leave from the Division Manager and submit the approved request along with medical documentation to the Human Resources Director for approval, with final approval by the County Administrator. The Division Manager or Human Resources Department may require the employee to submit additional medical documentation concerning his condition either before granting the initial request for leave or during the course of the leave.

b.    Other Leave Without Pay.  Employees may be approved for leave without pay (LWOP) for up to a maximum of six (6) months for special circumstances and reasons considered to be in the best interest of the County.  The request must be in writing and submitted to the Division Manager and the Human Resources Department, with final approval by the County Administrator.

(1)    Short Periods.  Division Managers may grant up to forty (40) hours of leave without pay per fiscal year.  Employees are not required to exhaust leave prior to requesting LWOP.

(2)    Extended Periods.  The employee must have exhausted all other leave in order to qualify.  Requests for leave without pay in excess of forty (40) hours must be processed by submitting a Personnel Action Form (PAF) through the Human Resources Director for review and recommendation to the County Administrator for final approval.

## 10.3    Compulsory Medical Leave

a.    The County may place an employee on compulsory medical leave if the employee's physical or mental condition poses a significant risk to the health or safety of the employee or the employee's co-workers.

b.    In order to place an employee on compulsory medical leave, the County shall require the employee to submit to a physical examination by a physician designated by the County Administrator.  The physician's report shall address the nature, duration, and severity of the risk, the probability that the potential injury will actually occur, and whether or not reasonable modifications of policies, practices, or procedures will mitigate the risk.

c.    Prior to placing the employee on compulsory medical leave, the County's Human Resources Department shall discuss possible accommodations with the employee and the employee's supervisor, Division Manager, and Department Director.  The Human Resources Department shall document any discussed accommodations, then shall immediately notify the employee in writing of the placement of the employee on compulsory medical leave.

The employee shall be placed on administrative leave on the day he is released from duty, thereafter on any paid leave as appropriate for the remainder of time until placed on compulsory medical leave.

d.   After the Human Resources Department receives the physician's report and discusses possible accommodations, the Human Resources Department shall request the County Administrator to approve compulsory medical leave for a period of not more than ninety (90) days.

## 10.4   Leave of Absence for Military Duty

a.   Military Reserve and National Guard Training Leave:

(1)   Employees, other than temporary employees, whose position has an expected duration of less than six (6) months, who are reserve commissioned officers (including warrant officers) or reserve enlisted personnel in the United States Armed Forces or National Guard are entitled to leave for any period during which they have been ordered to active or inactive duty training.  Leave with pay shall be granted up to a total of seventeen (17) working days, whether continuous or intermittent, during the calendar year.  Additional days may be authorized by the State of Florida.

(2)   Absences greater than seventeen (17) working days, whether continuous or intermittent, shall be granted without pay, unless the affected employee elects to utilize accrued leave.  Such leave shall not result in any loss of time for efficiency rating purposes.  During the period of time the employee is in a paid leave status, he shall accumulate all benefits normally granted.

(3)   All such leave shall be considered creditable towards the accumulation of accrued leave.

b.   Florida National Guard Leave:

(1)   Employees who are members of the Florida National Guard shall be granted leave during periods in which they are ordered to active service by the Governor, under Chapter 250, Florida Statutes.

(2)   All compensation and benefits will be administered by County ordinances, state statutes and the Uniformed Services Employment and Reemployment Rights Act (USERRA).

c.   Military Reservist Leave:

(1)   Employees who are members of any of the uniformed services as defined in USERRA shall be granted leave during periods in which the President orders them to active service.

      (2)   All compensation and benefits will be administered by County ordinances, state statutes, and the Uniformed Services Employment and Reemployment Rights Act (USERRA).

  d.   Leave for Other Military Service:

      (1)   All leave, compensation, and benefits for employees who are drafted or volunteer for initial active military service in the United States Armed Forces or National Guard shall be administered by County ordinances, state statutes, and USERRA.

      (2)   Upon separation from the military service, the employee shall be eligible to return to the former position held or a different position in the same class.  However, the County may require the employee to submit to a medical examination to determine the employee's fitness to perform the essential duties of the position to which the employee may be returning. Based upon such medical findings, the employee may be placed in another class with duties he is able to perform and which is the nearest approximation to the position held prior to military service.

## SECTION 11

## OCCUPATIONAL ILLNESS AND INJURIES

**11.1   Disability**

Any employee in the classified service who sustains an employment-related injury or disability shall be entitled to benefits provided by Chapter 440 - Worker's Compensation, Florida Statutes.

**11.2   Disability Determinations**

Determinations of the existence and compensability of a disability shall be made in accordance with Chapter 440, Florida Statutes.   This Law provides that the employer is responsible for furnishing employees who have incurred employment-related injuries or disabilities with such remedial treatment, care, and attendance under the direction and supervision of a qualified physician, surgeon, or other recognized practitioner.

**11.3   Medical and Physical Re-examination**

At any time, the Division Manager may request that a disabled employee be re-examined in regard to restrictions placed on the injured employee.   Such request shall be directed to the Risk Manager who will inform the assigned adjuster.

**11.4   Compensation During Disability**

a.   Any employee who sustains a compensable injury within his/her duties and is unable to work as a result of that injury, if eligible, may request supplemental payments that, when added to Workers' Compensation payments, equal the employee's full pay. While on this leave due to an injury/illness, any supplemental payments are charged against accumulated leave. Use of accumulated leave is applied in the following order: Classified Employees – comp time, sick leave, and then annual leave. Unclassified Employees – comp time (non-exempt Unclassified Employees), PTO or MOB, then ELB after 3 consecutive days.

b.   Employees are always paid regular pay for their entire regularly scheduled shift for the day of the injury.

c.   When the County offers light/temporary duty placement to an employee that is within the restrictions imposed by the treating physician, the employee does not have the option to refuse this placement.

d.   An employee shall continue to accrue paid leave while receiving workers' compensation indemnity benefits on a basis pro-rated to that amount of paid leave currently being used; however, no employee shall continue to accrue leave after such amounts standing to his/her credit have been exhausted.

**BCC - HUMAN RESOURCES POLICIES AND PROCEDURES**

### 11.5    FMLA Coordination

For coordination of occupational illnesses and injuries related to FMLA, refer to the FMLA Policy.

## SECTION 12

## TERMINAL LEAVE

### 12.1 Purpose

The Escambia County Board of County Commissioners recognizes that its employees may request to use a period of accrued leave prior to retirement from employment with the County. Terminal leave is defined as "any paid leave of absence extending over a fixed period when such leave terminates on the effective date of the employee's retirement from employment with Escambia County." Approved leave will include Management Option Benefits, PTO, and annual leave only. No sick leave or extended leave bank hours will be approved. The Board recognizes that terminal leave is beneficial because it provides one mechanism for reallocating positions and resources as may be necessary for the effective and efficient delivery of County services.

### 12.2 Eligibility

Only full-time, regular employees are eligible for terminal leave. Employees requesting terminal leave may either be classified or unclassified.

### 12.3 Procedures

To request terminal leave, the employee shall submit a voluntary, written request to retire from County employment and shall specify a future date for separation of employment with the County. Employees under the Florida Pension Plan must have submitted retirement paperwork through the Human Resources Department. The employee must make the request no less than 30 days from the requested commencing terminal leave date.

Terminal leave is not a fixed or guaranteed benefit. The employee's request must initially be submitted to and approved by the employee's Department Director. If the Department Director approves the request for terminal leave, the Department Director shall forward the request to the Human Resources Director for concurrence. If both the Department Director and the Human Resources Director concur with the request, the Human Resources Director shall forward the request to the County Administrator for approval. A request for terminal leave shall only be considered granted if approved by the Department Director, the Human Resources Director, and the County Administrator.

As a condition of receiving terminal leave, the employee shall agree, in writing, to the conditions of the leave, and shall waive all claims arising out of his or her employment. The employee shall also waive any claim to future employment with the County.

The County Administrator or the County Attorney may receive terminal leave under this policy if the terminal leave is approved by a majority vote of the Board of

County Commissioners.  The approval of the Human Resources Director or any Department Director shall not be necessary under this subsection.  If the County Administrator or the County Attorney is granted terminal leave, he or she shall comply with all other guidelines established by this policy.

## 12.4   Leave Period

Terminal leave may be granted until either the employee's separation date or a period not to exceed six months, whichever occurs first.  The employee's separation date includes any retirement dates established by the rules and regulations of the Florida Retirement System, Chapter 121, Florida Statutes.  The employee may not receive any terminal leave after the employee's retirement date.

a.  Terminal leave is not a separate form of paid leave.  The employee must **first use any comp time, then any** accrued paid leave (annual, PTO, MOB) during the terminal leave period.

b.  The employee shall retain eligibility for benefits that he or she would be eligible for as a regular employee in a full-time status.

c.  While on terminal leave, an employee shall remain an employee of his or her department, and shall be subject to all policies of the County.  The employee shall not be required to perform duties or work of any kind while on terminal leave unless the employee is called for work pursuant to the County's Emergency Manpower Pool policy.

d.  At the end of terminal leave, the employee shall receive any and all leave payouts as he or she may be entitled to under County policies.

## 12.5   Exceptions

Legitimate grounds for denying a request for terminal leave shall include, but not be limited to, the following:

a.  The employee is on sick/ELB leave and is awaiting approval of disability retirement.

b.  The employee is being separated from employment due to a reduction-in-force.

c.  The employee is participating in another exit program with the County.

d.  Granting the request for terminal leave would interfere with critical operational requirements of the County.

**BCC - HUMAN RESOURCES POLICIES AND PROCEDURES**

## 12.6   Administration

The Human Resources Director shall be responsible for administration of this terminal leave and shall insure that the employee complies with the requirements and guidelines.

## SECTION 13

## APPLICATIONS, EXAMINATIONS AND VETERANS' PREFERENCE

The Human Resources Director is the delegated authority to recruit, screen, and develop official candidate referral lists and make official job offers.

### 13.1   Applications

No person shall be appointed to or admitted to an examination for any class of position until the applicant has completed and filed an application with the Human Resources Department. The online or paper application shall be accompanied by such documents and exhibits as may be required. Paper applications must be received and date stamped in Human Resources or postmarked by the closing date in the job announcement to be considered.

a.  No application shall be accepted after the closing date specified in the job announcement.

b.  Applicants for open continuous positions must update their application every 180 days to maintain an active status.

### 13.2   Disqualifications of Applicants

The Human Resources Department shall have the right to disqualify an applicant for reasons which include, but are not limited to, the following:

a.  Failure to meet the minimum qualifications stated in the job vacancy announcement;

b.  Failure to address Supplemental Questions/Knowledge, Skills and Abilities (KSA's)/Supplemental Questions in the job announcement;

c.  Intentional false statement of any material fact or the practice, or attempted practice of any deception or fraud in the preparation or submission of the application or related documents;

d.  Previous dismissal in bad standing from any position of the BCC;

e.  Conviction of a crime, the nature of which may have an adverse effect on the performance of the duties of the position sought;

f.  Obtaining privileged information about, or participation in, the administration of the examination process;

g.  Age that is under the age of majority, as recognized by relevant child labor laws such as the Federal Fair Labor Standards Act of 1938, except where

special exemptions to those laws permit;

h.   Applicant not in the area of consideration;

i.   Application submitted or postmarked after the closing date;

j.   Failure to date and sign the paper application; and

k.   Failure to meet the requirements of the Tobacco Free Hiring Policy.

## 13.3   Disposition of Applications

All employment applications and related documents shall be retained as specified by Chapter 119, Florida Statutes.   Divisions shall have access to review applications or copies of applications of persons whose names are certified for selection and are on the official referral list provided by Human Resources.

## 13.4   Examinations

All methods of tests or examinations shall be practical, fair, job-related and constructed to measure the relevant success of an applicant for the class of position for which he is competing. Examinations are considered confidential testing material.

Three (3) classes of tests or examinations are authorized:

a.   Entrance examinations are opened to all competitors who meet the requirements of the job specifications and other requirements as specified in the job announcement.

b.   Promotional examinations are opened to classified employees who meet the minimum qualifications established for the position sought.   It shall be considered a promotion when an employee advances from one class to another class with increased duties and responsibilities and for which a higher pay grade is assigned.

c.   Knowledge, Skills and Abilities (KSA) Rating Exam - The Human Resources Department will consult with subject matter experts (SME's) with input from the selecting official to develop any specialized experience, certifications, and three to five KSA's used for screening applications for a Highly Qualified (HQ) group. Human Resources will develop a confidential scoring system directly related to the level of attainment of each KSA.

## 13.5   Postponement or Cancellation of Examination

Examinations shall be held on dates that are posted in public announcements unless the Human Resources Department reschedules, postpones, or cancels an examination because of reasons that may include, but are not limited to, the

following:

a.    An inadequate number of applicants;

b.    The non-attendance of special examiners;

c.    A change in personnel requirements;

d.    Natural disasters or emergencies.

When time permits, applicants shall be notified of any postponement or cancellation of examination.

## 13.6    Rating of Examinations

Confidential Rating Exam

a.  Applications will be rated eligible based on the basic qualifications (BQ) of the job announcement. A Highly Qualified (HQ) rating will be based on the applicants documented response to the job posting supplemental questions/knowledge, skills and abilities (KSA's) developed for the subject class of the position.  The confidential rating exam shall be the standard of measure that will be applied as equitably and fairly as possible to all applicants.

The confidential rating exam will not be modified to accommodate attempts to obtain a specific job for any particular applicant unless such modification is construed as a reasonable accommodation required and defined by applicable federal or state law. Any modification must be approved by HR as a bona-fide occupational qualification.

b.  After consideration by the Human Resources analyst of all the available information pertinent to the rating exam, applicants may be grouped into different levels: not qualified (NQ), basically qualified (BQ) and highly qualified (HQ).  NQ, BQ, and HQ ratings are not grievable or appealable.

c.  Upon consultation with a division, the Human Resources Department may prepare the rating exam allowing special consideration for training, certifications, educational accomplishments, etc.

d.  Open Continuous normally will not be rated for HQ. However, the Division Manager may establish KSA's with assistance from Human Resources to define HQ candidates from the Basically Qualified referral list.

