## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA

MATHEW SELOVER,

  Plaintiff,

v.         Case No.: 3-20-CV-04698-TKW-HTC

ESCAMBIA COUNTY BOARD
OF COUNTY COMMISSIONERS;
and RAYME EDLER,

  Defendants.

_____/

## DEFENDANT ESCAMBIA COUNTY BOARD OF COUNTY COMMISSIONER'S MOTION TO DISMISS COUNTS I, III, AND V OF PLAINTIFF'S COMPLAINT

Defendant, ESCAMBIA COUNTY BOARD OF COUNTY COMMISSIONERS (the "County"), hereby moves to dismiss Counts I, III, and V of Plaintiff, MATHEW SELOVER'S, Complaint. [D.E. 1 at Exhibit B] ("Compl.").

### I.  INTRODUCTION AND SUMMARY OF ARGUMENTS

On January 17, 2020, Plaintiff filed a five-count Complaint against Escambia County Board of County Commissioners and Dr. Rayme Edler ("Dr. Edler") in the Circuit Court for Florida's First Judicial District in and for Escambia County. [D.E. 1 at Exhibit "B"]. On March 11, 2020, the County filed a Notice of Removal of Plaintiff's Complaint to this Court. [D.E. 1]. In the Complaint, Plaintiff attempts to

allege violations of 42 U.S.C. § 1983, the First Amendment, the Fourteenth Amendment, and the Florida Private Whistleblower's Act.

Specifically, of the five (5) counts asserted in Plaintiff's Complaint, three (3) are against the County: Count I—Violation of Plaintiff's Fourteenth Amendment Due Process Rights, Count III—Unlawful Retaliation in Violation of the First and Fourteenth Amendments pursuant to 42 U.S.C. § 1983, and Count V—Unlawful Retaliation Pursuant to Florida Statute § 448.102. The County moves to dismiss Plaintiff's Counts I, III, and V because they fail to state a claim upon which relief can be granted.

As an initial matter, in Count V[1], Plaintiff impermissibly attempts to hold the County liable for violations of Florida Statute § 448.102. This statute is the private sector Whistle-blower's Act. *See Arrow Air, Inc. v. Walsh*, 645 So.2d 422, 423 (Fla.1994) (stating that the purpose of § 448.102 is to "protect **private** employees who report or refuse to assist employers who violate laws enacted to protect the public.") (emphasis added); *Wallace v. Sch. Bd. of Orange County*, Fla., 41 F. Supp. 2d 1321, 1331 (M.D. Fla. 1998). Florida's Private-Sector Whistleblower Act covers employees who work in the **private sector** and are employed by any **private** individual, firm, partnership, institution, corporation, or association.  §

---

[1] As to Count V, the County submits that this Court possesses supplemental jurisdiction for Count V under 28 U.S.C. § 1367(a) because the facts and circumstances central to Count V arise from the same operative facts that are in Counts I and III. Accordingly, this Court has jurisdiction over Count V of Plaintiff's Complaint.

448.101, Fla. Stat. (emphasis added).  As such, Florida Statute § 448.102 does not apply to governmental entities and does not apply to the County. *Id.*  Accordingly, Plaintiff's private sector Whistleblower's Act claim (Count V) should be dismissed with prejudice.

In addition, Plaintiff's §1983 claims against the County for violation of Plaintiff's due process rights under the 14th Amendment (Count I) and unlawful retaliation in violation of the First Amendment (Count III) fail to allege any facts whatsoever that would subject the County to liability since Plaintiff fails to establish there was a policy, practice, or custom that was the moving force of any alleged constitutional violation.

Plaintiff has merely attempted to hit a few of the "buzzwords" to bring a claim under the theory of municipal liability, but has offered nothing more than naked assertions surrounded by irrelevant facts to support those claims. Municipalities have only limited liability for alleged constitutional violations, and specific facts must be alleged to support such a claim. *See Monell v. Dep't of Soc. Services of City of New York*, 436 U.S. 658 (1978); *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).  Furthermore, Plaintiff has failed to establish that his subject speech was protected by the First Amendment.  As explained in more detail below, Plaintiff's Counts I and III fail to satisfy even the most liberal pleading standards and therefore should be dismissed.

Finally, Plaintiff's allegations relating to an alleged violation of procedural due process are vague, conclusory, and fail to specify the due process that Plaintiff was allegedly not afforded. In his Complaint, Plaintiff alleged that he was not afforded adequate notice for the quality assurance meeting on April 23, 2019. However, Plaintiff failed to assert specific allegations indicating why he was entitled to due process for said meeting. Indeed, Plaintiff's own admission indicated that he was not disciplined nor reprimanded at the April 23, 2019, meeting.  Moreover, Plaintiff's own allegations establish that the City did not demote him or agree to any disciplinary action against him.  *See* Compl. at ¶¶ 42, 45, 52.  Although Plaintiff alleges Edler recommended demotion and termination, the allegations establish that these events never occurred.  *Id.*

Further, Plaintiff failed to allege that he followed the Collective Bargaining Agreement's ("CBA"), policies and procedures for filing a grievance. The CBA contains certain grievance procedures that Plaintiff must follow, and the CBA and the County's policies and procedures grant Plaintiff the right to appeal a disciplinary action against him. However, Plaintiff failed to allege any specific facts indicating that he exhausted these administrative remedies before initiating this lawsuit.  *See generally*, Compl.  Consequently, Plaintiff has not suffered a procedural due process violation.

