**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**


**MATHEW SELOVER,**

    **Plaintiff,**

**v.**                                     **Case No. 3:20cv04698-TKW-HTC**

**ESCAMBIA COUNTY BOARD**
**OF COMMISSIONERS** and
**RAYME EDLER,**

**Defendants.**
_____/


### DEFENDANT RAYME EDLER'S MOTION TO DISMISS THE COMPLAINT WITH INCORPORATED MEMORANDUME OF LAW

Pursuant to Rule 12(b)(6), *Fed.R.Civ.P.*, Defendant Rayme Edler ("Dr. Edler") moves to dismiss plaintiff Matthew Selover's complaint because it fails to state a claim on which relief may be granted, and because Dr. Edler is entitled to qualified immunity.

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT.

Plaintiff filed a five-count complaint against the Escambia County Board of County Commissioners ("the County") and Dr. Edler in the Circuit Court for Florida's First Judicial District in and for Escambia County.   The County timely removed the case to this Court.

Counts I and III assert claims under 42 USC §1983 against the County and Dr. Edler in her *official capacity* for alleged violations of the First and Fourteenth Amendments.  Plaintiff alleges that the County and Dr. Edler failed to give him due process and retaliated against him in violation of the First and Fourteenth Amendments to the United States constitution.  Counts II and IV

1

assert the same claims against Dr. Edler in her *individual capacity*.  Count V asserts a claim under the Florida Private Whistleblower's Act against the County and Dr. Edler in her *official capacity*.

Following removal, the County moved to dismiss Counts I, III and V, the claims asserted against the County and Dr. Edler in her official capacity. Because "official capacity" suits are simply another way to plead claims against the County. *Kentucky v. Graham*, 473 U.S. 159, 165–66, 105 S. Ct. 3099, 3105, 87 L. Ed. 2d 114 (1985).  Consequently, granting the County's motion to dismiss Counts I, III and V would work a dismissal of the "official capacity" claims against Dr. Edler.  *Id.*  For the avoidance of doubt, Dr. Edler joins and adopts the County's motion as to Counts I, III and V.

With this motion, Dr. Edler seeks the dismissal of Counts II and IV because at all times relevant to the Complaint she acted within the scope of her discretionary authority and did not violate clearly established law, so the doctrine of qualified immunity protects her from suit.  *See Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1281 (11th Cir. 1998) *citing Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).   Because qualified immunity protects Dr. Edler from suit, including discovery, Plaintiff's complaint may be dismissed at the 12(b)(6) stage where, "(1) from the face of the complaint, (2) [the court] must conclude that (even if a claim is otherwise sufficiently stated), (3) the law supporting the existence of that claim-given the alleged circumstances-was not already clearly established, (4) to prohibit what the government-official defendant is alleged to have done, (5) before the defendant acted."  *Marsh v. Butler County, Ala*, 268 F.3d 1014, at 1023 (11th Cir. 2001), abrogated in part on other grounds by *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

There can be no doubt that Dr. Edler was performing a discretionary function.  Plaintiff's allegations all relate to Dr. Edler's statutory authority to supervise and assume direct responsibility for the medical performance of the

emergency medical technicians and paramedics operating for Escambia County's Emergency Medical Services, to conduct a quality assurance review of the medical performance of a paramedic operating under her supervision, and to report any grounds for concern regarding such paramedic to the Department of Health.  Fla. Stat. § 401.265(1) (1998).

Likewise, Dr. Edler did not violate clearly established law.  The Florida Department of Health has specifically held that a Medical Director for an Emergency Medical Services system "has the authority to condition, limit, modify or suspend the [paramedic]'s medical performance while operating for the licensee [Escambia County EMS] consistent with the Medical Director's direct responsibility for the medical performance of all [paramedics] operating for the licensee."[1]   Further, such "conditioning, limitation, modification or suspension of a Certificate holder's medical performance" can include required training "as a precondition for some or all parts of the certificate holder's medical performance while operating for the licensee."

