

# EDLER INVESTIGATION SUMMARY

**Complainant:** Matthew Selover

**Department:** Public Safety – Emergency Medical Services

**Date of Complaint:** May 1, 2019

**Complaint Description:**
Mr. Selover alleges workplace harassment by Dr. Rayme Edler in the form of professional retaliation via Quality Assurance Board proceedings and subsequent referral to the Florida Department of Health (FDOH) for investigation.

**Key Employees Involved**
- Matthew Selover, Paramedic, Complainant
- Rayme Edler, Escambia County Medical Director, Respondent

**Persons interviewed or providing statements**
The below persons were interviewed or provided statements:
- Matthew Selover – Paramedic, Escambia County EMS
- Dr. Rayme Edler – Medical Director, Escambia County
- John Dosh – Interim Director, Escambia County Public Safety
- Leon Salter – Operations Manager, Escambia County EMS
- Ivy Lett – Senior Office Support Assistant, Escambia County Public Safety Department

**Investigation**
A report of unlawful harassment was filed by Mr. Matthew Selover on May 1, 2019 alleging that Dr. Edler, Escambia County Medical Director, had subjected Mr. Selover to workplace harassment based upon her treatment of him in various situations to include a Quality Assurance/Quality Improvement (QA/QI) Board. Based upon materials submitted with Mr. Selover's written complaint dated May 10, 2019, Human Resources (HR) believed that there was sufficient cause to investigate the allegations contained therein. (Attachment 1)

Mr. Selover's email to HR dated May 1, 2019, detailed events that happened during a Quality Assurance/Quality Improvement (QA/QI) Board that was held on April 23, 2019 at the behest of Dr. Edler as well as previous incidents prior to the board. The employees that comprised the board were: Dr. Edler, Commander James Maddrey (Paramedic Supervisor), Commander Shawn Hoopaugh (Paramedic Supervisor), Captain Christopher Ammons (Emergency Medical Technician), and William Hopkins (Emergency Medical Specialist). (Attachment 2)

1



Mr. Selover alleges in his initial call to HR and reiterated in his follow up email to HR, that he was initially hesitant to attend said board as he was not previously appraised of the issues to be discussed and professed a strong feeling of apprehension based upon a series of ongoing investigations of various members of the Emergency Medical Services Administrative staff to include previous EMS Division Manager Steve White, Leon Salter, Kate Kenney (Paramedic Supervisor), Jim Bonoyer (EMS Quality Specialist), and Karen Wood (Paramedic Supervisor). All these employees are currently under investigation by the FDOH.

After a call between previous HR Director Eric Kleinert and Dr. Edler, it was determined that the board was to be a routine examination of cases that Mr. Selover had run recently. (It should be noted that according to Dr. Edler's official report to the FDOH, the cases reviewed went back to July of 2018.) Upon this explanation, Mr. Selover agreed to sit for the board if he would be allowed a witness, which was granted. Ms. Ivy Lett attended as Mr. Selover's witness. (Attachment 3)

Mr. Selover alleges in his email statement that the employees on the board were not members of the standing QA/QI team that had previously administered QA/QI boards. Mr. Selover further claims that the make-up of the board was prejudicial as it contained members that he had previously referred to EMS Administration for patient care and for conduct issues. (Attachment 4)

When asked why Dr. Edler might wish to harass him, Mr. Selover stated that he had spoken up in defense of the previous EMS Chief and his policies and in a follow up statement to HR dated 6/18/19, indicated that Dr. Edler may be upset with him for disciplining Emergency Medical Technician (EMT) Glenda Owens, alleged by Mr. Selover to be a close friend of Dr. Edler's as well as statements he had made to staff at Baptist Hospital that were overheard and reported to his chain of command that were demeaning towards Dr. Edler. (Attachment 5, 6, & 7)

A review of the QA/QI policy provided to HR by Dr. Edler on June 12, 2019 indicates an "Initiated" date of July 1, 2018 and according to Dr. Edler, was approved for use by the DOH on July 31, 2018. The policy provided to HR upon request from Mr. Salter on June 19, 2019 shows an approval date of March 12, 2019 and is labeled version 1.0. Both versions detail the make up of the board in generic terms and lists four possible responses that might be used by the Medical Director to address any employee actions that she deemed needing address as required by either EMS policy or state statute. Both versions of the policy indicate that employees may face the following actions:

1. No action taken/matter resolved
2. Remediation training
3. Clinical Improvement Plan
4. Suspension of Clinical Privileges



Both versions specify that the focus of the board is for quality assurance and quality improvement, but indicate major or repetitive violations, or failure to adequately progress through the remediation process may be referred to Operations for review and progressive disciplinary action, but also states that the medical director may suspend clinical privileges without mention of progressive discipline or due process. (Attachment 8 & 9)

The Florida State Statute that discusses QA/QI Boards is 401.265. Paragraph 1 of this statute discusses the duties that an organization's medical director must perform. It specifically states that they will not perform administrative and managerial functions. This statute also details in paragraph 2 that any grounds for discipline will be documented and reported to the department with a report of concerns and supporting documentation. The statue further states that within 7 days of such a report, the department shall provide the employee a copy of said report. If the department finds the report is insufficient for disciplinary action, the report shall be expunged. Upon conferring with the County Attorney, it has been determined that the "department" in question, refers to the FDOH. (Attachment 10)

As specified by the County Attorney, it appears that there are certain issues that by law, must be reported to the DOH as per statute 401.411. However, there are also issues that may be reported while not being mandatory. An email from Interim Public Safety Director John Dosh to Dr. Edler in response to an exchange between Dr. Edler and HR requests that Dr. Edler consider the possibility that her referral of Mr. Selover to the FDOH may appear to be retaliatory and to allow for due process with regards to possible disciplinary action by the county. (Attachment 11)

On May 14, 2019 a meeting was held with John Dosh, Leon Salter, Dr. Edler, and Ed Spainhower at Public Safety to discuss Matthew Selover's complaint and the QA/QI board findings.

