## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA

MATHEW SELOVER,

    Plaintiff,

v.                         Case No.: 3-20-CV-04698-TKW-HTC

ESCAMBIA COUNTY BOARD
OF COUNTY COMMISSIONERS;
and RAYME EDLER,

    Defendants.

_____/

## DEFENDANT, ESCAMBIA COUNTY BOARD OF COUNTY COMMISSIONER'S, MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

Defendant, ESCAMBIA COUNTY BOARD OF COUNTY COMMISSIONERS (the "County"), hereby moves to dismiss Counts I, III, V, and VII of Plaintiff, MATHEW SELOVER'S, First Amended Complaint ("Am. Compl.").

### I.    INTRODUCTION

On January 17, 2020, Plaintiff filed a Complaint against the County and Dr. Rayme Edler. On April 2, 2020, the County filed a Motion to Dismiss Plaintiff's Complaint. On April 23, 2020, Plaintiff filed his First Amended Complaint attempting to assert seven causes of action against the County and Dr. Edler for alleged violations of 42 U.S.C. § 1983, the First Amendment, the Fourteenth

Amendment, and the Florida Public Whistleblower's Act. Specifically, of the seven counts asserted in Plaintiff's Amended Complaint, four are against the County: Count I, Count III, Count V, and Count VII. The County moves to dismiss these counts.

Plaintiff's §1983 claims against the County (Counts I, III, and V) fail to allege any facts that would subject the County to liability since Plaintiff fails to establish there was a policy, practice, or custom that was the moving force of any alleged constitutional violation. Am. Compl. Municipalities have only limited liability for alleged constitutional violations, and specific facts must be alleged to support such a claim.

Here, Plaintiff has merely attempted to hit a few of the "buzzwords" to bring a claim under the theory of municipal liability, but offers nothing more than naked assertions to support those claims.  Plaintiff's inflammatory allegations serve only to distract this Court from the pleading deficiencies that plague the Amended Complaint.

Further, in Count III of the Complaint, Plaintiff impermissibly attempts to bring a cause of action for an alleged violation of his substantive due process rights based on the County allegedly violating his state-law-created employment rights. However, state-law-created employment rights are not fundamental rights that are entitled to substantive due process protection under the Fourteenth Amendment of

the United States Constitution. Consequently, Count III of Plaintiff's Amended Complaint should be dismissed because it does not arise under the auspices of a fundamental right.

In Count VII[1], Plaintiff attempts to hold the County liable for violations of § 112.3187, Fla. Stat. However, Plaintiff failed to allege that he disclosed any alleged violation of a law, rule, or policy to the "final policymaker" as is required by established precedent. These failures to comply with axiomatic principles of law— and the plain text of applicable statutes—are fatal to Plaintiff's claim in Count VII.

Further, Plaintiff failed to establish that his alleged protected speech is entitled to First Amendment protection. Indeed, Plaintiff failed to attach, identify, or otherwise incorporate by reference the alleged speech that he contends is entitled to First Amendment Protection. Am. Compl. Moreover, the allegations in the Complaint fail to apprise this Court as to how Plaintiff's speech is not personal, but rather, rises to the level of public concern.

Finally, Plaintiff's allegations relating to an alleged violation of procedural due process are vague, conclusory, and fail to specify the due process that Plaintiff was allegedly not afforded. In his Complaint, Plaintiff alleged that he was not afforded adequate notice for the quality assurance meeting on April 23, 2019.

---

[1] As to Count VII, the County submits that this Court possesses supplemental jurisdiction for Count VII under 28 U.S.C. § 1367(a).

However, Plaintiff failed to assert specific allegations indicating why he was entitled to due process for said meeting. Indeed, Plaintiff's own admission indicated that he was not disciplined nor reprimanded at the QA meeting. Am. Compl. ¶¶ 26, 27.

For these reasons, Plaintiff fails to state a claim for Counts I, III, V, and VII.

## II.   FACTUAL BACKGROUND

Plaintiff began working for Escambia County in February 2012. *Id.* at ¶ 5. At all times material hereto, Plaintiff was subject to the collective bargaining agreement ("CBA") between the County and the International Association of EMTs and Paramedics. *Id.* at ¶ 9. On April 23, 2019, Plaintiff attended a non-disciplinary QA meeting with a union representative, Ivey Lett.  *Id.* at ¶¶ 16, 20, and 26.

Subsequently, Plaintiff filed a complaint with HR against Defendant Edler, and allegedly expressed concerns with the QA meeting.  *Id*. at ¶ 28.  In particular, Plaintiff alleged that he complained that he did not have adequate notice of the meeting and that the QA board was not impartial and that Dr. Edler brought up matters over a year old. *Id.*

On May 13, 2019, Dr. Edler allegedly declared that Plaintiff was unable to work as a paramedic under her license. *Id.* at ¶ 31. On May 15, 2019, Plaintiff was placed on administrative duty. *Id.* at ¶ 35. The Interim Public Safety Director, John Dosh, ("Dosh") advised Dr. Edler to provide a Performance Improvement Plan ("PIP") for Selover. *Id*. at ¶ 41. However, she refused. Significantly, it was

determined that Dr. Edler did not have the authority to demote, terminate, or otherwise discipline Plaintiff. *Id.* at ¶ 42. Moreover, although Plaintiff alleges that Edler attempted to demote him, it is clear that Plaintiff was never demoted and remained in his position as a paramedic. *Id.* at ¶ ¶ 41, 45.

### III.   <u>MEMORANDUM OF LAW</u>

**A. *Applicable Standard***

In reviewing a motion to dismiss, the Court must accept the factual allegations of the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus,* 551 U.S. 89 (2007). However, "[t]o survive a motion to dismiss, a [c]omplaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Puig v. Miami-Dade County*, 09-20822-CIV, 2010 WL 1631896, at *1 (S.D. Fla. Jan. 13, 2010) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 561 (2007). Therefore, legal conclusions couched as factual allegations are not sufficient to state a claim. *See Twombly*, 550 U.S. at 555.

