**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**


**MATHEW SELOVER,**

     **Plaintiff,**

**v.**                         **Case No. 3:20cv04698-TKW-HTC**

**ESCAMBIA COUNTY BOARD**
**OF COMMISSIONERS** and
**RAYME EDLER,**

**Defendants.**
_____/


**DEFENDANT RAYME EDLER'S <u>AMENDED</u> MOTION TO DISMISS FIRST**
**AMENDED COMPLAINT, AND TO AWARD ATTORNEYS' FEES**
**WITH INCORPORATED MEMORANDUM OF LAW**

     Pursuant to Rule 12(b)(6), *Fed.R.Civ.P.*, Defendant Rayme Edler ("Dr. Edler") moves to dismiss plaintiff Matthew Selover's first amended complaint because it fails to state a claim on which relief may be granted, and because Dr. Edler is immune from suit on the federal claims under the doctrine of qualified immunity, and on the state claim under Florida statutory immunity. Pursuant to Fla. Stat. § 401.425, Dr. Edler also requests an award of attorneys' fees incurred in defending the suit.

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT.

     Escambia County's Emergency Medical Service operates under the supervision of the Florida Department of Health, Bureau of Emergency Medical Services, within the statutory framework of the Raymond H. Alexander, M.D., Emergency Medical Transportation Services Act." Fla. Stat.  §401.2101, et seq.  ("EMTS Act").  Dr. Edler is Escambia County's Medical Director, entrusted

with supervising the County's provision of emergency medical care to the people of Escambia County, including reviewing the performance of EMS personnel so that they operate within their scope of competence.  Plaintiff Matthew Selover is a County employee, working in the EMS as a paramedic; he asserts claims against the County and against Dr. Edler, all arising out of his county employment as a state-licensed health care provider.

Plaintiff's claims all flow from an April 23, 2019, "quality review" of his "medical competence," which Dr. Edler chaired, pursuant to the EMTS Act."[1] Following the review, Dr. Edler reported her concerns about Plaintiff's medical performance to the Florida Department of Health, Bureau of Emergency Medical Services, again, as required by the EMTS Act and by longstanding Health Department guidance.  See Fla. Stat. §401.265; see also *Final Order Granting Petition for Declaratory Statement*, by the Department of Health, Bureau of Emergency Medical Services, attached as Exhibit 1.  Pending review by the Department of Health, Dr. Edler limited Plaintiff to performing basic life support, rather than advanced, and required that he work under supervision.

This was not a "discipline" matter, as such.  Rather as the medical doctor providing the statutorily required medical supervision of Escambia County EMS, Dr. Edler had a "mandatory" obligation to assess the "medical performance" of Plaintiff - a "paramedic working under her," and "to condition, limit, modify or suspend [h]is medical performance" so that he delivered patient care "of the quality and type for which she is willing to take direct responsibility."[2]  Consistent with her statutory obligation, Dr. Edler limited

---

[1]     Fla. Stat.  §401.265 provides that the Medical Director shall establish a "quality assurance review of all emergency medical technicians and paramedics operating under [her] supervision," "document facts and other information," and report issues with a paramedic's medical performance to the Department of Health.   Fla. Stat.  §401.425 provides that an EMS "may review and evaluate the professional medical competence of emergency medical technicians and paramedics under the jurisdiction of such committee."

[2]     Final Order Granting Petition for Declaratory Statement, Florida Dept. of Health, Bureau of Emergency Medicine, attached as Exhibit 1.

Plaintiff to performing basic life support under supervision, pending action by the Department of Health.

After the quality review meeting, but before Dr. Edler mailed her report to the Department of Health, Plaintiff made an internal complaint. County EMS undertook an investigation which stretched out for several months, during the course of which County personnel from several departments stated that Dr. Edler was not authorized to act as she did, that she could not "discipline" Plaintiff.

