# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

MATHEW SELOVER

     Plaintiff,

vs.                           CASE NUMBER: 3:20-CV-4698-TKW-HTC

ESCAMBIA COUNTY BOARD
OF COUNTY COMMISSIONERS and
RAYME EDLER,

     Defendants.

_____/

**PLAINTIFF'S *RESPONSE IN OPPOSITION TO DEFENDANTS ESCAMBIA COUNTY BOARD OF COUNTY COMMISSIONERS AND RAYME EDLER'S (OFFICIAL CAPACITY) MOTION TO DISMISS THE FIRST AMENDED COMPLAINT***

## I.    INTRODUCTION

This case concerns Defendant Rayme Edler (Edler), abusing her authority as the Escambia County Medical Director to discipline and retaliate against an Escambia County employee, i.e., Plaintiff Mathew Selover, in retaliation for complaints of inappropriate work conduct that Plaintiff filed against Defendant Edler. This case also concerns the Escambia County Board of County Commissioners' (the Board) policy, practice, or custom of ignoring previous complaints against Defendant Edler and allowing Defendant Edler carte blanche

authority to discipline Plaintiff without adhering to the Board's written policies, essentially ratifying Defendant Edler's conduct.

Defendants'[1] conduct caused the deprivation of Plaintiff's due process rights in that Plaintiff had a clearly established right to notice, service, escalating disciplinary measures, and appeal rights prior to suffering any disciplinary measures, measures, but Defendants did not provide Plaintiff with same, and they failed or refused to provide a pre or post deprivation hearing allowing Plaintiff to seek redress for the deprivation of his rights within a meaningful time. Thus, in an effort to vindicate his rights, Plaintiff filed this lawsuit pursuant to 42 U.S.C. § 1983, and the Florida Whistle-blower's Act, Fla. Stat. § 112.3187 (FWA).  The other

The Board has moved to dismiss the FAC, arguing that the FAC fails to state a claim upon which relief may be granted. For the reasons stated below, the Board's arguments are without merit, thus Plaintiff respectfully requests that this Court DENY the Board's motion to dismiss the FAC.

## II.    <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

The following factual allegations are relevant for purposes of Plaintiff's response to the Board's Motion to Dismiss:

---

[1] Hereinafter, Defendant Edler and the Board are collectively referred to as "Defendants."

Plaintiff, brought the instant action alleging that the Escambia County Board of County Commissioners (ECBCC), and Edler, the Escambia County Medical Director, in her official and individual capacities, deprived Plaintiff of his constitutionally protected rights under the First and Fourteenth Amendments of the U.S. Constitution, and that the Board unlawfully retaliated against Plaintiff pursuant to Section 112.3187, Florida Statutes. [ECF No. 20]. Specifically, as alleged in the FAC, since approximately February 2012, Plaintiff was employed by the ECBCC as a paramedic, even serving as a shift captain in the three and one half (3 1/2) years prior to the events giving rise to this lawsuit. [ECF No. 20, ¶¶ 5-6]. Prior to the allegations raised in the FAC, the ECBCC never had cause to discipline Plaintiff for work related conduct because Plaintiff had an exemplary performance history. [ECF No. 20, ¶ 7].

In approximately April 2018, Defendant Edler began serving as the Escambia County Medical Director. [ECF No. 20, ¶ 3]. In that capacity, Edler is responsible for the medical performance of all Emergency Medical Technicians (EMT) and Paramedics of Escambia County; however, pursuant to Fla. Stat. § 401.265(1), a medical director's duties explicitly do not include "administrative and managerial functions." Fla. Stat. § 401.265(1). Further, ECBCC's own attorney, Charles Peppler, found that under § 401.265(1), Edler does not have the authority to demote, terminate, or otherwise discipline paramedics, including Plaintiff, as those duties are

administrative and/or managerial. [ECF No. 20, ¶¶ 8, 42, Ex. A- Peppler Memo].

Additionally, Edler herself has testified that she does not have the authority to hire,

fire, or discipline employees in her role as Escambia County Medical Director in a

separate legal matter. *See Rayme Edler v. Melissa Pino*, Case No. 2019-CA-001206

(Escambia County Circuit Court) transcripts attached hereto as Exhibit A.

Nevertheless, the FAC makes clear that Edler did demote, terminate, and otherwise

discipline Plaintiff  more than three weeks after she convened a Quality Assurance

(QA) board meeting, which did not comply with ECBCC's own written policies on

notice and service in the first place, to discuss certain calls Plaintiff participated in.

[ECF No. 20, ¶ 31]. Further, the FAC makes clear that Defendant Edler did not seek

to impose such disciplinary action until after she learned that Plaintiff lodged a

complaint against her regarding the inappropriate QA meeting. [ECF No. 20, ¶¶ 30-

31].

Specifically, on or about April 23, 2019, Edler convened a QA meeting to

discuss Plaintiff's actions during certain work-related calls. [ECF No. 20, ¶¶ 16-17].

Defendants informed Plaintiff of the QA meeting just fifteen (15) minutes prior to

the start of the meeting; provided no details regarding the specific subjects to be

raised at the meeting, either verbally or in writing. [ECF No. 20, ¶ 16].  Plaintiff was

assured by ECBCC Human Resources and Edler that the meeting was not

disciplinary in nature. [ECF No. 20, ¶¶ 19, 26]. Additionally, at the QA meeting,

Defendant Edler raised issues concerning calls which dated back almost a year prior to the QA meeting. [ECF No. 20, ¶ 28]. Moreover, the composition of the QA board was defective in that Shawn Hoopaugh, an ECBCC employee who Plaintiff had recently lodged a complaint against regarding sexual harassment, and Bill Hopkins, a close personal friend and confidant of Edler's, were members of the QA board in addition to Edler, Captain Craig Ammons and Maddrey. [ECF No. 20, ¶¶ 14-15, 21]. At the time of the QA meeting, Plaintiff's complaint against Hoopaugh was still open and unresolved. [ECF No. 20, ¶ 25].

