# UNLAWFUL HARASSMENT COMPLAINT FORM

Name of Complainant: ECEMS - Matthew Selover

Department: Public Safety - EMS

Phone Number: 386-795-2834

E-mail: mrselover@myescambia.com

Today's Date: 5/10/19

Name of the person you believe harassed you or another person: Rayme Edler

Department of the person you believe engaged in the harassing behavior: EMS

Relationship of the Accused to the Complainant (manager, co-worker, client, etc.): medical director

Date and time of alleged incident(s): (4/23/19), originally submitted 5/1/19

Basis of Complaint (Check all that apply)

- ☐ Age
- ☐ Disability
- ☐ Gender
- ☐ Marital Status
- ☐ Race
- ☑ Reprisal for previous claim
- ☑ None of the above categories are applicable

- ☐ Color
- ☐ Gender Identity
- ☐ Genetic Information
- ☐ National Origin
- ☐ Religion
- ☐ Sexual Orientation

Where did the incident(s) occur? at EMS post 10

Were there any witnesses to this specific event? (If yes, please provide their names.) yes, Ivy Leitt, James Maddrey, Shawn Hoopaugh, Bill Hopkins, Craig Ammons

Describe the incident(s) as clearly as possible. Include a full description of the event and verbal statements (i.e. threats, requests, demands, etc.), and what, if any, physical contact was involved. Attach additional pages as necessary.

See attached email

Attachment 1

Fw: ECEMS issues post Meeting with Dr. Edler

Matthew R. Selover
Sat 11/9/2019 9:08 AM
**To:** Matthew Selover <letitridematt@yahoo.com>

Matt Selover EMT-P, AA/AS, CCP-C, FP-C
Alternate Supervisor
Escambia County EMS
386-795-2834

---

**From:** Matthew R. Selover
**Sent:** Wednesday, May 15, 2019 9:05 PM
**To:** Edward W. Spainhower <ewspainhower@myescambia.com>
**Cc:** Leon L. Salter <llsalter@myescambia.com>
**Subject:** Re: ECEMS issues post Meeting with Dr. Edler

Ed,

I was advised by Dr. Edler during my initial meeting on 4/23 that this QA process was non-punitive at the end of the meeting. Then today when I came in to work after you all had met with her yesterday and I was advised that I am now on Admin leave due to Dr. Edler not being comfortable with me working under her license. Prior to this I have been working for the last 23 days without any notification or issue. Then all of a sudden after the HR meeting, she states she is not comfortable. Threatening a change of position or level of certification is punitive by definition. This appears to be retaliation against me for placing the initial complaint. I have also not been allowed to proceed with RSI procedure training that all shift commanders, captains, and other employees are engaging in. I have taken this training several times in the past without issue and have been functioning as one of the few providers able to perform this skill for the last 2 years. If she would like for me to prove myself, my knowledge, and skill level to her then why am I not being allowed to engage in this training?

Sent from my iPhone

On May 15, 2019, at 14:34, Edward W. Spainhower <ewspainhower@myescambia.com> wrote:

> Mathew,
>
> I had an initial meeting with Dr. Edler, Chief Salter and Director Dosh yesterday. I have not had a chance to review all of the documents presented yet and hope to have done so by Friday.
>
> I will update you once that has been accomplished.
>
> Ed
> **Edward Spainhower**
> Human Resources Associate
> Human Resources Department
> Escambia County Board of County Commissioners

850.595.3278 (office) 850.595.3020 (fax)

Florida has a very broad public records law. Under Florida law, both the content of emails and email addresses are public records. If you do not want the content of your email or your email address released in response to a public records request, do not send electronic mail to this entity. Instead, contact this office by phone or in person.

**From:** Matthew R. Selover
**Sent:** Saturday, May 11, 2019 5:18 AM
**To:** Edward W. Spainhower
**Cc:** Leon L. Salter; Matthew Coughlin
**Subject:** Fw: ECEMS issues post Meeting with Dr. Edler

The QA/QI policy was just sent out on 5/7/19, 2 weeks after my meeting. I have attached it for your review. Ms. Ivy Lett was a witness to the entirety of my meeting and reviewed my statement to you before it was sent for accuracy as well if you wish to speak with her on the matter.

