## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

**MATHEW SELOVER**,

     **Plaintiff**,

**v.**                                     **Case No. 3:20cv4698-TKW-HTC**

**ESCAMBIA COUNTY BOARD OF COMMISSIONERS** and **RAYME EDLER**,

     **Defendants**.

_____/

## <u>ORDER ON MOTIONS TO DISMISS</u>

This case is before on the Court on Defendants' motions to dismiss (Docs. 31, 32) and Plaintiff's responses in opposition (Docs. 36, 37). Upon due consideration of these filings, the Court finds that the motions are due to be granted in part and denied in part for the reasons that follow.

### Facts (as Alleged in the Amended Complaint)

Plaintiff worked as a paramedic for Defendant Escambia County's emergency medical services (EMS) department from 2012 until April 2020 when he was "forced" to resign. Plaintiff was a Shift Captain for the last three and a half years of his employment, and aside from the events complained of in this case, he had never been disciplined for inappropriate work misconduct.

Defendant Rayme Edler started working as the County's Medical Director around April 2018. As Medical Director, Dr. Edler is responsible for the medical performance of all the County's emergency medical technicians (EMTs) and paramedics.

In March 2019, Plaintiff reported several instances of misconduct by other County EMS employees to his superiors. First, he reported that Glenda Owens (a close friend of Dr. Edler's) and Amanda Frando had called in a "false delay" so they could take a smoke break; second, he reported that Shawn Hoopaugh made inappropriate sexual comments towards another employee; and third, he reported Hoopaugh again after Hoopaugh angrily confronted him a few days after he reported the inappropriate comments.

On April 23, 2019, County EMS Commander James Maddrey told Plaintiff that he was required to attend a quality assurance (QA) meeting called by Dr. Edler that was going to start in about fifteen minutes. Maddrey did not tell Plaintiff the meeting's purpose or the topics for discussion.

Immediately upon learning of the meeting, Plaintiff voiced his concerns to the County's human resources (HR) department about having received no prior notice of the meeting and no explanation of the meeting's purpose. At first, an HR representative told Plaintiff not to attend the meeting, but later, HR Director Eric Kleinert told Plaintiff that he should attend and that the meeting was non-disciplinary

in nature.  Plaintiff attended the meeting and brought a union representative as a witness.

When Plaintiff arrived at the meeting, he saw that the QA board was comprised of Dr. Edler, Maddrey (who only stayed for part of the meeting), Captain Craig Ammons, Hoopaugh, and Bill Hopkins.  Plaintiff's reports of Hoopaugh's misconduct were still open and unresolved at the time of the QA meeting, and Hopkins was previously Plaintiff's subordinate and was Dr. Edler's close friend and confidant.

At the start of the meeting, Dr. Edler announced that the meeting was non-disciplinary in nature.  At the end of the meeting, the QA board made no recommendations for remediation, retraining, or performance improvement.

On May 1, 2019, Plaintiff filed a complaint against Dr. Edler with HR.  The complaint expressed five concerns Plaintiff had about the QA meeting: (1) he did not have sufficient prior notice of the meeting, (2) the QA board was not impartial toward him, (3) Dr. Edler brought up issues that were almost a year old or that had already been resolved, (4) the QA board was not made up of the representatives who usually sit on the board, and (5) the meeting was retaliatory against him for his reporting Owens and Frando.

Plaintiff kept working for the County as a paramedic with no restrictions on his employment for several weeks after the QA meeting.

On May 13, 2019, during a meeting with HR (also attended by EMS Chief Leon Salter and Interim Public Safety Director John Dosh), Dr. Edler learned that Plaintiff had filed a complaint against her and she "suddenly decided" that Plaintiff needed to be disciplined for the issues discussed at the QA meeting and that he could not work a paramedic under her license. Dosh told Dr. Edler that her conduct appeared to be retaliatory, but she kept pushing for disciplinary action to be taken against Plaintiff.

On May 15, 2019, Dr. Edler placed Plaintiff on administrative duty, meaning that he could not work as a paramedic and he also could not work overtime. Plaintiff received no prior notice of this proposed discipline and no proper opportunity to defend against it.