## 13.7    Notice of Examination Results

Rating and exam results may be obtained by contacting the Human Resources Department.

## 13.8   Veterans' Preference

In accordance with state and federal guidelines, preference is given to eligible veterans and eligible spouses of veterans as defined in Chapter 295, Florida Statutes.  In order for applicants to claim veterans' preference, the documentation required by law shall be provided to the County at the time of application. Qualified applicants receiving Veterans' Preference will be indicated as having such preference on the referral list.

## SECTION 14

## JOB ANNOUCEMENTS, REFERRAL LIST, INTERVIEW GUIDELINES AND SELECTION

### 14.1  Employment and Staffing

In order to attract and retain the highest caliber workforce available, it is the policy of Escambia County to recruit and fill vacant positions based on merit.  Normally, job vacancies will be announced for competitive applications internally within the Board of County Commissioners (BCC) prior to consideration of any outside candidates.   The rating and ranking system for job applicants will be tied to bona fide occupational qualifications of the positions being filled.  Job candidates will be rated and ranked and appropriately referred to the selecting official based on qualifications of the positions.   Selecting officials have the discretion to fill vacancies based on competitive or non-competitive procedures.  Requests to fill all vacancies require submittal of an approved requisition in Automated Applicant Supply File (NeoGov). Job Vacancy Announcements will be posted internally a minimum of five (5) working days.

a.   Internal Job Announcements (within the BCC) - Job postings will indicate employee eligibility and area of consideration.  Areas of consideration will normally be in the Escambia County commuting area.  Typically, these positions will be advertised for up to two (2) weeks and will be exclusive to BCC employees and outside applicants will not be accepted.  Contract and Volunteers are considered to be outside applicants. Normally merit promotion announcements are opened at designated times to current Board of County Commissioners employees. The Human Resources Department may extend the area of consideration to other agencies and governmental entities. Employees currently serving their initial or promotional probationary period will not be considered. (Exception to the promotional probationary period is when the promotional opportunity is within the applicant's current division). If a broader applicant base is needed, an external job announcement may be utilized.

b.   External Job Announcements – Job postings which are open to all applicants and may follow an internal announcement. When approved by the HR Manager Director, internal and external announcements may be posted simultaneously.

c.   Open/Continuous Job Announcements – These announcements are for positions that typically require frequent recruitment actions.  These announcements are open to all applicants and are advertised on a continuous basis, with no closing date. When recruitment needs change, as determined by the Human Resources Department, these announcements may be closed.

d.   Other External Job Announcements – Job announcements which are advertised externally for a period up to 30 days following an internal

recruitment which has not produced a selection. In some cases, the internal posting period may be waived by the County Administrator.

## 14.2   Competitive Procedures

This is the process by which applicants compete for positions based on merit. The Human Resources Department will help assure such positions are announced both internally and externally, as appropriate, in order to communicate competitive job vacancies to potential candidates.

## 14.3   Non-competitive Procedures

While the substantial majority of job vacancies meet the criteria for posting, there are a few circumstances that do not warrant advertisement of positions. The following is the listing of special staffing situations that, with the recommendation of the Division Manager (where appropriate) and concurrence of the Human Resources Director, may be exempted from the competitive job posting process. Examples are:

a.   Voluntary Transfers

b.   Management-Directed Reassignments

c.   Reorganizations

d.   Reductions in Force

e.   Reclassifications

f.   Non-competitive Internal

## 14.4   Referral Lists Established by Human Resources Department

Depending on requirements, several types of Referral Lists may be established by the Human Resources Department. Referred candidates receiving Veterans' Preference will be notated on applicable referral lists.

Re-employment referral lists are comprised of the names of eligible former employees who seek to be reappointed. Inclusions of names on re-employment referral lists are limited to persons who have achieved regular status and are on layoff status because of a reduction-in-force. Re-employment referral lists shall remain in force for a period of one (1) year from the effective date of layoff.

Open Continuous referral lists are maintained, as required, for defined classes of positions. Such referral lists shall contain the names of those persons who have successfully completed prescribed requirements, and who are considered basically qualified for appointment in the class for which the examination was held. Only candidates on the referral list can be selected. Open continuous referral lists

are current at the close of the business date of receipt of approved requisition in Human Resources with all rated applicants.   An Open Continuous referral list expires after ninety (90) days. When all candidates have been rejected or there is a need for more highly qualified candidates, the division may request a supplemental list.

Job referral lists are established by Human Resources following the rating and ranking of the candidates who applied during the posting period.  No person shall publish or make known the final ranking status of names on a referral list prior to the date of the referral list's official announcement.   An open Job referral list expires after 180 days. The Division Manager may request a thirty (30) day extension of the referral list with approval of the Human Resources Director.

## 14.5   Termination of Open Continuous Referral Lists

In the event that there have been significant changes in the minimum qualifications, the Human Resources Department will rescind the existing referral list, send out notifications and create a new announcement.

## 14.6   Use of Related Referral Lists

The Human Resources Department shall have the right to submit a referral list for which the minimum qualifications are comparable to or higher than those required for the class of positions of the new referral list.

## 14.7   Removal of Names

The Human Resources Department shall have the right to remove the names of eligible applicants from referral lists for reasons which include, but are not limited to, the following:

a.   Any cause provided under "Disqualification of Applicants" under these Policies and Procedures;

b.   No call or no show to a division for an interview when properly notified;

c.   Failure to respond in a timely manner;

d.   Reached expiration date of application

e.   Failure to report for drug test within the 24-hour window when requested.

## 14.8   Interview Guidelines

The selecting official may review the applications and make a selection without interviewing any of the candidates.   If the selecting official elects to interview candidates, those with Veterans' Preference must be interviewed. The selecting official may establish a rating or interview panel.

**BCC - HUMAN RESOURCES POLICIES AND PROCEDURES**

a.   Rating Panel

The rating panel will review the candidates without the selecting official. Panels that make recommendations to the selecting official may require public notice under the Sunshine Law.

b.   Interview Panel

(1)   The selecting official may establish an interview panel to assist him or her with the interview process.

(2)   The selecting official must actively participate with the Interview Panel in the evaluation process.

(3)   If the selecting official asks the Interview Panel to make a ranked or "best qualified" recommendation, public notice under the Sunshine Law may be required.

Additional interview Guidelines may be found in the Staffing Toolkit.

## 14.9   Selection from the Referral List

Selection of candidates will be processed in accordance to the following guidelines:

a.   Selecting officials have the right to select any candidate from a referral list. They also have the right to non-select all of the candidates.

b.   Pre-selection of a candidate in a competitive job referral process is prohibited.

c.   Selection of Basically Qualified (BQ) over Highly Qualified (HQ) will require specific justification tied directly to the bona fide occupational qualifications of the position and must be approved by the Human Resources Director.

d.   Non-selection from any referral list is not a grievable or appealable action.

## 14.10   Processing the Selection

a.   The selected candidate is designated on the referral list to the Human Resources Department.

b.   Only the Human Resources Department is authorized to make a Conditional Job Offer to the candidate.

c.   The Human Resources Director shall have approval authority for starting salaries falling within the first quartile of the appropriate salary range.  The

**BCC - HUMAN RESOURCES POLICIES AND PROCEDURES**

County Administrator must approve salaries above the first quartile.

d.   The Human Resources Department shall deliver a Conditional Job Offer to the selected candidate.

## 14.11  Expiring Requisitions

Typically, the requisition remains open until the position is filled. If a requisition is over 90 days and falls into a new fiscal year, the requisition will expire.

## SECTION 15

## PROBATIONARY PERIOD – CLASSIFIED EMPLOYEES

Employees covered by a bargaining agreement shall be subject to any probationary period provision of that agreement.

**15.1   Initial Probationary Period**

    a.   The first six (6) months of service in a position to which an employee has been appointed under the provisions of these Policies and Procedures shall constitute the initial probationary period.

    b.   The Division Manager may request the Human Resources Director to approve up to a three (3) month extension of the probationary period by providing written justification.

    c.   The Division Manager shall provide a written performance evaluation of the employee to the Human Resources Director prior to the end of the probationary period.

    d.   An employee in a term or relief position may apply for any position without having to complete a probationary period.

    e.   An employee may be separated from the classified service during the initial probationary period, and shall not have the right of appeal to the Merit System Protection Board.

**15.2   Extension of Probationary Period**

    a.   Any probationary period of an employee shall be extended by the length of any leave of absence in excess of one (1) week during the probationary period.

    b.   Employees working in classes that require certifications, licenses, etc., shall remain in probationary status until the required certifications, licenses, etc., have been obtained.

**15.3   Promotional Probationary Period**

    a.   If promoted, the employee shall begin a ninety (90) day promotional probationary period. Employees may not apply for other job opportunities outside the division while serving a promotional probationary period.

    b.   If an employee in regular status has been promoted but fails to successfully complete the probationary period, the division shall submit written documentation to justify demoting the employee to the position previously held if the position is vacant.  If the position is not vacant, the individual will be offered another vacant position equal to or lower in pay for which he is

**BCC - HUMAN RESOURCES POLICIES AND PROCEDURES**

qualified. If there are no vacant positions, the employee is to be offered the first vacant position equal to or lower in pay grade for which he qualifies when such position becomes available. For a period limited to one (1) year, employees are not to be hired or promoted to applicable vacant positions until the demoted employee, who must have been in good standing with a satisfactory performance evaluation prior to his promotion, is offered a vacant position within the division to which they promoted. The rate of pay in the new position shall be the same rate of pay in the former position prior to the original promotion; provided, however that the pay may not exceed the maximum of the pay range for the new position.

**15.4 Transferring during Initial Probationary Period**

If the employee is in an initial probationary status transferring to an identical class and has completed at least ninety (90) days, he will finish out the initial probationary period. If the employee has completed less than 90 days, a new probationary period will begin.

## SECTION 16

## EXTRAORDINARY APPOINTMENTS

### 16.1   Temporary Appointment

Temporary appointments shall be utilized to replace regular employees who are temporarily absent from their duties or to provide extra assistance for short periods of time.  Such appointments shall be made from a referral list.  The Division Manager may make a temporary appointment through any means necessary to prevent a work stoppage or slowdown of work that is considered critical to the operations of the County.  The temporary appointee shall file a County application with the Human Resources Department. The duration of the temporary appointment shall be limited to six (6) months.

The acceptance or refusal of a temporary appointment shall not affect an applicant's eligibility for a regular appointment.  Any person so appointed shall be compensated at the appropriate rate for the classification to which the temporary position belongs.  Upon recommendation by the Division Manager and with the approval of the Human Resources Director, a temporary appointment may be compensated above the minimum of the pay grade.  No other rights or benefits shall accrue to such person other than state mandates with the exception of holiday pay.  Temporary appointees shall not achieve regular status. Time served in temporary status shall not be applied to regular status.

In order to be considered for regular employment, a temporary appointee must update his application in the Human Resources Department.

### 16.2   Term Appointment

Term appointments are "at will" employees and shall be utilized by the divisions of the County to provide extra assistance for a period of six (6) months to three (3) years. Term appointments shall be made from a referral list.

Term appointments receive all benefits except MSPB and Bargaining Unit rights. Leave may be accrued and used as provided in these Policies and Procedures. Time served in term status shall not be applied to regular County status. The time served in term status will be credited to FRS.

### 16.3   Intermittent Appointment

Intermittent appointments shall be placed in established positions.  Such appointment shall be made for a special project or need of a temporary or transitory nature.  An intermittent appointee shall be called in as needed on a weekly or monthly basis.  There are no rights or benefits accrued other than those required by federal or state laws.  Intermittent appointees shall not achieve regular status. Time served in intermittent status shall not be applied to regular status. Upon recommendation by a Division Manager and with the approval of the Human

Resources Director, an intermittent appointment may be compensated above the minimum of the pay grade.

## 16.4  Emergency Appointment

An emergency as used herein means an unforeseen condition that is likely to cause loss of life or damage to public property such as riots, hurricanes, tornadoes, floods or other disasters, or situations that require the employment of additional personnel without delay.  The filling of normal vacancies or replacement of regular personnel shall not be classified as an emergency.

When an emergency arises which requires the immediate services of one or more persons and it is not possible to immediately secure such persons from an appropriate referral list, and based on prior approval of the County Administrator, the Division Manager may appoint such person(s) without regard to other provisions of these Policies and Procedures governing appointments.  Such appointments shall be limited to the period of the emergency and shall not entitle the appointee to any rights or benefits under the provisions these Policies and Procedures.

The Human Resources Department shall be immediately advised of every appointment made under the provisions of these Policies and Procedures.

## 16.5  Grant-funded Appointment

Grant-funded appointments are defined as appointments to temporary positions created and funded under federal, state or other grant agreements.  Persons appointed under this procedure may also be participants of programs designed to benefit unemployed or underemployed persons.  Administrative staff positions of the grant program shall be employed through regular application and referral list procedures and may also be designated as grant-funded appointments.  Persons who are physically or mentally challenged may also be appointed under this procedure by special agreements or grants arranged through state or federal vocational rehabilitation agencies.   Any person receiving a grant-funded appointment shall be informed by the Department Director as to the terms and conditions of the appointment, the grant, and/or agreements relating to the appointment.  The employment of such persons shall be terminated either upon expiration of the grant or as planned in any other form of agreement.  There are no layoff rights.

All benefits and pay are subject to the availability of funds as provided for in the grant agreement.

a.  No rate of pay shall be higher than rates paid to employees similarly employed, unless otherwise specified in the grant.

b.  Leaves may be accrued and taken if provided for within the grant agreement but not in excess of that which is provided for under these Policies and

Procedures.

c.   Holidays shall be the same as provided in these Policies and Procedures.

d.   All other benefits shall be those set forth in the grant or the special agreements in compliance with applicable laws and regulations governing such.

e.   Position creation, classification or reclassification, and DBM assignments may be accomplished in order to accommodate special grants or agreements made through federal and state vocational agencies in conjunction with the efforts to carry out vocational rehabilitation programs for challenged persons.

f.   Transition from a grant-funded appointment to a regular appointment may be accomplished by any of the following:

(1)   After completion of one year of continuous service, persons employed in this capacity may take promotional exams and be graded as other regular employees;

(2)   Any persons employed under this procedure may take any entrance exam that is open on a competitive basis to the general public;

(3)   Based upon demonstration of satisfactory performance as required by the class, without being placed on a referral list, individuals certified as vocational rehabilitation trainees may be automatically progressed to a position at the completion of the training period stipulated in the grant agreement.