For these reasons, Plaintiff's Complaint asserts barebones allegations that fail to meet established pleading standards and fail to state a claim as to Counts I, III, and V.

## II.   <u>FACTUAL BACKGROUND</u>

Plaintiff alleges that Escambia County Board of County Commissioners is a local government entity which governs the County of Escambia, in the state of Florida.  Compl. at ¶ 2. Plaintiff began working for Escambia County in February 2012. Compl. at ¶ 4. At all times material hereto, Plaintiff was subject to the collective bargaining agreement between the County and the International Association of EMTs and Paramedics. *Id.* at ¶ 9.  On April 23, 2019, Plaintiff attended a non-disciplinary meeting with his union representative, Ivey Lett.  *Id.* at ¶¶ 16, 20, and 26.

Shortly after the QA meeting, Plaintiff filed a complaint with HR against Defendant Edler, and allegedly expressed concerns with the QA meeting.  Compl. at ¶ 28.  In particular, Plaintiff alleged that he complained that he did not have adequate notice of the meeting and that the QA board was not impartial.  *Id.* He further alleged  that he complained that Dr. Edler brought up matters that were almost a year old and/or were already resolved, the QA board was not comprised of representatives who usually serve on the board, and that he believed that the board was called in retaliation for Plaintiff reporting Frando and Owens.  *Id.*

On May 13, 2019, Dr. Edler allegedly declared that Plaintiff was unable to work as a paramedic under her license. *Id.* at ¶ 31.  On May 15, 2019, Selover was placed on administrative duty. *Id.* at ¶ 35.  The Interim Public Safety Director, John Dosh, ("Dosh") advised Defendant Edler to provide a Performance Improvement Plan ("PIP") for Selover. *Id*. at ¶ 41.  However, Plaintiff alleges that rather than provide a PIP, Defendant Edler recommended first that Plaintiff be demoted to an Emergency Medical Technician ("EMT"), and then that Plaintiff be terminated. *Id*. Significantly, it was determined that Edler did not have the authority to demote, terminate, or otherwise discipline Plaintiff. *Id.* at ¶ 42.  Moreover, although Plaintiff alleges that Edler attempted to demote him, it is clear that Plaintiff was never demoted and remained in his position as a paramedic. *Id.* at ¶ ¶ 41, 45.

## III.   **ARGUMENT & MEMORANDUM OF LAW**

### A. *Motion to Dismiss Standard*

In reviewing a motion to dismiss, the Court must accept the factual allegations of the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus,* 551 U.S. 89 (2007). However, "[t]o survive a motion to dismiss, a [c]omplaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed

factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Puig v. Miami-Dade County*, 09-20822-CIV, 2010 WL 1631896, at *1 (S.D. Fla. Jan. 13, 2010) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 561 (2007).

As the Supreme Court explained in *Ashcroft v. Iqbal*, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. at 678. Therefore, legal conclusions couched as factual allegations are not sufficient to state a claim. *See Twombly*, 550 U.S. at 555.

"In deciding a Rule 12(b)(6) motion to dismiss, the Court limits its consideration to well-pleaded factual allegations, documents central to, or referenced in, the complaint, and matters judicially noticed." *Securities and Exchange Commission v. Kingdom Legacy General Partner, LLC*, 2017 WL 417093, at *4 (M.D. Fla. Jan. 31, 2017) (citing *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004)); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)("courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.")

**B.** ***Plaintiff's Counts I and III Should be Dismissed because Plaintiff cannot Establish Municipal Liability***

As an initial matter, Counts I and III require Plaintiff to first establish municipal liability pursuant to 42 U.S.C. § 1983.  Critically, in order to establish a due process violation or first amendment retaliation in violation of § 1983, municipal liability must be established because both claims attempt to hold the County liable for the actions of its employees.  It is well settled that a municipality, such as the County, may not be held vicariously liable for the acts of its employees under 42 U.S.C. § 1983. *See Monell v. Dep't of Soc. Services of City of New York*, 436 U.S. 658 (1978); *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).

Rather, to state a claim against the County under Section 1983, Plaintiff must allege he suffered a deprivation of his rights pursuant to an official policy or custom of the County. *Id.* at 694; *see also Brown v. City of Fort Lauderdale,* 923 F.2d 1474, 1479 (11th Cir. 1991) ("It is well established that a municipality may be held liable under § 1983 only when the deprivation at issue was undertaken pursuant to city 'custom' or 'policy,' and not simply on the basis of *respondeat superior*."); *DeMartini v. Town of Gulf Stream*, 942 F.3d 1277, 1307 n.21 (11th Cir. 2019) ("[A]ll plaintiffs who sue a municipality under [section] 1983 must show that execution of the municipality's policy or custom caused the alleged injury.") *Cannon v. Macon County, et al.,* 1 F 3d 1558, 1565 (11th Cir. 1993) (affirming dismissal of complaint

against a county where there were no allegations of facts to indicate that the alleged violation of due process rights resulted from a county policy or practice).