On its face, Plaintiff's complaint establishes Dr. Edler's immunity, and it is due to be dismissed pursuant to Rule 12(b)(6).   Even if Dr. Edler did not have immunity, Plaintiff's complaint fails to state a claim on which relief may be granted.

## II.   COMPLAINT'S FACTUAL ALLEGATIONS.

Plaintiff's complaint includes the following allegations relevant to Dr. Edler:

---

[1]      Florida Department of Health, Bureau of Emergency Services, *Final Order Granting Petition for Declaratory Statement*, November 1, 2007, attached as Exhibit 1.  The Eleventh Circuit gives substantial deference to a state agency's interpretation of a statute the agency administers.  *Pharm. Research & Mfrs. of Am. v. Meadows*, 304 F.3d 1197, 1208 (11th Cir. 2002).

- Plaintiff has been employed as a paramedic with Escambia County's Emergency Medical Services ("EMS")[2] since February 2012. (Complaint ¶5).

- Since April 2018, Dr. Edler has been the EMS Medical Director,[3] with responsibility "for the medical performance of all Emergency Medical Technicians and Paramedics of Escambia County," who operate under her license as set out in §401.265, Fla Stat.   (Complaint ¶¶3, 8, Complaint Exhibit A).

- On April 23, 2019, Dr. Edler chaired an EMS Quality Assurance review of Plaintiff's medical performance, with a 5-member committee which included County officials who did not usually serve on QA committees. During the review, Dr. Edler allegedly "brought up matters that were almost a year old and/or were already resolved." (Complaint ¶¶17, 21, 28).

- After the Quality Assurance review:

  o Dr. Edler reported concerns about Plaintiff's medical performance to the Department of Health, and required Plaintiff to undergo training, and limited or modified his medical performance pending completion of the Department of Health's investigation.  (Complaint ¶¶31 and 38).

  o Plaintiff filed a complaint against Dr. Edler with the County's Human Resources Department, and several weeks later an

---

[2]      Escambia County's Emergency Medical Services are regulated by the "Emergency Medical Transportation Services Act," Fla. Stat.  § 401.2101, *et seq.*, which sets out the duties and responsibilities of emergency medical technicians and paramedics like Plaintiff, and of Medical Directors like Dr. Edler.

[3]      "Medical director" means a physician [like Dr. Edler] who is employed or contracted by a licensee [like Escambia County Emergency Medical Service] and who provides medical supervision [to paramedics like Plaintiff], including appropriate quality assurance but not including administrative and managerial functions, for daily operations and training pursuant to this part.  Fla. Stat.  § 401.23 (2013).

> unnamed HR representative met with EMS Chief Leon Salter, Interim Public Safety Director Dosh and Dr. Edler about Plaintiff's complaint. (Complaint ¶¶28 and 30).

- Subsequently, Director Dosh advised Dr. Edler that her conduct appeared to be retaliatory and that she should prepare a performance improvement plan.  Dr. Edler did not prepare a performance improvement plan for Plaintiff, but "continued to press for disciplinary action against Plaintiff," recommending that he ben demoted or terminated,  and he was placed on administrative duty, in which he could not work overtime, before returning to an EMT position. (Complaint ¶¶32, 33, 34, 35, 41 and 49).

- Subsequently, County Attorney Peppler gave the legal opinion that Dr. Edler did not have the authority to demote, terminate, or otherwise discipline Plaintiff. (Complaint ¶42, and Complaint Exhibit A).

- HR Representative Spainhower also prepared a draft report which concluded that Dr. Edler may have engaged in retaliation. Ultimately, however, the County's Director of Human Resources Jana Still determined that Dr. Edler had not retaliated against Plaintiff. (Complaint ¶¶45 and 68; Complaint Exhibit B).