On May 16, 2019, Dr. Edler forwarded a complaint to the FDOH for investigation of Mr. Selover. (Attachment 12)

HR received a copy of the complaint sent to FDOH on the afternoon of May 16, 2019.

Further investigation revealed that no such complaint/report was forwarded for review to the Interim Public Safety Director, County Attorney, Operations Manager; nor was a copy provided to Mr. Selover prior to being delivered to the Florida Department of Health.

HR requested copies of other actions that resulted from QA/QI boards and Dr. Edler provided three for review. None of the board results for the employees submitted to HR were referred to the state for review. HR has also requested that Dr. Edler provide the number of boards executed since her hire as well as the outcomes of the boards. To date, no reply has been provided. (Attachment 13)

3



A review of Dr. Edler's personnel file indicates that she has been provided a copy of the County Unlawful Harassment Policy; she also has a Letter of Counseling related to failure to follow direction.

### Conclusion

It is not the purpose of this investigation to delve into whether Mr. Selover is innocent or guilty of breaking established protocols or policies as HR does not have the requisite level of expertise to form an opinion.

The focus of this investigation was strictly to attempt to find whether he may have been harassed by Dr. Edler as alleged in his complaint. Regrettably not all information related to this incident has been brought forth. However, based upon the information that has been provided to date, it appears that Dr. Edler may have engaged in conduct that could be construed as harassment given the manner in which the board was assembled and the processes that were followed in both reporting Mr. Selover to the FDOH and in attempting to demote him without due process.

This conclusion is reached in part due to the disparate treatment that Mr. Selover has experienced when compared to others that have been subjected to the QA/QI process although due to a lack of review of all board actions since Dr. Edler's hire it is difficult to accurately confirm this. The three QA/QI cases that were forwarded to HR for review were not referred to the DOH even though at least one case seemed to have similar characteristics as Mr. Selover's.

It is clear that Mr. Selover was not afforded the type of due process required by BCC policy and union collective bargaining agreements currently in effect, nor was he afforded the opportunity to adequately prepare for a review board that discussed situations from July of 2018 until May of 2019.

It is also noted that the issue concerning the HIPPA violation reported by Dr. Edler to the FDOH was dealt with previously by EMS Administration and an opinion from the County Attorney supports the view that the issue did not rise to the level of attention given by Dr. Edler to this matter.

Finally, Mr. Selover's board was not composed of individuals that might be considered neutral or without prejudice for the purposes stated in the board policy; namely: "It is the intent of clinical review to improve patient care and clinical operations, not to discipline the employee."

### Employee Relations Recommendations:

Based upon the above conclusions, the following recommendations are made to address Mr. Selover's complaint.

- Convene a panel composed of the medical director, senior EMS officials and a union representative to review the current QA/QI Policy and address concerns noted above related to due process for employees.
- Ensure that scope of authority is clearly outlined as to who will be required to pursue discipline in accordance with current BCC policy and union collective bargaining agreement(s) as the current policy sets up a conflicting set of circumstances by stating that Operations will process disciplinary actions and then states that the Medical Director my suspend clinical privileges or

4



demote which in most cases would mean loss of pay or an impact to any overtime that would normally be available.
- Conduct weekly meetings to discuss and deconflict current proposed disciplinary actions and training issues.
- Ensure that either as a feature of the revised QA/QI Policy or as a wholly separate policy which discusses contact with outside parties, it is made clear that no such contact will be established without prior discussions with the department director or County Attorney unless those reportable activities in question fall under whistle blower statutes.
- Set a reasonable time limit on how far back an employee may expect to have reviewed by the board. Refer to industry standards as applicable.
- Review all EMS policies with an eye to producing uniform terms so as to reduce confusion when training and conducting investigations. As an example, pick a uniform set of titles for employees that conform to industry standards and match HR titles as used in classification and compensation documents.
- Provide relief to Mr. Selover by returning him to operational status as soon as possible based upon Mr. Pepler's memorandum dated May 31, 2019 which notes the limitations on a medical directors' authority to restrict a medic's ability to perform ALS services.

Attachments:
(1) Selover Unlawful Harassment Compliant Form
(2) Selover follow up email complaint
(3) Ivy Lett witness statement
(4) Confirmation email related to complaint against board member
(5) Tanksley & Selover emails on Selover comments
(6) Owens Letter to File on Smoking
(7) Photocopies of Freeman/Tanksley texts
(8) Version 1.0 of QA/QI Policy
(9) Draft Version of QA/QI Policy
(10) Statute 401.265
(11) Email exchange between Interim Public Safety Director Dosh and Dr. Edler
(12) DOH Complaint Form for Selover
(13) QA/QI Summaries for Chavers, Daily, and Lovelace

ES/June 19