**B.** ***Plaintiff Cannot Maintain a Substantive Due Process Claim for a Non-Fundamental Right as Alleged in Count III***

As an axiomatic principle of law, "areas in which substantive rights are created only by state law (as is the case with tort law and employment law) are not subject to substantive due process protection under the Due Process Clause because 'substantive due process rights are created only by the Constitution.' *Regents of Univ. of Mich. v. Ewing,* 474 U.S. 214, 229, 106 S.Ct. 507, 515, 88 L.Ed.2d 523 (1985) (Powell, J., concurring). As a result, these state law based rights constitutionally may be rescinded so long as the elements of procedural—not substantive—due process are observed." *McKinney*, 20 F.3d at 1556.

Time and again, this Court and courts in this Circuit, have repeatedly held that municipal employees cannot maintain substantive due process claims arising under state-created-employment law. *See Silva v. Bieluch*, 351 F.3d 1045, 1047 (11th Cir. 2003) (affirming dismissal of plaintiff's substantive due process claim because municipal employees could not state a due process claim resulting from their loss of rank because employment rights are state-created rights and not "fundamental" rights created by the Constitution and therefore, are not actionable under a substantive due process theory of liability); *see also Hinson v. Clinch County, Georgia Bd. of Educ*., 231 F.3d 821, 832 (11th Cir. 2000) (affirming summary judgment of plaintiff's substantive due process claim that alleged merely arbitrary deprivation of state-law employment rights and court held that he can only bring

procedural due process, not substantive due process, claims); *Hollis v. W. Acad.*
*Charter, Inc.*, 782 Fed. Appx. 951, 958 (11th Cir. 2019) (affirming dismissal of
plaintiff's substantive due process claim under § 1983 because claim arose under
employment law and plaintiff is precluded from asserting such a claim under the
auspices of a substantive due process violation).

In *White v. Hall*, this Court held that a plaintiff's substantive due process
claims against a Sherriff were without merit and the plaintiff was also not able to
assert a substantive due process claim against any other defendant (government actor
or agency) for the same reasons. *White v. Hall*, 3:07CV461/LAC/MD, 2009 WL
3161817, at *8 (N.D. Fla. Sept. 28, 2009) (dismissing plaintiff's substantive due
process claim because employment rights are created under state law and are not
fundamental rights created by the United States Constitution).

Indeed, Florida has explained that "Public employment is a constitutionally
protected property interest." *Joshua v. City of Gainesville*, 768 So.2d 432, 439 (Fla.
2000). The substantive component of the Fourteenth Amendment's "Due Process
clause protects those rights that are 'fundamental,' that is, rights that are 'implicit in
the concept of ordered liberty." *McKinney*, 20 F.3d at 1556 (quoting *Palko v.*
*Connecticut*, 302 U.S. 319, 325 (1937)). Only those rights enumerated in the U.S.
Constitution, and certain unenumerated rights as determined by the Supreme Court

of the United States, such as the right to privacy[2], warrant substantive due process protection. *See id.*

However, time and again, this Court and courts within this Circuit have squarely rejected the notion that municipal employment, and other state-law-created substantive rights, are entitled to substantive due process. *See Thornquest v. King*, 82 F.3d 1001, 1005 (11th Cir. 1996) (affirming dismissal of plaintiff's substantive due process claim against state college because plaintiff's employment rights were created by state law); *see also Jones v. Gadsden County Sch.*, 758 Fed. Appx. 722, 726 (11th Cir. 2018) (affirming dismissal of plaintiff's § 1983 claim because it arose under employment law, which is a non-fundamental right, and is not entitled to substantive due process); *see also N. Florida Educ. Dev. Corp. v. Woodham*, 942 F. Supp. 542, 549 (N.D. Fla. 1996) (dismissing plaintiff's complaint for failure to state a claim for substantive due process violations because same arose under a state-created substantive right).

Consequently, Plaintiff has failed to state a claim for a substantive due process violation against the County. However, even if this Court disagrees with the well-established precedent above, Plaintiff likewise fails to maintain a claim for substantive due process because he fails to establish municipal liability under the auspices of § 1983.

---

[2] *Planned Parenthood v. Casey*, 505 U.S. 833 (1992).

**C.** *Plaintiff's Counts I, III, and V Should be Dismissed because Plaintiff cannot Establish Municipal Liability*

As noted above, Counts I, III, and V require Plaintiff to first establish municipal liability pursuant to 42 U.S.C. § 1983. Critically, to establish a due process violation or first amendment retaliation in violation of § 1983, municipal liability must be established because both claims attempt to hold the County liable for the actions of its employees. It is well settled that a municipality, such as the County, may not be held vicariously liable for the acts of its employees under 42 U.S.C. § 1983. *See Monell v. Dep't of Soc. Services of City of New York*, 436 U.S. 658 (1978); *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).

Rather, to state a claim against the County under § 1983, Plaintiff must allege he suffered a deprivation of his rights pursuant to an official policy or custom of the County. *See Brown v. City of Fort Lauderdale,* 923 F.2d 1474, 1479 (11th Cir. 1991) (holding that municipality is liable under § 1983 only when alleged harm is under government " custom" or "policy."); *see also DeMartini v. Town of Gulf Stream*, 942 F.3d 1277, 1307 n.21 (11th Cir. 2019) (declaring that § 1983 requires plaintiff to link municipal policy to alleged harm); *see also Cannon v. Macon County, et al.,* 1 F 3d 1558, 1565 (11th Cir. 1993) (affirming dismissal of complaint against a county where there were no allegations of facts to indicate that the alleged violation of due process rights resulted from a county policy or practice).