Of course, "discipline" within the context of County employment, *e.g.*, grade, rank, pay rate, etc., is a different subject entirely from the decision whether an employee is competent to perform emergency medical care. Dr. Edler is the *only* County employee with the responsibility to enforce medical standards for medical personnel to provide competent medical care. The EMTS Act establishes the procedures for medical-competence review, and likewise establishes the Department of Health as the entity responsible for overseeing the process, both procedurally and substantively. No part of the medical licensing process is subject to the County's personnel rules or its collective bargaining agreement.

The Department of Health has not taken action on Edler's report and Plaintiff's medical privileges remained limited, at Dr. Edler's sole discretion, as informed by her education, training, experience, professional and statutory responsibilities. Because Plaintiff was no longer acting as a shift captain, he no longer attended shift captain meetings. Citing these occurrences, Plaintiff resigned his employment.

Against this background, Plaintiff asserts federal and state law claims. Counts I-VI assert constitutional torts under 42 U.S.C. §1983. Plaintiff claims that defendants violated his First Amendment right to free speech, and his Fourteenth Amendment right to procedural and substantive due process

3

before his property was taken through state action, and to be free from retaliation.  These claims are due to be dismissed because Dr. Edler has state and federal immunity from suit, and because they fail to state claims on which relief may be granted.  Count VII asserts a claim under the Florida Whistle-blower's Act, Fla. Stat. §§ 112.3187-112.31895, which on its face could only be lodged against the County.  This claim is also due to be dismissed, as the Whistleblower Act does not apply to individuals.  Even if it stated a claim, Dr. Edler has state statutory immunity under Fla.Stat. §401.425.

## Federal Claims: Counts I-VI, 42 U.S.C. §1983 Constitutional Torts.

Dr. Edler has immunity from Plaintiff's federal claims.  Fla. Stat. §401.425 grants Dr. Edler immunity for leading the statutorily mandated review of Plaintiff's "medical competence" that prompted this lawsuit.  While state law immunity may not apply against the federal claims, the statute nevertheless informs the court's analysis of federal qualified immunity.

The federal doctrine of qualified immunity protects Dr. Edler from suit for carrying out her discretionary duties, "protecting from suit all but the plainly incompetent or one who is knowingly violating [] federal law." *Gonzalez v. Reno*, 325 F.3d. 1228, 1233 (11th Cir. 2005).  (internal citations and quotation marks omitted; footnote added).  Because Plaintiff's claims are based on Dr. Edler's performance of her statutory duties consistent with the EMTS Act's regulatory scheme, Dr. Edler is immune.

Because Dr. Edler is immune from suit, including discovery, Plaintiff's complaint may be dismissed at the 12(b)(6) stage.  *See e.g. Marsh v. Butler County*, Ala, 268 F.3d 1014, at 1023 (11th Cir. 2001), *abrogated in part on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (court may dismiss claim on 12(b)(6) motion where the face of the complaint shows given the alleged circumstances, the law supporting Plaintiff's claim was not already clearly established to prohibit what

4

the government-official defendant is alleged to have done before the defendant acted.").

**State Law Claim: Count VII, Florida Whistleblower's Act.**

By its terms, the Whistleblower's Act prohibits retaliation by "agencies or independent contractors," the statutory definitions of which include "officials" but not individuals.  Accordingly, Count VII does not state a claim against Dr. Edler personally, but rather purports to assert a claim against the County based on her acts in her official capacity.  Even if Count VII stated a claim, Dr. Edler is immune under Florida law.  Fla. Stat. §401.425 (3)(a).

**Statutory Attorneys' Fees.**

Dr. Edler is also entitled to recover her reasonable costs and attorneys' fees incurred in defending this action.  Fla. Stat. § 401.425(6).

**II.    PARTIES AND CLAIMS.**

The County's Emergency Medical Service operates under the Florida Department of Health, pursuant to the EMTS Act.  Dr. Edler serves as the County's Medical Director, to provide the statutorily required "medical supervision, including appropriate quality assurance but not including administrative and managerial functions, for daily operations and training pursuant to this part." Fla. Stat.  § 401.23(15) (2013).