Nevertheless, as explained further below, the Board, at the behest of Edler, ultimately took disciplinary action against Plaintiff without providing written notice of the disciplinary action, including the nature of the action taken, the effective date of the action taken, and the duration of the action taken. [ECF No. 20, ¶¶ 19, 26, 93, Ex. D- ECBCC Human Resources Policies and Procedures]. But Edler did not seek to impose discipline on Plaintiff immediately after the QA meeting, instead, it was not until Edler learned that Plaintiff had filed a complaint against her that she first informed ECBCC that she wanted to discipline Plaintiff- approximately 23 days after the QA meeting.

Because of the inappropriate QA meeting, Plaintiff filed a complaint with the ECBCC HR department. [ECF No. 20, ¶ 28]. For approximately 23 days after the QA meeting, Plaintiff continued to work as a paramedic with no restrictions. [ECF

No. 20, ¶ 29]. However, after Defendant Edler was informed by Chief Leon Salter (Salter) and Interim Public Safety Director John Dosh (Dosh) of Plaintiff's complaint on or about May 13, 2019, Defendant Edler suddenly decided the issues raised in the QA meeting warranted disciplinary action against Plaintiff- despite assurances from the Board, and Edler herself, that the QA meeting was non-disciplinary in nature- and declared that Plaintiff was unable to work as a paramedic under her license- essentially demoting Plaintiff to an administrative role, which cost Plaintiff overtime and advancement opportunities. [ECF No. 20, ¶ 31]. Plaintiff was never given proper notice of the discipline and was never given an opportunity to respond to the charges against him, he was simply removed from his position as a paramedic operating in the field and placed in an administrative role for an indefinite period of time. [ECF No. 20, ¶ 36].

In response to Edler's sudden intent to discipline Plaintiff, Dosh specifically advised Edler that her conduct appeared to be retaliatory in nature. [ECF No. 20, ¶ 32]. Nevertheless, despite Dosh's warnings, Edler continued to discipline Plaintiff by refusing to return him to full status, and then, almost a month after the QA meeting, and after learning of Plaintiff's complaint against her, Edler also filed a

complaint against Plaintiff with the Florida Department of Health (DOH).[2] [ECF No. 20, ¶ 37].

After the May 13, 2019 meeting with Dosh, Edler, and Salter, Interim County Administrator Mathew Coughlin (Coughlin) instructed Dosh to prepare a performance improvement plan (PIP) in order to restore Plaintiff to his full position, and Dosh subsequently instructed Edler to draft the PIP. [ECF No. 20, ¶¶ 40-41]. However, Edler refused to draft the PIP, and instead pressed for Plaintiff to be further demoted to an EMT, or that ECBCC terminate Plaintiff's employment all together. [ECF No. 20, ¶ 41].

Growing concerned with what they identify as a due process issue, Dosh and Coughlin requested Charlie Peppler's opinion (Senior Assistant County Attorney), and Peppler found that (1) Edler did not have the authority to discipline Plaintiff; (2) Edler's conduct in removing Plaintiff from working as a paramedic was in effect a demotion; and (3) that Plaintiff had due process rights regarding disciplinary action taken against him. [ECF No. 20, ¶ 42, Ex. A- Peppler Memo]. At or about the same time, Ed Spainhower (Spainhower), ECBCC HR associate, was investigating Plaintiff's complaint against Edler regarding the inappropriate QA meeting and

---

[2] To date, the DOH has taken no action against Plaintiff, and a third-party physician who reviewed Edler's complaints against Plaintiff determined that Edler's complaints are unfounded. [ECF No. 20, ¶ 39].

retaliation. Spainhower issued a report in June 2019 which stated "Edler may have engaged in conduct that could be construed as harassment given the manner which the board was assembled and the processes that were followed in both reporting [Plaintiff] to the FDOH and in attempting to demote him without due process." [ECF No. 20, ¶ 45, Ex. B- Spainhower Report]. Spainhower's report went on to state "It is clear that Mr. Selover was not afforded the type of due process required . . . ." [ECF No. 20, ¶ 46]. Spainhower ultimately recommended that Plaintiff be returned to his full operational status based on Peppler's opinion that Edler did not have the authority to discipline Plaintiff has she had, but ECBCC failed or refused to implement Spainhower's recommendations, and they failed to provide Plaintiff a copy of Spainhower's report to Plaintiff until months later despite the fact that Plaintiff repeatedly called HR to check on the status of his complaint over the ensuing months. [ECF No. 20, ¶¶ 48-50].

In the meantime, Edler continued her refusal to draft the PIP that Dosh had instructed her to draft. [ECF No. 20, ¶ 53]. To make matters worse, Defendant Edler took it upon herself to contact the Medical Director of Santa Rosa County to disparage Plaintiff's abilities as a paramedic in an effort to interfere with Plaintiff's second job/part time employment with Santa Rosa County. [ECF No. 20, ¶ 79]. Eventually, in July 2019, Salter drafted a PIP which required Plaintiff to work under the supervision of a Field Training Officer (FTO) for a period of 90 days, but the

PIP was not approved and implemented until August 2019. [ECF No. 20, ¶¶ 54, 57].

All the while, Plaintiff had no idea that Spainhower had released a report, let alone

that the report was favorable to Plaintiff. Nevertheless, Plaintiff completed the terms

of the PIP, including the full 90 day period, but the Board continued to allow Plaintiff

to languish in his demoted administrative role, and/or continued to require Plaintiff

work under the supervision of a FTO, which is effectively a demotion, after Plaintiff

completed the PIP. [ECF No. 20, ¶¶ 58-59].