Matt Selover NREMT-P, AA/AS, CCP-C, FP-C
C-Shift Training Captain / FTO
Escambia County EMS
386-795-2834

**From:** Edward W. Spainhower
**Sent:** Friday, May 10, 2019 1:29 PM
**To:** Matthew R. Selover
**Cc:** Leon L. Salter; Paulette S. Stallworth
**Subject:** Re: ECEMS issues post Meeting with Dr. Edler

Matthew,

I am working towards an answer for you with regards to your previous email. To date, I have not been able to procure any notes on the QA/QI meeting that you attended. I am also working to get a copy of the QA/QI policy so that I might familiarize myself with the purpose and requirements of this process.

Please be patient as I try to move forward with this issue.

In the meantime, please open the below link and fill out the attached form as best you can and return to me so that I might focus my inquiries.

Thank you,

Ed

https://myescambia.com/docs/default-source/sharepoint/Employee-Relations/unlawfulharassmentcomplaintform.pdf?sfvrsn=e1c6676d_2

**Edward Spainhower**
Human Resources Associate
Human Resources Department
Escambia County Board of County Commissioners
850.595.3278 (office) 850.595.3020 (fax)

---

Florida has a very broad public records law. Under Florida law, both the content of emails and email addresses are public records. If you do not want the content of your email or your email address released in response to a public records request, do not send electronic mail to this entity. Instead, contact this office by phone or in person.

---

**From:** Matthew R. Selover
**Sent:** Thursday, May 9, 2019 1:44 PM
**To:** Edward W. Spainhower
**Cc:** Leon L. Salter
**Subject:** Re: ECEMS issues post Meeting with Dr. Edler

Is there any update into this HR complaint? I have not heard anything from the HR department.

Sent from my iPhone

On May 1, 2019, at 12:12, Matthew R. Selover <mrselover@myescambia.com> wrote:

> I wanted to give you an update of my feelings after having my meeting with Dr. Edler last week. The below text was written right after the meeting.
>
> On 4/23/2019 I was requested to attend a "QA/QI" meeting with Dr. Edler. I was very hesitant about attending this meeting due to not being provided with any details of the meeting and the culture and current issues/investigations ongoing at ECEMS. I found out today that one of my employees was also requested to her office last week for a similar meeting and was told not to tell me about the meeting. I received a phone call from Commander Maddrey to attend this meeting 15 minutes after calling Diana to ask her how her meeting was last week and if she was doing okay. I asked the employee, Diana Chavers, about her QA meeting and she stated that she did not have one with Dr. Edler and that she was not asked to write a letter about certain calls we had been on together. Though I found this to be untrue and confirmed by Rebecca Brownfield and Chief Kenney. Rebecca Brownfield and Karen Wood advised me that Diana was possibly asked not to tell me about her meeting.
>
> I requested several witnesses for this meeting and they felt that they were unable or unwilling to attend due to ongoing investigations (Captain Jim Bonoyer, Chief Andy Hamilton, Janice Kilgore). Chief Salter was on sick leave due to a family illness and Chief Kenney had already left for

the day. At this time I contacted HR personnel Ed Spainhower for advice on the situation and he advised me not to attend the meeting until Chief Salter was available on another day due to the current environment at ECEMS. Ed advised me to send her a short email detailing the declination and to CC him and Eric Kleinert on the email. This was completed and I was then called back by Ed and Eric. Eric advised me that he spoke to Dr. Edler and assured me that this was only a "QA/QI" meeting. I reluctantly attended the meeting after speaking with Chief Salter on the phone and asked Ivy Lett (EMS HR) to attend the meeting as a witness. When I arrived at Dr. Edler's office, Commander Maddrey, Commander Hoopaugh, Captain Ammons (ECFR), and Bill Hopkins are in attendance. Dr. Edler advises that this is her new QA board for these types of meetings. No members of our current QA/QI team were present or allowed to attend (Rebecca Brownfield, Jim Bonoyer, Michelle Stanhope, Chief Kenney). Commander Maddrey left at the start of the meeting to go on a 911 call with a crew. To this date this policy has not been sent out to the organization or been initiated to my knowledge. I was then questioned about several calls and decisions made about patient care. Dr. Edler became very aggressive and heated when discussing the first case and spoke down to me in a condescending manner. I felt like I was ganged up on by this so called board and that it was inappropriate for a road employee (Bill Hopkins) and several other crew members/supervisors (Commander Hoopaugh, Captain Ammons) to be present for an employee counseling session. This is not an accepted practice for us in our position when dealing with our employee issues or counseling sessions unless the employee requests a witness or union representation. I do not feel it is appropriate or professional for a road employee to take part in a counseling process for a Shift Captain, Commander, or any other road personnel for that matter. Bill Hopkins is supposed to be moved off his assigned position on the road to rewrite protocols at this time. He is supposed to be working 1030-2230 on an ALS ambulance on my shift (C-shift). I have been advised by several employees that he has been doing QA during this time.