The day after Dr. Edler placed Plaintiff on administrative duty, she filed a complaint against him with the Florida Department of Health (DOH), in which she referred to issues not previously reported and nearly a year old. A third-party physician with emergency-medicine experience found Dr. Edler's allegations against Plaintiff to be unfounded, and DOH took no action against Plaintiff based on Dr. Edler's complaint.

Following the May 13 meeting, Interim County Administrator Matt Coughlin told Dosh that a performance improvement plan (PIP) needed to be completed to get Plaintiff back to his full position as a paramedic. Dosh requested a PIP from Dr.

Edler, but instead of providing a PIP, she responded with the suggestions that Plaintiff be demoted (from Shift Chief to EMT) or terminated.

Dosh and Coughlin had due process concerns regarding the situation, so Coughlin asked Deputy County Attorney Charles V. Peppler for a legal opinion as to the extent of Dr. Edler's authority to discipline Plaintiff.  Peppler opined in a legal memorandum that Dr. Edler had no authority to demote, terminate, or otherwise discipline Plaintiff.  This, however, did not deter Dr. Edler from continuing to restrict Plaintiff's duties.

After Plaintiff was restricted to administrative duties, he complained to County HR Representative Edward Spainhower that he was being improperly disciplined.  Spainhower investigated the complaint and issued a report in June 2019 in which he (1) concluded that Dr. Edler may have engaged in unlawful harassment of Plaintiff, (2) expressed his own due process concerns regarding the situation, and (3) recommended that Plaintiff be returned to "operational status" (rather being than restricted to administrative duties) as soon as possible.

Neither Dr. Edler nor the County implemented Spainhower's recommendations, and even though Plaintiff called HR about every three weeks to check the status of his complaint, he did not learn about Spainhower's report (or its recommendation that he be promptly returned to operational status) until November

2019 when he requested a copy of his personnel file from the County Attorney's office.

In July 2019, Salter prepared—and Dosh signed off on—a PIP for Plaintiff because Dr. Edler had not prepared one. The PIP was not implemented until August 2019.

The PIP required Plaintiff to work under the supervision of a Field Training Officer (FTO) for 90 days. Plaintiff worked more than 90 days under a FTO and met all of the PIP's conditions with a satisfactory performance, but he was still not returned to operational status because Dr. Edler and the County did not to follow the PIP.

In August 2019, Plaintiff started working a few shifts for the lifeguard ambulance service in the Santa Rosa County EMS department. When Dr. Edler learned of this, she contacted the Santa Rosa County Medical Director and expressed her opinion that Plaintiff was not qualified to work as a paramedic. The Santa Rosa County Medical Director investigated Plaintiff and came to the opposite conclusion.

On December 12, 2019, the County's new HR Director, Jana Still, issued a report finding—without "adequate explanation or analysis" and contrary to Spainhower's report—that Dr. Edler had not committed retaliation and that Plaintiff should continue to work under the supervision of an FTO. Five days later, Plaintiff sought to appeal Still's report, but he was told by HR—and the County Attorney's

office confirmed—that he had no further internal appeal rights and that his only remedy was with the courts.

In April 2020, after being told by Maddery that he could no longer attend supervisor meetings because of his work restrictions, Plaintiff resigned from his position with the County. He claims that he was "forced" to do so because, as a result of Defendants' "refus[al] to act, and provide appropriate due process, [he] . . . languish[ed] in a demoted position for more than ten (10) months."

Dr. Edler faced no negative consequences for her handling of Plaintiff's situation.

This is not the first time that Dr. Edler has been the subject a complaint by a County EMS employee, and just like this case, Dr. Edler filed complaints with DOH against the other complainants and the County "effectively buried the[ir] complaints" against Dr. Edler.

## Procedural History

In January 2020, Plaintiff sued Dr. Elder (in her official and individual capacities) and the County in state court, alleging Fourteenth Amendment due process and First Amendment retaliation claims under 42 U.S.C. §1983 and a whistleblower claim under §448.102, Fla. Stat. Defendants thereafter removed the case to this Court based on federal question (and supplemental) jurisdiction.