## 16.6   Student Appointment

A student is defined as an employee who is currently enrolled as a full-time or part-time student or certifies intent to enroll the next term in an accredited secondary school, college, vocational school or university.  Employment shall be limited to 1400 hours in any twelve (12) month period starting with the student's beginning date of employment.  No other rights or benefits shall accrue to such person while serving in a student appointment.

The Division Manager may appoint a student without processing through the Human Resources Department when the position is unpaid. Paid Student positions are posted and applicants are evaluated for minimum qualifications by the Human Resources Department. The Human Resources Department will prepare and deliver the conditional job offer to the selected candidate.

Division Managers are responsible for providing orientation and rules of conduct to all students. All County student appointments must have a County-issued ID badge. Upon request of the Human Resources Department, students shall submit documentation of student status to be eligible for continued employment.

**BCC - HUMAN RESOURCES POLICIES AND PROCEDURES**

---

**16.7   Public Safety Relief Positions**

Public Safety Relief positions are defined as positions that are established by the Board of County Commissioners and classified by the Human Resources Department and are assigned to the Department of Public Safety. Public Safety relief employees must meet and maintain training and certification requirements for the position held. The incumbent employees in such relief positions must submit monthly availability schedules and are required to work each month.

**16.8   Contract Employees**

Upon determining the need for assistance, the Division Manager shall submit a Request for Temporary Employment Service form to the Human Resources Department. The position will be filled following procedures outlined in the Temporary and Term Employee Contract Procedures

**BCC - HUMAN RESOURCES POLICIES AND PROCEDURES**

---

**SECTION 17**

**TRANSFERS**

**17.1   Transfers**

A transfer is the movement of an employee from one position to another position in the same DBM within the Board of County Commissioners

Transfers shall be processed as follows:

a.   A personnel action form shall be prepared by the receiving department, forwarded to the releasing department for proper signature, and then forwarded to the Human Resources Department for processing.

b.   If the employee is transferring to an identical job classification and is in his initial probationary status, he shall complete the remainder of the probationary period in the new position. If the remainder of the probationary period is less than 90 days, the employee shall serve at least 90 days of probation in the new position. For all transfers, a 90-day performance probationary period shall be required.

c.   When an employee moves between different job classifications, he must meet the minimum qualifications of the new job class.  If the employee is in his initial probationary status, he shall complete the remainder of the probationary period. If the remainder of the probationary period is less than 90 days, the employee shall serve at least 90 days of probation in the new position. For all transfers, a 90-day performance probationary period shall be required.

**17.2   Effect of Transfer**

A transfer will not change the employee's DBM, pay rate, or regular status. A new anniversary date shall be established on the effective date of the transfer.

## SECTION 18

## THE SALARY ADMINISTRATION PROGRAM

### 18.1   Purpose of the Salary Administration Plan

The salary administration program is the formal system for classifying positions and compensating employees in the Board of County Commissioners (BCC). It is divided into two (2) distinct plans.

a.   The classification plan is the categorization of job positions, duties and qualifications; and

b.   The compensation plan provides a salary structure, and the components are detailed in this section.

The Human Resources Department is responsible for development, maintenance, and administration of the Compensation and Classification Programs, subject to the County Administrator's approval. Notwithstanding any ordinance, policy, or administrative code provision to the contrary, all provisions of this section shall also apply to employees in the Escambia County unclassified service.

### 18.2   Composition of the Compensation Plan

The compensation plan is designed as a fair and equitable method for payment of employees. The plan shall establish a basic salary schedule, as recommended by the County Administrator and approved by the BCC.  The salary ranges shall include a minimum, a first quartile, a midpoint, a third quartile and a maximum rate of pay for all positions by Decision Band Method (DBM) Rating.  In addition to the basic salary schedule, the compensation plan consists of components, including but not limited to market and pay for performance increases, promotional increases, and exceptional circumstance adjustments

### 18.3   Adoption of the Pay Plan

After necessary study, inquiry and consultation, the Human Resources staff shall prepare the compensation plan for the various classes of work and present the compensation plan with recommendation for its implementation to the County Administrator for approval and adoption by the Board of County Commissioners. On an annual basis, not later than the second quarter of the fiscal year, the Human Resources Department will review, analyze, and make recommendations as appropriate for adjustments to the class and pay schedule based upon internal and external equity studies.

### 18.4   Components of the Compensation Plan

The compensation for each employee is the product of the salary structure and the components of the compensation plan that shall be used to adjust employee

compensation.  Each component of the compensation plan is subject to funding approval on an annual basis by the Board of County Commissioners as part of the budget.

## 18.5   Market Adjustment

The annual market adjustment is the component that is used to insure that the salary structure is adjusted equally across the board to reflect changes in the cost of living as indicated by the most recent previous year's average percentage Consumer Price Index data published by the Bureau of Labor Statistics. The market adjustment analysis will be completed by the second quarter of the fiscal year and recommended by the Human Resources Department to the County Administrator for approval by the BCC. When applicable and when funds are available, a separate percentage or fixed increase may also be applied across the board to salaries of all eligible employees. Salaries set by County ordinance would be an exception to this provision. When an employee's salary exceeds the maximum of the assigned pay range, the employee's salary will be "red circled" and not be increased until the current salary falls within the assigned pay range. However, those "red-circled" employees at, or above, the maximum of their assigned pay range may receive, subject to budget approval, a onetime lump sum payment each fiscal year equivalent to the market adjustment they would have been entitled to receive. At the discretion of the County Administrator, a lump-sum payment may be awarded at any time in lieu of any base pay increase due to a Consumer Price Index adjustment, cost-of-living adjustment, pay scale change, merit/performance awards, and/or pay equity adjustments.

## 18.6   Pay for Performance

The pay for performance (merit) component is designed to recognize job performance.  The decision to provide a performance increase is contingent upon an overall performance appraisal rating and funding each year.  Increases may be provided to employees whose performance is evaluated as meeting or exceeding standards. The overall review score is related to a predetermined percentage increase that will be determined annually by the Human Resources Department and approved by the County Administrator.  Employees at the maximum of their salary range may be provided a one-time lump sum payment per fiscal year for performance, if merited and approved by the County Administrator.  By the fourth fiscal quarter, the Human Resources Department will recommend to the County Administrator the performance increase guidelines for the next year.

## 18.7   Exceptional Circumstances Pay Adjustment

When it is asserted by a Department Director that the salaries of any and/or all employees classified in the same classification require adjustment, the Division Manager shall provide justification to the Human Resources Department. Requests for exceptional circumstances adjustments and the required justification will be compared to internal equity and/or salary survey data and reviewed for compliance with this policy.  The Human Resources Director will forward the

request along with a recommendation to the County Administrator for consideration and/or approval.

**18.8   Reinstatement**

The Human Resources Director will determine the rate of pay for reinstated employees.  The two types of reinstatement are:

a.   **Military Service Reinstatements.**  Employees who leave to enter the active service of the Armed Forces of the United States and who are subsequently reinstated to positions previously held shall be eligible for all entitlements as prescribed by USERRA regulations.

b.   **Regular Reinstatements.**  Former employees who voluntarily resign in good standing and return within thirty (30) days from the date of resignation may be reinstated to their former position at their former rate of pay.  Their leave balances may be restored upon repayment to the County for any leave payout received upon their resignation.  Former employees who voluntarily resign in good standing and return within twelve (12) months from the date of resignation will be reinstated at their former rate of pay at the time of resignation, or the minimum of the range, or at a rate between the minimum and the employee's former rate. The Human Resources Director shall approve rates up to the first quartile and the County Administrator shall approve rates above the first quartile. The reinstatement shall be:

(1)   To the same or lower classification for which they are qualified without being on the referral list;

(2)   To a higher classification for which they are qualified and on the referral list;

(3)   With a new seniority date for longevity/leave accrual purposes, adjusted by the number of days of the absence;

(4)   With a new anniversary date, effective the date of return.

**18.9   Rules for Administering Salary Adjustments – Classified and Unclassified**

a.   Any pay for performance salary increase associated with an interim performance review shall be prorated for the time period included above. The review date is then changed to the first day of the pay cycle following the promotion, transfer or demotion.

b.   All retroactive pay adjustments of any type that exceed sixty (60) days must be justified in writing by the Bureau Chief, submitted to the Human Resources Director for review and forwarded for approval by the County Administrator.

## 18.10  Career Ladder Positions

Some designated positions serve as  career ladder (multi-level) positions, and at the discretion of the Division Manager and the approval of the Human Resources Director, may be filled at any level from a competitive referral list (from trainee to journeyman).

## 18.11  Non-competitive Promotions

After serving six months and upon completion of training and/or experience requirements contained in the trainee series specifications, employees designated as trainees may progress, contingent upon satisfactory performance and recommendation of the Division Manager to the next level of the career ladder without further competition.  A new anniversary date will begin on the date of promotion.

## 18.12  Promotional/Reclassification Increase

a.    When an employee is promoted or reclassified, the employee's salary will increase five percent (5%) or to the minimum salary of the new DBM pay grade, whichever is higher. The increased salary shall not exceed the maximum of the DBM. All employees are eligible for promotion. Any division employee currently under a Performance Improvement Plan (PIP) should be recommended by their Division Manager to the receiving division. Promotions shall establish a new anniversary date.

b.    Reclassification does not establish a new anniversary date or probationary date.

c.    When an employee is promoted to the unclassified service (based upon a higher level of job duties and responsibilities), the employee's salary including longevity shall increase five percent (5%) or to the minimum salary of the new DBM, whichever is higher. Promotion shall establish a new anniversary date.

d.    All reclassification requests will be submitted in March to the Human Resources Department during the budget process for determination.  If approved, they will become effective on or after the beginning of the new fiscal year.

## 18.13  Temporary Promotion

When justifiable conditions exist and an employee is temporarily required to serve in and accept the responsibility for work in a higher position, such employee shall receive the minimum rate of the DBM or a minimum of five percent (5%) increase above the present pay rate, whichever is higher. The increase shall take effect on the 15th day.  The period of temporary promotion shall be up to one year and may only be extended by the County Administrator.  At the conclusion of the

appointment, the employee's pay shall revert to the authorized rate established for the regular position. Any such temporary increase granted shall not affect the employee's eligibility for normal increases. A Personnel Action Form (PAF) along with written justification shall be forwarded to the Human Resources Department for processing.

## 18.14 Professional Certification Pay

The County Administrator may establish a Salary Incentive Pay Program for its employees who receive a professional designation as defined in the Florida Administrative Code, or any higher designation recommended by the Human Resources Department. The incentive pay may be paid in addition to any other authorized pay.  The County Administrator may, after consideration of budget funds available, grant this incentive pay to all incumbents in the pre-approved position that utilizes the certification.

To qualify for the incentive payment, an employee must meet the following requirements:

a. Be a full-time regular employee;

b. Obtain and provide documentation from the certifying authority showing currency of an active professional designation;

c. Be employed in a position designated by the County Administrator as a position where the office will benefit from the employment of a professionally certified employee;

d. The professional designation must be over and above any minimum education and training requirements of the job classification to which the employee is appointed.

## 18.15 Pay for Exemplary Performance

Nothing herein shall preclude the County Administrator from formally adopting a pay program recognizing an exemplary act of performance of any employee.  Any exemplary awards of pay made to an employee may be in addition to base pay and/or a lump sum payment.

## 18.16 Overtime Work, Overtime Pay, and Compensatory Time

The BCC has adopted policies and procedures that meet the legal requirements of the Fair Labor Standards Act (FLSA).  Should a FLSA non-exempt employee be required to actually work more than forty (40) hours in any one week (or other hour limitations or work periods as defined in the FLSA), all such time shall be considered overtime work. Overtime hours shall be paid at one and one-half times the regular rate of pay. As a public employer, the BCC may award compensatory time off at one and one-half hours for each hour of overtime worked.  Any award of

compensatory time shall be in lieu of overtime pay.

a. Classified service salaried employees certified as meeting pertinent Administrative, Executive, or Professional Fair Labor Standards Act tests are excluded from the overtime provisions of the Fair Labor Standards Act. However, the County Administrator has approved compensatory time benefits to such salaried employees at one hour of compensatory time for each hour of overtime hour worked.  If these employees have exhausted their available accumulated leave time, they may not have their salary reduced for absences of less than a day in duration.

b. Separated employees covered by the Fair Labor Standards Act shall receive a lump sum payment for all unused compensatory time at a rate which is not less than that employee's average regular rate during the last three (3) years of employment, or that employee's final regular rate whichever is higher. Employees who are exempted from the FLSA shall not receive compensatory lump sum payments at separation.  Classified employees with compensatory time earned while in a covered status shall receive a lump sum payment at separation.

c. Annually, at the end of the fiscal year, all compensatory time accumulated during the year must be paid to the employee.

d. Division Managers will be responsible for maintaining records for comp time accrual and usage. Comp time usage should be requested and approved in the same manner as other leave plans.

## 18.17  Standby Assignment/Callback

a. When it shall be in the best interest of the County, classified employees may be required to work standby assignments and be called back to work after a regular shift has been completed in accordance with policies and procedures adopted by the Division Manager and approved by the County Administrator.

b. A classified service, off-duty employee called back to work shall receive a minimum credit of two (2) hours and will be compensated on a portal-to-portal basis with such pay subject to the provisions for overtime compensation.  The County Administrator shall have the discretion to assign an hourly supplement or allow for guaranteed work hours in excess of the two-hour minimum.

## 18.18  Shift Differential

The shift differential program enables the Division Managers to request a shift differential payment for classified employees working a regularly scheduled shift with hours normally considered less desirable and physically more demanding. The shift differential program is contingent on funding.