Municipal liability is limited to acts the municipality has officially sanctioned or ordered.  *Carter v. City of Melbourne, Fla.,* 731 F.3d 1161, 1166 (11th Cir. 2013); *Pembaur v. City of Cincinnati,* 475 U.S. 469, 480, (1986).  In order to determine whether a policy or action represents official municipal policy, the court must determine whether the decision at issue was made by "those officials or governmental bodies who speak with final policymaking authority for the local governmental actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue." *Jett v. Dallas Indep. Sch. Dist.,* 491 U.S. 701, 737 (1989). Here, Plaintiff's Counts I and III fail because he has failed to allege that he suffered a deprivation of his rights pursuant to an official policy or custom of the County.

### C. Plaintiff fails to Identify an Unlawful official Policy, Practice, or Custom of the County

To state a §1983 claim against a municipality, a plaintiff must show: "(1) that [his] constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). "Liability arises when a municipal "custom" or "policy," either

formal or informal, condones employee misconduct." *Howard v. City of Robertsdale,* 168 Fed. Appx. 883, 890 (11th Cir. 2006).

It appears that Plaintiff is attempting to establish that the County has a "pattern and practice of violating the [employee discipline and retaliation] policies and refusing to adhere to the policies. Compl. ¶ 59.  However, the Complaint is devoid of any specific facts which would establish that there is such long established practice or custom of not following their own policy in the imposition of discipline. *Id.* at ¶¶ 36, 60, 64. However, "liability can still be imposed on a municipality based on "governmental 'custom' even though such a custom has not received formal approval through the body's official decision-making channels." *See Griffin v. City of Opa-Locka,* 261 F.3d 1295, 1308 (11th Cir. 2001).

The Eleventh Circuit has recognized two situations giving rise to an informal custom or policy. *Griffin v. City of Opa-Locka,* 261 F.3d 1295, 1308 (11th Cir. 2001). The first is when a practice is so widespread that it "is so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Id.* It has long been the rule that only a "long-standing and widespread practice" will be deemed authorized by policymakers, sufficient to give rise to municipal liability. *Brown v. City of Ft. Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991). The second is when a municipality fails to correct constitutionally offensive actions of its employees and

tacitly authorizes employee misconduct or displays deliberate indifference towards it. *Id.*

      i.    ***Plaintiff fails to allege a Widespread Pattern or Policy that was the Moving Force behind the Alleged Constitutional Deprivation***

In the instant matter, Plaintiff fails to sufficiently allege that he was deprived of a constitutional right; however, even if he was deprived of a right, the Complaint fails to show that the County's customs, policies, or practices were the moving force that caused the alleged constitutional deprivation. In the Complaint, Plaintiff alleges—in a conclusory fashion—that the County has a "long history of ignoring ECBCC policies and procedures regarding discipline, retaliation, and complaints" and a "pattern and practice of ignoring their HR policies and procedures, burying complaints in the Emergency Medical Services, and protecting Dr. Edler." Compl. at ¶¶ 65-66.

However, these allegations are nothing more than more than mere conclusory statements unsupported by facts that fail to establish municipal liability. *Id.* at ¶ 65 (a)-(d); *See Bing v. Landreville,* 3:16-CV-1140-J-34JRK, 2018 WL 1121610, at *5 (M.D. Fla. Mar. 1, 2018). Plaintiff cannot rely solely upon his own alleged constitutional violation as proof of a widespread practice, even where multiple governmental employees were involved in his alleged deprivation. *Craig v. Floyd County, Ga.*, 643 F.3d 1306, 1310-11 (11th Cir. 2011) ("A pattern of similar constitutional violations ... is 'ordinarily necessary.'")

For example, in support of his Complaint, Plaintiff alleges the following allegations to establish a policy, custom, or practice of the County:

> Defendant ECBCC has expressly admitted failure to follow its own policies and procedures, has indicated to management personnel that it requires assurances that policies and procedures are being followed…
>
> In or about April 2018, Defendant ECBCC expressly admitted it needed to revise its policies and procedures because same was not being followed, yet Defendant ECBCC has failed to take proper action to demand compliance;
>
> There are at least five other instances since May 2018, when Edler assumed her position, wherein Defendants failed to give the employee proper notice, failed to timely investigate, and failed to abide by the escalating disciplinary process;
>
> Since 2018, at least 5 other complaints were filed against Defendant Edler. In each of those Complaints, the Defendants have failed to follow their HR/grievance/hostile work environment policies. In each of these 5 Complaints, the Defendants have effectively buried the complaints, failed to issue opinions on the complaints, and, based on information and belief, failed to properly inform the complainant of the status or finding of the complaint. Like the Plaintiff's complaint, these other 5 complaints were against Defendant Edler.  Further, like the Plaintiff, the Defendant Edler subsequently filed a complaint with the DOH against all of those that filed a complaint against her.[2]

Compl. at ¶¶ 65(a)-(d).