- Notwithstanding Mr. Peppler's opinion, and Mr. Spainhower's report, the County has failed and refused to follow its own policies, but instead allowed Dr. Edler to limit his medical performance, by assigning him to EMT duties, rather than paramedic. (Complaint ¶¶43 and 64).

- Last, Dr. Edler called the Medical Director of Santa Rosa County to advise him that Plaintiff was not qualified to work as a paramedic for the Lifeguard Ambulance Service.  Santa Rosa's Medical Director

disagreed, and Plaintiff has continued his work for Santa Rosa. (Complaint ¶75).

## III.  ARGUMENT AND MEMORANDUM OF LAW

### A.  <u>Motion to Dismiss Standard</u>.

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to move for dismissal of a complaint which is legally insufficient, *i.e.*, fails to state a claim upon which relief may be granted. *See* Fed.R.Civ.P. 12(b)(6).  In the context of Rule 12(b)(6) motion practice, the court must assume that all the factual allegations set forth in the complaint are true and construe those allegations in the light most favorable to the plaintiff. *See, e.g., Brower v. County of Inyo*, 489 U.S. 593, 598, 109 S.Ct. 1378, 1382, 103 L.Ed.2d 628 (1989); *United States v. Gaubert*, 499 U.S. 315, 327, 111 S.Ct. 1267, 1276, 113 L.Ed.2d 335 (1991); *Powell v. Lennon*, 914 F.2d 1459, 1463 (11th Cir. 1990).

Rule 8(a)(2) sets the standard for legally sufficient allegations: a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).  While Rule 8 "does not require 'detailed factual allegations,'" it does demand "more than an unadorned, the defendant-unlawfully-harmed-me accusation."  *Id.* Plainly stated, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id., quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-1965, 167 L.Ed.2d 929 (2007). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*., quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. at 1955.

When defendant asserts qualified immunity, the Court may dismiss Plaintiff's complaint may be dismissed at the 12(b)(6) stage where, "(1) from

the face of the complaint, (2) [the court] must conclude that (even if a claim is otherwise sufficiently stated), (3) the law supporting the existence of that claim-given the alleged circumstances-was not already clearly established, (4) to prohibit what the government-official defendant is alleged to have done, (5) before the defendant acted."  *Marsh v. Butler County, Ala*, 268 F.3d 1014, at 1023 (11th Cir. 2001), *abrogated in part on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). *See also Saucier v. Katz,* 533 U.S. 194, 200-201, 121 S.Ct. 2151, 2155-2156, 150 L.Ed.2d 272 (2001).  ("Where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive. Qualified immunity is an entitlement not to stand trial or face the other burdens of litigation. The privilege is an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial. As a result, we repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation.") (emphasis in original; internal citations and quotation marks omitted).

### B.    Official Capacity Claims Against Dr. Edler.

The County moved to dismiss Counts I, III and V, which assert claims against the County and Dr. Edler in her official capacity. While the County did not directly move for dismissal as to Dr. Edler in her official capacity, it is well established that

> official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent. "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity. Thus, while an award of damages against an

7

> official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself.

*Kentucky v. Graham*, 473 U.S. 159, 165–66, 105 S. Ct. 3099, 3105, 87 L. Ed. 2d 114 (1985), *quoting Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n. 55, 98 S.Ct. 2018, 2035, n. 55, 56 L.Ed.2d 611 1978)(other internal citations omitted).   Consequently, granting the County's motion to dismiss the claims against the County would necessarily dismiss the official capacity claims against Dr. Edler.  *Id.; See also Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) ("Because suits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent, there no longer exists a need to bring official-capacity actions against local government officials, because local government units can be sued directly (provided, of course, that the public entity receives notice and an opportunity to respond)").  For the avoidance of doubt, Dr. Edler joins in County's motion to dismiss Counts I, III and V and adopts its arguments for dismissal.