"Municipal liability is limited to acts that are, properly speaking, acts of the municipality—that is, acts which the municipality has officially sanctioned or ordered." *Carter v. City of Melbourne, Fla.,* 731 F.3d 1161, 1166 (11th Cir. 2013) (quoting *Pembaur v. City of Cincinnati,* 475 U.S. 469, 480, (1986)). To determine whether a policy or action represents official municipal policy, the court must determine whether the decision at issue was made by "those officials or governmental bodies who speak with final policymaking authority for the local governmental actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue." *Jett v. Dallas Indep. Sch. Dist.,* 491 U.S. 701, 737 (1989).

Here, Plaintiff's Counts I, III, and V contain fatal flaws because he has failed to allege that he suffered a deprivation of his rights pursuant to an official policy or custom of the County that was promulgated and enforced by the County's *final* policymaking authority.

### i.   Plaintiff fails to Identify an Unlawful official Policy, Practice, or Custom of the County

To state a § 1983 claim against a municipality, a plaintiff must show: "(1) that [his] constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). To establish an applicable governmental policy, a plaintiff has two

options: "identify either (1) an officially promulgated county policy or (2) an unofficial custom or practice of the county shown through ***the repeated acts*** of a final policymaker for the county." *Dipietro v. City of Hialeah*, 424 F. Supp. 3d 1286, 1296 (S.D. Fla. 2020) (quoting *Grech v. Clayton Cty., Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003)) (emphasis added). "Because a county rarely will have an officially-adopted policy of permitting a particular constitutional violation, most plaintiffs ... must show that the county has a custom or practice of permitting it and that the county's custom or practice is the moving force [behind] the constitutional violation." *Grech*, 335 F.3d at 1330.

Under either theory, the Plaintiff must show that the County "has authority and responsibility over the governmental function in issue and must also identify those officials who speak with final policymaking authority for that local governmental entity concerning the act alleged to have caused the particular constitutional violation in issue." *Knight through Kerr*, 856 F.3d at 819.

Municipal liability arises when a plaintiff shows "the [county's] final policymakers acquiesced in a longstanding practice or custom which constituted the standard operating procedure of the [county], or that a longstanding and widespread practice [was] deemed authorized by the policymaking officials because they must have known about it but failed to stop it," or "that the [county's] final policymakers

adopted or ratified the unconstitutional conduct or decision made by a subordinate official." *Smart v. City of Miami*, 740 F. App'x 952, 961 (11th Cir. 2018).

It appears that Plaintiff is attempting to establish that the County has a "pattern and practice of violating the [employee discipline and retaliation] policies and refusing to adhere to the policies." Am. Compl. ¶ 60. However, the Amended Complaint is devoid of any specific facts that would establish that there is a long-established practice or custom of not following their own policy in the imposition of discipline. *Id.* at ¶¶ 36, 61, 65, 66, 67. Indeed, paragraphs 36, 61, 65, 66, and 67 of the Amended Complaint fall well short of plausibly stating that the County has a long-established practice or custom. Certainly, none of these allegations identify, specify, or otherwise incorporate by reference that the County had an established, officially-adopted policy that permitted constitutional violations. *Id.*

Notwithstanding this pleading deficiency, "liability can still be imposed on a municipality based on "governmental 'custom' even though such a custom has not received formal approval through the body's official decision-making channels." *See Griffin v. City of Opa-Locka,* 261 F.3d 1295, 1308 (11th Cir. 2001). In *Griffin*, the Eleventh Circuit has recognized two situations giving rise to an informal custom or policy. 261 F.3d at 1308.

The first situation occurs when a practice is so widespread that it "is so permanent and well settled as to constitute a 'custom or usage' with the force of

law." *Id.* It has long been the rule that only a "long-standing and widespread practice" will be deemed authorized by policymakers, sufficient to give rise to municipal liability. *City of Ft. Lauderdale*, 923 F.2d at 1481. The second is when a municipality fails to correct constitutionally offensive actions of its employees and tacitly authorizes employee misconduct or displays deliberate indifference towards it. *Id.*

### ii.  Plaintiff fails to allege a Widespread Pattern or Policy that was a Moving Force

Here, Plaintiff fails to sufficiently allege that he was deprived of a constitutional right; however, even if he was deprived of a right, the Complaint fails to show that the County's customs, policies, or practices were the moving force that caused the alleged constitutional deprivation. Plaintiff re-alleges that the County has a "long history of ignoring ECBCC policies and procedures regarding discipline, retaliation, and complaints" and a "pattern and practice of ignoring their HR policies and procedures, burying complaints in the Emergency Medical Services, and protecting Dr. Edler."  Am. Compl. at ¶¶ 66-67.

However, these allegations are nothing more than more than mere conclusory statements unsupported by facts that fail to establish municipal liability. *Id.* at ¶ 66 (a)-(c); *see also Bing v. Landreville,* 3:16-CV-1140-J-34JRK, 2018 WL 1121610, at *5 (M.D. Fla. Mar. 1, 2018) (dismissing Count I of plaintiff's complaint alleging § 1983 liability because it was riddled with conclusory and speculative allegations that

failed to support his claim). Plaintiff cannot rely solely upon his own alleged constitutional violation as proof of a widespread practice, even where multiple governmental employees were involved in his alleged deprivation. *See Craig v. Floyd County, Ga.*, 643 F.3d 1306, 1310-11 (11th Cir. 2011) (holding that to establish municipal liability under § 1983, "A pattern of similar constitutional violations ... is 'ordinarily necessary.'")