Plaintiff is a paramedic, "a person who is certified by the department [of health] to perform basic and advanced life support pursuant to this part." Fla. Stat.  § 401.23(17).  See also §401.23(1)(2)(7) and (8)(2013)(definitions of "Advanced life support," "Advanced life support service," "Basic life support," and "Basic life support service.").

Dr. Edler's responsibilities as Medical Director are delineated by statute, including supervising and reviewing the medical performance of EMTs and paramedics, and reporting substantial concerns to the Department

of Health.   Fla. Stat. § 401.265; [3] see also Fla. Stat. § 401.425(2) ("An emergency medical review committee may review and evaluate the professional medical competence of emergency medical technicians and paramedics under the jurisdiction of such committee.").

Significantly, the EMTS Act grants medical directors like Dr. Edler immunity from suit and liability for any act connected with the medical review committee:

> (3)(a) There shall be no monetary liability on the part of, and no cause of action shall arise against, any person, including any person acting as a witness, incident reporter to, or investigator for, an emergency medical review committee for any act or proceeding undertaken or performed within the scope of the functions of any emergency medical review committee if such action is taken without intentional fraud or malice.

Fla. Stat. § 401.425.

### First Amended Complaint Factual Allegations.

Plaintiff's amended complaint includes the following allegations relevant to Dr. Edler:

- Plaintiff has been employed as a paramedic with Escambia County's Emergency Medical Services since February 2012.   (Amended Complaint ¶5).

- Since April 2018, Dr. Edler has been the EMS Medical Director, with responsibility "for the medical performance of all Emergency Medical Technicians and Paramedics of Escambia County," who operate under her license as set out in Fla Stat. §401.265, (Amended Complaint ¶¶3, 8, Amended Complaint Amended Complaint).

---

[3]      "Medical director" means a physician [like Dr. Edler] who is employed or contracted by a licensee [like Escambia County Emergency Medical Service] and who provides medical supervision [to paramedics like Plaintiff], including appropriate quality assurance but not including administrative and managerial functions, for daily operations and training pursuant to this part.  Fla. Stat.  § 401.23 (2013).

- On April 23, 2019, Dr. Edler chaired an EMS Quality Assurance review of Plaintiff's medical performance, with a 5-member committee which included County officials who were participating on the QA committee for the first time.  During the review, Dr. Edler allegedly "brought up matters that were almost a year old and/or were already resolved." (Amended Complaint ¶¶17, 21, 28).

- After the Quality Assurance review:
  - Dr. Edler reported concerns about Plaintiff's medical performance to the Department of Health, and required Plaintiff to undergo training, and limited or modified his medical performance pending completion of the Department of Health's investigation.  (Amended Complaint ¶¶31, 34-35, 38, 57-59).
  - Plaintiff filed a complaint against Dr. Edler with the County's Human Resources Department, and several weeks later an unnamed HR representative met with EMS Chief Leon Salter, Interim Public Safety Director Dosh and Dr. Edler about Plaintiff's complaint.  (Amended Complaint ¶¶28 and 30).

- Subsequently, Director Dosh advised Dr. Edler that her conduct appeared to be retaliatory and that she should prepare a performance improvement plan.   Dr. Edler did not prepare a performance improvement plan for Plaintiff, but "continued to press for disciplinary action against Plaintiff," including recommending that he be demoted or terminated; and he was placed on administrative duty, in which he could not work overtime, before returning to an EMT position. (Amended Complaint ¶¶32, 33, 34, 35, 41, 49, 57-59).

- Subsequently, Deputy County Attorney Peppler gave his legal opinion that Dr. Edler did not have the authority to demote, terminate, or otherwise discipline Plaintiff.  (Amended Complaint ¶42).

- HR Representative Spainhower also prepared a draft report which concluded that Dr. Edler may have engaged in retaliation.  Ultimately,

however, the County's Director of Human Resources Jana Still determined that Dr. Edler had not retaliated against Plaintiff. (Amended Complaint ¶¶45 and 69; Amended Complaint Exhibit B).