Then, on December 12, 2019, months after all this began, Jana Still (Still), the

newly appointed Escambia County Director of Human Resources as of

approximately November 2019, issued a new report backtracking on Spainhower's

conclusions, and failing or refusing to address whether Plaintiff was afforded due

process. [ECF No. 20, ¶ 69]. It is believed that Still drafted her report after a private

meeting with Defendant Edler and Edler's attorney. [3]  [ECF No. 20, ¶ 72]. Further,

Still asserted she relied on additional evidence in reaching her conclusions; however,

when pressed by County Commissioner Jeff Bergosh what additional evidence Still

relied on, Still was unable to locate said evidence. [ECF No. 20, ¶ 76]. Nevertheless,

Plaintiff made a timely request to appeal Still's report on December 17, 2019 but

was told by Still that he had no further appeal rights, and that he should seek further

---

[3] Still did not meet with Plaintiff before preparing her report.

avenues of redress. [ECF No. 20, ¶ 70]. Additionally, ECBCC attorney Alison Rogers specifically advised Commissioner Bergosh that Plaintiff would have to file his appeal with the courts, and Commissioner Bergosh relayed that message to Plaintiff. [ECF No. 20, ¶ 71].

Thus, on or about January 17, 2020, Plaintiff filed his lawsuit in Escambia County Circuit Court raising various causes of action under 42 U.S.C. § 1983, and a Florida Public Whistle Blower claim.[4] In between the original filing of the complaint and the FAC, Defendants have constructively discharged Plaintiff from his employment. [ECF No. 20, ¶¶ 77, 82]. The FAC alleges seven (7) counts against Defendants. Regarding the Board, Count I alleges the Board violated Plaintiff's 14th Amendment due process rights; Count III alleges the Board violated Plaintiff's 14th Amendment substantive property rights; and Count V alleges the Board violated Plaintiff's 1st and 14th Amendment rights by retaliating against Plaintiff for exercising his rights to free speech;[5] Count VII alleges the Board violated the Fla. Stat. § 123.3187. [ECF No. 20]. The Board moves to dismiss Counts I, III, V, and VII, arguing that the FAC fails to state a claim upon which relief may be granted because, according to the Board, (1) the FAC fails to plead sufficient facts to

---

[4] Defendants timely removed the case to this Court, and thereafter, Plaintiff filed the FAC after obtaining consent of the parties and leave of Court.
[5] Counts I, III, and V are brought pursuant to 42 U.S.C. § 1983.

establish municipal liability under § 1983; (2) the FAC fails to plead sufficient facts to establish a violation of due process; (3) Plaintiff's speech is not protected by the First Amendment; (4) Plaintiff failed to comply with Fla. Stat. § 112.3187; and (4) Plaintiff's property interests in his public employment is not a fundamental right protected by substantive due process.[6] [ECF No. 31].

Plaintiff opposes the Board's Motion to Dismiss, and in support thereof states:

### III.    MEMORANDUM OF LAW

### a.    MOTION TO DISMISS LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The pleading standard does not require "detailed factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). At the motion to dismiss stage, "all-well pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999). The Eleventh Circuit has stated that "a complaint should not be dismissed under Fed. R. Civ. P. 12(b)(6) 'unless it appears beyond doubt that the

---

[6] Defendant Edler has filed a separate motion to dismiss, [ECF No. 32], to which Plaintiff will file a separate response.

plaintiff can prove no set of facts in support of his claim which would entitle him to relief."' *Thomas v. Town of Davie,* 847 F.2d 771,773 (11th Cir. 1988) (citing *Conley v. Gibson,* 355 U.S. 41, 47 (1957). The issue to be decided in considering a motion to dismiss is "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

Thus, a Plaintiff must allege enough facts to state a claim of relief that is merely plausible on its face. *Twombly*, 550 U.S. at 570 (2007). A complaint is plausible on its face when the plaintiff pleads factual content necessary for the court to draw the reasonable inference that the defendant is liable for the conduct alleged. *Id.* Also, the discretion to dismiss a complaint without leave to amend is "severely restrict[ed] by Fed. R. Civ. P. 15(a) which directs that leave to amend "shall be freely given when justice so requires." *Thomas supra* at 773 (citing *Dussouy v. Gulf Coast Investment Corp.,* 660 F.2d 594, 597 (5th Cir. 1981)). "Rule 12(b)(6) dismissals are especially disfavored in cases where the complaint sets forth a novel legal theory that can best be assessed after factual development." *Wright v. North Carolina*, 787 F.3d 256, 263 (4th Cir. 2015) (citing *McGary v. City of Portland*, 386 F.3d 1259, 1270 (9th Cir. 2004) (quoting *Baker v. Cuomo*, 58 F.3d 814, 818-19 (2d Cir. 1995))).

**b.    CAUSE OF ACTION UNDER 42 U.S.C. § 1983**

Pursuant to 42 U.S.C. § 1983:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress….

42 U.S.C. § 1983. "Through § 1983, Congress sought to give a remedy to parties deprived of constitutional rights, privileges and immunities by an official's abuse of his position." *Hafer v. Melo*, 502 U.S. 21, 27 (1991). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under the color of state law." *West v. Atkins*, 487 U.S. 42, 49 (1988). Under § 1983, "[p]ersonal capacity suits . . . seek to impose individual liability upon a government officer for actions taken under the color of state law." *Hafer v. Melo*, 502 U.S. 21, 25 (1991).