The first call brought up was a call that I went back in service to assist my crews with when it got very busy at shift change. The night shift MedCom was already on a critical 911 call and more critical calls continued to come in. I had a crew asking for help and decided to go back in service to help out. I brought along another paramedic Dean Parkerson and his EMT student due to his partner leaving work early that day to the call to assist with an extra set of hands. I opted to have Dean and his student ride in on the call for experience since all other critical interventions (IV, intubation) were completed and the patient only required CPR enroute to the ER. I was berated and grilled about why I chose not to attend the patient to the ER and was being held accountable for bad patient care decisions that were made after I had left the crew and they transported to the ER. I advised her that I can not guide the decisions that were made after I cleared the scene of the call and the patient was being transported. Dr. Edler became very aggressive when discussing this case because I called her for medical advice/orders on whether she wanted the patient transported. She stated that I am a "critical care paramedic supervisor" and that I shouldn't have to call her about this type of issue. I advised her on why I called her for direction due to the patient being in

traumatic arrest and a difficult and timely extrication to transport and definitive care. We currently do not have an updated Traumatic Arrest protocol in place, the most recent one is signed by Dr. Neal from 2011 and does not detail the events of this call. I do not feel that I should be criticized for calling for medical guidance/orders. The orders she gave were followed and the patient was transported. This phone call did not cause a delay in care since I performed no direct patient care at any time. They questioned how the patient was moved from the scene to the ambulance as well. They advised the patient should have been moved with a tarp. I stated that this was not used due to inability to perform CPR on the patient while being dragged on a tarp over a rocky surface during this time (3-5 minute walking time) and would only worsen the patients outcome. The patient was placed on a LBB and moved on the stretcher down the rail of the railroad tracks while CPR was still being performed. Diana, Dean, and their EMT student then transported the patient to the ER.

Another call that I was questioned on was an infant cardiac arrest at Truman Arms. FD brought the patient out to the ambulance as we arrived on scene and the patient was placed into the back of the unit. This patient was warm to the touch but certainly crushed to death by the parents while sleeping. Once these types of patients are in our ambulance we typically transport them due to the nature and age of the patient as well as some other operational concerns (heavy delays waiting on medical examiner to remove body from ambulance) of pronouncing a patient in the back of our ambulance. CPR and PALS/ACLS guidelines were initiated. Paramedic Diana Chavers had difficulty intubating the patient, possibly due to an obstruction in the trachea. Paramedic Kerem Suhi had no issue intubating on his first attempt. I was under the impression that if we were to transport the patient to the ER that all ALS measures should be completed. I was informed by Dr. Edler that I should have BLS'd and "show coded" the patient to the ER due to the patients status (crushed while sleeping with parents). Captain Ammons then advised that this is an "unwritten protocol". I advised her that I felt like if we are transporting the patient to the ER we should be doing any ALS interventions available to avoid any litigation issues and give the patient a chance. I have been working in EMS for nearly 12 years and have never had a Medical Director or administration advise me not to perform interventions on a patient that we were transporting unless the patient had an active DNR. I feel like if we did chose to BLS (no intubation or IV/IO access) the patient that I would be questioned by her as to why we did not perform any ALS interventions.

There were several other calls discussed including calls that had already gone through QA last year that she attempted to bring up yet again during this meeting. I have no issue with her wanting to review calls as that falls in her jurisdiction to do so with me but i do feel like this could be handled more professionally and through our current QA team we still have in place. I currently feel as if I am being targeted for having an opinion and having a voice during these times of tribulation here at ECEMS. I feel like this meeting was set up as an intimidation tactic in order to bully me out of my position. I am walking on egg shells and afraid to make a single mistake due to fear of retaliation or unjust review by my Medical Director.

I have conferred with by in house HR (Ivy Lett) this morning (5/1/19) and she has reviewed this email and agrees with its contents. Please call me if you have any more questions.

Matt Selover NREMT-P, AA/AS, CCP-C, FP-C
C-Shift Training Captain / FTO
Escambia County EMS
386-795-2834