The County responded to the complaint with a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  The motion argued that §448.102 did not apply to public employers such as the County and that Plaintiff failed to allege sufficient facts to establish municipal liability under §1983.  Dr. Edler also filed a Rule 12(b)(6) motion to dismiss in which she joined the County's arguments with respect to the claims against her in her official capacity and asserted qualified immunity with respect to the claims against her in her individual capacity.[1]

The motions to dismiss were denied as moot after Plaintiff was granted leave to file an amended complaint.  The amended complaint (Doc. 20) added allegations about Plaintiff's "forced resignation" in April 2020 (among other things) and asserted seven counts: procedural due process (Counts I and II), substantive due process (Counts III and IV), and First Amendment retaliation (Counts V and VI) under §1983; and retaliation under Florida's Public Sector Whistleblower Act (PWA)[2] (Count VII).  Counts I, III, V, and VII are against both Dr. Edler in her official capacity and the County, and Counts II, IV and VI are only against Dr. Edler in her individual capacity.

---

[1]  Dr. Edler unsuccessfully sought a stay of discovery pending disposition of her claim of qualified immunity.  *See* Doc. 33.

[2]  §§112.3187 - .31895, Fla. Stat.

The County and Dr. Edler responded to the amended complaint with separate motions to dismiss under Rule 12(b)(6). Plaintiff conceded in his responses to the motions that the substantive due process and First Amendment retaliation claims in Counts III through VI should be dismissed. Accordingly, the Court only needs to consider whether the procedural due process claims in Counts I and II and the PWA claim in Count VII are adequately pled.

## Rule 12(b)(6) Standard

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The "plausibility standard" requires a showing of "more than a sheer possibility" that the defendants are liable on the claim. *Id.* at 678. Legal "labels and conclusions," unsupported by factual allegations, will not suffice. *Id.* (quoting *Twombly*, 550 U.S. at 555). In deciding on motions to dismiss, the Court considers only the complaint, though this includes any exhibits attached to the complaint and any documents incorporated into it by reference. *Thaeter v. Palm Beach Cty. Sheriff's Office*, 449 F.3d 1342, 1352 & n.7 (11th Cir. 2006). The Court accepts the complaint's well-pleaded factual allegations as true and construes them, along with the reasonable inferences they create, in the light most favorable

to the plaintiff.  *Iqbal*, 556 U.S. at 679; *Crespo v. Coldwell Banker Mortg.*, 599 F. App'x 868, 874 (11th Cir. 2014).

## Analysis

The remaining claims are those in Counts I, II and VII.  As noted above, Counts I and VII are against both Dr. Edler (in her <u>official</u> capacity) and the County, and Count II is only against Dr. Edler in her <u>individual</u> capacity.

It is well-established "when an [public official] is sued under Section 1983 in his or her official capacity, the suit is simply 'another way of pleading an action against an entity of which [the official] is an agent.'" *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)).  Accordingly, the official capacity claim against Dr. Edler in Count I is due to be dismissed as "duplicative and superfluous." *Brown v. Neumann*, 188 F.3d 1289, 1290 n.1 (11th Cir. 1999).  Likewise, because the PWA prevents "agencies" from taking retaliatory actions against public employees who report violations of the law by their employers, *see* §112.3187(2), (4), Fla. Stat., the PWA claim in Count VII against Dr. Elder in her official capacity is also due to be dismissed as duplicative and superfluous.

Accordingly, the only remaining claims are the procedural due process claims against the County (Count I) and Dr. Edler in her individual capacity (Count II) and

the PWA claim against the County (Count VII).  Each claim will be discussed in turn.

Count I

The County argues that Count I should be dismissed because (1) the amended complaint fails to establish municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), by identifying an unlawful policy, practice, or custom that was the moving force behind Plaintiff's constitutional injury, and (2) no constitutional violation occurred because the County's HR policies and the collective bargaining agreement (CBA) provide Plaintiff a post-deprivation means to redress the alleged due process violations.  In response, Plaintiff argues that he plausibly alleged that (1) the County had a custom and practice of allowing Dr. Edler to violate employees' due process rights or that it ratified her due process violations through inaction and the adoption of Still's report, and (2) procedural due process violations occurred because, contrary to the County policies and the CBA, he was not provided a meaningful opportunity to be heard before or after the actions taken by Dr. Edler.  The Court agrees with Plaintiff.

On the first point, municipal liability can be established in a variety of ways:

A municipality can be liable for an official policy enacted by its legislative body (e.g., an ordinance or resolution passed by a city council).  Municipal liability may also attach if final policymakers have acquiesced in a longstanding practice that constitutes the entity's standard operating procedure.  And a municipality can be held liable on the basis of ratification when a subordinate public official makes an

11

> unconstitutional decision and when that decision is then adopted by
> someone who does have final policymaking authority.