The payment of shift differential is based upon the normal schedule of hours that

the employee is assigned to work and when those hours occur during the 24-hour period of a day. It is not intended for casual changes in the work schedule. Approval for adding classifications to those eligible to receive shift differential payment will only be given when the schedule will be in place for 30 days or more. Positions that are exempt from overtime as defined by the Fair Labor Standards Act will not be eligible for shift differential. If a position is only scheduled during the evening or night shift, and is not normally scheduled for a comparable day shift, the position may not be eligible for shift payment since the timing of the scheduled hours is taken into consideration in setting the hourly rate of pay for the classification.

a. 8-Hour Schedule:

The *evening shift* begins at 3:00 p.m. and ends at 11:00 p.m. Employees who are regularly scheduled to work the evening shift will receive a differential payment of $.75 per hour for all hours worked. Paid time away from work, such as holidays, sick leave and annual leave, will not be subject to payment of shift differential.

The *night shift* begins at 11:00 p.m. and ends at 7:00 a.m. Employees who are regularly scheduled to work the night shift will receive a differential of $1.00 per hour for all hours worked. Paid time away from work will not be subject to payment of shift differential. Employees who work a regular schedule of 8 hours other than 3:00 p.m. - 11:00 p.m. or 11:00 p.m. - 7:00 a.m. will be paid based upon the shift that includes the majority of their scheduled hours. If the majority of their scheduled hours fall within the day shift there is no payment of shift differential due. If the majority of their scheduled hours fall between 3:00 p.m. - 11:00 p.m. they shall receive $.75 per hour for all hours worked. If the majority of their hours fall between 11:00 p.m. - 7:00 a.m. they shall receive $1.00 per hour for all hours worked.

b. 10-Hour Schedule:

Those employees who work a regularly scheduled 10-hour workday shall receive shift differential based upon the shift where the majority of their scheduled hours occur. If the majority of their scheduled hours are between 3:00 p.m.-11:00 p.m. (evening shift) they receive $.75 per hour for all hours worked. If the majority of their scheduled hours fall between 11:00 p.m. and 7:00 a.m. (night shift) they receive $1.00 for all hours worked. If the majority of their hours are during the day shift they will not be subject to payment of shift differential.

c. 12-Hour Schedule:

Those employees who are regularly scheduled for 12 hour workdays will receive shift differential of $1.00 per hour for all hours worked during the second shift of the day. For example, employees working a regular shift of 6:00 p.m. to 6:00 a.m. will receive $1.00 per hour for all hours worked.

Employees working 6:00 a.m. to 6:00 p.m. will not be subject to payment of shift differential.

d.   Temporary Schedules:

Temporary changes in an eligible employee's schedule up to one week shall have no effect upon the way the employee is paid. Temporary changes of one week or more shall be considered a schedule change and the employee shall receive the appropriate shift differential of the "new" shift.

e.   Split Schedules:

Employees who regularly work a split schedule will be considered for approval of shift differential payment based upon the circumstances of each individual case.

f.   Public Safety Employees:

Employees are assigned various hours to work that routinely involves night and weekend shifts. Those employees scheduled for a 12-hour shift will receive shift differential payment of $1.00 per hour for all hours worked anytime on Saturday and Sunday. If the majority of their shift falls between the hours of 6:00 p.m. - 6 a.m., they will receive $1.00 per hour. Relief employees will receive the same shift differential as full-time employees. Any paid time away from work, such as holidays, sick leave, annual leave, will not be subject to payment of shift differential.

g.   Approvals:

Once the Division Manager determines the need, a letter requesting the payment of shift differential to an additional class/job shall be completed and forwarded to the Human Resources Department. The Human Resources Department shall forward the request with a recommendation to the County Administrator for approval.

## 18.19  Incentive Retirement Pay

Nothing in these Policies and Procedures to the contrary shall preclude the adoption of a retirement incentive program for County employees. Such programs shall be reported to the Board.

## 18.20  Deferred Retirement Option Program (DROP)

Nothing in these Policies and Procedures to the contrary shall preclude any employee covered by the Florida Retirement System from participation in the Deferred Retirement Option Program (DROP).

## 18.21  Longevity Pay – Frozen 09/30/09

Longevity pay may be granted to classified employees, including part-time classified employees who work a regular schedule of at least twenty (20) hours per week, at the following rates:

2% of base pay upon completion of five (5) years of continuous service;
4% of base pay upon completion of ten (10) years of continuous service;
6% of base pay upon completion of fifteen (15) years of continuous service;
8% of base pay upon completion of twenty (20) years of continuous service;
10% of base pay upon completion of twenty-five (25) years of continuous service.

## 18.22  Starting Rates

In most cases, a new employee shall be paid the minimum rate of the DBM pay grade. Exceptions that are recommended by the Division Manager may be approved by the Human Resources Director for starting salaries falling within the first quartile (25%) of the appropriate pay range. Starting salaries above the first quartile of the salary range shall require the approval of the County Administrator. Appropriations for funding positions above the minimum rate must be secured within the framework of the budget of the division. The same principles, which apply to the starting rates of pay for full-time regular employees, shall be used to determine salary. The salary level in the range will be related to, but not limited to, such factors as experience and length of previous service in the County, and shall be recommended by the Division Manager and approved by the Human Resources Director.

## SECTION 19

## PERFORMANCE MANAGEMENT

### 19.1   Performance Management

The Human Resources Director is responsible for the development, maintenance, and administration of the performance management system.

Each Department Director is responsible for establishing organizational and individual performance standards for each employee.  These standards shall be tied to the goals and objectives of the department.   The outcome must be objective, measurable, and observable.   Good performance evaluations benefit both employees and the BCC.  They promote common understanding of individual needs, work objectives and standards of acceptable performance.

### 19.2   Evaluating Performance

Each employee shall be given a copy of the performance evaluation based on his individual duties and responsibilities. Employees shall meet with the Rating Official at the beginning of the evaluation period to review the established standards to discuss the goals and objectives and reach an understanding of the expectations.

The Rating Official shall submit the performance evaluation to the Department Director or designee and obtain approval before discussing it with the employee. The Rating Official shall attach written justification to the evaluation regarding the standards in which the employee does not meet the established standards and when the employee exceeds standards.   An employee may submit comments regarding the evaluation; however, it does not guarantee that changes will be made to the evaluation.

### 19.3   Quarterly Reviews

Every quarter after the annual evaluation, supervisors shall conduct a quarterly performance review, discussing with each employee the employee's previous evaluation, current performance and accomplishments since the annual review.  If the employee is not performing at an acceptable level of meeting standards, documentation of non-performance and guidance on what and how to improve shall be provided in writing to the employee. Quarterly reviews are retained at the division level.

### 19.4   Promotion, Transfer, or Demotion

Employees who receive a promotion, transfer or demotion that is less than ninety (90) days from the effective date of the last performance evaluation shall not receive a performance evaluation from the releasing division. If more than ninety (90) days since the last performance evaluation, the releasing supervisor shall conduct a close-out evaluation and forward to the Human Resources Department.

**19.5   When Anniversary Dates Change**

A new anniversary date shall be established on the effective date of any transaction that moves an employee from one position to another, or when an employee moves from the classified service to the unclassified service or vice versa.

**19.6   Rebuttal**

If an employee disagrees with any statement in a performance evaluation, a written rebuttal may be attached to the evaluation before it is submitted to the Human Resources Department.

**19.7   Appeals**

The performance evaluation cannot be appealed or grieved.   Only adverse employee actions, e.g., suspensions, demotions, and terminations associated with the overall "Does Not Meet" rating may be appealed to the Merit System Protection Board or grieved to the respective collective bargaining agreement.

**19.8   Official Records**

The original performance evaluation shall be submitted to the Human Resources Department to be included in the employee's official personnel file.

**BCC - HUMAN RESOURCES POLICIES AND PROCEDURES**

## SECTION 20

## DEMOTIONS

**20.1   Involuntary Demotions**

a.   Unsatisfactory Performance.  An employee who fails to satisfactorily perform the duties and responsibilities required of the job may be demoted to a job classification at a lower DBM for which he qualifies. Documentation of unsatisfactory performance shall be submitted to the Human Resources Department on the respective Employee Performance Evaluation form as justification for the demotion.

b.   Discipline: As a disciplinary measure, an employee may be demoted to a lower classification based upon unacceptable personal conduct. The Human Resources Department shall be contacted prior to initiating the demotion of an employee. This action may be administered to the employee after it has been reviewed and approved by the Human Resources Department and the County Attorney's Office.

c.   Discipline of bargaining unit employees must comply with the union contract.

**20.2   Voluntary Demotions**

An employee may request, in writing, a voluntary demotion to any classification for which he is qualified.

**20.3   Pay Rate, Probationary Period, and Anniversary Dates**

a.   Pay Rate.  An employee affected by a demotion shall have his pay adjusted to the DBM of the job classification to which the demotion is made as follows: by five (5) percent, provided the new pay rate shall not exceed the maximum pay of the new classification or fall below the minimum pay of the new classification.

b.   Probationary Period.  An employee in his initial probationary period shall serve the balance of the probationary period in the new class. If the remainder of the probationary period is less than 90 days, the employee shall serve at least 90 days of probation in the new position. In any case, a 90-day performance probationary period shall be required.

c.   A new anniversary date shall be established on the effective date of a demotion.

**20.4   Demotion of Promotional Employee Currently Serving a Probationary Period**

A promotional probationary employee may be demoted for the inability to perform the duties and responsibilities required by the higher job classification in

**BCC - HUMAN RESOURCES POLICIES AND PROCEDURES**

accordance with these Policies and Procedures.

If an employee in regular status has been promoted but fails to successfully complete the probationary period, the division shall submit written documentation to justify demoting the employee to the position previously held. The employee will revert to the position held prior to the promotion if the position is vacant.  If the position is not vacant, the individual will be offered another vacant position equal to or lower in pay for which he is qualified.  If there are no vacant positions, the employee is to be offered the first vacant position equal to or lower in pay grade for which he qualifies when such position becomes available.  For a period limited to one (1) year, employees are not to be hired or promoted to applicable vacant positions until the demoted employee, who must have been in good standing with a satisfactory performance evaluation prior to his promotion, is offered a vacant position within the division to which they promoted.  The rate of pay in the new position shall be the same rate of pay in the former position prior to the original promotion; provided, however that the pay may not exceed the maximum of the pay range for the new position.

## SECTION 21

## LAYOFF/REDUCTION IN FORCE – CLASSIFIED EMPLOYEES

The Department Director (DD) must notify the Human Resources Director of any anticipated need for the layoff of their employees.  A DD may lay off employees because of lack of funds or lack of work, provided that such reductions are made in good faith. Prior to a layoff, the DD shall notify the Human Resources Department of the classes of positions directly affected, the number of positions to be vacated within each class; and the reasons therefore.   Thereupon, the Human Resources staff shall furnish to the Department a valid departmental seniority list based on the employees' seniority dates, including the names of the persons in the identified positions.

**21.1   Layoff Notice**

The Human Resources staff will provide written notification to the employees who will be affected by a Reduction In Force (RIF).   Employees shall be given a minimum of fifteen (15) calendar days' notice prior to their layoff effective date.

**21.2   Order of Reduction in Force**

A reduction in force shall be made by seniority (50% of the decision) and by performance (50% of the decision) within the affected classes.   The following is how the retention score is calculated:

A.  Seniority - 50%

| Years | Points to be Awarded |
|---|---|
| Beginning date through the end of the 1st year | 0 |
| Beginning 2nd year through end of 2nd year | 1 |
| Beginning 3rd year through end of 5th year | 2 |
| Beginning 6th year through end of 9th year | 3 |
| Beginning 10th year through end of 19th year | 4 |
| Beginning 20th year and more | 5 |

B.  Performance - 50%

Evaluations graded less than three receive no points; employees (emps) ranked in lowest 20% get 1 point; emps. in next 20% get 2 pts; emps. in middle 20% get 3 pts: emps. in 4th 20% get 4 Pts; emps. in top 20% get 5 pts.

C.  Total points (A + B) equal the retention score.

D. Employees covered by collective bargaining agreement should be laid off in reverse seniority order.

## 21.3   Preference List

Employees laid off because of a RIF shall be notified when positions in their classes become available for six months following date of actual lay-off.

## 21.4   Bridging of Service

Employees rehired within one (1) year will be given an adjusted seniority date to adjust for the period of layoff upon their reinstatement.

## 21.5   Vacancy Notification

The Human Resources staff shall notify an employee who has been laid off of any vacancy in the same class for which the employee was laid off.  Such notice shall be sent to his last known address.  The notified employee shall be given seven (7) calendar days to notify the Human Resources staff of his interest in the position.  If selected, the employee shall be given seven (7) additional calendar days to actually report to work unless this period is extended with the express consent of the employee and the DD where the vacancy exists.  The failure of such employee to comply with any of the above conditions within the time limits specified shall void all reinstatement rights.  The fact that a registered letter is returned to Human Resources because it failed to reach the employee at his last known address on record shall be taken as proof that the employee has failed to keep Human Resources advised of his current address, and the employee; therefore, shall forfeit his rights for reinstatement.

## SECTION 22

## SEPARATION FROM SERVICE

### 22.1   Resignation

A resignation is considered a voluntary act on the part of the employee and shall not be forced.

### 22.2   Resignation in Good Standing

a. An employee in the classified service is expected to submit a written notice of resignation to his immediate supervisor at least two (2) weeks prior to the effective date of the resignation.

b. An employee in the unclassified service is expected to submit a written notice of resignation to the Department Director and the County Administrator. For PTC employees a 30-day notification shall be given and for SES employees a 90-day notification shall be given.

c. Failure to comply with this requirement may be cause for immediate removal in bad standing.  However, the Department Director may recommend and the Human Resources Director may exempt from this requirement any employee who has given less than the required notice, if in his judgment, exceptional circumstances warrant such exemption.

The employee may not rescind a resignation, once tendered and accepted by the Department Director.  The Department Director must approve any change to the employee's submitted resignation.

### 22.3   Resignation in Bad Standing

a. Failure to provide sufficient and proper resignation notice may result in a bad standing status for the employee. The Department Director shall submit justification to the Human Resources Department supporting the decision to establish bad standing status for the employee.

b. An employee who resigns with a current performance evaluation of an overall "did not meet" or is currently performing under a Performance Improvement Plan (PIP) shall be noted as having resigned in bad standing.