With respect to failing to follow policies in general, the allegations are not sufficient to establish a widespread practice of failing to adhere to policies that result in actual constitutional violations.  Compl. ¶ 65(a)-(b).  Specifically, these

---

[2] It should be noted that four (4) of the individuals that allegedly filed complaints against Edler were arrested after a year long investigation into falsification of official records.

allegations fail to speak to the types of policies that the County allegedly violated. Accordingly, these alleged policies are not identified, referenced, or otherwise incorporated into the Complaint and the Court is left to interpret what policies Plaintiff was referring to. These vague assertions could mean a plethora of different types of policies that might be completely unrelated to the subject action and that fail to establish constitutional violations. *Id.* As such, these allegations fail to support Plaintiff's claim there was a widespread practice or policy of the County.

Furthermore, Plaintiff's allegations that there are five (5) other instances wherein Defendants failed to give the employee proper notice, failed to timely investigate, and failed to abide by the escalating disciplinary process also fails to establish there was a widespread practice or policy of the County. *Id.* Significantly, the Complaint fails to provide any other information as to whether these alleged five (5) instances relate to five (5) separate employees or whether they relate to Plaintiff. *Id*. at 65 (c)-(d).

Additionally, none of these alleged instances identified by Plaintiff "establish a pattern of ignoring the ECBCC policies and procedures" and there are no allegations that the prior alleged incidents were determined to be unjustified or unconstitutional. *Id.* In fact, the instances Plaintiff relies on *accentuates* Plaintiff's pleading deficiencies. Plaintiff fails to identify whether the alleged employee(s) identified in paragraph 65(c) were entitled to due process, were not provided due

process, and the specific discipline the employee(s) allegedly received without notice. *Id.* There is no indication or facts to support that due process rights of any of the employee(s) were violated. *Id.* at ¶ 65.

Critically, none of Plaintiff's allegations establish that any alleged violation of Plaintiff's alleged constitutional rights were a result of the County's alleged widespread practice or policy to "ignore policies and procedures." Compl. ¶¶ 1-89. In *Pozdol v. City of Miami*, the court held the only reason the plaintiff was able to establish a causal connection between the alleged constitutional violations and the alleged policy was because the plaintiff attached a letter from the U.S. Department of Justice to his response, which provided a detailed history of widespread abuse of constitutional violations by the Miami Police force in the immediate three prior years. 996 F.Supp. 2d 1290, 1299 (S.D. Fla. 2014). However, the court noted without the letter, the mere conclusory allegations that the department used excessive force would have been insufficient to establish a practice, policy, or custom of the City of Miami. *Id.* (emphasis added).

Similarly, here, Plaintiff's Complaint fails to allege a widespread practice, policy, or custom that was a moving force behind Plaintiff's alleged constitutional deprivation of due process or which was the moving force behind the alleged unlawful retaliation. Without more, Plaintiff's bare-bones allegations regarding "5 other instances" fails to plead sufficient facts to establish that there was a widespread

policy that was adopted by the County or a final policy maker to establish municipal liability.  *See generally* Compl.

In fact, the Complaint establishes that Plaintiff was not demoted, he remained in the position of paramedic, and there was no final policy maker of the County that ratified or endorsed any alleged unconstitutional violation.  *See generally* Compl.*; See also* Exhibit C attached to the Complaint (referring to plaintiff as "Paramedic Selover"). As such, Plaintiff cannot establish municipal liability and Counts I and III must be dismissed.

### D. *Count I Should be Dismissed because Plaintiff cannot Establish a Violation of Due Process*

"[A] § 1983 claim alleging a denial of procedural due process requires proof of three elements: (1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003) (citing *Cryder v. Oxendine,* 24 F.3d 175, 177 (11th Cir.1994)). A property interest in employment can be created via ordinance or contract but in either case, the sufficiency of the claim rests with reference to state law. *See Bishop v. Wood*, 426 U.S. 341, 344 (1976) (holding that North Carolina state law governed whether a public employee had a property interest in their job). "Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law rules or

understandings that secure certain benefits and that support claims of entitlement to those benefits." *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972).

Indeed, Florida has explained that "Public employment is a constitutionally protected property interest." *Joshua v. City of Gainesville*, 768 So.2d 432, 439 (Fla. 2000); *see also Hudson v. City of Riviera Beach*, 982 F.Supp.2d 1318 (S.D. Fla. 2013) (analyzing Florida law and finding that public employee had a property interest in his employment with the City based on his union contract and that employee had a right to an administrative hearing before discharge); *see also Metro. Dade County v. Sokolowski*, 439 So.2d 932, 934 (Fla. 3d DCA 1983) (holding that that Miami-Dade County code ordinance 2-47 afforded police officers entitlement to a constitutionally protected property interest).

Upon confirmation that a due process interest exists, and when a procedural due process violation has been alleged, the analysis becomes what type of procedural due process is required. *See Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965) and holding that the fundamental requirement of procedural due process is the opportunity to be heard "at a meaningful time and in a meaningful manner."). The Eldridge Court explained, however, that only "'some form of hearing' is required before an individual is finally deprived of a property interest." *See id.* (quoting *Wolff v. McDonnell*, 418 U.S. 539, 557-558 (1974)). By extension, "(D)ue process is flexible and calls for such

procedural protections as the particular situation demands." *Id*., at 334 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). Furthermore, a procedural due process violation is not complete "unless and until the state refuses to provide due process." *McKinney v. Pate*, 20 F.3d 1550, 1561 (11th Cir. 1994) (quoting *Zinermon v. Burch*, 494 U.S. 113, 123 (1990)).