### C.    <u>Individual Capacity §1983 Claims Against Dr. Edler.</u>

Plaintiff's Counts II and IV assert the §1983 claims from Counts I and III asserts claims Dr. Edler in her individual capacity. Plaintiff contends generally that Dr. Edler failed to give him due process and retaliated against him in violation of the First and Fourteenth Amendments to the United States constitution.  These claims against Dr. Edler should be dismissed both because she has qualified immunity and because they fail to state claims on which relief may be granted.

Dr. Edler asserts the defense of qualified immunity, which affords complete protection to government officials performing discretionary

functions from suit in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. *Harbert,* 157 F.3d. at 1281.   Because qualified immunity protects Dr. Edler from suit, and not merely liability, her entitlement to the defense may be decided at the 12(b)(6) stage:

> The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating [] federal law. Because qualified immunity is an entitlement not to stand trial or face the other burdens of litigation, questions of qualified immunity must be resolved at the earliest possible stage in litigation. It is therefore appropriate for a district court to grant the defense of qualified immunity at the motion to dismiss stage if the complaint fails to allege the violation of a clearly established constitutional right.

*Gonzalez v. Reno*, 325 F.3d. 1228, 1233 (11th Cir. 2005). (internal citations and quotation marks omitted; footnote added).

### 1.   Dr. Edler's Discretionary Function.

To be entitled to qualified immunity, Dr. Edler must show that she was acting within the scope of her discretionary authority when the allegedly wrongful acts occurred. *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002), quoting *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). "In making this determination, '[i]nstead of focusing on whether the acts in question involved the exercise of actual discretion, we assess whether they are of a type that fell within the employee's job responsibilities. Our inquiry is two-fold. We ask whether the government employee was (a) performing a legitimate job-related function (that is, pursuing a job- related goal), (b) through means that were within his power to utilize. . .. In applying each prong of this test, we look to the general nature of the defendant's action, temporarily putting aside the fact that it may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an

9

unconstitutional extent, or under constitutionally inappropriate circumstances." *O'Rourke v. Hayes*, 378 F.3d 1201, 1205 (11th Cir. 2004), quoting *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1266 (11th Cir. 2004).   In making this determination, the court asks whether the complained of acts "would be within, or reasonably related to, *the outer perimeter of an official's discretionary duties*.  The scope of immunity should be determined by the relation of the [injury] complained of to the duties entrusted to the officer." *Harbert,* 157 F.3d at 1282.

The statutory framework for the County's Emergency Medical Services is set out in the "Emergency Medical Transportation Services Act," Fla. Stat. §401.2101, *et seq*.   Dr. Edler is the County's Medical Director, "a physician who is employed or contracted by a licensee and who provides medical supervision, including appropriate quality assurance but not including administrative and managerial functions, for daily operations and training pursuant to this part." Fla. Stat.  § 401.23(15)(2013).  Plaintiff is a paramedic, "a person who is certified by the department [of health] to perform basic and advanced life support pursuant to this part."  Fla. Stat.  § 401.23(17). *See also* §401.23(1)(2)(7) and (8)(2013)(definitions of "Advanced life support," "Advanced life support service," "Basic life support," and "Basic life support service.").

 Dr. Edler's responsibilities as Medical Director are delineated by statute, in pertinent part, as follows:

> (1) . . . . The medical director must supervise and assume direct responsibility for the medical performance of the emergency medical technicians and paramedics operating for that emergency medical services system. The medical director must perform duties including advising, consulting, training, counseling, and overseeing of services, including appropriate quality assurance but not including administrative and managerial functions.
>
> (2) Each medical director shall establish a quality assurance committee to provide for quality assurance review of all emergency medical technicians and paramedics operating under

his or her supervision. If the medical director has reasonable belief that conduct by an emergency medical technician or paramedic may constitute one or more grounds for discipline as provided by this part, he or she shall document facts and other information related to the alleged violation. The medical director shall report to the department [of health] any emergency medical technician or paramedic whom the medical director reasonably believes to have acted in a manner which might constitute grounds for disciplinary action. Such a report of disciplinary concern must include a statement and documentation of the specific acts of the disciplinary concern.