Plaintiff alleges the allegations to establish a "long history, custom, and practice" of the County in paragraph 66(a)-(c) of the Complaint by referring to unknown EMS employees that filed five prior complaints against Dr. Edler and that, upon information and belief,[3] the County failed to properly inform these employees[4] as to the status and findings of their complaints.

As to ¶ 66(a)-(b) of the Complaint, the allegations are not sufficient to establish a widespread practice of failing to adhere to policies that result in **actual** constitutional violations. Am. Compl. ¶ 66(a)-(b). Specifically, these allegations fail to specify the types of policies that the County allegedly failed to follow. Consequently, the Court is left to guess which policies Plaintiff is referring to in ¶ 66 (a)-(b) and how the County's failure to follow these policies results in actual constitutional violations.

---

[3] Allegations based "upon information and belief" do not have to be taken as true. *Mann v. Parker*, 713 F.3d 1306, 1315 (11th Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[4] Four of the individuals that allegedly filed complaints against Edler were arrested after a yearlong investigation into falsification of official records.

Likewise, Plaintiff's allegations concerning the "five other instances" wherein Defendants failed to give employees proper notice of complaints fails to establish "a pattern of similar constitutional violations" as to what has been alleged here. The Eleventh Circuit has held that when a plaintiff relies on prior incidents to establish a pattern and practice, the incidents must involve similar facts to the case at hand. *Mercado v. City of Orlando*, 407 F.3d 1152, 1156 (11th Cir. 2005). However, here, Plaintiff fails to identify whether the alleged employees identified in paragraph 66(c) were entitled to due process, were not provided due process, or whether they even had a property interest in their jobs. Critically, these alleged employees could have been probationary employees. Moreover, Plaintiff failed to identify the alleged "discipline," if any, the employee(s) allegedly received without notice. Am. Compl. at ¶ 66.

As such, there is no indication or facts to support that due process rights of any of the alleged employees were actually violated. *Id.* at ¶ 66. Thus, the instances Plaintiff relies on do not establish the County had a pattern or practice of "ignoring their HR policies and procedures, burying complaints in the Emergency Medical Services, and protecting Dr. Edler." Am. Compl. ¶¶ 1-99, 112-126.

In *Pozdol v. City of Miami*, the plaintiff established a causal connection between the alleged constitutional violations and the alleged policy was because the he attached a letter from the U.S. Department of Justice to his response, which

provided a detailed history of widespread abuse of constitutional violations by the Miami Police force in the immediate three prior years. 996 F.Supp. 2d 1290, 1299 (S.D. Fla. 2014). However, the court noted that without the letter, the mere conclusory allegations that the department used excessive force would have been insufficient to establish a practice, policy, or custom of the City of Miami. *Id.* (emphasis added).

Similarly, here, Plaintiff fails to attach any documents that identify, reference, or otherwise allege a widespread practice, policy, or custom that was a moving force behind Plaintiff's alleged constitutional deprivation of due process or which was the moving force behind the alleged unlawful retaliation. Without more, Plaintiff's bare-bones allegations fail to establish that there was a widespread policy that was adopted by the County or a final policy maker to establish municipal liability. Am. Compl.

More tellingly, Plaintiff's Amended Complaint fails to specify who the final policymaker is in relation to Plaintiff's alleged harms. *Id.* Indeed, the Eleventh Circuit's decisions "have consistently recognized and given effect to the principle that a municipal official does not have final policymaking authority over a particular subject matter when that official's decisions are subject to meaningful administrative review." *Carter*, 731 F.3d at 1167 (quoting *Morro v. City of Birmingham,* 117 F.3d 508, 514 (11th Cir.1997). Through several of Plaintiff's own admissions, Dr. Edler

is not the final policymaker who is responsible for Plaintiff's alleged harms. *See* Am. Compl. ¶¶ 41, 42, 94, 119, and 156.

First, in paragraph 41, the Amended Complaint alleges that Dosh, Dr. Edler's superior, ordered her to draft a PIP for Plaintiff. Second, in paragraph 42, the Amended Complaint alleges that Dr. Edler had no authority to demote, terminate, or otherwise discipline the Plaintiff. Third, although Plaintiff alleges that Dr. Edler was the policymaker relating to actions taken pursuant to QA meetings, Plaintiff's own allegations in paragraphs 41 and 42 of the Complaint contradict those assertions. *Compare id*. at ¶¶ 94, 119, and 156; *with id*. at ¶¶ 41 and 42.  Moreover, Plaintiff was not subject to disciplinary action since he continued to be a paramedic and maintained the same pay as a paramedic. *Id*. at ¶ 59.

Finally, Plaintiff's allegations throughout the Amended Complaint never once state that Dr. Edler is the *final* policymaker regarding actions taken related to QA/QI meetings. *See generally id*. In fact, the Amended Complaint is so vaguely worded that it fails to identify any *final* policymaker whatsoever. Consequently, the Plaintiff fails to establish municipal liability against the County. As a result, Counts I, III, and V must be dismissed.

**D. *Count I Should be Dismissed because Plaintiff cannot Establish a Violation of Due Process***

"[A] § 1983 claim alleging a denial of procedural due process requires proof of three elements: (1) a deprivation of a constitutionally-protected liberty or property

interest; (2) state action; and (3) constitutionally-inadequate process." *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003) (citing *Cryder v. Oxendine,* 24 F.3d 175, 177 (11th Cir.1994)).

A property interest in employment can be created via ordinance or contract but in either case, the sufficiency of the claim rests with reference to state law. *See Bishop v. Wood*, 426 U.S. 341, 344 (1976) (holding that North Carolina state law governed whether a public employee had a property interest in their job). "Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972).