- Notwithstanding Mr. Peppler's opinion, and Mr. Spainhower's report, the County has failed and refused to follow its own policies, but instead allowed Dr. Edler to limit his medical performance, by assigning him to work as an EMT providing basic life support, rather than a paramedic providing advanced life support. (Amended Complaint ¶¶40, 43, 57-59, 64).[4]

- Dr. Edler called the Medical Director of Santa Rosa County to advise him that Plaintiff was not qualified to work as a paramedic for the Lifeguard Ambulance Service. Santa Rosa's Medical Director disagreed, and Plaintiff has continued his work for Santa Rosa. (Amended Complaint ¶75).

- Because Plaintiff was no longer allowed to perform advanced life support or to attend supervisors' meetings, he resigned his position. (Amended Complaint ¶¶116-118).

## III.  SCOPE OF MOTION.

The County moved to dismiss Counts I, III, V and VII, the claims asserted against the County and Dr. Edler *in her official capacity,* which is

---

[4]    "Advanced life support" means assessment or treatment by a person qualified under this part through the use of techniques such as endotracheal intubation, the administration of drugs or intravenous fluids, telemetry, cardiac monitoring, cardiac defibrillation, and other techniques described in the EMT-Paramedic National Standard Curriculum or the National EMS Education Standards, pursuant to rules of the department.  "Basic life support" means the assessment or treatment by a person qualified under this part through the use of techniques described in the EMT-Basic National Standard Curriculum or the National EMS Education Standards of the United States Department of Transportation and approved by the department.  The term includes the administration of oxygen and other techniques that have been approved and are performed under conditions specified by rules of the department.  Fla. Stat. 401.23(1) and (7).

simply another way to plead claims against the County.  *Kentucky v. Graham*, 473 U.S. 159, 165–66, 105 S. Ct. 3099, 3105, 87 L. Ed. 2d 114 (1985).  For the avoidance of doubt, Dr. Edler joins and adopts the County's motion as to Counts I, III, V and VII.

With this motion, Dr. Edler seeks the dismissal of Counts II, IV and VI, the claims asserted against her in her individual capacity, because at all times relevant to the Amended Complaint she was immune under the federal doctrine of qualified immunity.  *See Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1281 (11th Cir. 1998) *citing Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) (Because Dr. Edler acted within the scope of her discretionary authority and did not violate clearly established law, the doctrine of qualified immunity protects her from suit.).

## IV.    MOTION TO DISMISS STANDARD.

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to move for dismissal of a complaint which is legally insufficient, *i.e.*, fails to state a claim upon which relief may be granted.  *See* Fed.R.Civ.P. 12(b)(6).  In the context of Rule 12(b)(6) motion practice, the court must assume that all the factual allegations set forth in the complaint are true and construe those allegations in the light most favorable to the plaintiff.  *See, e.g., Brower v. County of Inyo*, 489 U.S. 593, 598, 109 S.Ct. 1378, 1382, 103 L.Ed.2d 628 (1989); *United States v. Gaubert*, 499 U.S. 315, 327, 111 S.Ct. 1267, 1276, 113 L.Ed.2d 335 (1991); *Powell v. Lennon*, 914 F.2d 1459, 1463 (11th Cir. 1990).

Rule 8(a)(2) sets the standard for legally sufficient allegations: a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).  While Rule 8 "does not require 'detailed factual allegations,'" it does demand "more than an unadorned, the defendant-unlawfully-harmed-me accusation."  *Id.*

Plainly stated, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id., quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-1965, 167 L.Ed.2d 929 (2007). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*., quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. at 1955.

Rule 9(b) sets the standard for pleading fraud: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."

The Court may dismiss the federal claims based on qualified impunity at the 12(b)(6) stage where, as here, "(1) from the face of the complaint, (2) [the court] must conclude that (even if a claim is otherwise sufficiently stated), (3) the law supporting the existence of that claim-given the alleged circumstances-was not already clearly established, (4) to prohibit what the government-official defendant is alleged to have done, (5) before the defendant acted." *Marsh v. Butler County, Ala*, 268 F.3d 1014, at 1023 (11th Cir. 2001), *abrogated in part on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). *See also Saucier v. Katz,* 533 U.S. 194, 200-201, 121 S.Ct. 2151, 2155-2156, 150 L.Ed.2d 272 (2001). ("Where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive. Qualified immunity is an entitlement not to stand trial or face the other burdens of litigation. The privilege is an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial. As a result, we repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation.") (emphasis in original; internal citations and quotation marks omitted). Similarly, the Court can dismiss the state law claim based on state statutory immunity because "the facts giving application to the

10

defense are clearly apparent on the face of the complaint." *Fariello v. Gavin*, 873 So.2d 1243, 1245 (Fla. Dist. Ct. App. 2004).