There are several ways to establish municipal liability under § 1983. Under § 1983, a municipality can be liable (1) based on an official policy of the municipality; (2) if the municipality's final policy makers have acquiesced in a longstanding practice that constitutes the entity's standard operating procedure; *or* (3) when a subordinate public official makes an unconstitutional decision and when that decision is then adopted by someone who does have final policymaking authority. *Hoefling v. City of Miami*, 811 F.3d 1271, 1279 (11th Cir. 2016). A longstanding

and widespread practice that constitutes the entity's standard operating procedure may be shown by establishing the final policy making officials must have known about the practice but failed to stop it. *Smart v. City of Miami*, 740 Fed. Appx. 952, 961 (11th Cir. 2018) (quoting *Brown v. City of Ft. Lauderdale*, 923 F.2d 1474, 1481, 1481 n.11 (11th Cir. 1991)).

Additionally, while "municipal officials who have final policymaking authority may by their actions subject the government to § 1983 liability," *St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988), in the Eleventh Circuit, "identifying and proving that a final policymaker acted on behalf of a municipality is an evidentiary standard, and not a pleading requirement." *Hoefling*, 811 F.3d at 1280 (internal quotations omitted). Nevertheless, "a municipal official who has final policy making authority in a certain area of the city's business may by his or her action subject the government to § 1983 liability when the challenged action falls within that authority." *Brown*, 923 F.2d at 1480.

However, at the motion to dismiss stage, all a Plaintiff must allege is a policy, practice, or custom of the municipality which caused the deprivation of the plaintiff's constitutional rights. *Hoefling*, 811 F.3d at 1280. Thus, a plaintiff need only establish that his rights were violated pursuant to (1) policy, custom, or practice of the municipality; *or* (2) the actions of a final policy maker, not both. *Brown*, 923 F.2d at 1481 ("if plaintiff succeeds in proving a city policy of discrimination based

on actions of a 'final policy-maker,' he would have no need to prove in addition a custom or practice of racial discrimination.").

Considering the above framework, under § 1983, a claim for procedural due process requires a plaintiff to show "(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Catron v. City of St. Petersburg*, 658 F.3d 1260, 1266 (11th Cir. 2011) (internal quotations omitted). A claim of entitlement to a property interest must be decided by reference to state law. *Bishop v. Wood*, 426 U.S. 341, 345 (1976). "A property interest can . . . be created by ordinance, or by an implied contract." *Id.* "The essential requirements of due process . . . are notice and opportunity to respond." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985).

c.    **ARGUMENT**

The Board has moved to dismiss Counts I, III, V, and VII of the FAC, arguing that Plaintiff has failed to state a claim on each count. Specifically, regarding Plaintiff's constitutional claims pleaded in Count I, the Board argues that the FAC fails to establish municipal liability under § 1983. Additionally, regarding Plaintiff's due process claim pleaded in Count I, the Board argues that the FAC fails to establish a due process violation. Regarding Plaintiff's Florida Public Whistle Blower claim, the Board argues the FAC fails to establish that Plaintiff complied with the technical

requirements of Fla. Stat. § 123.3187.[7] However, as explained in detail below, the Board's arguments regarding dismissal of Counts I, and VII are without merit.

### c.1    The First Amended Complaint has pleaded enough facts to establish municipal liability.

As discussed above, municipal liability under § 1983 can be established by (1) the municipality's official policy; (2) the municipality's final policy makers acquiescing to long standing practice, i.e., custom and practice; *or* (3) when the municipality's final policy makers ratify the conduct of a subordinate. *Hoefling*, 811 F.3d at 1279. Further, because final policy makers establish the policy of a municipality, the actions of a municipality's final policy maker may subject the municipality to § 1983 liability. *See Praprotnik*, 485 U.S. at 123.

Here, though Plaintiff need only establish one of the theories of liability discussed above, as argued below, the FAC states enough factual allegations to plausibly infer that the actions complained of (1) were taken pursuant to the Boards policy, custom, or practice; or (2) that the ECBCC's final policy maker(s) ratified Edler's conduct. *See Twombly*, 550 U.S. at 570. (requiring "only enough facts to state a claim for relief that is plausible on its face.").

_____

[7] The Board also argues for dismissal of Plaintiff's substantive due process claims pleaded in Count III, and Plaintiff's First Amendment retaliation claims pleaded in Count V. Plaintiff does not dispute dismissal of Count III and V.

### Custom and Practice

The FAC adequately alleges municipal liability against the Board through custom and practice. At this stage, all that is required to be alleged is a policy, practice, or custom of ECBCC which caused the deprivation of Plaintiff's rights. *See Hoefling*, 811 F.3d at 1280. This Court should find *Brown v. City of Fort Lauderdale* instructive. There, the plaintiff was a police officer who brought § 1983 claims against the City of Fort Lauderdale alleging that he was terminated due to his race. *Brown*, 923 F.2d at 1475. The district court dismissed the plaintiff's § 1983 claims against the city, but the Eleventh Circuit reversed, finding that the plaintiff had sufficiently pleaded a custom of racial discrimination. *Id.* at 1481. In *Brown*, the plaintiff proceeded *pro se*, but the plaintiff merely alleged "that his experiences were the result of discriminatory practices accepted by the police department." *Id.* The Eleventh Circuit found the allegations enough to overturn the district court's dismissal of the § 1983 claims, stating "a long-standing and widespread practice is deemed authorized by the policy-making officials because they must have known about it but failed to stop it." *Id.*

Similarly, in *Smart v. City of Miami*, the Eleventh Circuit approved of the trial court's finding as a matter of law that the constitutional violation arose from the city defendant's custom or practice. *Smart*, 740 Fed. Appx. At 965. There, the plaintiff's claims arose from the non-consensual filming and broadcast of his apartment,

questioning, arrest, and interrogation by the television show The First 48. The Eleventh Circuit found that at least two of the instances of non-consensual filming were constitutional violations pursuant to the City of Miami's custom and practice of permitting filming without obtaining consent. *Id.*

There, with the benefit of a fully developed record, the Eleventh Circuit noted the value of circumstantial evidence in establishing a municipal custom or practice due to inaction. *See id.* at 964 ("in the § 1983 context we have held that circumstantial evidence . . . can help demonstrate municipal custom or practice due to city officials choosing not to take corrective action." (citing *Kerr v. City of W. Palm Beach*, 875 F.2d 1546, 1556 (11th Cir. 1989)). In approving the trial court's ruling that the city was liable under § 1983 as a matter of law, the Eleventh Circuit reasoned that the evidence was enough to permit a reasonable jury to find that the city knew about the systemic failure to get consent and did nothing about it. *Id.* at 965.