*Hoefling v. City of Miami*, 811 F.3d 1271, 1279 (11th Cir. 2016) (citations and internal quotation marks omitted). Here, Plaintiff has plausibly alleged that the County—through high-ranking officials[3]—ratified the due process violations allegedly committed by Dr. Edler because it did not reverse her actions despite having good reason to do so based on Peppler's legal memorandum and Spainhower's report. Moreover, the amended complaint plausibly alleged that the County's ratification of Dr. Edler's conduct was the moving force behind the violations of Plaintiff's procedural due process rights because had the County followed Peppler's legal memorandum or Spainhower's report, Plaintiff would have been promptly returned to operational status.

On the second point, "[t]o state a claim for a violation of procedural due process under §1983, a claimant must allege three elements: (1) that he was deprived of a constitutionally-protected liberty or property interest, (2) through state action, (3) as a result of constitutionally-inadequate process." *Evans v. Rhodes*, 735 F.

---

[3] The Court has not overlooked the County's argument that Plaintiff failed to specifically identify the final policymaker who allegedly ratified unconstitutional action, but that is not necessary to withstand a motion to dismiss. *See Hoefling*, 811 F.3d at 1280. Moreover, contrary to the County's argument, the amended complaint plausibly alleges that Dr. Edler's actions were ratified by persons who could be considered final policymakers—namely, the HR director (Still), the interim county administrator (Couglin), and the individual in the County Attorney's office who told Plaintiff that he had no right of internal appeal.

App'x 986, 988 (11th Cir. 2018) (citing *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003)).  Here, the County only argues that the amended complaint fails to adequately allege the third element.

The County's argument that any deprivation suffered by Plaintiff was not the result of constitutionally-inadequate process rests largely on the premise that the HR policies and CBA attached to the complaint contradict Plaintiff's allegations that he was denied proper means of redress, as well as on the unsupported—and unpersuasive—assertion that he needed to attach the writing that he alleges informed him he could not file an internal appeal.  The Court rejects this argument because Plaintiff clearly—and plausibly—alleges that although HR policies and CBA provisions existed to protect his due process rights, they were not followed.  The County's arguments on this point are better suited for the summary judgment stage of the case, not the motion to dismiss stage.

Accordingly, the County's motion to dismiss Count I is due to be denied.

### Count II

Dr. Edler argues that Count II should be dismissed because (1) she is entitled to qualified immunity, and (2) as argued by the County,[4]  no procedural due process

---

[4]  Although Dr. Edler adopted the County's argument in its motion to dismiss Count I, she also made the separate arguments that no due process violation occurred because (1) Plaintiff was entitled to a hearing at DOH on the complaint she filed after the QA meeting and (2) she was not responsible for providing due process protections.  The Court rejects these arguments because they were raised in a perfunctory manner and are beyond the proper scope of a motion to dismiss in any event.

violation occurred.   The second point is rejected for the reasons stated above, and the first point is rejected for the reasons that follow.

"Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Santana v. Miami-Dade County*, 688 F. App'x 763, 767 (11th Cir. 2017) (quoting *Dalrymple v. Reno*, 334 F.3d 991, 994 (11th Cir. 2003)) (internal quotation marks omitted).  The party asserting qualified immunity (here, Dr. Edler) has the burden to establish that the allegedly unconstitutional conduct occurred while she was acting within her discretionary authority.  *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1281 (11th Cir. 1998).

"To establish that the challenged actions were within the scope of his discretionary authority, a defendant must show that those actions were (1) undertaken pursuant to the performance of his duties, and (2) within the scope of his authority." *Id.*  "A government official proves that he acted within the purview of his discretionary authority by showing objective circumstances which would compel the conclusion that his actions were undertaken pursuant to the performance of his duties and within the scope of his authority." *Sims v. Metro. Dade Cty.*, 972 F.2d 1230, 1236 (11th Cir. 1992) (internal quotations omitted); *see also Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004) ("Instead of focusing

on whether the acts in question involved the exercise of actual discretion, we assess whether they are of a type that fell within the employee's job responsibilities.  Our inquiry is two-fold.  We ask whether the government employee was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize.").