### 22.4   Resignation in Lieu of Disciplinary Action

A resignation in lieu of disciplinary action must be recommended by the Department Director.  In such cases, documentation of the conditions of the voluntary resignation must be reviewed and approved by the Human Resources Director before any action is taken.

**22.5   Eligible for Rehire**

The Department Director shall submit justification to the Human Resources Department if an employee is not eligible for rehire. This justification shall be submitted with the Personnel Action Form (PAF) and it will be included in the employee's Official Personnel File.

**22.6   Involuntary Separation**

An employee may be terminated whenever work habits, job performance, production or personal conduct falls below acceptable standards or whenever an employee has been found guilty of serious or repeated violations of rules, policies or procedures. An involuntary separation of a regular classified employee may be appealed to the Merit System Protection Board or grieved to their respective Collective Bargaining Agreement.

**22.7   Retirement**

An employee may retire subject to the provisions of the Florida Retirement System (FRS). An employee planning to retire shall notify their Division Manager and the Human Resources Department at least ninety (90) days prior to the planned date of retirement.

**22.8   Layoff, Reduction-In-Force**

Please refer to Section 21 of these HR Policies and Procedures.

**22.9   Death of Employee**

The official date of termination shall be the date of the death.  All compensation due to the employee as of the effective date of the death shall be paid to the appropriate individual(s) as determined by law.

**22.10  Exit Interviews**

When sufficient notice is provided, the Human Resources Department shall make every reasonable effort to interview separating employees.

## SECTION 23

## DISCIPLINE – CLASSIFIED EMPLOYEES

### 23.1   Purpose

Discipline is action taken against an employee when a policy, practice or procedure of the County or department is violated, when work performance is not satisfactory, or when other inappropriate behavior is exhibited.

Unclassified employees are "at will" employees; therefore, these disciplinary procedures are not applicable.

### 23.2   Types of Disciplinary Action

The types of disciplinary action, in order of their severity, are:

a.   Letter of Counseling

b.   Written Reprimand

c.   Suspension (without pay)

d.   Demotion

e.   Termination

### 23.3   Notice of Disciplinary Action (NODA)

Notice of the disciplinary action of an employee shall state in writing the nature of the action taken, the effective date of the action and, if a suspension, the duration thereof. Such notice shall specify the date, time, and place (where applicable) and nature of the violation or misconduct charged in sufficient detail to provide the employee an opportunity to prepare a defense. The employee shall be served a Notice of Pending Disciplinary Action (NOPDA) providing the employee an opportunity to prepare a defense. All formal disciplinary actions (suspension, demotion and termination) shall be coordinated with the Human Resources Department before being served on the employee. The County Attorney shall concur on disciplinary actions that could result in an adverse action. The County Administrator or designee shall sign such notice.

### 23.4   Service of Notice of Disciplinary Action on Employee

Service of a notice of disciplinary action on an employee against whom such action has been taken shall be made by delivering a copy of the Notice of Disciplinary Action form to the employee in person or by legal service of process, or if the employee is absent from his employment, by mailing a copy of such notice by certified mail to the last known address of the employee as reflected on the

records of the Board of County Commissioners.

**23.5   Appeals\and/or Grievances**

When a disciplinary action is served upon the employee that could result in an adverse action, the employee has the right to appeal to the Merit System Protection Board or may appeal under the terms of the employee's respective collective bargaining agreement.  An employee may not appeal or grieve a Letter of Counseling or a Written Reprimand.

**23.6   Collective Bargaining Agreements (CBA)**

Bargaining Unit employees shall review their appropriate Collective Bargaining Agreement to determine if these policies and procedures apply to them.  In case of a conflict between the applicable CBA and these policies and procedures, the provisions in the CBA shall prevail.

## SECTION 24

## GRIEVANCES – CLASSIFIED EMPLOYEES

### 24.1  Employee Rights

An employee has the right to file a grievance without fear of reprisal, retaliation or discrimination.  The employee's grievance shall be treated seriously, promptly and with as much confidentiality as possible with supervisors and others who may become involved.

### 24.2  Employee Duty

Before filing a written grievance, the Board of County Commissioners encourages full, informal discussion of the issue(s) between the supervisor and the employee. The goal of this discussion should be to resolve the matter without the need for a written grievance.

### 24.3  Reasons

A grievance can be filed for work-related dissatisfaction.  Grievances cannot be filed due to administrative policy, performance evaluations or pay issues. Most job related dissatisfaction or problems can be handled by the first level supervisor.

### 24.4  Eligibility

Employees who have successfully completed an initial probationary period may file a grievance.  Employees who are in term, temporary, and relief appointments may pursue a grievance only to the Division Manager level in their department.

### 24.5  Process of Filling a Grievance

**Step One -** Any employee who believes that he or she has a grievance shall take up the matter orally with his or her immediate supervisor within seven (7) calendar days its occurrence.  The immediate supervisor shall attempt to resolve the matter and respond orally to the employee within seven (7) calendar days of the date on which the employee initially brought the grievance to his or her attention.

**Step Two -** If the response of the immediate supervisor is unsatisfactory to the employee and does not resolve the issue, or the immediate supervisor does not respond to the employee within seven (7) working days, the employee may complete a Grievance Form and present the completed form to his/her Division Manager within seven (7) calendar days after the date on which the immediate supervisor's response was due or from the date the response did not resolve the issue.  The Division Manager shall provide opportunity for discussion and review, and shall respond in writing on the Grievance Form within seven (7) calendar days after receipt of the form from the employee.

**Step Three -** If the response from the Division Manager is unsatisfactory to the employee and does not resolve the issue, or the Division Manager does not respond to the employee within seven (7) calendar days, the employee may forward the Grievance Form to the Department Director within seven (7) calendar days of the date on which the Division Manager's response was due or from the date the response did not resolve the issue.  The Department Director shall investigate the matter and shall meet with the employee, and if applicable, include the supervisor(s) who responded in Steps One and Two.  The Department Director shall use existing policies and procedures as appropriate to resolve the grievance. The Department Director shall respond in writing on the Grievance Form within 14 calendar days of the date on which he or she received the grievance.  All decisions of the Department Director are final and not subject to further appeal.

## 24.6   Resolution

A resolution exists only when signed by both employee and a member of the management team.

## 24.7   Exceptions

The Human Resources Director reserves the right to review grievances and the process taken by management to resolve said grievances.

All grievances pertaining to violations of Title VII of the Civil Rights Act of 1964, the American's With Disabilities Act (ADA), and other applicable federal, state and/or local laws and regulations should be immediately reported to the Human Resources Department.

**SECTION 25**

**PERSONNEL FORMS, RECORDS AND REPORTS**

The Human Resources Department will have the authority and responsibility to approve, develop, and implement all forms and databases for personnel actions.

Records and reports are available for inspection and copying in accordance with applicable public record laws of the State of Florida.

## SECTION 26

## EMERGENCY MANPOWER PLAN

### 26.1   Purpose

To establish uniform, fair, and standardized procedures by which the Escambia County Administrator may employ a program which allows for the pre-notification of employees of their emergency assignment status and plans for effective management of employees during times of local emergency.

### 26.2   Scope

This plan applies to all full-time employees of Escambia County BCC, and is administered by the Human Resources Department.  Participation is considered a "condition of employment" for those applicable employees.  Any conflicts which may arise in the application of this program shall be referred to the Human Resources Department and, if necessary, the Human Resources Director may forward to the County Administrator, or designee, for final resolution.  This plan is written in accordance with and shall not conflict with the Comprehensive Emergency Management Plan (CEMP) as implemented by the Director of the Public Safety Department.  Terms not fully explained in this plan may be clarified by referring to the CEMP. If a conflict exists between this section and the CEMP, the CEMP shall govern.

### 26.3   Declaration of Support

The Board of County Commissioners supports the efforts of its employees to provide for the safety and welfare of the citizens of Escambia County.  It should be understood by all employees that during a period of emergency, day-to-day operations may be altered and temporary duties outside the normal scope of their employment may be required for the duration of the state of emergency.

### 26.4   Employee Categories

a.  All employees of the BCC, for purposes of this plan, shall be placed into one of the following categories:

1.  Emergency Critical (EC) – During a Declared State of Emergency, these are considered the BCC's "key workers."  Once a State of Emergency exists, the EOC and other critical functions will be operational 24 hours each day, manned by employees in this category.  These EC employees have advance orders and will be working either in a County facility or in the field as appropriate prior to and/or during the actual event.  It is the responsibility of these employees to prepare and make arrangements for family and personal needs in advance of the emergency.  In most cases, control of these employees is retained by the appropriate Department Director, the Incident Commander, or designee.  If, for any reason, the

**BCC - HUMAN RESOURCES POLICIES AND PROCEDURES**

employee cannot perform the duties as required, the Department Director is expected to replace them with another employee from their division.

2. Emergency Essential (EE) – Employees who are Emergency Essential are not required to be on duty during the actual event, but are required to report to their duty assignment immediately following the event, when conditions are considered safe, normally within 24 hours of the event, or as otherwise directed. Duties will normally be in support of the division's post-event mission, and control is retained by the appropriate Department Director. Employees are to be notified, in advance, of reporting instructions, to include a specific reporting place, time, and circumstances (e.g. when the wind speed is considered safe) for returning for duty.

3. Emergency Manpower Pool (EMP) – Employees without a specific and immediate emergency divisional assignment before, during, or following the event are placed in the Emergency Manpower Pool. Employees in the EMP are temporarily reassigned from their Bureau responsibilities and given duties related to recovery efforts. Pool employees are required to report to their new duty assignment within a maximum of 48 hours of the event (e.g. hurricane landfall), or as otherwise directed. Once assigned to the EMP, the Emergency Manpower Manager (EMM) will direct work assignments. Removal of an employee from the EMP for reassignment back to their parent division must be approved by their Department Director and the EMM.

4. Citizens' Information Center (CIC) – Some members of the EMP may be assigned duties in the CIC. Employees assigned such duty will report when directed to the Emergency Operations Center (EOC), and will work under the supervisory control of the Office of the County Administrator. Duties in the CIC often begin prior to the actual Declaration of Emergency, typically require shift work, and may extend beyond the expiration of that declaration. Prior to reassignment to their division, prior coordination with the CIC team leader must occur to prevent gaps or shortfalls in scheduling. If for any reason, the employee cannot perform the duties as required, the Department Director is expected to replace them with another employee from their division.

b. Assignment of an employee into one of these above categories is at the discretion of management, and is considered a *"Condition of Employment"* for employees of the BCC. Final assignment of an employee into an emergency category shall be at the discretion of the County Administrator or his designee. The EMM shall maintain the master list of employee assignments.

c. Employees not tasked as Emergency Critical or Emergency Essential shall be automatically placed in the Emergency Manpower Pool. Following certain events, including, but not limited to, a major hurricane, an extremely large relief effort may be required, requiring large numbers of employees to meet

the basic needs of the community.  If sufficient numbers of workers cannot be found through voluntary efforts, the County Administrator, or designee, may reassign additional employees involuntarily from EC, EE, or CIC into the EMP.

d. Prior to being released from the last duty day before an anticipated event, employees will be directed by their division when and where to next report. Failure by employees to abide by those instructions may result in disciplinary action, up to and including termination, depending on the circumstances. Each employee is solely responsible for reporting within the directed timeframe.   Evacuation, impassable roads, or downed communications networks shall not constitute excuses for a failure to report as required under this plan.

## 26.5   Pay Procedures

Due to the greatly expanded working hours, increased workload, added hardships, and personal sacrifices made by BCC employees during very difficult circumstances, the standard payment procedure during the period of a declared emergency will be as described at the time of the declaration or as soon as practical thereafter.

## 26.6   General Provisions

a. Upon notification by the County Administrator, or designee, of an actual or potential emergency, the Human Resources Director will initiate proceedings to activate the Emergency Manpower Pool Plan.

b. Every BCC employee must keep their County ID in their possession at all times and be prepared to display it to pass through security checkpoints or gain access to County facilities.   The back of their badge should state **"BCC Emergency Disaster Team"** to assist with the passage of law enforcement checkpoints.   An employee information hotline toll free telephone number, 1-866-699-7572, is also printed on the back of the ID card.

c. Department Director shall be granted waiver authority to the Escambia County Vehicle Policy.  With their Chief's approval, employees shall be allowed to take a Division-assigned vehicle home during the emergency.

Personnel in EC, EE, EMP, or CIC categories, who cannot report to duty as assigned, must request a waiver through their Bureau Chief, who will recommend approval/disapproval through the EMM to the County Administrator for final approval/disapproval.  In cases of Failure to Notify of absence from duty and/or disapproval of waiver request, the employee may be charged with Absent Without Leave (AWOL) and be subject to disciplinary action, up to and including termination.

## 26.7   Responsibility

**BCC - HUMAN RESOURCES POLICIES AND PROCEDURES**

It is the employee's responsibility to contact their supervisor, monitor media announcements (radio/TV/internet, etc.), and to call the EMP Toll-Free Employee Information Hotline (1-866-699-7572) for automated instructions and updates. Should typical means of communication be down, i.e. landline and/or cell phone usage, the employee is responsible to make contact by any manner necessary and to report for duty or to the predetermined location for EMP assignments within 48 hours. Unless otherwise specified, EMP personnel shall meet at the Escambia County Extension Service, Windstorm Mitigation Building, 3740 Stefani Road, Cantonment, Florida for assignment.

## SECTION 27

## ETHICS AND STANDARDS OF CONDUCT

The conduct of all public appointed officers and employees shall be measured by the standards set out in Part III, Chapter 112, Florida Statutes, and by those additional standards adopted by the County that require a higher standard of conduct than permitted under the State Code of Ethics, including but not limited to the following:

### 27.1   Personal Interest in County Contract or Transaction

No County Public Officer or employee having the power or duty to perform an official action related to a County contract or a transaction shall:

a.  Have or thereafter acquire any interest in such a contract or transaction, or

b.  Have an interest in any business entity representing, advising, or appearing on behalf of, whether paid or unpaid, any person involved in such contract or transaction, or

c.  Have solicited or accepted present or future employment with a person or business entity involved in such contract or transaction, or

d.  Have solicited, accepted, or granted a present or future gift, favor, service, or thing of value from or to a person involved in such contract or transaction, except as otherwise allowed in the State Code of Ethics.