"The state is obligated only to make available 'the means by which [the employee] can receive redress for the deprivations.'" *Id*. (quoting *Schaper v. City of Huntsville,* 813 F.2d 709, 715–16 (5th Cir. 1987) (quoting *Parratt v. Taylor,* 451 U.S. 527, 543 (1981)). Indeed, "[a]ll that due process requires, the Court said, is a post-deprivation 'means of redress for property deprivations satisfying the requirements of procedural due process." *Id*. (quoting *Parratt*, 451 U.S. at 537); *see also Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (explaining that a post-deprivation hearing is likely sufficient to satisfy due process when a property interest less significant than an individual's livelihood is involved).

Here, Plaintiff alleged in his Complaint that he was given only fifteen minutes notice of the April 23, 2019, meeting, that he was not given an opportunity to respond to the matters discussed at that meeting, that he was not given proper notice of the alleged discipline against him, and that he was not afforded an opportunity to challenge the discipline allegedly imposed against him. *See* Compl. at ¶ 28, 86(a), & 86(e).  Further, despite never being "formally accused" of wrongdoing, Plaintiff

alleges that on May 15, 2019, he was informed that he could not work as a paramedic, was placed on administrative duty, was not allowed to work overtime, and as a result, he suffered a loss of seniority, he missed out on significant overtime payment, and opportunities for career advancement. *See id*. at ¶ 34-35, 58, & 67.

However, Plaintiff's Complaint fail to provide any specific, factual allegations to support his contention that he suffered a due process violation. In fact, some of Plaintiff's own admissions and exhibits attached to the Complaint contradict his allegations that he suffered a procedural due process violation. For example, the Complaint fails to identify, elaborate, or otherwise explain what the term "formally accused" means; the Complaint also fails to indicate how Plaintiff was informed that he was allegedly being disciplined.

Likewise, the Complaint is devoid of any specific factual allegations identifying what job duties Plaintiff had before and after being allegedly placed on administrative duty.  Compl. at ¶¶ 34,35, 42. In addition, the Complaint fails to plead any facts indicating the amount of overtime hours that Plaintiff worked before being placed on administrative duty.  *Id.* at ¶¶34, 35, and 42.

Further, Plaintiff's allegations that only fifteen minutes notice before the April 23, 2019, meeting was insufficient and that he had no opportunity to respond are superfluous. Indeed, Plaintiff admitted that he was aware of the matters that were discussed at that meeting because he plead that the matter discussed were almost a

year old or had already been resolved. *See id*. at ¶ 28. By Plaintiff's own admission, he had already been informed and was otherwise aware of the matters that were discussed at the April 23, 2019, meeting. *See id*. What's more, Plaintiff either had ample opportunity to respond to same because the matters were almost a year old or Plaintiff already responded to same because the matters were resolved. *Id.*

However, even if the Court finds that such notice and opportunity to respond were insufficient, Plaintiff's own admission refutes any alleged procedural due process violation relating to the April 23, 2019, meeting because Plaintiff was advised that the meeting was non-disciplinary in nature. *Id.* at ¶19. It is an axiomatic principle of law that only "some form of hearing" is required *before* an individual is *finally* deprived of a property interest. *See Eldrige*, 424 U.S. 333 (1976).

Here, Plaintiff was given a hearing to discuss matters that he had already been informed of or was otherwise aware of for almost one year or that had already been resolved. Further, he was not deprived, in any capacity, of his job while at the April 23, 2019, meeting because same was non-disciplinary. By extension, even if this meeting was disciplinary, Plaintiff was given ample time to respond to the matters discussed at the April 23, 2019. Indeed, Plaintiff had known about these matters for almost a year and waited until May 1, 2019, to respond via his human resources complaint. *See* Compl. at ¶ 28. Consequently, any allegation that Plaintiff suffered a procedural due process violation as to the April 23, 2019, meeting is without merit.

In addition, any allegations that Plaintiff suffered a procedural due process violation as to the discipline that he was informed of on May 15, 2019, are likewise without merit. Although Dr. Edler and other representatives of Escambia County met on May 13, 2019, to discuss the May 1, 2019, human resources complaint filed by Plaintiff and Plaintiff was not notified of such meeting before Plaintiff was allegedly disciplined on May 15, 2019, Plaintiff did not suffer a procedural due process violation because he had appellate rights available to him under the County Commissioners Policies and Procedures and the Collective Bargaining Agreement—both of which are attached to the Complaint. *See* Compl. At Ex. D & Ex. E.

Notably, Plaintiff alleges in his Complaint that he was not afforded an opportunity to challenge the discipline that was imposed against him. *See* Compl, at ¶ 86(f). Yet, Exhibits D and E attached to the Complaint contradict this allegation directly. Tellingly, whenever a discrepancy exists between the allegations in a pleading and the supporting exhibits attached thereto, the exhibits control to resolve any discrepancies. *See Griffin Indus., Inc. v. Irvin,* 496 F.3d 1189, 1205–06 (11th Cir.2007) ("[W]hen the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern.").