Fla. Stat. § 401.265.

Under the test set out in *O'Rourke,* 378 F.3d at 1205, there can be no doubt that Dr. Edler was acting within the scope of her discretionary authority relevant to the events alleged in the complaint.   Pursuant to her duty to "supervise and assume direct responsibility for the medical performance of the emergency medical technicians and paramedics," she convened a "quality assurance review" of a "paramedic[] operating under . . . her supervision," and reported concerns about Plaintiff's medical performance to the Department of Health, and to the Medical Director of Santa Rosa County.   That is, she engaged in acts that were entirely within her job responsibilities, and were legitimate job-related functions, through means that were within her power to utilize.   *O'Rourke v. Hayes*, 378 F.3d 1201, 1205 (11th Cir. 2004), *quoting Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1266 (11th Cir. 2004).

## 2.   Dr. Edler Did Not Violate Any Clearly Established Right.

Dr. Edler having established that she was acting within the scope of his discretionary authority, the burden shifts to Plaintiff to demonstrate that Dr. Edler is not entitled to qualified immunity. *See O'Rourke, supra*, 378 F.3d at 1206 ("Once a government official demonstrates that he is potentially entitled to qualified immunity, the burden shifts to the plaintiff to demonstrate that the official is not actually entitled to it."). In *Saucier v. Katz, supra,* the Supreme Court set forth the following two-part analysis

for determining whether qualified immunity is appropriate: first, considering the facts in the light most favorable to the plaintiff, do the facts show that the defendant's conduct violated a constitutional right; and, second, "if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." 533 U.S. at 200 & 201, 121 S.Ct. at 2155 & 2156; *see also Vinyard, supra*, 311 F.3d at 1346 ("The Supreme Court has set forth a two-part test for the qualified immunity analysis. 'The threshold inquiry a court must undertake in a qualified immunity analysis is whether [the] plaintiff's allegations, if true, establish a constitutional violation.' If a constitutional right would have been violated under the plaintiff's version of the facts, 'the next, sequential step is to ask whether the right was clearly established.'" (internal citations omitted)).

Distilled to its essence, Plaintiff's complaint alleges that he did not receive Fourteenth Amendment due process because the QA meeting was called on short notice, and he was not given an opportunity to challenge Dr. Edler's conclusion that he could not "work as a paramedic under her license," and that his First Amendment right to free speech was violated when Dr. Edler reported concerns about his medical performance to the Department of Health and to the Medical Director of Santa Rosa County's EMS after he made a complaint about her to the County's Human Resources Department.   These allegations do not Plaintiff's contention that his clearly established constitutional rights were violated.

### (a)  *Dr. Edler did not violate Plaintiff's due process rights*

Dr. Edler adopts and incorporates the arguments in the County's motion to dismiss, (Doc. 8, Section III.D, pages 15-22) and adds that Plaintiff will also be entitled to a hearing from the Department of Health, as set out in Fla. Stat. § 401.265.

Moreover, Dr. Edler was not responsible for establishing due process procedures or providing them to Plaintiff.  Quite the contrary, as set out by statute, Dr. Edler's responsibility was to report concerns about Plaintiff's medical performance to the Department of Health.  Fla. Stat.  § 401.265. Since Dr. Edler was not responsible for providing due process to Plaintiff, she did not cause any due process violation.  *See Watkins v. Central Broward*, ___ Fed. Appx. ___, 2020 WL 40152 (11th Cir. 2020).[4]

### (b)   *Dr. Edler did not violate Plaintiff's free speech rights*

Dr. Edler adopts and incorporates the arguments in the County's motion to dismiss and adds that the sequence of events alleged in the complaint establishes that she did not retaliate against Plaintiff.  As plead, Dr. Edler convened a Quality Assurance review of Plaintiff's medical performance on April 23, 2019, which led to her report to the Department of Health.  Because the Quality Assurance review which prompted the report to the Department of Health took place *before* Plaintiff complained to Human Resources, his complaint could not have been the cause of the Quality Review and the related report to the Department of Health.