As explained above, Florida law holds that "Public employment is a constitutionally protected property interest." *Joshua*, 768 So.2d at 439. Upon confirmation that a due process interest exists, and when a procedural due process violation has been alleged, the analysis becomes what type of procedural due process is required. *See Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965) and holding that the fundamental requirement of procedural due process is the opportunity to be heard "at a meaningful time and in a meaningful manner.").

The Eldridge Court explained, however, that only "'some form of hearing' is required before an individual is finally deprived of a property interest." *See id.* (quoting *Wolff v. McDonnell*, 418 U.S. 539, 557-558 (1974)). By extension, "(D)ue process is flexible and calls for such procedural protections as the particular situation demands." *Id.*, at 334 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). Furthermore, a procedural due process violation is not complete "unless and until the state refuses to provide due process." *McKinney*, 20 F.3d at 1561 (quoting *Zinermon v. Burch*, 494 U.S. 113, 123 (1990)).

"The state is obligated only to make available 'the means by which [the employee] can receive redress for the deprivations.'" *Id.* (quoting *Schaper v. City of Huntsville,* 813 F.2d 709, 715–16 (5th Cir. 1987) (quoting *Parratt v. Taylor,* 451 U.S. 527, 543 (1981)). Indeed, "[a]ll that due process requires, the Court said, is a post-deprivation 'means of redress for property deprivations satisfying the requirements of procedural due process." *Id.* (quoting *Parratt*, 451 U.S. at 537); *see also Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (explaining that a post-deprivation hearing is likely sufficient to satisfy due process when a property interest less significant than an individual's livelihood is involved).

Here, Plaintiff alleged that he was given only fifteen minutes notice of the April 23, 2019, meeting, that he was not given an opportunity to respond to the matters discussed at that meeting, that he was not given proper notice of the alleged

discipline against him, that he was prevented from exhausting his remedies afforded to him under the CBA, and that he was not afforded an opportunity to challenge the discipline allegedly imposed against him. *See* Am. Compl. at ¶¶ 28, 90, 93(a), & 93(e).

Further, despite never being "formally accused" of wrongdoing, Plaintiff alleges that on May 15, 2019, he was informed that he was placed on administrative duty, was not allowed to work overtime, and as a result, he missed out on overtime payment. *See id.* at ¶¶ 34-35, 59, & 68. However, Plaintiff failed to provide any specific, factual allegations to support his contention that he suffered a due process violation. In fact, some of Plaintiff's own admissions and exhibits attached to the Amended Complaint contradict his allegations that he suffered a procedural due process violation. For example, the Amended Complaint fails to identify, elaborate, or otherwise explain how he was informed that he was allegedly being disciplined. *See* Am. Compl. ¶¶ 34, 59.

Likewise, the Amended Complaint is devoid of any specific factual allegations identifying what job duties Plaintiff had before and after being allegedly placed on administrative duty. Am. Compl. at ¶¶ 34, 35. In addition, the Amended Complaint again fails to plead any facts indicating the amount of overtime hours that Plaintiff worked before being placed on administrative duty and that he would've been entitled to same. *Id.*

Further, Plaintiff admitted that he was aware of the matters that were discussed at the QA meeting because he plead that the matters discussed were almost a year old or had already been resolved. *Id*. at ¶ 28. What's more, Plaintiff had ample opportunity to respond to same because the matters were almost a year old. *Id.* It is axiomatic that only "some form of hearing" is required *before* an individual is *finally* deprived of a property interest. *Eldrige*, 424 U.S. 333 (1976).

However, even if the Court finds that such notice and opportunity to respond were insufficient, Plaintiff's own admission refutes any alleged procedural due process violation relating to the QA meeting because Plaintiff was advised that the meeting was non-disciplinary in nature. Am. Compl. at ¶ 19. Moreover, Plaintiff remained as a paramedic. *Id*. at 59.

Moreover, Plaintiff was not deprived, in any capacity, of his job while at the QA meeting because the meeting was non-disciplinary. Moreover, even if this meeting was disciplinary—which the County vehemently denies—Plaintiff was given ample time to respond to the matters discussed at the QA meeting. Indeed, Plaintiff had known about these matters for almost a year and waited until May 1, 2019, to respond via his human resources complaint. Am. Compl. at ¶ 28. Consequently, any allegation that Plaintiff suffered a procedural due process violation as to the QA meeting is without merit.

In addition, any allegation that Plaintiff suffered a procedural due process violation as to the discipline that he was informed of on May 15, 2019, is likewise without merit. Plaintiff did not suffer a procedural due process violation because he had appellate rights available to him under the County Commissioners Policies and Procedures and the Collective Bargaining Agreement—both of which are attached to the Amended Complaint. *See* Am. Compl. At Ex. D & Ex. E.

Notably, Plaintiff alleges that he was not afforded an opportunity to challenge the discipline that was imposed against him. *See* Am. Compl, at ¶¶ 93(g), 97. Yet, Exhibits D and E contradict this allegation directly. Tellingly, whenever a discrepancy exists between the allegations in a pleading and the supporting exhibits attached thereto, the exhibits control to resolve any discrepancies. *See Griffin Indus., Inc. v. Irvin,* 496 F.3d 1189, 1205–06 (11th Cir.2007) ("[W]hen the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern.").

Here, the County Commissioners' human resources policies and procedures specifically provide the Plaintiff rights to appeal any discipline against him that could result in adverse action under *either* the Merit System Protection Board with Escambia County *or* the Plaintiff's rights under the collective bargaining agreement. *See* Am. Compl. Ex. D, ¶ 72, § 23.5. Indeed, the collective bargaining agreement contains its own separate and distinct procedures for which Plaintiff has an

opportunity to file a grievance and appeal the alleged discipline against him. *See* Am. Compl., Ex. E, Art. 5.