## V.    ARGUMENT AND MEMORANDUM OF LAW.

Plaintiff's Amended Complaint asserts federal and state law claims against Dr. Edler in her official and individual capacities, all of which are due to be dismissed.

## A.    Federal Claims: Counts I-VI, 42 USC §1983.

The Amended Complaint asserts federal constitutional claims against Dr. Edler if her official capacity in Counts I, III and V; it asserts the same claims against Dr. Edler in her individual capacity in Counts II, IV and VI.

The County moved to dismiss Counts I, III and V, the claims against the County and Dr. Edler in her *official capacity*.  While the County did not directly move for dismissal as to Dr. Edler in her official capacity, it is well established that

> official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent. "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.  It is not a suit against the official personally, for the real party in interest is the entity.  Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself.

*Kentucky v. Graham*, 473 U.S. 159, 165–66, 105 S. Ct. 3099, 3105, 87 L. Ed. 2d 114 (1985), *quoting Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n. 55, 98 S.Ct. 2018, 2035, n. 55, 56 L.Ed.2d 611 1978)(other internal citations omitted).  Consequently, granting the County's motion to dismiss the claims against the County would necessarily dismiss the official

11

capacity claims against Dr. Edler. *Id.; See also Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) ("Because suits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent, there no longer exists a need to bring official-capacity actions against local government officials, because local government units can be sued directly (provided, of course, that the public entity receives notice and an opportunity to respond)").  For the avoidance of doubt, Dr. Edler joins in County's motion to dismiss Counts I, III and V and adopts its arguments for dismissal.

Plaintiff's Counts II, IV and VI assert the §1983 claims from Counts I, III and V against D r. E d l e r i n h e r *individual capacity*.  Plaintiff contends generally that Dr. Edler failed to give him due process and retaliated against him in violation of the First and Fourteenth Amendments to the United States constitution.  These claims against Dr. Edler should be dismissed both because she has qualified immunity, founded in part on Fla. Stat. §402.425, for the §1983 and because they fail to state claims on which relief may be granted.

## 1. Qualified Immunity.

The defense of qualified immunity affords complete protection to government officials performing discretionary functions unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. *Harbert,* 157 F.3d. at 1281.  Because qualified immunity protects Dr. Edler from suit, and not merely liability, her entitlement to the defense may be decided at the 12(b)(6) stage:

> The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating [] federal law.  Because qualified immunity is an entitlement not to stand trial or face the other burdens of litigation, questions of qualified immunity must be resolved at the earliest possible stage in litigation.  It is therefore appropriate for a district court to grant the defense of qualified immunity at the motion to

> dismiss stage if the complaint fails to allege the violation of a
> clearly established constitutional right.

*Gonzalez v. Reno*, 325 F.3d. 1228, 1233 (11ᵗʰ Cir. 2005).  (internal citations and quotation marks omitted; footnote added).

### a. Dr. Edler's Discretionary Function.

To be entitled to qualified immunity, Dr. Edler must show that she was acting within the scope of her discretionary authority when the allegedly wrongful acts occurred.  *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002), quoting *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002).  "In making this determination, '[i]nstead of focusing on whether the acts in question involved the exercise of actual discretion, we assess whether they are of a type that fell within the employee's job responsibilities.  Our inquiry is two-fold.  We ask whether the government employee was (a) performing a legitimate job-related function (that is, pursuing a job- related goal), (b) through means that were within his power to utilize. . ..  In applying each prong of this test, we look to the general nature of the defendant's action, temporarily putting aside the fact that it may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances."  *O'Rourke v. Hayes*, 378 F.3d 1201, 1205 (11th Cir. 2004), quoting *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1266 (11th Cir. 2004).  In making this determination, the court asks whether the complained of acts "would be within, or reasonably related to, *the outer perimeter of an official's discretionary duties*.  The scope of immunity should be determined by the relation of the [injury] complained of to the duties entrusted to the officer."  *Harbert,* 157 F.3d at 1282.