Also, in *Fundiller v. Cooper City*, the Eleventh Circuit found that the city's persistent failure to take disciplinary action against officers can give rise to the inference that a municipality has ratified conduct, thereby establishing a custom. *Fundiller v. Cooper City*, 777 F.2d 1436, 1443 (11th Cir. 1985). There, the complaint alleged the city adopted a custom of allowing the use of excessive force by acting

with gross indifference to the conduct engaged in by its police officers. *Id.* at 1442. Thus, the Eleventh Circuit reversed the district court's order dismissing the case. *Id.*

Here, like *Brown*, *Smart*, and *Fundiller*, this Court should find that Plaintiff has sufficiently pleaded municipal liability through custom and practice. Specifically, here, the FAC alleges that the Board was aware (1) of the improper QA meeting convened by Defendant Edler, including the lack of proper notice, the conflicted members comprising the board, and the assertion that the QA meeting was not disciplinary in nature; (2) that Defendant Edler sought to discipline Plaintiff by demoting him, and in fact did demote him by refusing to allow him to work as a paramedic in the field; (3) the Board itself did not believe Edler had the authority to discipline Plaintiff; (4) other ECBCC employees believed Edler's conduct to be in retaliation for Plaintiff's complaint; (5) other ECBCC employees believed Edler's conduct violated Plaintiff's due process rights; and (6) the Board had a history of ignoring similar complaints against Edler, and permitting Edler to flout ECBCC written policies, and discipline employees with unfettered authority, including the five (5) similar instances raised in the FAC.[8] [ECF No. 20, ¶¶ 31, 32, 42, 45, 66, 93].

_____

[8] Plaintiff has made public records request to obtain information on the five (5) similar complaints raised in the FAC, but Defendants have refused to provide same, arguing the records are exempt from public records disclosure because the incidents are still under investigation. Plaintiff has also requested the records through discovery in this case, but Defendants responses to discovery are not due

All the while, the Board allowed the discipline Edler imposed on Plaintiff to stand, and in the process, failed or refused to provide Plaintiff with proper notice and opportunity to be heard, and took no action to reprimand Edler or to ensure her compliance with ECBCC's written policies. [ECF No. 20, ¶¶ 68, 93]. Thus, the FAC alleges the Board's widespread and established policy of looking the other way as Edler violates ECBCC's employees' due process rights.

Nevertheless, the Board argues the above allegations are insufficient, but in doing so, the Board ignores most of the allegations pleaded, misconstrues and/or misunderstands their significance, or misstates the law. For example, the Board argues that the FAC is defective because it fails to identify the final policy maker responsible for the policy articulated above; the Board cites a case which Plaintiff is unable to locate in support of that proposition.[9] [ECF No. 31, p. 11]. However, "identifying and proving that a final policymaker acted on behalf of a municipality is an evidentiary standard, and not a pleading requirement." *Hoefling*, 811 F.3d at 1280 (internal quotations omitted). Nevertheless, the FAC alleges sufficient factual detail to plausibly infer that Still is the final policy maker as the Escambia County Director of Human Resources, and the person responsible for preparing the last

until June 8, 2020.
[9] Plaintiff is unable to verify the cite *Knight through Kerr*, 856 F.3d at 819.

report stating ECBCC's position on its investigation into Defendant Edler's actions, a report which the Board adopted as its position on the matter. [ECF No. 20, ¶¶ 69, 73]. Thus, at the motion to dismiss stage, the Board's argument is without merit.

## Ratification

The FAC also adequately alleges municipal liability against the Board through ratification. Like in *Fundiller*, here, the FAC also adequately alleges that the Board ratified Defendant Edler's conduct of disciplining Plaintiff without providing due process because "a persistent failure to take disciplinary actions . . . can give rise to the inference that a municipality has ratified the conduct, thereby establish a custom" for purposes of municipal liability under § 1983. *Fundiller*, 777 F.2d at 1443. Moreover, the Board expressly ratified Edler's conduct when it ultimately adopted Still's report, which effectively condoned Defendant Edler's conduct.  Regarding ratification through the Board's failure to act, the FAC alleges inaction in the face of ECBCC's own employees, including its legal counsel, believing that Edler (1) did not have the authority to discipline Plaintiff; (2) was violating Plaintiff's due process rights; and (3) was retaliating against Plaintiff. [ECF No. 20, ¶¶ 41, 42, 45]. Further, the FAC also alleges that the Board adopted Defendant Edler's conduct as its own when it refused to take any action against Edler, and refused to return Plaintiff to his full status as a paramedic in the field, even after Plaintiff completed the PIP, and all

in the face of an established and known history of Edler refusing to abide by ECBCC's written policies in at least five (5) other instances. [ECF No. 20, ¶ 93].

Thus, not only does the Board's indifference, and refusal to act support municipal liability based on custom, or practice, but ECBCC's express action adopting Eder's discipline of Plaintiff all but expressly approved of, i.e., ratified, Defendant Edler's conduct. Moreover, the Board's adoption of Still's report in fact expressly ratified Edler's conduct. Thus, the FAC adequately alleges the County Defendants violated Plaintiff's constitutional rights under the custom and practice, and ratification theories of municipal liability.