Under Florida law, a county medical director is required to "supervise and assume direct responsibility for the medical performance of the [EMTs] and paramedics operating for that [EMS] system."  §401.265(1), Fla. Stat.  The medical director's duties include "advising, consulting, training, counseling, and overseeing of services, including appropriate quality assurance," but they do <u>not</u> include "administrative and managerial functions."  *Id.*  Additionally, a medical director is authorized to establish a QA committee to assess the medical performance of the EMTs and paramedics under her supervision and to document and report any disciplinary concerns about them to DOH.  §401.265(2), Fla. Stat.; *see also* Fla. Admin. Code R. 64J-1.004(3)(b) (providing that the medical director's duties and responsibilities include "[d]evelop[ing] and implement[ing] a patient care quality assurance system to assess the medical performance of paramedics and EMTs").

It is clear from these statutes that Florida law draws clear lines between "appropriate quality assurance" (within the medical director's discretionary authority) and "administrative and managerial functions" (beyond that authority)

and between bringing paramedics potentially in need of disciplinary action to the DOH's attention (the medical director's role) and taking disciplinary action against such paramedics (DOH's role).  Here, although the amended complaint refers to the short notice on which the QA meeting was called and the makeup of the QA committee (which are matters that likely fall within Dr. Edler's discretionary authority), the claims asserted by Plaintiff arise from the restrictions Dr. Edler imposed upon Plaintiff's employment weeks later in retaliation for his HR complaint about her and the subsequent actions she took contrary to County policy and the CBA to maintain these restrictions over the course of months.  These latter actions are—as Peppler opined—administrative and managerial functions that are not within Dr. Edler's authority to take.

The Court did not overlook the 2007 declaratory statement[5] cited by Dr. Edler in which DOH opined that medical directors have the authority to "condition, limit,

---

[5]  The purpose of a declaratory statement is "'to enable members of the public to definitively resolve ambiguities of law arising in the conduct of their daily affairs or in the planning of their future affairs' and 'to enable the public to secure definitive binding advice as to the applicability of agency-enforced law to a particular set of facts.'" *Dep't. of Bus. & Prof'l. Reg. v. of Pari–Mutuel Wagering v. Inv. Corp. of Palm Beach,* 747 So.2d 374, 382 (Fla.1999) (quoting Patricia A. Dore, *Access to Florida Administrative Proceedings,* 13 Fla. St. U. L. Rev. 965, 1052 (1986)). Declaratory statements are precedential in the sense that "the reasoning employed by the agency in support of a declaratory statement may offer useful guidance to others who are likely to interact with the agency in similar circumstances" and "[a]nother party can expect the agency to apply the rationale for its declaratory statement consistently, or to explain why a different application is required." *Chiles v. Dep't of State*, 711 So. 2d 151, 154–55 (Fla. 1st DCA 1998).  However, declaratory statements cannot be used by an agency in lieu of rulemaking to announce "a broad agency policy." *Lennar Homes, Inc. v. Dep't of Bus. & Prof'l Reg.*, 888 So. 2d 50, 54 (Fla. 1st DCA 2004).

modify[,] or suspend the Certificate holder's [EMTs and paramedics] medical performance while operating for the licensee consistent with the Medical Director's direct responsibility for the medical performance of all Certificate holders operating for the licensee."  Doc. 32-1, at 4.  Putting aside the fact that the declaratory statement is outside of the four corners of the complaint, the Court is not persuaded that it is a correct statement of Florida law because it did not even mention the language in section 401.265(1), which expressly states that the medical director's duties do not include "administrative and managerial functions."

The Court understands that this declaratory statement has been on the books for more than a decade and that DOH is more versed in the regulation of medical directors than is the Court, but that does not mean that the Court is required to defer to DOH's interpretation of the law if the interpretation is erroneous.  Indeed, putting aside the question of whether courts should ever defer to administrative agencies when construing the law,[6] there is no reason to do so here because the Court's task when deciding an unresolved issue of state law is to try to determine how the issue would be decided by the Florida Supreme Court and the Florida Constitution expressly prohibits Florida courts from deferring to agency interpretations.  *See* art. V, §21, Fla. Const. ("In interpreting a state statute or rule, a state court. . . may not