### 27.2   Disclosure or Use of Certain Information

No public officer, employee of an agency, or local government attorney shall disclose or use information not available to members of the general public and gained by reason of his or her official position for his or her personal gain or benefit or for the personal gain or benefit of any other person or business entity.

### 27.3   Withholding of Information (Required Disclosure)

a.  No public appointed officers or employees shall withhold any information when the officer or employee knows, or reasonably should know, that a failure to disclose may impair the proper decision making of any County boards, authorities, agencies or committees. In addition to the requirements of Chapter 112, Part III, Code of Ethics for Public Officers and Employees, members of subordinate boards and committees, and any of the County's employees who are recommending the approval or denial of a recommendation for any official action shall, prior to any such action, disclose any recent (within the last 90 days) or ongoing business, financial, or investment relationship or interest that

may, in the context of the proposed official motion, reasonably be deemed to create the appearance of impropriety.

b. Employees classified as Senior Executive Service I or II shall be required to comply with the financial disclosure requirements established pursuant to Section 112.3145, Florida Statute (2007), including any appointed public officer or employee in the Senior Executive Service who does not have an independent obligation to make such financial disclosure under that section. For any SES employee who does not have an independent obligation to make this financial obligation under state law, disclosure shall be made on the Statement of Financial Interest form. Disclosure shall be made on an annual basis but shall not be made later than July 1 of each year. The County Ethics Officer shall ensure that disclosure forms and all necessary instructions for compliance are available and that members of the Senior Executive Service have adequate time to complete the disclosure forms. The County Ethics Officer shall be the custodian of records for any disclosure forms that are not required to be sent to the State of Florida Commission on Ethics.

## 27.4   Public Property

No County Public Officer or employee shall request or permit the unauthorized use of County-owned vehicles, equipment, materials, or property.

## 27.5   Special Treatment

No County Public Officer or employee shall grant any special consideration, treatment, or advantage to any person, group or organization beyond that which is available to every other person, group or organization in the same or similar circumstances.

## 27.6   Payment of Debts

All public officers and employees shall settle, in a timely fashion, business accounts between them and the County, including the payment of taxes.

## 27.7   Gifts and Gratuities

Appointed public officers and employees shall not directly solicit any gift or accept or receive any gift – whether it be money, services, loans, travel, entertainment, hospitality, a promise, or in any other form – under circumstances where it could be reasonably inferred or expected that the gift was intended to influence them in the performance of their official duties, or the gift was intended to serve as a reward for any official action on their part. Furthermore, no County employee shall receive any gifts from organizations, business concerns, or individuals that are lobbyists or vendors that have a business relationship with the County if such gift has a value over $50.00. It is particularly important that executive, managers, supervisors, inspectors, purchasing agents, law enforcement officers, etc., guard against any relationship that might be construed as evidence of favoritism,

coercion, unfair advantage or collusion.

The following shall not be deemed a violation of the limitations this Policy imposes as it relates to gifts and gratuities over $50.00:

a. Legitimate salary, benefits, fees, commissions, or expenses associated with a public officer's or employee's non-public business;

b. An award, plaque, certificate, memento, or similar item given in recognition of the public officer's or employee's civic, charitable, political, professional, or public service;

c. Food, beverages, and registration at group events to which all similarly situated employees or public officers are invited;

d. Actual and reasonable expenses, as set out in the County travel policy, for food, beverages, travel, lodging, and registration for a meeting which are provided to a public officer or employee so that he or she may participate in or speak at a meeting or conference or similar event;

e. A commercially reasonable loan offered to the public at large and made in the ordinary course of business;

f. Promotional items generally distributed free to public officers or employees by County vendors; and

g. Gifts from a relative (father, mother, son, daughter, husband, wife, brother, sister, father-in-law, mother-in-law, son-in-law, or daughter-in-law) of the appointed officer or employee.

## 27.8   Gift Reports

All reporting individuals, including County Commissioners, County Attorney, County Administrator, Purchasing Manager, the administrator with the power to grant land development permits, i.e., County Engineer, Chief Building Official, County Pollution Control Official and County Environmental Control Official; i.e., members of Planning Board and Board of Adjustment, and Fire Chief, who receive a gift shall report that gift in the manner provided by Section 112.3148, Florida Statutes.

## 27.9   Outside Employment

County employees may engage in outside employment, subject to the following restrictions:

a. County employees may not render services for outside interests or conduct a private business when such employment, service, or business creates a conflict with or impairs the proper discharge of their duties; and

b.  County employees may not use County property or resources to assist or promote the outside employment, service or business; and

c.  County employees may not use any portion of time spent working for the County to assist or promote such outside employment, service, or business.

d.  Furthermore, all County employees seeking to engage in private employment must complete the certification form that: 1) discloses the identity of the private employment, service, or business, 2) discloses the nature of the private employment, service, or business, and the job duties of the position that the County employee seeks, and 3) discloses whether, to the employee's knowledge, the private employer, service, or business is a vendor or contractor for the County. This certification form, declaring such outside employment, must be filed with and approved by the County Ethics Officer and approved by the County Administrator. A copy of the certification form will be maintained in the employee's official personnel file.

## 27.10  Prohibited Investments

No appointed public officer or employee over the course of his or her employment shall be allowed to have any personal investment which in any way would create a substantial conflict of interest between his or her private interests and the County's interest. Additionally, no appointed public officer or employee who reviews applications for permits or approvals shall enter into any contractual relationship with a person or entity who must obtain a County permit or approval for the property (real or personal) that is the subject of the contract. However, once the person or entity has obtained a final decision on the permit or approval, the appointed public officer *may* enter into a contractual relationship for the property, provided: 1) any member of the public has the same opportunity to enter into a contractual relationship for the property with substantially similar terms and conditions, and 2) the contractual relationship does not violate any other provision of this policy. A decision is deemed final after any and all appeals of the decision are final.

Furthermore, no County employee (including the County Administrator and the County Attorney) may enter into any joint business or joint investment with an elected County officer while the officer is serving his or her term of office. If the employee has any joint business or joint investment, with a commissioner that existed prior to the election of the commissioner, the employee must make full disclosure of the business or investment immediately upon the election of the commissioner.

## 27.11  Miscellaneous Malfeasance or Misfeasance

Any County Public Officer or employee, who breaches the public trust for private gain, shall be liable to the County for repayment of all financial benefits obtained by such a breach. It also shall be unlawful and a violation of this policy for any

County Public Officer or employee to threaten or intimidate or otherwise impede any witness, investigation, administration of law, the conduct of any public meeting, or any other act that would interfere with the lawful functioning of County government.

## 27.12 Improper Use of Position

No County Public Officer, employee or County Attorney shall use or attempt to use his or her official position or any property or resource which may be within his or her trust, to secure a special privilege, benefit, or exemption for himself, herself, or others.

## 27.13 Converting County Property

A County Public Officer or employee is prohibited from converting or embezzling any real or personal property for which that public officer or employee is required to possess or control in the execution of his or her County duties. Upon a conviction and adjudication of guilt by a court of competent jurisdiction, whether civil or criminal, the County shall request that the court require proper restitution to the County.

## 27.14 Political Activity

Any County Public Officer or employee (except for the elected members of the Board of County Commissioners) is prohibited from conducting political activities while on County time.  No such political activities will be undertaken by any person who disadvantages the functioning of County government. A County Public Officer or employee is prohibited from using County resources to aid or boost the political campaign of any elected public officer. This policy shall not be interpreted to violate the protected constitutional rights of the First Amendment or the impairment of any public officer or employee's civil rights to vote and to take part in political campaigns.

## 27.15 Professional Services

No County Public Officer or employee may recommend the services of any lawyer or other professional to assist any person in a transaction involving the County unless such recommendation is a part of that person's official duties. No attorney employed by the County or other employee shall represent a private individual or entity before the County.

## 27.16 Ethics Officer

A County Ethics Officer will be appointed by the Board of County Commissioners. Unless another County employee is specifically designated as the County Ethics Officer by the Board of County Commissioners, the employee holding the position of County Human Resources Director shall be the County Ethics Officer. The County Ethics Officer duties and responsibilities shall be assigned, as a separate

responsibility, to the Human Resources Director. The Ethics Officer may receive complaints from the public or County personnel involving alleged ethical violations by the County's appointed public officers or employees. The Ethics Officer will review any such allegation to determine whether or not it appears to be factually grounded.  The Ethics Officer shall also report the allegation to the Chairman, BCC and the County Administrator and shall review the factual basis for the allegation with the County Attorney. Should the complaint involve the County Administrator, the complaint shall be referred to the Chairman of the Board. Should the complaint involve any Board Member or Ethics Officer the complaint shall be referred to the County Attorney. After such review, the Ethics Officer may initiate an investigation or refer the complainant to the State Commission on Ethics (COE) as appropriate. For purposes of this Policy, the Ethics Officer's decision to initiate an investigation or to make a referral to the COE is subject to approval by the Chairman of the BCC and the County Administrator. The Ethics Officer's completed report will be submitted to the Chairman of the Board of County Commissioners. Removal of the Ethics Officer will require a majority vote of the Board of County Commissioners after a finding of good cause.

## 27.17  Disclosure of Criminal Records Required

Any person applying for appointment to a County board or committee or for employment with Escambia County will disclose any criminal convictions and the failure to do so may result in dismissal from any such volunteer, board or committee member, or from employment of the County.

## 27.18  Prohibition Against Misuse of Code

Individuals covered by this policy shall not use its provisions to further a false or frivolous claim against another. False claims shall be those forwarded with knowledge that the claim contains one or more false allegations or with reckless disregard for whether the complaint contains false allegations of material fact. The filing of a false complaint shall be a violation of this policy.

## 27.19  Enforcement and Penalty

Pursuant to Subsection 112.317(3)(b), Florida Statutes, the Board of County Commissioners finds that an efficient and effective method for the determination of violations of the ethical standards set forth in this Policy is through local enforcement as provided herein.  This Policy may be enforced in any manner allowed, authorized, or otherwise provided by law or ordinance, including Section 125.01, Florida Statutes.

a. For appointed public officers, who are members of County boards and committees, the Board of County Commissioners may censure or remove that person for a policy violation and prohibit him or her from being reappointed to a County board or committee for up to a period of five (5) years or may refer the matter to the State Commission on Ethics for investigation.

b. For County employees, such employees may be subject to employment sanctions for a policy violation, including but not limited to, reduction in pay, reprimand, suspension, or termination in accordance with the personnel procedures which are currently established allowing for County classified or unclassified employees to be disciplined or the referral of the matter to the State Commission on Ethics for investigation.

## 27.20  Training Administration and Records

The Human Resources Director shall be responsible for training, administration and records associated with the BCC Ethics Program. All County employees classified as Senior Executive Service I or II are required to attend no less than two (2) hours of ethics training on an annual basis. Ethics training shall additionally be made available to all other supervisors and managers, and must attend a minimum of one (1) hour training annually. The Human Resources Director shall be responsible for scheduling an adequate number of training sessions and shall provide adequate notice of the training sessions. "Ethics Training" includes any training on the provisions, application, and enforcement of this policy, on the provisions, application, and enforcement of the State Code of Ethics, and any other ethics-based training for public employees approved by the County Ethics Officer. Failure to attend the minimum requirements for ethics training annually shall constitute a "for cause" basis for disciplinary action.

## 27.21  Misuse of County Visa Purchase Card

Employees are prohibited from using the County purchasing card for personal expenses; any such misuse will require immediate reimbursement and could result in the following disciplinary action guidelines:

a. First Offense- In a two (2) year period, a written reprimand.

b. Second Offense- Three (3) day suspension.

c. Third Offense- Employment termination.

All bills and receipts must be forwarded to the Clerk's Accounts Payable Section within five business days of receiving the purchase card statement or the same disciplinary actions will apply.

## 27.22  Correcting the Misuse of Purchase Card

Upon realizing a cardholder misused their County purchasing card, they are to immediately get a credit from the vendor and notify his or her department representative of the circumstances.  The Clerk's Accounts Payable Section must also be notified by the next business day.  If the cardholder is unable to obtain a credit, they must send a check to the Clerk's Accounts Payable Section for the full amount of the unallowable purchase along with an explanation of what occurred and what steps were taken to try and obtain a credit.  The department

**BCC - HUMAN RESOURCES POLICIES AND PROCEDURES**

representative must also be sent a copy of this report.  DO NOT wait until the end of the month to notify the department representative, and the Clerk's Accounts Payable Section.  All bills and receipts must be forwarded to the Clerk's Accounts Payable Section within five (5) business days of receiving the purchase card statement or the same disciplinary action listed in 27.2 Misuse of County Visa Purchase Card will apply.

**BCC - HUMAN RESOURCES POLICIES AND PROCEDURES**

---

## SECTION 28

## ELECTIVE OFFICE OR POLITICAL ACTIVITY

All employees are governed by the provisions of applicable federal or state laws relating to elective office and political activity.

## SECTION 29

## SEVERABILITY AND EFFECTIVE DATE

**29.1   Severability**

If any of the provisions of these Policies and Procedures or if any of the regulations or orders, or the application of such provisions to any person or circumstances shall be held inoperative, void or invalid, the remaining portion of these Policies and Procedures and the application of such provisions to persons or circumstances other than those as to which it is held inoperative, void, or invalid, shall not be affected thereby.

**29.2   Adopted Date**

These Policies and Procedures were adopted October 1, 2005.