Here, the County Commissioners' human resources policies and procedures specifically provide the Plaintiff rights to appeal any discipline against him that

could result in adverse action under *either* the Merit System Protection Board with Escambia County *or* the Plaintiff's rights under the collective bargaining agreement. *See* Compl. Ex. D, ¶ 72, § 23.5. Indeed, the collective bargaining agreement contains its own separate and distinct procedures for which Plaintiff has an opportunity to file a grievance and appeal the alleged discipline against him. *See* Compl., Ex. E, Art. 5.

However, Plaintiff's Complaint is devoid of any factual allegations that he availed himself, or attempted to avail himself, to the rights available to him under either the County Commissioners' policies and procedures or the grievance procedures under the collective bargaining agreement before he initiated formal litigation against the County. *See generally* Compl.

Although exhaustion of administrative remedies is not a prerequisite to state a claim for a procedural due process violation, a procedural due process violation is not complete "unless and until the state refuses to provide due process." *McKinney*, 20 F.3d at 1561 (11th Cir. 1994) (quoting *Burch*, 494 U.S. at 123). "The state is obligated only to make available 'the means by which [the employee] can receive redress for the deprivations.'" *Id*. (quoting *Schaper,* 813 F.2d at 715–16 (quoting *Parratt* 451 U.S. at 543 (1981)).

Indeed, "[a]ll that due process requires, the Court said, is a post-deprivation means of redress for property deprivations satisfying the requirements of procedural due process." *Id*. (quoting *Parratt*, 451 U.S. at 537); *see also Loudermill*, 470 U.S.

at 542 (explaining that a post-deprivation hearing is likely sufficient to satisfy due process when a property interest less significant than an individual's livelihood is involved).

Here, via its policies and procedures, and by extension, the CBA, the County has given Plaintiff not one, but *two* means of redress for alleged property deprivations. *See* Compl., Exhibit D, ¶ 72, section 23.5; *see also* Compl., Exhibit E, Art. 5. Given that the County has provided Plaintiff with these means of redress for his alleged demotion, the County has complied with their constitutional requirements to provide Plaintiff sufficient procedural due process. *See Loudermill*, 470 U.S. at 542 (explaining that a post-deprivation hearing is likely sufficient to satisfy due process when a property interest less significant than an individual's livelihood is involved).

Consequently, because the Complaint is devoid of any allegations indicating that Plaintiff has availed himself to either of these means of redress and that neither were effective to provide the relief he sought, Plaintiff has failed to state a claim for a procedural due process violation against the County.

**E.** *Plaintiff's Count III Should be Dismissed as Plaintiff Does Not Allege Any Speech that Constitutes a matter of Public Concern to Establish First Amendment Protection*

As a government employee, Plaintiff does not enjoy an absolute right to freedom of speech. *See Bryson v. City of Waycross,* 888 F.2d 1562, 1565 (11th

Cir.1989) ("Although the law is well-established that the state may not demote or discharge a public employee in retaliation for speech protected under the first amendment, a public employee's right to freedom of speech is not absolute."). "To establish a prima facie case of First Amendment retaliation, the employee must show that (1) his speech relates to a matter of public concern, (2) his free speech interests outweigh the public employer's interest in efficiently fulfilling its responsibilities, and (3) the speech played a substantial or motivating role in the employer's decision to take the adverse action." *Smith v. City of Tallahassee*, 789 Fed. Appx. 783, 786-787 (11th Cir. 2019).

For speech to rise to the level of public concern, the government employee's speech must "'relat[e] to any matter of political, social or other concern to the community.'" *Stanley v. City of Dalton, Ga.*, 219 F.3d 1280, 1288 (11th Cir. 2000) (quoting *Connick v. Meyers*, 461 U.S. 138, 146 (1983)). To determine whether that speech is about a matter of public concern, the "main thrust" of the speech must be examined, including "the content, form, and context of a given statement, as revealed by the whole record." *Id.* at 1288 (quoting *Morgan v. Ford*, 6 F.3d 750, 755 (11th Cir. 1993) and quoting *Connick*, 461 U.S. at 147-148).

"When there is a personal element to the speech, complaints of wrongdoing within a public agency may not constitute speech on a matter of public concern." *Id.*; *see also Maggio v. Sipple*, 211 F.3d 1346, 1352 (11th Cir. 2000) (holding that a

public employee's speech did not rise to the level of public concern because the speech was not directed toward the public and the speech was comprised of the employee's complaints against her supervisor). Moreover, "if the speech at issue is personal in nature, and 'cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment.'" *Akins v. Fulton County, Ga.,* 420 F.3d 1293, 1303 (11th Cir. 2005) (quoting *Connick v. Myers*, 461 U.S. 138, 146 (1983)).

Even if a public employee's speech is about matters that the public might be interested in, for that speech to rise to the level of public concern, it must be directed specifically to the public such that it raises issues of concern amongst the public. *See Maggio*, 211 F.3d at 755 (holding that the main thrust of the government employee's speech on agency's internal policies and procedures was to promote a private interest and not raise issues of public concern); *see also Morgan v. Ford*, 6 F.3d 750, 754 (11th Cir. 1993) (finding that the plaintiff's speech about sexual harassment complaints regarding her supervisor was not speech on a matter of public concern because her speech was not intended to raise issues of public concern, instead, the speech served to further her own private interests).