### (c)   *Florida Law clearly establishes the Appropriateness of Dr. Edler's Actions*.

In a November 1, 2007, *Final Order Granting Petition for Declaratory Statement*, attached as Exhibit 1, the Florida Department of Health, Bureau of Emergency Services determined an EMS Medical Director's scope of authority over "certificate holders" such as paramedics.  The Bureau held that the Medical Director has "direct responsibility for all Certificate holders," accompanied by the "supervisory authority necessary to require that the medical performance of the Certificate holders is of a quality and type for

---

[4]      "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2.

which the individual Medical Director is willing to take direct responsibility."
Further, "the exercise of this supervisory authority by the Medical Director is
a mandatory part of the job," which includes "assessing the medical
performance of all certificate holders," including through quality assurance
reviews. Such "supervisory authority enables the Medical Director to consider
whether and how Certificate holders perform medically."  In short:

> The Medical Director has the authority to condition, limit, modify
> or suspend the certificate holder's medical performance while
> operating for the licensee consistent with the Medical Director's
> direct responsibility for the medical performance of all certificate
> holders operating for the licensee.
>
> Such conditioning, limitation, modification or suspension of a
> Certificate holder's medical performance while operating for the
> licensee can include requirement of completion of Medical Director
> identified training as a precondition for some or all parts of the
> certificate holder's medical performance while operating for the
> licensee.

*Final Order Granting Petition for Declaratory Statement*, attached as Exhibit
1.  Because the Florida Department of Health has clearly set out the
parameters of a Medical Director's authority under §401.265(1), Plaintiff
cannot establish that Dr. Edler violated his clearly established rights by acting
in conformity with the statute.  *Pharm. Research & Mfrs. Of Am. V. Meadows*,
304 F.3d 1197, 1208 (11th Cir. 2002) (Courts give substantial deference to a
state agency's interpretation of a statute the agency administers.)

### IV.   CONCLUSION.

For the reasons set out above, Dr. Edler's motion to dismiss the
complaint is due to be granted.   Dr. Edler has qualified immunity because all
times relevant to the Complaint she acted within the scope of her discretionary
authority and did not violate clearly established law, so the doctrine of qualified
immunity protects her from suit.   Moreover, Plaintiff has not alleged adequate

14

facts to support his claims that his due process and first amendment rights were violated.

WHEREFORE Defendant Rayme Edler moves to dismiss plaintiff Matthew Selover's complaint because it fails to state a claim on which relief may be granted against her, and because Dr. Edler is entitled to qualified immunity.

## CERTIFICATION UNDER L.R. 7.1 (F)

Pursuant to Local Rule 7.1 (F), I hereby certify that the number of words in the Motion and Memorandum do not exceed 8,000 words. The total number of words is 4,187.

Dated: April 13, 2020

/s/ Cecily L. Kaffer
**Cecily L. Kaffer**
pro hac vice
The Kullman Firm
A Professional Law Corporation

Post Office Box 1287
Mobile, Alabama 36633
Telephone: (251) 432-1811
clk@kullmanlaw.com

Attorney for Defendant Rayme Edler

## CERTIFICATE OF SERVICE

I certify that on April 13, 2020 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Katie Gudaitis
Stephanie Pidermann
Lydecker Diaz
495 Grand Blvd.
Miramar Beach, FL 32550
Telephone: (305) 416-3180
kg@lydeckerdiaz.com
sp@lydeckerdiaz.com


J.J. Talbott
Law Office of Jerimiah J. Talbott, P.A.
900 East Moreno Street
Pensacola, Florida 32503
Telephone: (850) 437-9600
jjtalbott@talbottlaw.com


*/s/ Cecily L. Kaffer*
Cecily L. Kaffer