While Plaintiff alleges that the County prevented him from exhausting the remedies available to him under the CBA and/or the County's Human Resources policies and procedures, this is merely a conclusory allegation. *See* Am. Compl. ¶¶ 70-73, 90. Indeed, the Amended Complaint fails to shed light on how the County— plausibly—prevented Plaintiff from exercising his rights under the CBA and/or its Human Resources policies and procedures.

Nowhere does Plaintiff allege that he availed himself, or attempted to avail himself, to the rights available to him under either the County Commissioners' policies and procedures or the grievance procedures under the CBA before he initiated formal litigation against the County. Am. Compl. Even though Plaintiff alleges that there was a written communication allegedly preventing him from exercising his appellate rights, same is not attached to the Complaint. *See id.* ¶ 72. Further, Plaintiff's allegations regarding the report allegedly denying Plaintiff's appellate rights based on the County's policies and procedures is based on information and belief, which is not entitled to a presumption of truth. *Mann*, 713 F.3d 1315.

Although exhaustion of administrative remedies is not a prerequisite to state a claim for a procedural due process violation, a procedural due process violation is

not complete "unless and until the state refuses to provide due process." *McKinney*, 20 F.3d at 156 (quoting *Burch*, 494 U.S. at 123). "The state is obligated only to make available 'the means by which [the employee] can receive redress for the deprivations.'" *Id.* (quoting *Schaper,* 813 F.2d at 715–16 (quoting *Parratt* 451 U.S. at 543 (1981)).

Indeed, "[a]ll that due process requires, the Court said, is a post-deprivation means of redress for property deprivations satisfying the requirements of procedural due process." *Id.* (quoting *Parratt*, 451 U.S. at 537); *see also Loudermill*, 470 U.S. at 542 (explaining that a post-deprivation hearing is likely sufficient to satisfy due process when a property interest less significant than an individual's livelihood is involved).

Here, via its policies and procedures, and by extension, the CBA, the County has given Plaintiff not one, but *two* means of redress for alleged property deprivations. *See* Am. Compl., Exhibit D, ¶ 72, section 23.5; *see also* Am. Compl., Exhibit E, Art. 5. Given that the County has provided Plaintiff with these means of redress for his alleged demotion, the County has complied with their constitutional requirements to provide Plaintiff sufficient procedural due process. *See Loudermill*, 470 U.S. at 542 (explaining that a post-deprivation hearing is likely sufficient to satisfy due process when a property interest less significant than an individual's livelihood is involved).

Consequently, because the Amended Complaint is devoid of any allegations indicating that Plaintiff has availed himself to either of these means of redress and that neither were effective to provide the relief he sought, and because his allegations that he was prevented from exercising his rights thereto are merely conclusory statements, Plaintiff has failed to state a claim for a procedural due process violation against the County.

**E.** ***Plaintiff's Count V Should be Dismissed as Plaintiff Does Not Allege Any Speech that Constitutes a matter of Public Concern to Establish First Amendment Protection***

As a government employee, Plaintiff does not enjoy an absolute right to freedom of speech. *See Bryson v. City of Waycross,* 888 F.2d 1562, 1565 (11th Cir. 1989) ("Although the law is well-established that the state may not demote or discharge a public employee in retaliation for speech protected under the first amendment, a public employee's right to freedom of speech is not absolute."). "To establish a prima facie case of First Amendment retaliation, the employee must show that (1) his speech relates to a matter of public concern, (2) his free speech interests outweigh the public employer's interest in efficiently fulfilling its responsibilities, and (3) the speech played a substantial or motivating role in the employer's decision to take the adverse action." *Smith v. City of Tallahassee*, 789 Fed. Appx. 783, 786-787 (11th Cir. 2019).

For speech to rise to the level of public concern, the government employee's speech must "'relat[e] to any matter of political, social or other concern to the community.'" *Stanley v. City of Dalton, Ga.*, 219 F.3d 1280, 1288 (11th Cir. 2000) (quoting *Connick v. Meyers*, 461 U.S. 138, 146 (1983)). To determine whether that speech is about a matter of public concern, the "main thrust" of the speech must be examined, including "the content, form, and context of a given statement, as revealed by the whole record." *Id.* at 1288 (quoting *Morgan v. Ford*, 6 F.3d 750, 755 (11th Cir. 1993) and quoting *Connick*, 461 U.S. at 147-148).

"When there is a personal element to the speech, complaints of wrongdoing within a public agency may not constitute speech on a matter of public concern." *Id.*; *see also Maggio v. Sipple*, 211 F.3d 1346, 1352 (11th Cir. 2000) (holding that a public employee's speech did not rise to the level of public concern because the speech was not directed toward the public and the speech was comprised of the employee's complaints against her supervisor).

Moreover, "if the speech at issue is personal in nature, and 'cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment.'" *Akins v. Fulton County, Ga.,* 420 F.3d 1293, 1303 (11th Cir. 2005) (quoting *Connick v. Myers*, 461 U.S. 138, 146 (1983)).

Even if a public employee's speech is about matters that the public might be interested in, for that speech to rise to the level of public concern, it must be directed specifically to the public such that it raises issues of concern amongst the public. *See Maggio*, 211 F.3d at 755 (holding that the main thrust of the government employee's speech on agency's internal policies and procedures was to promote a private interest and not raise issues of public concern); *see also Morgan v. Ford*, 6 F.3d 750, 754 (11th Cir. 1993) (finding that the plaintiff's speech about sexual harassment complaints regarding her supervisor was not speech on a matter of public concern because her speech was not intended to raise issues of public concern, instead, the speech served to further her own private interests).

Here, as an initial matter, Plaintiff again failed to attach the May 1, 2019, human resources complaint against the County and Dr. Edler to his Amended Complaint. By extension, the Amended Complaint fails to quote, identify, reference, or otherwise incorporate the alleged speech within the human resources complaint that Plaintiff seeks protection for under the First Amendment. Consequently, Count V of Plaintiff's Amended Complaint should be dismissed on this matter alone.