The statutory framework for the County's Emergency Medical Services is set out in the "Emergency Medical Transportation Services Act," Fla. Stat. §401.2101, *et seq*.  Dr. Edler is the County's Medical Director, "a physician

who is employed or contracted by a licensee and who provides medical supervision, including appropriate quality assurance but not including administrative and managerial functions, for daily operations and training pursuant to this part."   Fla. Stat.   § 401.23(15) (2013).   Plaintiff is a paramedic, "a person who is certified by the department [of health] to perform basic and advanced life support pursuant to this part."   Fla. Stat.   § 401.23(17).   *See also* footnote 5, setting out the statutory definitions in §401.23(1)(2)(7)  and  (8)(2013)(definitions  of  "Advanced  life  support," "Advanced life support service," "Basic life support," and "Basic life support service.").

Dr. Edler's responsibilities as Medical Director are delineated by statute, in pertinent part, as follows:

> (1) . . . . The medical director must supervise and assume direct responsibility for the medical performance of the emergency medical technicians and paramedics operating for that emergency medical services system.  The medical director must perform duties including advising, consulting, training, counseling, and overseeing of services, including appropriate quality assurance but not including administrative and managerial functions.

> (2) Each medical director shall establish a quality assurance committee to provide for quality assurance review of all emergency medical technicians and paramedics operating under his or her supervision.  If the medical director has reasonable belief that conduct by an emergency medical technician or paramedic may constitute one or more grounds for discipline as provided by this part, he or she shall document facts and other information related to the alleged violation.  The medical director shall report to the department [of health] any emergency medical technician or paramedic whom the medical director reasonably believes to have acted in a manner which might constitute grounds for disciplinary action.  Such a report of disciplinary concern must include a statement and documentation of the specific acts of the disciplinary concern.

Fla. Stat.  § 401.265.

Under the test set out in *O'Rourke,* 378 F.3d at 1205, there can be no doubt that Dr. Edler was acting within the scope of her discretionary authority

14

relevant to the events alleged in the amended complaint. Pursuant to her duty to "supervise and assume direct responsibility for the medical performance of the emergency medical technicians and paramedics," she convened a "quality assurance review" of a "paramedic[] operating under . . . her supervision," and reported concerns about Plaintiff's medical performance to the Department of Health, and to the Medical Director of Santa Rosa County. That is, she engaged in acts that were entirely within her job responsibilities, and were legitimate job-related functions, through means that were within her power to utilize. *O'Rourke v. Hayes*, 378 F.3d 1201, 1205 (11th Cir. 2004), *quoting Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1266 (11th Cir. 2004).

### b. Dr. Edler Did Not Violate Any Clearly Established Right.

Dr. Edler having established that she was acting within the scope of his discretionary authority, the burden shifts to Plaintiff to demonstrate that Dr. Edler is not entitled to qualified immunity. *See O'Rourke, supra*, 378 F.3d at 1206 ("Once a government official demonstrates that he is potentially entitled to qualified immunity, the burden shifts to the plaintiff to demonstrate that the official is not actually entitled to it."). In *Saucier v. Katz, supra,* the Supreme Court set forth the following two-part analysis for determining whether qualified immunity is appropriate: first, considering the facts in the light most favorable to the plaintiff, do the facts show that the defendant's conduct violated a constitutional right; and, second, "if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." 533 U.S. at 200 & 201, 121 S.Ct. at 2155 & 2156; *see also Vinyard, supra*, 311 F.3d at 1346 ("The Supreme Court has set forth a two-part test for the qualified immunity analysis. 'The threshold inquiry a court must undertake in a qualified immunity analysis is whether [the] plaintiff's allegations, if true, establish a constitutional violation.' If a

constitutional right would have been violated under the plaintiff's version of the facts, 'the next, sequential step is to ask whether the right was clearly established.'" (internal citations omitted)).