Finally, the Board asserts that the FAC fails to adequately allege that the policy, custom or practice at issue was the moving force behind the constitutional violation. Here, again, the Board ignores or misconstrues the allegations of the FAC. For example, the Board asserts that the FAC fails to attach any documents which identify, reference, or allege a widespread practice policy, or custom that was the moving force behind the constitutional deprivation. Aside from the fact that the Board cites no authority which requires a complaint attach such documents to survive a motion to dismiss stage, where all reasonable inferences are drawn in Plaintiff's favor, the statement is simply untrue. Moreover, as noted above, Plaintiff has requested these documents through public records request and discovery, but

Defendants have asserted the documents are exempt from public records requests, and Defendants' discovery responses are not due until June 8, 2020.

Nevertheless, as explained above, the FAC attached the Board's HR policies, identified which policies applied to Plaintiff's circumstances, and explained how the Board had a widespread and established history of permitting Defendant Edler to flout ECBCC's disciplinary procedures to the detriment of other ECBCC's employees. [ECF No. 20, ¶¶ 61, 66, 93]. But for the Board's failure to take any action against Edler to force her to comply with ECBCC's written policies and procedures, Plaintiff would not have suffered the deprivation of his due process rights. Thus, the FAC clearly establishes that the Board's policy of inaction in light of what it knew or should have known was the moving force behind Plaintiff's constitutional deprivation.

### d.2 <u>The First Amended Complaint has pleaded enough facts to establish the Board violated Plaintiff's due process rights.</u>

To state a claim for a due process violation, the complaint must plausibly plead "(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Catron v. City of St. Petersburg*, 658 F.3d 1260, 1266 (11th Cir. 2011) (internal quotations omitted). Whether Plaintiff has a property interest in his employment will be determined by state law. *Bishop v. Wood*, 426 U.S. 341, 345 (1976). "The essential

requirements of due process . . . are notice and opportunity to respond." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985).

Here, there is no dispute regarding Plaintiff's property interest, as the Board acknowledges that public employment is a constitutionally protected interest. *See* [ECF No. 31, p. 18]. Instead, the Board argues that the FAC fails to establish that the process was constitutionally adequate because Plaintiff was given a notice and opportunity to be heard. The Board's argument either ignores much of the factual allegations pleaded in the FAC or fundamentally misunderstands what happened here. The fact is, the Board provided no notice and no opportunity to be heard prior to or after Plaintiff suffering disciplinary action, or alternatively the notice was improper.[10]

To be clear, the constitutional violation in this case is not encompassed by the Board's refusal to follow its own written policies regarding the QA meeting, or the

---

[10] Given that the Plaintiff was told by Defendants that the QA meeting was non-disciplinary, Plaintiff believes that he has a constitutional right to be heard when Defendant Edler tried to punish/reprimand the Plaintiff, which was 23 days after the QA meeting.  However, to the extent that the Defendants believe that the QA meeting would satisfy his constitutional rights, then Plaintiff contends that the QA meeting was insufficient as (1) he had a lack of notice of the meeting itself; (2) he was not provided any notice of the subject of the meeting, (3) he was told that the meeting was non-disciplinary, (4) the meeting did not follow the Boards policies and procedures, and (5) the make-up of the QA board was improper.

QA meeting itself- though Edler and the Board did completely fail to adhere to ECBCC's written policies. Instead, here, the constitutional violation is that after the QA meeting convened by Edler, a meeting which the Board and Edler assured Plaintiff was non-disciplinary, the Board, at the behest of Edler, in fact disciplined Plaintiff, but not until 23 days after the QA meeting, and then, the Board refused to give Plaintiff any opportunity to confront the charges against him which gave rise to the disciple the Board sought to impose. [ECF No. 20, ¶¶ 19, 26, 31]. That the QA board did not recommend remediation, re-training, or performance improvement at the conclusion of the QA meeting further supports Plaintiff's argument that the constitutional violation in this case stems from Defendants' actions after the QA meeting, not actions directly related to the QA meeting. [ECF No. 20, ¶ 27]. Thus, stated succinctly, the constitutional violation in this case was in failing to provide Plaintiff with a meaningful opportunity to be heard, either through a pre or post deprivation hearing, regarding Defendants' decisions to (1) permit Edler to fail or refuse to follow ECBCC's written policies; (2) demote Plaintiff and require him to comply with the PIP; (3) constructively discharge Plaintiff.

The Board's actions after the QA meeting in refusing to provide Plaintiff with a meaningful notice and opportunity to be heard is clearly established by the fact that the Board itself thought that, not only did Edler not have the authority to discipline Plaintiff, but that Edler was violating Plaintiff's due process rights and

retaliating against him, ECF No. 20, ¶¶ 41, 42, 45, yet the Board (1) refused to release the Spainhower report, with findings favorable to Plaintiff, (2) refused to return Plaintiff to full work status, even after he completed the PIP, and (3) then refused to allow Plaintiff to appeal the Still report. [ECF No. 20, ¶¶ 50, 58, 70]. All the while, the Board continued to keep Plaintiff in his demoted role for more than ten (10) months. [ECF No. 20, ¶ 82].