---

[6] *See, e.g., Michigan v. EPA*, 135 S.Ct. 2699, 2712 (2015) (Thomas, J., concurring); City of Arlington v. FCC, 569 U.S. 290, 312 (2013) (Roberts, J., dissenting); *Gutierrez-Brizula v. Lynch*, 834 F.3d 1142, 1149 (10th Cir. 2016) (Gorsuch, J., concurring).

defer to an administrative agency's interpretation of such statute or rule, and must instead interpret such statute or rule de novo.").  Thus, when deciding whether a medical director has the statutory authority to restrict the activities or otherwise discipline an EMT or paramedic, the Court gives no deference to the declaratory statement and instead reviews the scope of the medical director's statutory authority de novo.

The Florida Supreme Court has held that when the language of the statute is clear and unambiguous, the proper interpretation of the statute begins—and ends— with the plain language of the statute.  *See Lieupo v. Simon's Trucking, Inc.*, 286 So. 3d 143, 145 (Fla. 2019) ("A court's determination of the meaning of a statute begins with the language of the statute.  If that language is clear, the statute is given its plain meaning, and the court does not look behind the statute's plain language for legislative intent or resort to rules of statutory construction.") (citations and internal quotations omitted).  Here, §401.265(1), Fla. Stat., lists the duties of the medical director and then clearly and unambiguously provides that those duties do "not includ[e] administrative and managerial functions."   The plain meaning and common understanding of the phrase "administrative and managerial functions" encompasses actions such as hiring, firing, and disciplining employees, and because the restriction or suspension of the medical performance of an EMT or paramedic appears to be a disciplinary action, the medical director does not have the statutory

authority to take that action.  *Cf. Sims*, 972 F.2d at 1236 (holding that supervisors whose duties included the administration of discipline were acting within their discretionary authority when they imposed a three-day suspension even though the suspension was allegedly imposed to punish the employee for exercising his First Amendment rights).

In sum, because Dr. Edler's job duties did not include the imposition of discipline on EMTs and paramedics, she was not acting within her discretionary authority when she restricted Plaintiff to administrative duty and when she refused to lift those restrictions even after Plaintiff complied with the PIP.  Based on this conclusion, the Court need not consider whether Dr. Edler's conduct violated any clearly established law.  *See Harbert*, 157 F. 3d at 1281 ("If, and only if, the defendant [establishes that the allegedly unconstitutional conduct occurred while he was acting within the scope of his discretionary authority] will the burden shift to the plaintiff to establish that the defendant violated clearly established law.").

Accordingly, because Dr. Edler is not entitled to qualified immunity (at least not at this stage of the case[7]), her motion to dismiss Count II of the amended complaint is due to be denied.

---

[7]   The Court does not foreclose the possibility that discovery may lead to evidence establishing that restricting a paramedic's job duties is not tantamount to discipline or that imposing disciplinary action on paramedics is part of Dr. Edler's job duties under the County's ordinances or some other provision of state law.

<u>Count VII</u>

To state a claim for a violation of the PWA, the plaintiff must allege "(1) he engaged in statutorily protected expression; (2) he suffered a materially adverse action of a type that would dissuade a reasonable employee from engaging in statutorily protected activity; and (3) there was some causal relation between the events." *Batz v. City of Sebring*, 794 F. App'x 889, 901 (11th Cir. 2019). Here, the County only argues that the amended complaint fails to adequately allege the first element.

Specifically, the County argues that the amended complaint failed to plausibly allege (1) that Plaintiff reported the County's purported violations to an appropriate individual, (2) that the purported violations affect the general public welfare (rather than just Plaintiff personally), and (3) that Plaintiff made the report through a written and signed complaint. Plaintiff responds that (1) the amended complaint creates the reasonable inference that he reported the violations to Spainhower and Coughlin, who are appropriate individuals under the PWA, (2) the violations he reported affect the general public welfare because they concern the operation of the County EMS department, and (3) he specifically alleged that he "filed a <u>written</u> complaint against Defendant Edler on or about May 1, 2019, objecting to the inappropriate QA meeting, and the resulting due process violations" (emphasis added). The Court agrees with Plaintiff.