**29.3   History**

Revision 1:  January 1, 2007

Revision 2:  March 1, 2007

Revision 3: October 1, 2009 (Published – March 18, 2010)

Revision 4: January 19, 2012

Revision 6: April 17, 2012

# EXHIBIT E

Escambia County
Clerk's Original

9/1/2016 CAL I-2

Date: 9/29/2016  Verified By: _____

# COLLECTIVE BARGAINING AGREEMENT

## BETWEEN THE

## ESCAMBIA COUNTY BOARD OF COUNTY COMMISSIONERS

## AND THE

## INTERNATIONAL ASSOCIATION OF EMTs AND PARAMEDICS LOCAL R5-325

### For the Contract Years

### August 17, 2016 through September 30, 2019

1



# ARTICLE 1
## THE CONTRACTING PARTIES

This Agreement is between the Escambia County Board of County Commissioners (hereinafter called the BCC or the County) and the International Association of EMTs and Paramedics (hereinafter Union)

# ARTICLE 2
## RECOGNITION

The BCC recognizes the Union as the sole and exclusive bargaining agent for all employees included in the bargaining unit of the Union, the current bargaining unit is as shown in Appendix A, with the official listing on file at PERC. It is recognized by both parties that as the mission of an organization changes, it sometimes requires permanent changes to the duties of some employees. It would be considered inappropriate for an employee to be a member of the Bargaining Unit who is, or becomes, a supervisor as defined by the duties test of the Fair Labor Standards Act (FLSA).

# ARTICLE 3
## GENERAL PROVISIONS

3.01   Civil Emergency
If it is determined that civil emergency conditions exist including riots, civil disorders, hurricane conditions, or similar catastrophes, the provisions of this Agreement may be suspended by the BCC during the time of the declared emergency, provided that wage rates and monetary fringe benefits shall not be suspended. It is understood that a declared emergency may be limited to specific geographic areas, in which case, suspension of the terms of this Agreement would apply only to those bargaining unit employees permanently or temporarily assigned to such areas. If an employee is required to work during a civil emergency, any leave granted to all County employees will be granted to employees covered by this agreement.

3.02   Anti-discrimination
A.     The BCC agrees not to discriminate against any employee because of race, color, religion, age, handicap, national origin, sex, marital status, or Union membership or non-membership for any reason prohibited under Florida Statutes or any Federal law. This provision is not subject to the Agreement's grievance or arbitration procedure.
B.     Any claim of discrimination or sexual harassment by an employee against the BCC, their agents, representatives or employees, except for grievances related to Union membership, shall only be subject to the methods of review prescribed

by law or by rules and regulations having the force and effect of law.

3.03    Severability

Any clause, provision, or part of this Agreement, which might be, or hereafter, is construed by any court as violating such section, so as to fix either civil or criminal liability upon either of the parties shall be considered void and deleted here from as fully and completely as is same had not been incorporated in the agreement.

3.04    Waiver Clause

A.    Regardless of any procedure set forth in this Agreement, the parties, as defined in Article 1, retain the right to agree mutually upon alternative methods for achieving goals or for the resolving of any question, controversy, claim, or matter of difference arising from this Agreement or the performance or breach of any part thereof.

B.    The parties, as defined in Article 1, may agree to enter into letters of understanding and settlements which interpret provisions of this Agreement without such letters of understanding or settlements having to be ratified by the employees covered by this Agreement. Any contract modifications are subject to the ratification process by both parties.

3.05    Accommodation with BCC Rules and Policies

Except as otherwise and expressly agreed herein, BCC existing rules and policies that impact negotiable terms and conditions of employment are to remain in effect except where the change is noticed to the Union.  Any changes to policies shall be submitted to the Union for its review at least fifteen (15) days in advance of the effective date of the change.  The parties understand that this relates to BCC policies and not department procedures, protocols and policies.

## ARTICLE 4
## UNION RIGHTS

4.01   Use of Facilities
If any area of the BCC premises is restricted to the public, permission must be requested to enter such areas. Such access shall be during regular working hours and will be restricted to matters related to the application of this Agreement. Nothing in this section shall be interpreted to neither authorize the performance of Union business during work time nor permit the use of BCC facilities for union business.

4.02   Union Bulletin Boards
The Union will be allowed to erect and maintain 3' X 3' bulletin board at the Public Safety Building, the Jail Medical Facility, and the Century Facility at a location approved by the BCC. Bulletin boards shall not be erected at facilities where no bargaining unit members are located. These locations will be in as close proximity to time clocks as can reasonably be accommodated. Any items posted must be signed by a Union Official and pertain to Union business. The County reserves the right to take down any material not signed by a Union Official or that may be construed as offensive or inappropriate as determined by the County Administrator or the Department Director. The County agrees to mail or fax a copy to the Union office of any material removed from one of the approved bulletin boards.

4.03   Representation
The Union agrees to furnish the County with an up-to-date list of all its officers and committee members, and to immediately notify the County of any and all changes thereof.

4.04   Dues Deduction
A.   During the term of this Agreement, the BCC agrees to deduct Union membership dues in an amount established by the Union and certified in writing to the BCC from the pay of those in the bargaining unit, who individually make such request on a written check-off authorization form provided by the Union (Appendix B). Such deductions will be made by the BCC on the first and second payday of each month and will begin with the pay for the first full pay period following receipt of the authorization by the BCC. It is understood by the BCC and the Union that matters of payroll deductions is controlled by the Escambia County Clerk of Court's Office. The Union will be treated in the same manner as any other organization authorized for payroll deduction.
B.   Dues **Checks for dues collections will be made payable to NAGE and mailed to 159 Burgin Parkway, Quincy, MA 02169 along with a list of members whose dues were collected, as soon as possible, allowing for processing time by the Payroll Division, Clerk of Court.**
C.   The Union shall advise the BCC of any increase in dues, in writing, at least ninety (90) days prior to its effective date.

4

4.05   Insufficient Pay for Deductions
In the event an employee's salary earnings within any pay period, after deductions for withholding, social security, retirement, health insurance, and other priority deductions, are not sufficient to cover dues, it will be the responsibility of the Union to collect its dues for that pay period directly from the employee.

4.06   Termination of Deduction
Deductions for Union dues and across-the-board assessments, if any, shall continue until either: (1) revoked by the employee by providing the BCC with thirty (30) days written notice that he/she is terminating the prior check-off authorization; (2) revoked pursuant to Section 447.507, Florida Statutes; (3) the termination of employment, or (4) the transfer, promotion, or demotion of the employee out of the bargaining unit.  If these deductions are continued when any of the above situations occur, the Union shall upon notice of the error, reimburse the employee for the deductions that were improperly withheld.

4.07   Indemnification
The Union shall indemnify, defend, and hold the BCC, their agents, and employees harmless against any claim, demand, suit or liability (monetary or otherwise), and for all legal costs arising from any action taken or not taken by the BCC, their agents, and employees in complying with this article.  The Union shall promptly refund to the BCC any funds received in accordance with this article, which are in excess of the amount of dues which the BCC or its agencies have agreed to deduct.

4.08   Orientation

The IAEP will be permitted up to one (1) hour to address newly hired employees during the department specific portion of the new employee orientation.

# ARTICLE 5
# GRIEVANCE PROCEDURE

5.01   Definitions
Union – IAEP

County – Escambia County, Board of County Commissioners (BCC)
Day(s) – applicable to this contract, shall mean calendar days
Grievance – an alleged violation of an expressed term of this agreement. Instances which are not subject to the grievance process include, but are not limited to; Performance Standards, Performance Evaluations, Letters of Counseling, job classification, a change of duty without a negative effect on the terms of employment, or a temporary change in working conditions during a state of emergency. Filling of a grievance must identify the specific article and section that is alleged to have been violated.

5.02   Election of Process
A.   An employee shall indicate at Step 1 (or the initial written step if authorized by the provisions of this article) whether or not he/she shall be represented by the Union. Any decision mutually agreed to by the BCC and the Union shall be binding on the employee when election of a representative has been made. If requested by the employee as representation, the Union shall be given reasonable opportunity to be present and observe at any meeting called for the resolution of such grievance. An employee processing an appeal will be bound by the procedures established by the BCC and the Union.
B.   If the employee is not represented by the Union, the counsel elected to represent that employee becomes the sole agent of the employee.

5.03   Procedure
A.   Employee grievances may be presented and handled promptly at the lowest level of management having the authority to adjust the grievance.
B.   There shall be no reprisals against any of the participants in the procedures contained herein by reason of such participation.
C.   The filing or pendency of any grievance shall in no way operate to impede, delay, or interfere with the right of the BCC to take the action complained of; subject, however, to adjustment (i.e., back pay) based on the final disposition of the grievance.
D.   The resolution of a grievance prior to its submission in writing at Step 1 shall not establish a precedent binding on either the Union or the BCC in other cases.
E.   Grievances shall be presented and adjusted in the following manner:
   (1)   Oral Discussion
      (a)   An **employee** having a grievance may, within five (5) days following the occurrence of the event giving rise to the grievance, present the grievance orally to their Supervisor for informal discussion. The supervisor shall make effort to resolve the grievance promptly and will respond to the employee within five (5) days.
      (b)   If the grievance is not resolved by such informal discussion, the employee may, within five (5) days after the date of that response, submit a formal grievance at Step 1 of this procedure.
      (c)   If the employee elects not to utilize the oral discussion provision of this Section, **the employee** may file a formal grievance at Step 1,

6

provided such written grievance is filed within ten (10) days
following the occurrence of the event giving rise to the grievance.

(d)     If there is no response by the County within the five (5) day time
limit in an above, the failure to respond will constitute a denial and
will allow the employee or his/her designee to go forward to Step 1
of filed within the time limits of (b) above.

(2)    Step 1

(a)     In filing a grievance, the union representative shall submit to the
division manager a grievance form setting forth specifically the
complete facts on which the grievance is based, the specific
provision or provisions of the Agreement at issue, and the relief
requested.

(b)     The division manager or his/her designee shall communicate a
decision in writing to the employee and his/her union representative
within fifteen (15) days following receipt of this grievance form.

(c)     If there is no response by the County within the fifteen (15) day time
limit, the failure to respond will constitute a denial and will allow the
matter to go forward to the next step.

(3)    Step 2

(a)     If the grievance is not resolved in Step 1, the union representative
may submit it in writing to the County Administrator or his/her
designated representative within five (5) days after receipt of the
decision at Step 1. When the grievance is eligible for initiation at
Step 2, the grievance form must contain the same information as
an appeal filed at Step 1 above. The County Administrator or
his/her designated representative may have a meeting with the
employee, and their union representative, to discuss the grievance
at the County Administrator or designee's sole discretion.

(b)     The County Administrator or his/her designated representative shall
communicate a decision in writing to the employee or his/her union
representative within fifteen (15) days following receipt of the
written grievance.

(c)     If there is no response by the County to the employee or Union
within the time limits, the failure to respond will constitute a denial
of the grievance and will allow the issue to go to the next step.

(4)    Step 3- Arbitration

(a)     If the grievance is not resolved, the union representative may,
within five (5) days after receipt of the decision at Step 2, appeal in
writing to arbitration on a form to be supplied by the Federal
Mediation and Conciliation Service (FMCS). If at the initial written
step, the Union refused to represent the employee because he/she
was not a dues-paying member of the Union, the employee may
opt for arbitration. Employees covered under the provisions of this
Agreement who are not represented by the Union shall have the
opportunity to process grievances to arbitration subject to the
limitations set forth in this Agreement provided, however, such

7

employee proceeding without assistance of the Union shall be required to post a bond in escrow with the BCC in an amount calculated to cover to cost of arbitration and in no event less than the amount $4,500. The bond shall be placed in escrow within a period of thirty (30) days of the employee's request for arbitration and prior to the selection of an arbitrator.

(b)    The parties agree to utilize the Federal Mediation and Conciliation Service (FMCS) as arbitrators. FMCS will provide a list of seven (7) arbitrators for each grievance from which the parties will mutually select one (1). If mutual agreement is not reached the parties shall alternately strike from the list until one remains. The party to strike first shall be determined by the flip of a coin.

(c)    Arbitration hearings shall be held at times and locations mutually agreed to by the parties. Hearings will be held in Pensacola, however, selection of the site will take into account the availability of evidence, location of witnesses, and existence of appropriate facilities.

(d)    The arbitrator may fashion an appropriate remedy to resolve the grievance and, provided the decision is in accordance with his jurisdiction and authority under this Agreement, shall be final and binding on the BCC, the Union, the grievant(s) and the employees in the bargaining unit. The decision of the arbitration hearing shall become final and binding on the parties of this Agreement when delivered to them in writing, subject to the provisions of general law. In considering a grievance, the following provisions and limitations shall apply:

    (1)    The arbitrator shall issue his decision no later than thirty (30) days from the date of the closing of the hearing or the submission of briefs, whichever is later.

    (2)    The arbitrator's decision shall be in writing, and shall set forth the arbitrator's opinion and conclusions on the issue(s) submitted.

    (3)    The arbitrator shall have no authority to determine any other issue, and shall refrain from issuing any statement of opinion or conclusion not essential to the determination of the issues submitted.

    (4)    The arbitrator shall limit their decision strictly to the application and interpretation of the specific provisions of policy or law forming the basis for the grievance.

    (5)    The arbitrator shall be without power or authority to make any decisions that are:

        (a)    Contrary to or inconsistent with, adding to, subtracting from, or modifying, altering or ignoring in any way, the terms of this Agreement, or of applicable law or rules or regulations having the force and effect of law.

8

          (b)     Limiting or interfering any way with the powers, duties, and responsibilities of the BCC under the constitution, applicable law, and rules and regulations having the force and effect of law, except as such powers, duties and responsibilities have been abridged, delegated, or modified by the expressed provisions of this Agreement.

      (6)    The arbitrator has the authority in the award to make the grievant whole, which includes wages, benefits, seniority, and other conditions of employment. They do not have the authority to award punitive damages.

      (7)    The loser shall pay all of the arbitrator's charges. In the case of a split decision, the parties will equally share the arbitrator's fee. In all arbitrations, the parties will be responsible for the fees and costs of their own representatives.

## 5.04   Time Limits

A.      Failure to initiate a grievance within the time limits in Section 5 above shall be deemed a waiver of the right to file a grievance. Failure at any step of this procedure to submit a grievance to the next step within the specified time limits shall be deemed to be acceptance of the decision at that step.

B.      Failure at any step of this procedure on the part of the BCC to communicate the decision on a grievance within the specified time limits shall permit the Union or employee to proceed to the next step.

C.      The number of days indicated at each step should be considered as a maximum and every effort should be made to expedite the process. However, the time limits specified in any step of this procedure may be extended, in any specific instance, by mutual agreement in writing and signed by both parties.