Here, as an initial matter, Plaintiff failed to attach the May 1, 2019, human resources complaint against the County and Dr. Edler to his Complaint. By extension, the Complaint fails to quote, identify, reference, or otherwise incorporate the alleged speech within the human resources complaint that Plaintiff seeks protection for under the First Amendment. Consequently, Count III of Plaintiff's Complaint should be dismissed on this matter alone.

However, even if Plaintiff had attached his human resources complaint, or had quoted therefrom without attaching same, the speech does not relate to social, political, or other matters of public concern. Indeed, Plaintiff's only conclusory allegation that the speech should be afforded First Amendment protection is that the speech allegedly concerns the policies, practices, and procedures implemented by the County and Dr. Edler. *See* Pl. Compl. ¶ 100. In addition, Plaintiff alleged that the human resources complaint "was intended to seek redress for the procedural due process violations apparent in the circumstances surrounding the QA [April 23, 2019,] meeting." *See id.* ¶ 101. The Complaint is otherwise devoid of any allegations indicating that Plaintiff's speech rose to the level of public concern. *See generally id.*

As the Court held in *Maggio*, even if the content of the speech might rise to the level of public concern, that speech must be directed toward the public. *See Maggio*, 211 F.3d at 755.  By extension, as the Court held in *Morgan*, speech that

serves to promote private, personal interests fails to rise to the level of public concern. *Morgan v. Ford*, 6 F.3d 750, 754 (11th Cir. 1993).

The Eleventh Circuit has found government-employee speech to rise to the level of public concern when the speech was directed to the public and it revolved around matters of public concern. *See Cooper v. Smith*, 89 F.3d 761, 765 (11th Cir. 1996) (finding that government employee's speech on a public investigation into police corruption was speech on a matter of public concern); *see also McCullars v. Maloy*, 617CV1587ORL40GJK, 2018 WL 6618536, at *5 (M.D. Fla. Dec. 18, 2018), clarified on denial of reconsideration, 617CV1587ORL40GJK, 2019 WL 130363 (M.D. Fla. Jan. 8, 2019) (finding that plaintiff's social media posts providing her opinion on a prosecutor's public statement was speech on a matter of public concern because it was directed toward the public to bring awareness to matters of public concern).  Here, there are no allegations that the speech was directed to the public or that the speech was for any other purpose than Plaintiff's own self-interest. *See generally* Compl.

Furthermore, courts in this Circuit have held that government-employee speech does not rise to the level of public concern when it centers on promoting personal matters and internal issues. *See Battle v. Board of Regents for Georgia*, 468 F.3d 755, 761-762 (11th Cir. 2006) (finding that plaintiff, a government employee, was speaking as an employee and that her speech was not a matter of public concern

26

because it centered on her job duties checking for fraud); *see also Vila v. Padron*, 484 F.3d 1334, 1339-1340 (11th Cir. 2007) (holding that government employee plaintiff's speech about potential illegal or unethical behavior of other government employees was not made as a citizen on a matter of public concern). Accordingly, Plaintiff cannot establish that he directed his speech towards the public or that the purpose of his speech was to raise issues of public concern.

Here, Plaintiff failed to incorporate the alleged speech he claims is protected by the First Amendment. However, even if Plaintiff had attached or incorporated the specific speech, his retaliation claim still fails since the allegations in the Complaint establish that the subject speech revolves around Plaintiff's personal interests in seeking personal redress for claims against him alone. For both reasons, independently or conjunctively, Count III of Plaintiff's Complaint must be dismissed.

### F. *Count V should be Dismissed with Prejudice as the County is not Subject to the Provisions of Florida Statute § 448.102*

Plaintiff's Count V against the County must be dismissed as the provisions of § 448.102(1), Fla. Stat., do not apply to governmental entities and, as such, do not apply to the County. Specifically, the private sector Whistle-Blower's Act "prohibits **private sector employers** from taking retaliatory personnel action against employees who "blow the whistle" on employers who violate the law or against employees who refuse to participate in violations of the law." *Arrow Air,*

*Inc. v. Walsh,* 645 So. 2d 422, 423 (Fla. 1994). (emphasis added). § 448.102, Fla.

Stat., states in relevant part:

> An employer may not take any retaliatory personnel action against an employee because the employee has:
>
> (1) Disclosed, or threatened to disclose, to any appropriate governmental agency, under oath, in writing, an activity, policy, or practice of the employer that is in violation of a law, rule, or regulation. However, this subsection does not apply unless the employee has, in writing, brought the activity, policy, or practice to the attention of a supervisor or the employer and has afforded the employer a reasonable opportunity to correct the activity, policy, or practice.
>
> (2) Provided information to, or testified before, any appropriate governmental agency, person, or entity conducting an investigation, hearing, or inquiry into an alleged violation of a law, rule, or regulation by the employer.
>
> (3) Objected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation.