However, even if Plaintiff had attached his human resources complaint, or had quoted therefrom without attaching same, the speech therein would not relate to social, political, or other matters of public concern. Indeed, Plaintiff's only submits two conclusory allegations that the speech should be afforded First Amendment

protection. The first allegation is that the speech allegedly concerns the policies, practices, and procedures implemented by the County and Dr. Edler. *See* Am. Compl. ¶ 149. The second is that Plaintiff alleged the human resources complaint "was intended to seek redress for the procedural due process violations apparent in the circumstances surrounding the QA [April 23, 2019,] meeting." *See id.* ¶ 151.

As the Court held in *Maggio*, even if the content of the speech might rise to the level of public concern, that speech must be *directed* toward the public. *See Maggio*, 211 F.3d at 755. As the Court held in *Morgan*, speech that serves to promote private, personal interests fails to rise to the level of public concern. *Morgan v. Ford*, 6 F.3d 750, 754 (11th Cir. 1993).

The Eleventh Circuit has found government-employee speech to rise to the level of public concern when the speech was directed to the public and it revolved around matters of public concern. *See Cooper v. Smith*, 89 F.3d 761, 765 (11th Cir. 1996) (finding that government employee's speech on a public investigation into police corruption was speech on a matter of public concern); *see also McCullars v. Maloy*, 617CV1587ORL40GJK, 2018 WL 6618536, at *5 (M.D. Fla. Dec. 18, 2018), clarified on denial of reconsideration, 617CV1587ORL40GJK, 2019 WL 130363 (M.D. Fla. Jan. 8, 2019) (finding that plaintiff's social media posts providing her opinion on a prosecutor's public statement was speech on a matter of public concern because it was directed toward the public to bring awareness to matters of

public concern). Here, there are no allegations that the speech was directed to the public or that the speech was for any other purpose than Plaintiff's own self-interest. *See generally* Am. Compl.

Further, courts in this Circuit have held that government-employee speech does not rise to the level of public concern when it centers on promoting personal matters and internal issues. *See Battle v. Board of Regents for Georgia*, 468 F.3d 755, 761-762 (11th Cir. 2006) (finding that plaintiff, a government employee, was speaking as an employee and that her speech was not a matter of public concern because it centered on her job duties checking for fraud); *see also Vila v. Padron*, 484 F.3d 1334, 1339-1340 (11th Cir. 2007) (holding that government employee plaintiff's speech about potential illegal or unethical behavior of other government employees was not made as a citizen on a matter of public concern). Given that Plaintiff's alleged speech would have related only to his personal concerns, not to issues with the County's policies and their effect on the public as a whole, Plaintiff cannot establish that he directed his speech towards the public or that the purpose of his speech was to raise issues of public concern.

In sum, Plaintiff failed to incorporate the alleged speech he claims is protected by the First Amendment. However, even if Plaintiff had attached or incorporated the specific speech, his retaliation claim still fails since the allegations in the Amended Complaint establish that the subject speech revolves around Plaintiff's personal

interests in seeking personal redress for claims against him alone. For both reasons, independently or conjunctively, Count V must be dismissed.

**F. *Count VII should be Dismissed Because Plaintiff's Allegations fail to Comply with the Plain Language of  § 112.3187, Fla. Stat.***

To establish a *prima facie* case of retaliatory discharge under the Florida Whistleblower Act ("FWA"), a plaintiff must show that "(1) he engaged in statutorily protected expression; (2) he suffered a materially adverse action of a type that would dissuade a reasonable employee from engaging in statutorily protected activity; and (3) there was some causal relation between the events." *Batz v. City of Sebring*, 794 Fed. Appx. 889, 901 (11th Cir. 2019) (quoting *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001)).

"As to statutorily protected expression, the FWA only protects employees who 'disclose information' in certain specified ways or under certain specified circumstances."   *Id*.   (quoting Fla. Stat. § 112.3187(7)).   "[F]or   disclosures concerning a local governmental entity, including any... county,... the information must be disclosed to a chief executive officer as defined in s. 447.203(9) or other appropriate local official." *McMullen v. Wakulla County Bd. of County Commissioners*, 4:14CV117-WS, 2014 WL 12707307, at *1 (N.D. Fla. Sept. 11, 2014) (quoting § 112.3187(6), Fla. Stat.). "'Chief executive officer' for the state shall mean the Governor and for other public employers shall mean the person, whether elected or appointed, who is responsible to the legislative body of the public

employer for the administration of the governmental affairs of the public employer."
§ 447.203(9), Fla. Stat.

Here, Plaintiff's claim under the § 112.3187, Fla. Stat. fails as a matter of law because Plaintiff failed to report the alleged violation of a law, rule, or policy to the appropriate individual within the County. Plaintiff's claim states only that he reported this alleged violation to the Human Resources department generally. *See* Am. Compl. ¶ 28. Plaintiff's threadbare allegations fail to indicate that he specifically disclosed the information to the County's Human Resources director who was employed at the time the alleged Human Resources complaint against Dr. Edler was filed. *See generally* Am. Compl. This failure is fatal to Plaintiff's claim.

Even if this Court broadly construed Plaintiff's allegations to find that he pled specific facts indicating that he reported the Human Resources complaint against Dr. Edler to Edward Spainhower, that too would be insufficient to state a *prima facie* case of whistleblower retaliation under § 112.3187, Fla. Stat. Simply put, under §§ 112.3187(6) and 447.203(9), Fla. Stat., Mr. Spainhower is not the appropriate individual to whom alleged violations of law, rules, or policies should be reported to.