Distilled to its essence, Plaintiff's complaint alleges that he did not receive Fourteenth Amendment due process because the QA meeting was called on short notice, and he was not given an opportunity to challenge Dr. Edler's conclusion that he could not "work as a paramedic under her license," that his First Amendment right to free speech was violated when Dr. Edler reported the QA results to the Department of Health and to the Medical Director of Santa Rosa County's EMS after he made a complaint about her to the County's Human Resources Department, that all of this was retaliation, and that the combination of these events made his working conditions so intolerable that he was forced to resign. These allegations do not support Plaintiff's contention that his clearly established constitutional rights were violated.

### c. *Florida law clearly establishes the appropriateness of Dr. Edler's actions*.

In a November 1, 2007, *Final Order Granting Petition for Declaratory Statement*, attached as Exhibit 1, the Florida Department of Health, Bureau of Emergency Services determined an EMS Medical Director's scope of authority over "certificate holders" such as paramedics. The Bureau held that the Medical Director has "direct responsibility for all Certificate holders," accompanied by the "supervisory authority necessary to require that the medical performance of the Certificate holders is of a quality and type for which the individual Medical Director is willing to take direct responsibility." Further, "the exercise of this supervisory authority by the Medical Director is a mandatory part of the job," which includes "assessing the medical performance of all certificate holders," including thorough quality assurance

16

reviews.  Such "supervisory authority enables the Medical Director to consider whether and how Certificate holders perform medically."  In short:

> The Medical Director has the authority to condition, limit, modify or suspend the certificate holder's medical performance while operating for the licensee consistent with the Medical Director's direct responsibility for the medical performance of all certificate holders operating for the licensee.

> Such conditioning, limitation, modification or suspension of a Certificate holder's medical performance while operating for the licensee can include requirement of completion of Medical Director identified training as a precondition for some or all parts of the certificate holder's medical performance while operating for the licensee.

*Final Order Granting Petition for Declaratory Statement*, attached as Exhibit 1.  Because the Florida Department of Health has clearly set out the parameters of a Medical Director's authority under §401.265(1), Plaintiff cannot establish that Dr. Edler violated his clearly established rights by acting in conformity with the statute.  *Pharm. Research & Mfrs. Of Am. V. Meadows*, 304 F.3d 1197, 1208 (11th Cir. 2002) (Courts give substantial deference to a state agency's interpretation of a statute the agency administers.)

### d. Florida Law would give Dr. Edler immunity:

As set out, Florida law would give Dr. Edler immunity from these claims. Fla. Stat. §401.425 (3)(a).  While that immunity may not apply against the federal claims, its existence is further indication that Dr. Edler did not violate clearly established law.

Accordingly, Counts II, IV and VI are due to be dismissed because Dr. Edler has qualified immunity.

### *2.* Failure to State A Claim

Even without immunity, Counts II, IV and VI are due to be dismissed because they fail to state claims on which relief may be granted.

17

### a. Dr. Edler did not violate Plaintiff's due process rights.

Dr. Edler adopts and incorporates the arguments in the County's motion to dismiss, and adds that Plaintiff will also be entitled to a hearing from the Department of Health, as set out in Fla. Stat. § 401.265.

Moreover, Dr. Edler was not responsible for establishing due process procedures or providing them to Plaintiff. Quite the contrary, as set out by statute, Dr. Edler's mandatory responsibility was to report concerns about Plaintiff's medical performance to the Department of Health. Fla. Stat. § 401.265: See also, Amended Complaint, Department of Health Final Order. Since Dr. Edler was not individually responsible for providing due process to Plaintiff, she is not responsible for any due process violation that did occur. *See Watkins v. Central Broward*, ____ Fed. Appx. ____, 2020 WL 40152 (11th Cir. 2020).[5]

### b. Dr. Edler did not violate Plaintiff's free speech rights.

Dr. Edler adopts and incorporates the arguments in the County's motion to dismiss and adds that the sequence of events alleged in the complaint establishes that she did not retaliate against Plaintiff. As plead, Dr. Edler convened a Quality Assurance review of Plaintiff's medical performance on April 23, 2019, which led her to report concerns about his competence to the Department of Health. Because the Quality Assurance review which prompted the report to the Department of Health took place *before* Plaintiff complained to Human Resources, his complaint could not have been the cause of the Quality Review and the related report to the Department of Health.