With the Board refusing (1) to return Plaintiff to full working status, even after he completed the PIP; (2) to comply with its own written procedures; (3) Plaintiff's request to appeal the Still report; and (4) to permit Plaintiff's attendance at supervisors' meetings for such a prolonged period of time with no end in sight, Plaintiff was forced to resign, i.e., constructively discharged. *See Bryant v. Jones*, 575 F.3d 1281, 198 (11th Cir. 2009) ("Constructive discharge occurs when an employer deliberately makes an employee's working conditions intolerable and thereby forces him to quit his job."). Under these circumstances, Plaintiff has a clearly defined property interest which garners constitutional due process protections because, under Florida law, Plaintiff could only be disciplined for cause, and because Plaintiff was entitled to a QA meeting and disciplinary measures to be conducted in accordance with ECBCC's written policies. *See Bishop*, 426 U.S. at 345 (A property interest can . . . be created by ordinance, or by an implied contract.); [ECF No. 20, Exhibit D- HR Policies]. Thus, Plaintiff is entitled to meaningful

notice and an opportunity to be heard if the Board sought to act outside the scope of its written policies, if it sought to demote him and force him to comply with the PIP, or if it sought to discharge him. *See Loudermill*, 470 U.S. at 547 ("The Due Process clause requires provision of a hearing at a meaningful time."). In the employment context, Plaintiff was entitled to a pre-deprivation opportunity to respond coupled with a full evidentiary hearing post-deprivation. *See id.* at 546-48. But no notice or hearing was conducted here.

The Board argues that the QA notice given to Plaintiff verbally 15 minutes prior to the QA meeting, and the QA meeting itself satisfies the Board's obligation to provide Plaintiff with a meaningful opportunity to be heard, but the Board's argument is misplaced. While "the state is obligated only to make available the means by which [the employee] can receive redress for the deprivations . . ." here, the Board has provided no such means. *McKinney v. Pate*, 20 F.3d 1550, 1562 (11th Cir. 1994). The Board's argument that it provided due process to Plaintiff relies on its assertion that notice and opportunity to be heard was satisfied by the April 23, 2019 QA meeting, but that argument is misplaced because (1) the QA meeting failed to adhere to ECBCC's own written policies; (2) the Board, and Edler assured Plaintiff the QA meeting was non-disciplinary; (3) Defendant Edler did not impose discipline on Plaintiff until well after the meeting, in fact, it was not until after Edler learned of Plaintiff's complaint against her, despite the Board's assurances; (4) the

Board kept Plaintiff in the dark, failing to timely release the Spainhower report, contrary to their policies; (5) the Board ultimately disciplined Plaintiff at Edler's behest; (6) the Board failed to allow Plaintiff to return to full work status, even after he completed the PIP; (7) when Plaintiff requested to appeal the Still report, Still told Plaintiff he had no more appeal rights- preventing him from having any opportunity to redress the deprivations through the Board's processes- leaving Plaintiff in career limbo, and creating circumstances which amount to a constructive discharge of Plaintiff's employment; and (8) as argued above, the constitutional violation in this case stems from Defendants' actions *after* the QA meeting. [ECF No. 20, ¶¶ 19, 26, 28, 31, 36, 49-50, 70, 77].

Accordingly, the board has refused to provide Plaintiff with due process, either before the deprivation of his rights, or after, completing the violation of Plaintiff's rights. *McKinney*, 20 F.3d at 156 ("a procedural due process violation is not complete unless and until the State fails to provide due process."). Thus, the Board's argument that the FAC fails to establish a violation of due process is without merit.219

### d.3 __The FAC has pleaded enough facts to establish Plaintiff's Florida Whistle-blower Claim.__

To establish a *prima facia* case of retaliatory discharge under the FWA, the complaint must show that the Plaintiff (1) engaged in a statutorily protected

expression; (2) he suffered a materially adverse action of a type that would dissuade a reasonable employee from engaging in statutorily protected activity; and (3) there was some causal relation between the events. *Batz v. City of Sebring*, 794 Fed. Appx. 889, 901 (11th Cir. 2019). The FWA protects "employees who file any written complaint to their supervisory officials . . . ." Fla. Stat. § 112.3187(7). Because this case concerns a local government, to be protected under the FWA, the information disclosed "must be disclosed to . . . a chief executive officer as defined in s. 447.203(9), or other appropriate local official. The FWA "should be liberally construed." *King v. Florida*, 650 F. Supp. 2d 1157, 1162 (N.D. Fla. 2009).

The Board argues for dismissal because, according to the Board, the FAC fails to establish the first element. Here, the Board argues the FAC fails to establish the first element because, according to the Board, Plaintiff did not report his complaints about Edler to the right person, and because Plaintiff's complaints about Edler do not rise to the level of gross neglect of duty, or substantial and specific danger to the public's health, safety, or welfare. *See* Fla. Stat. § 112.3187(5) ("the information disclosed under this section must include: Any violation or suspected violation of any federal, state, or local law, rule, or regulation . . . which creates and presents a substantial and specific danger to the public's health, safety, or welfare . . . [a]ny act or suspected act of gross mismanagement, malfeasance, misfeasance, gross waste of public funds . . . or gross neglect of duty . . . .").

However, the Board's argument is misplaced for two reasons. First, at the motion to dismiss stage, all reasonable inferences are to be drawn in Plaintiff's favor. *Bryant*, 187 F.3d at 1273 n.1. Here, the FAC plainly alleges that Plaintiff's complaints about Edler were disclosed to Spainhower in ECBCC's human resources department, and that Spainhower was tasked with investigating same. [ECF No. 20, ¶ 44]. As a member of ECBCC's HR department whom ECBCC tasked with investigating Plaintiff's complaints, Spainhower is an "other appropriate official." Moreover, Plaintiff's complaint was disclosed to Mathew Coughlin, the Interim County Administrator at the time. *See* Plaintiff's HR Complaint, attached hereto as Exhibit B. Thus, while the FAC may not specifically state that Plaintiff's complaints against Edler were disclosed to Spainhower, or Coughlin, at the motion to dismiss stage, with all reasonable inferences drawn in favor of Plaintiff, the Court should find that the FAC adequately alleges facts showing that Plaintiff's complaints were disclosed to the proper individual(s) under the FWA.