"[T]he Florida Supreme Court has instructed [that] the [PWA] be liberally construed." *Id.* at 902 (citing *Irven v. Dep't of Health and Rehab. Servs.*, 790 So. 2d 403, 405 (Fla. 2001)).  Where, as here, the disclosure concerns a county or other local governmental entity, the plaintiff must allege that he or she made the disclosure to "a chief executive officer as defined in §447.203(9) or other appropriate local official." §112.3187(6), Fla. Stat.  The PWA does not define "other appropriate local official," but in the spirit of liberal construction, Florida courts have defined the term "to include a variety of governmental entities 'empowered to investigate complaints and make reports or recommend corrective action.'" *Wagner v. Lee County*, 678 F. App'x 913, 922 (11th Cir. 2017) (quoting *Rustowicz v. N. Broward Hosp. Dist.*, 174 So. 3d 414, 424 (Fla. 4th DCA 2015)); *see also King v. Bd. of Cty. Comm'rs*, 2017 U.S. Dist. LEXIS 41941, at *34 (M.D. Fla. Mar. 23, 2017) (citing *Igwe v. City of Miami*, 208 So. 3d 150, 154 (Fla. 3d DCA 2016)).  The HR department to which Plaintiff allegedly complained qualifies as such an entity and is thus an "appropriate local official" for purposes of the PWA.

Additionally, to satisfy the requirements of the PWA, the plaintiff must have disclosed a specific type of information, including a violation of law that "creates and presents a substantial and specific danger to the public's health, safety, or welfare." §112.3187(5)(a), Fla. Stat.  The amended complaint plausibly alleges violations of the law because it alleges that Dr. Edler has made personnel decisions

21

regarding emergency responders based on personal animus, and because the nature and purpose of the EMS department is to protect the public, the violations present a substantial and specific danger to the public health, safety, and welfare. *See, e.g., King v. Florida*, 650 F. Supp. 2d 1157, 1164 (N.D. Fla. 2009) (holding that a plaintiff's disclosure satisfied the PWA's "substantial and specific danger" requirement when it alleged that a supervisor's bias affected hiring decisions regarding law enforcement officers because the officers' positions directly impacted public safety).

Finally, at this stage of the case, the Court is required to accept as true Plaintiff's allegation that his complaint was in writing. Although the allegation does not expressly state that the complaint was signed, that does not compel dismissal of the PWA claim because the amended complaint plausibly alleges that the purpose of the signed writing requirement in §112.3187(7), Fla. Stat., was met under the circumstances.[8] *See Hutchinson v. Prudential Ins. Co. of America, Inc.*, 645 So. 2d 1047, 1050 (Fla. 3d DCA 1994) (explaining that "the purpose of requiring a signed

---

[8]   Additionally, although outside the four corners of the complaint and not a basis for the Court's ruling, it appears that the E-mail pursuant to which Plaintiff made his complaint to HR (Doc. 36-2, at 7) contains what likely would be considered a signature under Florida law. *See* §§668.003(4), 668.004, Fla. Stat.   Additionally, it is noteworthy—and potentially legally significant, *see Hutchinson*, 645 So. 2d at 1050 (rejecting defendant's argument that letter submitted by plaintiff did not meet the requirements of §112.3187(7) because, among other reasons, a letter was the requested form of communication)—that the formal complaint form (Doc. 36-2, at 1) that HR apparently asked Plaintiff to fill out after his E-mail did not include a place for his signature.

writing is to document what the employee disclosed, and to whom the employee disclosed it").

Accordingly, because Plaintiff has sufficiently alleged a violation of the PWA, the County's motion to dismiss Count VII of the amended complaint is due to be denied.

**Conclusion**

In sum, for the reasons explained above, it is **ORDERED** that:

1. Defendants' motions to dismiss (Docs. 31, 32) are **GRANTED** as to Counts III, IV, V, and VI of the amended complaint; **GRANTED in part** as to Counts I and VII; and **DENIED** in all other respects.

2. Counts III, IV, V, and VI of the amended complaint are **DISMISSED**, as are the official capacity claims against Dr. Edler in Counts I and VII.

3. Defendants shall have 14 days from the date of this Order to answer the amended complaint.  *See* Fed. R. Civ. P. 12(a)(4)(A).

**DONE and ORDERED** this 19th day of June, 2020.

*T. Kent Wetherell, II*

**T. KENT WETHERELL, II**
**UNITED STATES DISTRICT JUDGE**