## 5.05   Exceptions:

        An employee or the Union may challenge an employment action by the County through the Agreement's grievance and arbitration process or, the Merit System Protection Board (MSPB) or its successor, but not both.

## ARTICLE 6
### SENIORITY

Definition:  For the purpose of this contract, "seniority" shall, unless otherwise stated, be defined as the length of continuous service from the date of hire in BCC Employment.

## ARTICLE 7
### DISCIPLINE

A. No **Full Time** employee shall be discharged or otherwise disciplined except for just cause.

B. Relief employees who are discharged for disciplinary reasons may appeal such action through step 2 of the grievance procedure.

## ARTICLE 8
### LEAVES

8.01   All full time bargaining unit members shall receive the leave benefits outlined in the Human Resources Policies and Procedures Manual (HRPP) except where it conflicts with an express term of this contract.   The current HRPP sections defining leave benefits for collective bargaining unit members are **incorporated in this contract by reference.**

8.02   Annual Leave

1.  All full time bargaining members are eligible to earn annual leave.

Annual leave shall not be credited in advance. Accrual of annual leave begins on the first date of regular employment and ends with the date of separation. Leave accrual for fractions of the month shall be figured to the nearest day. For the purpose of computing annual leave taken, only normal working days are to be counted as leave.

Annual leave is accumulated in accordance with the following schedule:

- Beginning date through the end of year 5        8 hours per month
- Beginning 6th year through end of 10th year     12 hours per month
- Beginning 11th year through end of 15th year    14 hours per month
- Beginning 16th year through end of 20th year    16 hours per month
- Beginning 21st year through end of employment   18 hours per month

10

2.  Restrictions on Accumulation of Annual Leave:

A bargaining unit member shall not accrue annual leave during a leave of absence without pay, suspension without pay, or when the bargaining member is otherwise in a non-pay status. A total of four hundred (400) hours of annual leave is the maximum that can be carried over from one year to the next based on the bargaining unit employees date of hire. When extreme operational matters and/or emergencies occur and the bargaining member had requested leave and the leave has been approved, an extension may be granted to use the leave at a later time. The extension to use this approved leave shall be granted by the EMS Chief (or his designee). Bargaining unit members who are granted this extension shall have ninety (90) days from the date of approval by the EMS Chief (or his designee) to take the leave or it will be forfeited.

3.  Annual Leave Records:

Annual leave accumulation and usage records for all bargaining unit members shall be maintained by the Department and shall be based upon the leave information submitted by the bargaining unit employees and authorized by Supervisor on each payroll. No annual leave shall be granted except on the basis of such leave records.

4.  Approval of Annual Leave Requests:

Requests for annual leave by eligible bargaining unit members shall be made seven (7) days in advance. Leave must be scheduled and approved by the appropriate EMS Supervisor in advance of time to be taken.

5.  Computation of Annual Leave Charges:

The full time bargaining unit members shall charge absences from work to annual leave according to the actual number of leave hours used.

6.  Payment for Unused Leave Upon Separation of Service or Death:

Upon separation from the County Service, eligible collective bargaining unit members shall receive a lump sum payment for all accrued and unused annual leave up to a maximum of (400) hours. Such payment shall be made at the bargaining member's regular rate of pay at time of separation.

11

7. Disciplinary Actions:

>  Bargaining unit members who are disciplined in accordance with this contract shall not be permitted to use any leave in lieu of disciplinary action.

8. For the purposes of annual leave the rollover date will be the calendar year.

8.03    Sick Leave

1. Sick leave shall be accrued at a rate of eight (8) hours a month for full time bargaining unit members.  There is no maximum accumulation of sick leave.

2. When a full time bargaining unit member is separated from employment due to retirement (as defined by the FRS Employer Handbook), the collective bargaining unit member shall be entitled to receive a lump sum payment for up to one-half of the accumulated sick leave to his credit prior to the effective date of the retirement up to a maximum of 1,040 hours.

3. Layoffs

    When a full time bargaining unit member's service is separated due to a layoff, they shall be entitled to be paid for one-half of the accumulated sick leave to his credit prior to his separation after a fifteen-calendar day period elapsed pending reinstatement.  A maximum payment of 1,040 hours of sick leave will be made.

4. Bargaining unit members that use seven (7) **incidents** of unscheduled sick leave within the time period of the start of an annual evaluation process until the end of that same annual evaluation time period shall receive a "does not meet standards" on the attendance portion of the collective bargaining unit member's annual evaluation.   Unscheduled sick leave is any sick leave requested less than 24 hours prior to the start of the collective bargaining unit members normally scheduled shift in which they are requesting the sick leave. FMLA or bereavement leave shall not be defined as unscheduled sick leave. Sick Leave shall be utilized in quarter-hour increments.

8.04    Compensatory Leave

1. The maximum accumulation for compensatory leave for collective bargaining unit members shall be 240 hours.  All compensatory leave not used or paid by the last paycheck before August 31 will be paid or used by September 30 of the year in which the leave was accumulated.

## ARTICLE 9
## PERSONNEL RECORDS

### Personnel File

A.     There shall be only one official personnel file for each employee in which commendatory or derogatory information is recorded.  This record shall be maintained in the Escambia County Human Resources Office.

B.     A collective bargaining unit member will have the right to review and or receive a copy of his/her own official personnel file at reasonable times, when requested by the collective bargaining unit member.

## ARTICLE 10
## HOURS OF WORK AND OVERTIME

### 10.01  Overtime in General
Except where expressly stated in this policy, overtime compensation in the form of overtime pay or compensatory leave in lieu of overtime pay will only be paid after the employee has actually worked a minimum of forty (40) hours in the work week.  Calculation and payment of overtime shall be made in accordance with federal Fair Labor Standards Act. However, paid holidays and union time shall be considered as time worked for determining overtime eligibility.

### 10.02  Authorized Overtime
The Department Director or Division Manager shall authorize overtime when it is determined to be necessary to meet essential operating needs.   In order to receive compensation for overtime work performed, authorization from the Department Director or Division Manager is required. All employees are required to work overtime as directed.

### 10.03  On Call
The County agrees to abide by the Fair Labor Standards Act.

## Article 11
## MANAGEMENT RIGHTS

It is the right of the public employer to determine unilaterally the purpose of each of its constituent agencies, set standards of services to be offered to the public, and exercise control and discretion over its organization and operations. It is also the rights of the public employer to direct its employees, take disciplinary action for just cause, and relieve its employees from duty because of lack of work or for

13

other legitimate reasons.  Communications by the union with any department or division of the BCC shall be coordinated in advance through Human Resources.

## ARTICLE 12
## SALARIES

**This Agreement shall be reopened on the issue of salaries (and other issues) in accordance with Article 19.**

## ARTICLE 13
## REDUCTION IN FORCE

When it becomes necessary to reduce the work force, employees will be laid off according to seniority within the job classification, within the division, with the least senior employee being laid off first.  When called back, inverse order will be used if the call back occurs within six (6) months from the date of the reduction in force.  Notice of recall will be by certified mail and the employee will have fourteen (14) days to respond from date of receipt.  The employee is responsible for keeping the County informed of his/her current address.

## ARTICLE 14
## RETIREMENT BENEFITS

The County agrees to continue the Florida Retirement System Plan as defined by state law and the same Escambia County Retirement Incentive Plan as provided to all other County employees.

## ARTICLE 15
## MISCELLANEOUS BENEFITS

15.01 Employee Assistance Program
The County shall provide an Employee Assistance Program (EAP) as offered to all other County employees.

15.02 Uniforms
Employees shall be provided uniforms in accordance with the current Division Policy on uniforms

15.03 Holidays
A. Employees shall be entitled to holidays, and shall receive holiday pay, in accordance with the County Policy on holidays.

14

B. ***Relief employees who work on a scheduled holiday will be paid one and one-half their regular hourly rate for hours worked on the holiday.***

15.04  Shift Swaps
Employees shall be entitled to swap shifts in accordance with the Division Policy on shift swaps that was implemented on 5/1/2011 and revised on 8/01/2013.

15.05  Maternity Accommodation
Full time collective bargaining members may request a light duty assignment if pregnant and such an assignment is recommended by her physician.


# ARTICLE 16
# INSURANCE

The BCC shall provide group Health, Accidental Death and Dismemberment (AD&D), Long Term Disability (LTD) and Life Insurance to eligible Bargaining Unit members at the same level and cost of benefits provided to other regular full time BCC employees.


# ARTICLE 17
# PAYDAYS

17.01  Dates of Pay
All County employees shall be paid every two weeks, as agreed upon by the BCC and as directed by the Office of Finance, Clerk of Court.

17.02 Direct Deposit
Employees wishing to have their paychecks sent directly to their bank or credit union shall contact the payroll office.


# ARTICLE 18
# PROBATIONARY PERIOD

18.01  Definition
The probationary period as herein established is to provide a trial period during which the County has the opportunity to judge the new employee's ability, competency, fitness and other qualifications to perform the work for which he/she is employed.  Employees hired following the effective date of the ratification of this contract will have a probationary period for ***six (6) months after the completion of orientation***.  Each day of absence will be added to the employee's probationary period.

18.02  Employee Rights
All rights, benefits, privileges, including the application of grievances and arbitration procedures shall be applicable to probationary employees except for matters involving discipline, performance evaluation, or the decision to dismiss the probationary employee.

## ARTICLE 19
## DURATION OF AGREEMENT

This Agreement shall be effective from August 1, 2016 through September 30, 2019 with all terms and provisions in force from the date the Agreement is ratified by both parties.  For contract years 2017/2018 and 2018/2019 this Agreement may be reopened for interim negotiations on wages and insurance (Article 16) and two additional articles by each party.  Each party shall serve notice of the intent to reopen contract articles no later than January 15, 2017 for the 2017/2018 contract year and January 15, 2018 for the 2018/2019 contract year.

Any unresolved articles properly opened as subjects of negotiations may be resolved in accordance with the impasse procedures set forth in Section 447, Florida Statutes.

## ARTICLE 20
## TOTALITY OF AGREEMENT

**20.01 Limitation.**
(a) The Board and the Union acknowledge that during the negotiations that resulted in this Agreement, the parties had the unlimited right and opportunity to present demands and proposals with respect to any and all matters lawfully subject to collective bargaining.
(b) The Board and the Union further acknowledge that all of the understandings and agreements arrived at thereby are set forth in this Agreement, and that it will constitute the entire and sole Agreement between the parties for its duration.

**20.02 No Further Obligation to Bargain.**
The Board and the Union, during the term of this Agreement, voluntarily and unqualifiedly waive the right, and agree that the other will not be obligated, to bargain collectively with respect to any subject or matter, whether or not referred to or covered by this Agreement, except as provided in Article 3.05, even though such subject or matter may not have been within the knowledge or contemplation of the parties at the time they negotiated or signed this Agreement.

**20.03 Modifications.**
Nothing herein will, however, preclude the Board and the Union from mutually agreeing to alter, amend, supplement, delete, enlarge, or modify in writing any of the provisions of this Agreement.

17

**APPENDIX A**
**BARGAINING UNIT POSITIONS AND PAY ASSIGNMENT**

Emergency medical Specialist – EMT Full Time          $12.49 per hour

Emergency medical Specialist – EMT Relief          $12.49 per hour

Emergency medical Specialist – Paramedic Full Time          $16.00 per hour

Emergency medical Specialist – Paramedic Relief          $16.00 per hour

18

## APPENDIX B
## DUES CHECK-OFF AUTHORIZATION

REQUEST AND AUTHORIZATION FOR VOLUNTARY ALLOTMENT
OF COMPENSATION FOR PAYMENT OF EMPLOYEE ORGANIZATION DUES

NAME OF EMPLOYEE (Last, First, Middle)          (PLEASE PRINT)          SOCIAL SECURITY #
(X)                                                             (X)

HOME ADDRESS Street and Number)          (City and State)          ZIP CODE
( X )

COMPANY
(X)                                                                          UNIT

WORK LOCATION:

JOB _____          TITLE

I HEREBY AUTHORIZE THE DEDUCTION FROM MY PAY EACH PAY PERIOD OR THE FIRST
FULL PAY PERIOD OF EACH MONTH AN AMOUNT OF MONEY EQUAL TO THE REGULAR DUES
IN ACCORDANCE WITH ARRANGEMENTS WITH MY EMPLOYER.

SIGNATURE OF EMPLOYEE                                    DATE
(X)                                                             (X)

### Distribution of Copies:
ORIGINAL – Payroll
Copy – Human Resources

19

## APPENDIX C
## TERMINATION OF UNION DUES

# M E M O R A N D U M
**TO:**          **Human Resources**


**FROM:**      _____          _____
             **Employee Name (Print Clearly)**
**Department/Division**


**DATE:**      _____


**RE:**          **Termination of Union Dues**


In accordance with the Collective Bargaining Agreement between Escambia County
Board of County Commissioner and the Union, this written notice is provided to revoke
my prior check-off authorization for deduction of Union dues. I understand the
termination of Union dues will become effective not later than thirty (30) days from
receipt of this notice.

Your assistance is greatly appreciated.

Sincerely,



(Employee Signature)

**SSN:** _____--_____--_____



Cc:   Union
      Payroll


20

**Appendix D**
**Memorandums of Understanding**

A.  Pay increase to $16.00 per hour for Paramedics

B.  Jail Assignment Supplemental Pay

**INTERNATIONAL ASSOCIATION OF EMTs AND PARAMEDICS**
**LOCAL R5-325**

This is to certify that the members of the above collective bargaining unit ratified
this agreement on the __17__ th day of __August__ 2016.

International Association of EMTs and Paramedics

_____
Michael Jenkins
President

_____
Union Witness

This is to certify that the Board of County Commissioners of Escambia
County, Florida ratified this agreement on the 1st day of September, 2016.

BOARD OF COUNTY COMMISSIONERS
OF ESCAMBIA COUNTY, FLORIDA

_____
Grover C. Robinson, IV, Chairman

__9/27/2016__
Date Executed

ATTEST: Pam Childers
Clerk of the Circuit Court

_____

Deputy Clerk
Adopted: __September 1__, 2016

_____
Michael Mattimore
Allen, Norton, & Blue, P.A.

22