However, pursuant to § 448.101, Fla. Stat., the term "employer" as used in

§§448.101-448.105, Fla. Stat., means "any **private** individual, firm, partnership,

institution, corporation, or association that employs ten or more persons." (emphasis

added). In *Wallace v. School Bd. of Orange County*, Fla., M.D.Fla.1998, 41

F.Supp.2d 1321, a former school bus driver was terminated and brought suit against

the school board alleging that he was terminated in violation of the Private sector

Whistleblower's Act.  The Court in *Wallace* found that the private Whistleblower's

Act, § 448.102, Fla. Stat., did not apply because the school board was a

governmental entity. *Id.* Similarly, Selover, an Escambia County employee, seeks to bring a private whistleblower action against Escambia County, a governmental entity. *See generally* Compl. However, the Private Whistleblower's Act does not apply to governmental entities. Accordingly, Plaintiff's claim should be dismissed with prejudice.

Moreover, even if Plaintiff were to attempt to bring this cause of action under Florida's Public Whistleblower Act, Plaintiff's claim would still fail. Florida's Public Whistleblower Act makes clear that the information disclosed by an employee must include "[a]ny violation or suspected violation of any federal state, or local law, rule, or regulation committed by an employee or agent of agency ... which creates and presents a substantial and specific danger to the public's health, safety, or welfare." Fla. Stat. § 112.3187(5)(a).

In addition, the information must be disclosed "in a written and signed complaint" to the "chief executive officer" of the agency, or "other appropriate local official." Fla. Stat. § 112.3187(6); *See also Crouch v. Pub. Serv. Com'n,* 913 So. 2d 111, 111 (Fla. 1st DCA 2005) (complaints to supervisors were required to be in writing, employee did not ask supervisors to submit his complaints to inspector general, and supervisors did not promise to do so, but rather chose to do so on their own initiative and therefore employee not protected by whistleblower act).

Here, the complaint made by Selover does not create and present a substantial and specific danger to the public's health, safety, or welfare. Compl. at ¶ 28.  In addition, Plaintiff's complaint regarding Edler does not meet the notice requirements of Florida Statute Section 112.3187(6) because it was addressed to Human Resources and not a local official.  Compl. at ¶ 28; *Castro v. Sch. Bd. of Manatee County, Fla.,* 903 F. Supp. 2d 1290, 1303 (M.D. Fla. 2012) (email did not meet the notice requirements of Florida Statute § 112.3187(6) because it was addressed to an official with the U.S. Department of Education, and not a local School Board official). Accordingly, even if Plaintiff had brought Count V pursuant to the Public Whistleblower Act his claim would still fail as he cannot establish he engaged in a statutorily protected activity and provided proper notice pursuant to Florida Statute §112.3187(6).

## **CONCLUSION**

Plaintiff's Complaint fails to state a claim for Counts I, III, and V.  Plaintiff's Count I and III fails to state a cause of action because Plaintiff has failed to establish municipal liability and as such Plaintiff's claim should be dismissed.  In addition, as to Count I, Plaintiff fails to state a claim for a procedural due process violation because none has occurred: Plaintiff had sufficient notice, an opportunity to respond, and voluntarily chose not to avail himself to the appellate rights available to him under the County's policies and procedures and the CBA. As to Count III, Plaintiff

fails to state a claim for First Amendment retaliation because Plaintiff's speech is not attached to the Complaint and even if it was, such speech would not rise to the level of public concern because it was not directed to the public and revolves around personal matters. As to Count V, Plaintiff fails to state a claim for public whistleblower retaliation because Plaintiff cannot assert a Private Whistleblower action against a governmental entity. Therefore, Counts I, III, and V of Plaintiff's Complaint should be dismissed.

WHEREFORE, Defendant, Escambia County Board of County Commissioners, respectfully requests this Court to enter an Order dismissing Count I, III, and V of Plaintiff's Complaint, and awarding any and all further relief that this Court deems just and proper.

## CERTIFICATION UNDER L.R. 7.1 (F)

Pursuant to Local Rule 7.1 (F), I hereby certify that the number of words in the Motion and Memorandum do not exceed 8,000 words.  The total number of words is 7,305.

Dated:  March 30, 2020

Respectively Submitted,
LYDECKER | DIAZ
Counsel for Escambia County
495 Grand Blvd.
Suite 206
Miramar Beach, FL
Telephone: (305) 416-3180

By: */s/ Katie Gudaitis*

KATIE GUDAITIS, ESQ.
Florida Bar No: 106954
kg@lydeckerdiaz.com
STEPHANIE PIDERMANN, ESQ.
FBN: 60414
sp@lydeckerdiaz.com

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing document with the Clerk of Court using CM/ECF on March 30, 2020. I also certify that a true and correct copy of the foregoing was served this day via transmission of Notices of Electronic Filing generated by CM/ECF on all counsel or parties of record on the Service List below.

/s/ *Katie Gudaitis*
Katie Gudaitis, Esq.

## SERVICE LIST

**J.J. TALBOTT, ESQ.**
Law Office of Jerimiah J. Talbott, P.A.
900 East Moreno Street
Pensacola, Florida 32503
jjtalbott@talbottlawfirm.com
Phone: (850) 437-9600
*Attorney for Plaintiff*

**GEORGE F. INDEST, III, ESQ.**
THE HEALTH LAW FIRM
1101 Douglas Avenue, Suite 1000
Altamonte, Florida 32714
gindest@thehealthlawfirm.com
Phone: (407) 331-6620
*Attorneys for Rayme Edler*