Whistleblowers must disclose alleged violations of a law, rule, or policy only if the given individual(s) report same to a chief executive officer, department head, or other appointed official to govern the affairs of the municipal department. *See*

*generally* §§ 112.3187(6), 447.203(9). The Amended Complaint lacks any allegations indicating that Mr. Spainhower is such an individual. Indeed, Mr. Spainhower is an associate in the County's Human Resources department—he lacks any and all managerial, governing, or other similar powers to qualify under either §§ 112.3187(6) and 447.203(9).

Likewise, Plaintiff fails to state a claim under § 112.3187, Fla. Stat. because Plaintiff's allegations that the law, rule, or policy that the County allegedly violated do not rise to the level of "gross neglect of duty" such that it presents a "substantial and specific danger to the public's health, safety, or welfare." *See* § 112.3187(5)(a), Fla. Stat. This portion of the statute is liberally construed and is not limited to the specifically enumerated parameters therein. *See Hutchison v. Prudential Insurance Co.,* 645 So.2d 1047, 1050 n. 4 (Fla. 3d DCA 1994) (finding that the Whistle-blower's Act is not restricted only to acts which threaten "the health, safety, or welfare of the public at large").

However, even under the most liberal construction of this statute, it fails to rise to the level of presenting a "substantial and specific danger to the public's health, safety, or welfare." Plaintiff's allegations are personal in nature, and relate solely to him—not to the public as a whole. Indeed, Plaintiff's allegations are completely disconnected from the public's health, safety, or welfare. Even if Plaintiff were to

allege that his supposed demotion prevented him from serving as a paramedic, this allegation would fail to state a claim for whistleblower retaliation for two reasons.

First, this allegation would be false because Plaintiff was still functioning within the County's EMS department. *See* Am. Compl. ¶ 59. Second, Plaintiff would have needed to plead additional facts indicating that there was a shortage of paramedics and that his prevention from being able to serve as same qualifies as a "present and substantial danger to the public's health, safety, or welfare" under § 112.3187(5)(a), Fla. Stat. In fact, Plaintiff's own allegations work against him—Dr. Edler and the County conducted the QA/QI meeting on April 23, 2019, to ensure that Plaintiff himself would not endanger the residents of the County who call 911 for help when an emergency occurs.

By contrast, this Court has held that several complaints of alleged violations of law are able to survive a motion to dismiss when those alleged violations directly related to and affected the public at large. *See King v. State of Florida*, 650 F.Supp.2d 1157 (N.D. Fla. 2009) (denying plaintiff's motion to dismiss because it stated a claim under Florida's public whistleblower act due to plaintiff's allegations that the government's alleged violations of law were attributable to the public). In *King*, the plaintiff's complaints concerned bias in the hiring process and the improper use of the emergency dispatch system to report a false crime to test an employee's response

time. *See* 650 F.Supp.2d at 1164. As a result, the Court found that the plaintiff in *King* stated a claim under § 112.3187(5)(a)-(b).

Conversely, here, Plaintiff's allegations of alleged violations of law by the County do not implicate, and are not attributable to, the public as a whole. Indeed, these alleged violations of law that were supposedly committed against Plaintiff relate solely to him, affected only him, and are not attributable to the public as a whole.

Given that Plaintiff's Amended Complaint fails to establish that the alleged violations of law were reported to the appropriate parties under §§ 112.3187(6)-(7), Fla. Stat., the question remains whether Plaintiff disclosed the County's alleged violations of law via a written and signed complaint. However, all that can be discerned from Plaintiff's Amended Complaint is that the alleged violations of law were reported to Human Resources. Yet, the manner in which same was reported, orally, written, signed, or unsigned, cannot be determined by analyzing Plaintiff's Amended Complaint. *See generally* Am. Compl.

Consequently, for the foregoing reasons, Plaintiff is not entitled to whistleblower protection, and has failed to state a claim under § 112.3187, Fla. Stat.

## <u>CONCLUSION</u>

For the foregoing reasons, Counts I, III, V, and VII should be dismissed.

WHEREFORE, Defendant, Escambia County Board of County Commissioners, respectfully requests this Court to enter an Order dismissing Count I, III, V, and VII of Plaintiff's Complaint, and awarding any and all further relief that this Court deems just and proper.

## CERTIFICATION UNDER L.R. 7.1 (F)

Pursuant to Local Rule 7.1 (F), I hereby certify that the number of words in the Motion and Memorandum do not exceed 8,000 words.  The total number of words is 7,994.

Dated:  May 15, 2020

Respectively Submitted,
LYDECKER | DIAZ
Counsel for Escambia County
495 Grand Blvd.
Suite 206
Miramar Beach, FL
Telephone: (305) 416-3180

By: */s/ Katie Gudaitis*
KATIE GUDAITIS, ESQ.
Florida Bar No: 106954
kg@lydeckerdiaz.com
STEPHANIE PIDERMANN, ESQ.
FBN: 60414
sp@lydeckerdiaz.com

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing document with the Clerk of Court using CM/ECF on May 15, 2020. I also certify that a true and correct copy of the foregoing was served this day via transmission of Notices of Electronic Filing generated by CM/ECF on all counsel or parties of record on the Service List

below.

/s/ *Katie Gudaitis*
Katie Gudaitis, Esq.

## **SERVICE LIST**

**J.J. TALBOTT, ESQ.**
Law Office of Jerimiah J. Talbott, P.A.
900 East Moreno Street
Pensacola, Florida 32503
jjtalbott@talbottlawfirm.com
Phone: (850) 437-9600
*Attorney for Plaintiff*

**CECILY L. KAFFER, ESQ.**
THE KULLMAN FIRM
63 S. Royal Street, Suite 1100
Mobile, Alabama 36602
clk@kullman.com
Phone: (251) 432-1811
*Attorney for Rayme Edler*