Accordingly, Counts II, IV and VI are due to be dismissed because they fail to state claims on which relief may be granted.

---

[5]     "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2.

**B.   State Claim: Count VII, Florida Whistleblower**.

The Amended Complaint asserts a Florida Whistleblower's Act claim against Dr. Edler in her official capacity in Count VII.  The Whistleblower's Act "prevent[s] agencies or independent contractors from taking retaliatory action against an employee" blows the whistle.  Fla. Stat. § 112.3187.  Consequently, a claim against Dr. Edler in her official capacity is a claim against the County, and its pendency against the County would not prevent dismissal of the claims against Dr. Edler.

Moreover, Dr. Edler is immune from Plaintiff's Whistleblower claim:

> There shall be no monetary liability on the part of, and no cause of action shall arise against, any person, . . . for any act or proceeding undertaken or performed within the scope of the functions of any emergency medical review committee if such action is taken without intentional fraud or malice.

Fla. Stat. § 401.425(3)(a).  The Amended Complaint does not plead fraud or malice.  Instead, the Amended Complaint makes clear that Plaintiff's complaint is founded on Dr. Edler's performance of her mandatory duty to enforce medical standards for medical personnel to provide competent medical care through the review-and-report procedures established in the EMTS Act. Consequently, she is immune from liability.

**C.   Statutory Attorneys' Fees**.

Dr. Edler is also entitled to recover her reasonable costs and attorneys' fees incurred in defending this action:

> (6) If the defendant prevails in an action brought by a health care provider against any person who initiated, participated in, was a witness in, or conducted any review as authorized by this section, the court shall award reasonable attorney's fees and costs to the defendant.

Fla. Stat. § 401.425(6).

19

## VI.   CONCLUSION.

For the reasons set out above, Dr. Edler's motion to dismiss the complaint is due to be granted.  Dr. Edler has qualified immunity for the federal claims because all times relevant to the Amended Complaint she acted within the scope of her discretionary authority and did not violate clearly established law.  Moreover, Plaintiff has not alleged adequate facts to support his claims that his due process and first amendment rights were violated.  Dr. Edler has statutory immunity for the Florida Whistleblower's Act claim.

WHEREFORE Defendant Rayme Edler moves to dismiss plaintiff Matthew Selover's Amended Complaint because it fails to state a claim on which relief may be granted against her, and because Dr. Edler is entitled to qualified and statutory immunity.

## CERTIFICATION UNDER L.R. 7.1 (F)

Pursuant to Local Rule 7.1 (F), I hereby certify that the number of words in the Motion and Memorandum do not exceed 8,000 words. The total number of words is 5,809.

*/s/ Cecily L. Kaffer*

**Cecily L. Kaffer**
pro hac vice
The Kullman Firm
A Professional Law Corporation

Post Office Box 1287
Mobile, Alabama 36633
Telephone: (251) 432-1811
clk@kullmanlaw.com

Attorney for Defendant Rayme Edler

**CERTIFICATE OF SERVICE**

   I certify that on May 18, 2020 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Katie Gudaitis
Stephanie Pidermann
Lydecker Diaz
495 Grand Blvd.
Miramar Beach, FL 32550
kg@lydeckerdiaz.com
sp@lydeckerdiaz.com


J.J. Talbott
Law Office of Jerimiah J. Talbott, P.A.
900 East Moreno Street
Pensacola, Florida 32503
jjtalbott@talbottlaw.com


       */s/ Cecily L. Kaffer*
       Cecily L. Kaffer