Next, the Board argues that the nature of the information Plaintiff disclosed in his complaint is not protected by the FWA. Here, again, the Board's argument is misplaced as is its reliance on *King v. Florida*. First, "the liberal construction of the Whistle-blower's Act applies to this element as well." *King*, 650 F. Supp. 2d at 1164. Second, *King* supports Plaintiff's position here. For example, there, the Northern District of Florida found that the allegations satisfied the FWA requirements when

the plaintiff alleged (1) that the Department of Environmental Protection (DEP) engaged in bias, or favoritism during the hiring process; and (2) that the DEP bureau chief used emergency dispatch lines to report a false crime in order to incriminate another employee. *Id.* at 1161. The *King* Court noted that the plaintiff's complaint was "vague and convoluted" but "based upon the liberal construction of the Whistleblower's Act and the low pleading threshold . . . to survive a 12(b)(6) motion" the plaintiff's whistleblower claims should not be dismissed. *Id.* at 64.

Here, similar to *King*, Plaintiff has alleged sufficient allegations to establish that his complaint against Edler disclosed information concerning Edler's gross neglect of duty, or substantial and specific danger to the public's health, safety, or welfare under the liberally construed FWA. For example, here, Plaintiff alleged that after the QA meeting, he filed a complaint with HR expressing concerns over Edler's failure or refusal to abide by ECBCC's policies and procedures regarding QA meetings, and that Plaintiff believed Edler's conduct was in retaliation for Plaintiff reporting Glenda Owens, and Amanda Frando for inappropriate conduct. [ECF No. 20, ¶ 28]. Thus, here, Plaintiff's allegations are similar to the allegations of favoritism, or bias in *King*. Moreover, here, Plaintiff's complaints against Edler directly implicate a "substantial and specific danger to the public's health, safety, or welfare" because it concerns the operation of Escambia County's Emergency Medical Services, services which the residents of Escambia County rely on for

health, safety and welfare, including preventing Plaintiff, a qualified paramedic, from operating in his full capacity as a paramedic at a time when Escambia County EMS was short staffed.[11]

Accordingly, the FAC establishes that Plaintiff's complaints about Edler were disclosed to the appropriate individual(s), and that Plaintiff's complaints against Edler concerned gross neglect of duty, or substantial and specific danger to the public's health, safety, or welfare. Thus, the Court should find that the Board's argument is without merit.

## IV.   ALTERNATIVELY, PLAINTIFF REQUESTS THE OPPORTUNITY TO AMEND HIS COMPLAINT

Although Plaintiff believes the FAC adequately alleges liability against the Defendant Edler, should this Court find Plaintiff's Complaint defective in any way, Plaintiff respectfully requests leave to amend. Rule 15(a) of the Federal Rules of Civil Procedure declares that leave to amend a complaint should be freely given by the Court when justice so requires. See also Foman v. Davis, 371 U.S. 178, 83 S.Ct. 227 (1962) ("Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded…"). "If the underlying facts or

---

[11] Though not specifically alleged in the FAC, Plaintiff has recently come into possession of additional evidence concerning Escambia County EMS being short staffed. See Email from Ed Spainhower to John Dosh and Leon Salter, attached hereto as Exhibit C.

circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." Id. "In the absence of any apparent…reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party… futility of amendment, etc. – the leave sought should, as the rules require, be freely given. "

Here, this case is in its preliminary stages, and the parties will suffer no prejudice by permitting amendment to Plaintiff's Complaint. While the original Complaint has been amended once, that amendment occurred subsequent to the Defendants removing this case to Federal Court. Accordingly, should the Court find that the FAC is defective for any reason, under the liberal standard for leave to amend, the Court should grant Plaintiff the opportunity to amend his Complaint. While Plaintiff believes the FAC satisfies the plausibility pleading standard, amendment would not be futile because Plaintiff would seek to add additional allegations such as attaching Plaintiff's written complaint to HR showing that the information was disclosed to Interim County Administrator Coughlin; and attaching an email from Spainhower to Dosh and Salter regarding Escambia County EMS being short staffed

## V.     CONCLUSION

Accordingly, for the foregoing reasons, this Honorable Court should find that the Board's Motion to Dismiss is without Merit. Thus, Plaintiff respectfully requests that the Court deny Defendant Edler's Motion to Dismiss.

Alternatively, should the Court find that the FAC does not adequately allege claims against the Board, then Plaintiff respectfully requests leave of Court to file an amended complaint.

Respectfully submitted,

*/s/ Jeremiah J. Talbott*
JEREMIAH J. TALBOTT, ESQ.
Fla. Bar No. 0154784

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)

In accordance with N.D. Fla. Loc. R. 7.1(F), counsel for the Plaintiff hereby certifies there are 7,999 words in this Response in Opposition to the Board's Motion to Dismiss, not including the case style, signature blocks, or certificates.

*/s/ Jeremiah J. Talbott*
JEREMIAH J. TALBOTT, ESQ.
*Attorney for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 8th day of June 2020, a true and correct copy of the foregoing Response was furnished to counsel for the Defendant as listed below via CMC/ECF, E-Mail and U.S. Mail.

/s/ Jeremiah J. Talbott
JEREMIAH J. TALBOTT, ESQ.

## **SERVICE LIST**

Stephanie Pidermann, Esquire
Lydecker Diaz
1221 Brickell Avenue, 19th Floor
Miami, FL 33131
sp@lydeckerdiaz.com
kg@lydeckerdiaz.com
ksm@lydeckerdiaz.com

Cecily L. Kaffer, Esq.
The Kullman Firm
P.O. Box 1287
Mobile, AL 36633
clk@kullmanlaw.com